## UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| ERIC CERVINI, WENDY DAVIS, DAVID GINS, and TIMOTHY HOLLOWAY,<br><br>Plaintiffs,<br><br>v.<br><br>ELIAZAR CISNEROS, HANNAH CEH, JOEYLYNN MESAROS, ROBERT MESAROS, DOLORES PARK, and JOHN and JANE DOES,<br><br>Defendants. | | Civil Action No. 1:21-cv-00565-RP<br><br>Hon. Robert Pitman |

## DOLORES PARK'S MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12 (b)(1), (b)(6)

Richard Thompson
Michigan Bar No. P21410*
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Dr., #J3200
Ann Arbor, MI  48106
Tel. (734) 827-2001
Fax (734) 930-7160
rthompson@thomasmore.org
ATTORNEY FOR DEFENDANT,
Dolores Park
*Pro Hac Vice

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...............................................................................................................1

BACKGROUND .................................................................................................................1

STANDARD OF REVIEW ..................................................................................................7

ARGUMENT ......................................................................................................................7

    I.     PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MRS. PARK
           UNDER THE KU KLUX KLAN ACT OF 1871 UPON WHICH RELIEF
           MAY BE GRANTED ........................................................................................8

         a.   Congress Does Not Have the Power to Create a General Private Cause of
             Action Under the Ku Klux Klan Act ...........................................................8

         b.   Even if the Court Finds the Ku Klux Klan Act Can be Asserted Against a
             Private Party, Plaintiffs Have Failed to Do So Against Mrs. Park ........... 11

              i.   Plaintiffs Have Failed to Alleged Mrs. Park Conspired ................12

             ii.   Plaintiffs Have Failed to Allege Mrs. Park Colluded with State
                  Actors ...............................................................................................14

            iii.   Plaintiffs Have Failed to Allege Mrs. Park Acted Out of Racial
                  Animus ..............................................................................................15

    II.    PLAINTIFFS CLAIMS ALLEGED UNDER STATE LAW MUST BE
           DISMISSED UNDER 12(b)(1) ................................................................... 16

    CONCLUSION ...........................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................7, 14

*Baker v. Carr,* 369 U.S. 186 (1962).................................................................................16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................7, 14

*Bell v. Hood,* 327 U.S. 678 (1946)...................................................................................16

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) ...................9, 10, 13, 16

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001)..........14,15

*Carpenters v. Scott,* 463 U.S. 825 (1983) .......................................................................13

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ................................................................10

*Cuvillier v. Taylor,* 503 F.3d 397 (5th Cir. 2007)..............................................................7

*District of Columbia v. Carter*, 409 U.S. 418 (1973) ........................................................8

*Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011).........................................................7

*Griffin v. Breckenridge,* 403 U.S. 88 (1971).......................................................9, 10, 12, 13

*Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261 (5th Cir. 2001) ...........................12

*Kimble v. D. J. McDuffy, Inc.*, 648 F.2d 340 (5th Cir. 1981) ...........................................15

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010) .....6, 7

*Marsh v. Alabama*, 326 U.S. 501 (1947) ...........................................................................1

*McCullen v. Coakley,* 573 U.S. 464 (2014) .......................................................................1

*McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977)....................16

*Newberry v. E. Tex. State Univ.,* 161 F.3d 276 (5th Cir.1998).........................................16

*Norris v. Hearst Tr.*, 500 F.3d 454 (5th Cir. 2007).............................................................7

*Paul v. Virginia,* 19 L.Ed. 357 (1869) .............................................................................13

*Sanchez v. Striever*, 614 S.W.3d 233 (Tex. Ct. App. 2020) ...............................................17

*Toomer v. Witsell,* 334 U.S. 385 (1948) ............................................................................13

*Tri v. J.T.T.*, 162 S.W.3d 552 (Tex. 2005).........................................................................17

*United States v. Harris*, 106 U.S. 629 (1883)...........................................................8, 9, 10

*United States v. Lopez*, 514 U.S. 549 (1995)...............................................................10, 11

*United States v. Morrison*, 529 U.S. 598 (2000) ....................................................8, 10, 11

*Wong v. Stripling,* 881 F.2d 200 (5th Cir. 1989) ...............................................................12

*Zobel v. Williams,* 457 U.S. 55 (1982)................................................................................13

**FEDERAL STATUTES**
Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3) ...................................................... *passim*
28 U.S.C. § 1367   ..............................................................................................................16

**OTHER:**
Fed. R. Civ. P. 12 (b)(1)..............................................................................................16, 17
Fed. R. Civ. P. 12 (b)(6)..........................................................................................6, 7, 17

## INTRODUCTION

Most motions to dismiss ask the Court to resolve questions regarding law and fact upon which reasonable minds differ.  This, however, is not such a motion.  Plaintiffs' claims are entirely frivolous, motivated by political animus, wholly unsupported by the law of this Circuit, and require immediate dismissal.

## BACKGROUND

On October 30, 2020, Plaintiffs decided to take their political expression to the streets by parading and holding rallies throughout Texas, via a large bus wrapped in campaign logos and slogans for the Biden-Harris ticket.  Compl. at ¶¶ 44-45.



Available at   https://www.nbc12.com/2020/10/31/biden-campaign-cancels-austin-rally-trump-supporters-reportedly-harass-bus/, last visited August 26, 2021.  Of course, public property, including streets and parks have been considered public forums for speech and assembly since time immemorial.  *See, e.g. McCullen v. Coakley,* 573 U.S. 464 (2014); *Marsh v. Alabama*, 326 U.S. 501 (1947).  There is nothing unusual or unlawful per se about individuals gathering in public to espouse differing political viewpoints, such as displaying a Trump bumper sticker or flag next to a Biden-Harris bus or driving outside a Trump Rally with a Biden-Harris sign.  That is all

Plaintiffs' Complaint establishes—Dolores Park decidedly drove on the same public highway as the Biden-Harris bus to display her Trump bumper sticker and flag in an effort to share her political views.  What the Complaint fails to show, because it cannot, is that Mrs. Park conspired to violate the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3).  This is because Plaintiffs' allegations are both, in law and in fact, absurd.

Plaintiffs begin the "Factual Background" section of their Complaint by devoting several pages to describing events that allegedly occurred on October 28 and 29, 2020, but never allege that Mrs. Park knew about these events or was in any way involved in them.  Compl. at ¶¶ 28-45. This is because she wasn't.

On Page 19 of the Complaint, Plaintiffs begin their allegations pertaining to October 30, 2020, the date they allege that Mrs. Park violated the Ku Klux Klan Act.  Compl. at ¶¶ 59-79. Again, these allegations discuss individuals who seemingly live in Alamo City and New Braunfels and are part of organizations and social media groups to which Mrs. Park is not a member.  These allegations fail to mention Mrs. Park in anyway.  The allegations do not state that Mrs. Park organized any event or even  received any of the social media posts.  This is for good reason; Mrs. Park did not.[1]  She had never met or spoken with any of the alleged "co-conspirators" and had never shared information with them on social media or otherwise.

The first real mention of Mrs. Park in the Plaintiffs' "Factual Background Section" begins on page 27 of the Complaint, where the Plaintiffs allege that "[u]pon information and belief, among

---

[1] Defendants claim that Mrs. Park "circulated calls" to "greet the Biden Bus Trump Style." Compl. at 17, fn. 12.  In truth, Mrs. Park did not take any part in organizing the rally on the highway and never "circulated calls."  However, even if accepted as true, this allegation shows nothing more than an intention to voice support for President Trump on a public highway when the Biden-Harris bus was voicing its own messaging.  It does not allege anything close to a violation of the Ku Klux Klan Act of 1871.

the vehicles who joined the ambush of the bus Tour around this time were Defendants Ceh, Joeylynn Mesaros, Robert Mesaros, Park, and a John/Jane Doe driving a red Toyota Tundra bearing Texas License Plate # GLB 9729."  Compl. at ¶ 80.  But again, there are no allegations that Mrs. Park knew or planned to enter the public highway with these individuals or that they had planned to meet on the highway for any illegal purpose.  And with good reason, Mrs. Park had never met or communicated with these individuals and has never had any plans at any time to injure persons or property or espouse any sort of racial animus.  Plaintiffs never state how Mrs. Park ambushed the bus Tour or acted in concert with others to engage in the act of ambush.

The word "ambush" means "to attack by surprise from a hidden place," "waylay," "to lie in wait" or "lurk." https://www.merriam-webster.com/dictionary/ambush?utm_campaign=sd&utm_medium=serp&utm_source=jsonld, last visited August 26, 2021.  Such an accusation that Mrs. Park somehow "ambushed" the Defendants is implausible on its face.  First, the Complaint actually alleges that the Biden-Harris bus frequently attracted counter-protestors on the public highway in various cities in Texas. Compl. at ¶¶ 28-45.  It would be surprising, given the appearance and size of the Biden-Harris bus, the fact that it was fully wrapped in political messaging, and the fact that it was driving on an open public highway, if the bus had not attracted speech and assembly of other political voices.  Second, matters, such as a traveling billboard in the form of a bus, easily attract onlookers and those wishing to share their own views, in support or disagreement.  The more people on the highway, the more traffic can be expected.  Traffic is not an ambush, even applying one's brake in front of another vehicle is not an ambush.  And third, the Complaint describes how the driver continued traveling on the highway, even at speeds of 70 mph, before exiting the expressway, so Plaintiffs were not waylayed to the point of not being able to continue traveling on the highway.  Compl. at

3

¶ 111.   There is no explanation for how Mrs. Park ambushed the Plaintiffs.   This is with good reason; she did not.

The other allegations pertaining to Mrs. Park in the "factual background" section are as follows:

- "Based on social media posts and video evidence, Defendant Park drove a Cadillac SRX, Texas License Plate # KVH 4567.  Park posted on social media identifying herself as present on I-35 during the incident driving in a Cadillac SRX." Compl. at   ¶ 83.   This is simply identification that Mrs. Park was driving on the highway, behind the Biden-Harris bus "escorting" the bus's political message with her own, her Trump bumper sticker and flag.

- Paragraph 86 alleges that Mrs. Park's vehicle can be seen "assisting" a gray F-150 who allegedly deaccelerates in front of the bus and helps to box the bus in.  Compl. at ¶ 86.  This allegation is implausible on its face.  First, the Complaint does not establish any communication or plan between Mrs. Park and Defendant "John Doe" in the gray F-150.  There was none.  The pictures in the Complaint show Mrs. Park in front of the bus in the left lane of traffic.  And even if the allegations of assisting the F-150 were true as stated, which they are not, somehow "assisting" a driver you do not know and have never met to slow down and box in a vehicle that is not directly behind you, does not establish a violation of the Ku Klux Klan Act of 1871.



• Paragraph 92 alleges that Mrs. Park commented on her social media page that "This Biden bus is surrounded! Like seriously surrounded by Trump flags!" Compl. at ¶ 86. This allegation establishes nothing more than Mrs. Park's observation and excitement that her pro-Trump viewpoint was well-represented next to the pro-Biden-Harris bus with its political messaging.

• Paragraph 92 also alleges that Mrs. Park posted on her social media that "If my husband sees me like this he's going to kill me for driving like this!" There is no indication of what "like this" means; however, there are no allegations that Mrs. Park drove aggressively toward the bus, assaulted or intentionally hit the bus, etc. If anything, this statement demonstrates that Mrs. Park did not engage in a conspiracy and seems surprised to be in traffic where drivers are weaving between each other.

• Plaintiffs allege that Mrs. Park stated "they're gonna to try to break us up; they try to break us up but it doesn't work … there's too many of us, and then someone just lets everyone in. . . . See when you scoot over, then you let everyone else in, like this. … He's been with us for quite a few miles, he's been trying to cut everyone off but I'm going to let everyone in." Compl. at ¶ 92. It is unclear why Plaintiffs included these statements; they do not establish any intent to

injure or to forward any sort of racial animus.  These statements simply reflect that Mrs. Park was in traffic on the highway for the purpose of displaying her pro-Trump bumper sticker and flag with others donning pro-Trump stickers and flags as well.

Plaintiffs make no other allegations about Mrs. Park's actions or driving on October 30, 2020.  Thirty-two paragraphs and fifteen pages later, the Plaintiffs state that Mrs. Park posted footage of President Trump's campaign speeches taking place between October 31 and November 2, 2020, in the days following the alleged bus "ambush," on her social media account.  In the statements, Mrs. Park allegedly says that the President is "[t]alking about us again!!  Lol San Antonio!" and uses the word "escort" twice: "Escorting Biden Bus right out of Town!  Deplorables escort service."  These allegations, seemingly made in jest days after the complained of event, do not establish a violation of the Ku Klux Klan Act of 1871, and escorting or accompanying a bus to demonstrate an opposing viewpoint on the public highway is not banned under that statute.

The closest allegation to any assaultive behavior included in the Plaintiffs' complaint is in paragraph 151.  Plaintiffs claim that Defendant Cisneros slammed into a white truck.  However, there are no allegations Mrs. Park knew about this collision or was any part of it.  There are no allegations the white truck had any markings or indicia to establish someone could have hit it due to racial animus or even political affiliation with the Biden-Harris campaign.  Furthermore, it seems Plaintiffs' claims are untruthful as the police believe that it was the Plaintiff in the white truck, and not Defendant Cisneros, who was the aggressor in the accident.  *See* https://www.yahoo.com/now/local-police-biden-staffer-may-221437081.html, last visited August 26, 2021; https://youtu.be/k4XgDO5cxgM, last visited August 26, 2021.[2]  Whatever the case may

---

[2] When deciding a 12(b)(6) motion to dismiss, it is proper for the court to consider evidence linked to the motion if it is central to the claim and referenced by the complaint and to take judicial notice of matters within the public record.  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594

be regarding that isolated incident, Mrs. Park was not part it.  Plaintiffs have failed to plead any factual allegations that could plausibly establish that Mrs. Park violated the Ku Klux Klan Act of 1871.  Other than Plaintiffs' threadbare recitals of the elements of their causes of action and conclusions unsupported by their factual allegations, Plaintiffs' Complaint alleges no federal cause of action and should be swiftly dismissed.

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  This requires that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

## ARGUMENT

Plaintiffs allege three claims against Mrs. Park: violation of the Ku Klux Klan Act of 1871, civil conspiracy, and civil assault.  Plaintiffs' allegations pertaining to each claim are legally and factually frivolous.  The claims against Mrs. Park must be dismissed.

---

F.3d 383, 387 (5th Cir. 2010); *Funk v. Stryker Corp*., 631 F.3d 777, 783 (5th Cir. 2011); *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

## I.  PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MRS. PARK UNDER THE KU KLUX KLAN ACT OF 1871 UPON WHICH RELIEF MAY BE GRANTED.

The Ku Klux Klan Act of 1871 (codified as amended at 42 U.S.C. § 1985) was enacted in the aftermath of the Civil War to thwart racial violence, specifically the reprehensible violence toward black and brown Americans at the hands of members of the Confederacy based solely on skin color.  At the time this Act was adopted, federal-question jurisdiction in the federal court did not yet exist.  *District of Columbia v. Carter*, 409 U.S. 418, 427, 93 S. Ct. 602, 607–08, fn. 20 (1973). The act was predicated on congressional authority granted under the Thirteen and the Fourteenth Amendments for enforcement in the state courts.  The United States Supreme Court has found the act has lacked constitutional authority for the bulk of its history.  And today, in light of the United State Supreme Court's decision in *United States v. Morrison*, 120 S. Ct. 1740 (2000), the act provides no constitutional basis to bring a federal tort claim against a private actor.

### a.  Congress Does Not Have the Power to Create a General Private Cause of Action Under the Ku Klux Klan Act.

Twelve years after Congress passed the act, the Supreme Court granted certiorari in *United States v. Harris*, 106 U.S. 629 (1883).  In *Harris*, the Supreme Court asked "does the thirteenth amendment warrant the enactment" of the Ku Klux Klan Act.  *Id*. at 641.  The court concluded,

> We are of opinion that it does not. Our conclusion is based on the fact that the provisions of that section are broader than the thirteenth amendment would justify. Under that section it would be an offense for two or more white persons to conspire, etc., for the purpose of depriving another white person of the equal protection of the laws. It would be an offense for two or more colored persons, enfranchised slaves, to conspire with the same purpose against a white citizen or against another colored citizen who had never been a slave. Even if the amendment is held to be directed against the action of private individuals, as well as against the action of the states and United States, the law under consideration covers cases both within and

8

> without the provisions of the amendment. It covers any conspiracy between two free white men against another free white man to deprive the latter of any right accorded him by the laws of the state or of the United States. A law under which two or more free white private citizens could be punished for conspiring or going in disguise for the purpose of depriving another free white citizen of a right accorded by the law of the state to all classes of persons,—as, for instance, the right to make a contract, bring a suit, or give evidence,—clearly cannot be authorized by the amendment which simply prohibits slavery and involuntary servitude. Those provisions of the law, which are broader than is warranted by the article of the constitution by which they are supposed to be authorized, cannot be sustained.

*Id*. The *Harris* court struck down the law in its entirety for the next ninety years. In 1971, the Supreme Court decided *Griffin v. Breckenridge,* 403 U.S. 88 (1971). In *Griffin*, the court held that under the Thirteenth Amendment, Congress had the authority to address not only the "actual imposition of slavery or involuntary servitude," but also to enact legislation aimed to stop the "badges and incidents" of slavery or involuntary servitude. *Id*. at 105. Therefore, *Griffin* narrowly reversed *Harris* to allow a 42 U.S.C. 1985(3) to allow a private claim for conspiracy. The holding however "was mindful of the congressional apprehension that the statute might otherwise turn out to be 'a general federal tort law.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 299–300 (1993) (Souter, J., concurring) (quoting *Griffin,* 403 U.S. at 102).

Indeed, in the years after *Griffin*, the Supreme Court adopted a more limited view of Congressional powers under the Fourteenth Amendment and the interstate commerce clause. Twenty years after Griffin, the Supreme Court heard *Bray v. Alexandria Women's Health Center*. 506 U.S. at 263. *Bray* again limited the Ku Klux Klan Act of 1871. *Bray* asked whether the act provided a federal cause of action against defendants who intentionally obstructed access to abortion clinics. *Id*. at 266. Defendants were six individuals who worked together to obstruct access to the clinic. *Id*. The plaintiffs argued that the defendants had conspired to deprive women of their right to abortion and their right to interstate travel, thereby violating the Ku Klux Klan act. *Id*. at 266-67. The Supreme Court interpreted *Griffin*'s holding that required both 1) "some racial,

9

or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action," and 2) "that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'"  *Id*. at 267-68 (citations omitted).

*Bray* held that political differences regarding the right to abortion could not establish the sort of invidious discrimination contemplated by the Ku Klux Klan Act.  *Id*. at 274 (stating "This is not the stuff out of which a § 1985(3) 'invidiously discriminatory animus' is created.").  The Supreme Court further held that claims brought under the act must allege a conspiracy "aimed at" the denial of equal protection based upon racial animus.  *Id*. at 275-76.  Because the plaintiffs failed to establish racial amicus, the Supreme Court held that it was "on its face implausible" that plaintiffs' complaint stated a claim under the Ku Klux Klan act.

Approximately four years after *Bray*, the Supreme Court began seriously examining the role of Congress and its authority to enact legislation based upon its constitutional powers.  In *City of Boerne v. Flores*, the Supreme Court ruled that the 1993 Religious Freedom Restoration Act exceeded the scope of Congress' power under the Fourteenth Amendment.  521 U.S. 507 (1997). The Court, however, seemed to indicate that Congress possessed the power to pass corrective or preventive legislation to achieve the goals of the Fourteenth Amendment, such as targeting racial discrimination, but held the Congress otherwise lacked the power to pass definitional legislation which invaded the Court's jurisdiction and the constitutional role of interpreting the Constitution. *Id*.

In *United States v. Morrison*, the Supreme Court drew a line.  529 U.S. 598.  Congress had enacted a federal civil remedy for victims of gender-motivated violence to provide women with a civil remedy against men who committed acts of violence, such as rape.  *Id*. at 601-02. Reinstituting, in part, the holding in *United States v. Harris* and applying *United States v. Lopez*,

10

514 U.S. 549 (1995), the Supreme Court "concluded Congress lacked the authority to enact the section's civil remedy" under both the interstate commerce clause and the Fourteenth Amendment. *Morrison*, 529 U.S. at 602.  First the court held, "[g]ender-motivated crimes of violence are not, in any sense of the phrase, economic activity. . . . thus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature."  *Morrison*, 529 U.S. at 613.  Second, the court examined whether the act was a constitutional use of Congress' power under the Fourteenth Amendments' vow to not "deny any person 'equal protection of the laws.'"  *Id*. at 619.  The Supreme Court held that the Fourteenth Amendment failed to provide the authority to prohibit private conduct, "however discriminatory or wrongful."  *Id*. at 624.  The Supreme Court further stated that "[t]here is abundant evidence, however, to show that the Congresses that enacted the Civil Rights Acts of 1871 and 1875 had a purpose similar to that of Congress in enacting" the violence against women's act struck down in Morrison.  *Id*. at 625.  "There were state laws on the books bespeaking equality of treatment, but in the administration of these laws there was discrimination against newly freed slaves."  *Id*.

The act in the instant case, the Ku Klux Klan Act of 1871, is motivated by Congress' goal to punish individuals who have committed criminal acts motivated by racial bias.  The application of the act pleaded in Plaintiffs' Complaint is not animated by the Thirteenth Amendment as its goal of eradicating slavery.  Instead, the Complaint seeks to provide a civil remedy against a private actor at the federal level that is not sustained under the constitution and its amendments.  Plaintiffs' allegations as pleaded would be an unconstitutional interpretation of the Ku Klux Klan Act of 1871 and therefore have no remedy in law.

> **b.  Even if the Court Finds the Ku Klux Klan Act Can be Asserted Against a Private Party, Plaintiffs Have Failed to Do So Against Mrs. Park.**

To plead a cause of action under 42 U.S.C. § 1985(3), a plaintiff must allege:

(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus.

*Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n.12 (5th Cir. 2001) (quoting *Wong v. Stripling,* 881 F.2d 200, 202-03 (5th Cir. 1989)).  Plaintiffs' Complaint fails to allege how Mrs. Park conspired to deprive the Plaintiffs of the equal protection of the law by acting in furtherance of the conspiracy to injure a person or property or deprive the Plaintiffs of the right, and that the conspiracy was motivated by racial animus.  Instead, Plaintiffs allege that Mrs. Park drove on the public highway, displaying a Trump flag and bumper sticker, and (untruthfully and implausibly) allege Mrs. Park "assisted" an unnamed Defendant "John Doe" in slowing down the Biden-Harris campaign bus.  This is the extent of Plaintiffs' allegation against Mrs. Park.  Plaintiffs' allegations against Mrs. Park do not support a single element required to establish a violation of the Ku Klux Klan Act, let alone provide a basis for an entire claim upon which relief could be granted.  Plaintiffs' allegations against Mrs. Park are legally and factually frivolous.

Thus, to survive a motion to dismiss under "the plausibility standard of Bell Atlantic, a conclusory allegation concerning some elements of a plaintiff's claim might need to be fleshed out by a plaintiff's response to a defendant's motion for a more definite statement." Id. at 158.

### i.   Plaintiffs Have Failed to Alleged Mrs. Park Conspired.

In order to establish a private conspiracy in violation under 42 U.S.C. § 1985(3), a "plaintiff must show, *inter alia,* (1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' *Griffin v. Breckenridge,* 403 U.S. 88,

102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), and (2) that the conspiracy 'aimed at interfering

with rights' that are 'protected against private, as well as official, encroachment,' *Carpenters v.*

*Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983)." *Bray*, 506 U.S. at 267–

68.  Plaintiffs' Complaint fails to show either.  First, Plaintiffs fail to allege that Mrs. Park entered

into any agreement or conspiracy with the intent of forwarding discriminatory animus.  The

Complaint does not even show Mrs. Park entered into a conspiracy.  And as the Supreme Court

held in *Bray*, a group of individuals who hold beliefs different from one's own, such as on the

issue of abortion or on political issues, is not a class of persons contemplated under the Ku Klux

Klan act.

Secondly, Mrs. Park did not conspire to interfere with the rights recognized under 42

U.S.C. § 1985(3).  Plaintiffs seems to allege that Mrs. Park conspired to prevent interstate travel.

This argument is meritless.  As the Supreme Court has clarified,

> The federal guarantee of interstate travel does not transform state-law torts into
> federal offenses when they are intentionally committed against interstate travelers.
> Rather, it protects interstate travelers against two sets of burdens: "the erection of
> actual barriers to interstate movement" and "being treated differently" from
> intrastate travelers. *Zobel v. Williams,* 457 U.S. 55, 60, n. 6, 102 S.Ct. 2309, 2313,
> n. 6, 72 L.Ed.2d 672 (1982). See *Paul v. Virginia,* 8 Wall. 168, 180, 19 L.Ed. 357
> (1869) (Art. IV, § 2Art. IV, § 2, "inhibits discriminating legislation against [citizens
> of other States and] gives them the right of free ingress into other States, and egress
> from them"); *Toomer v. Witsell,* 334 U.S. 385, 395, 68 S.Ct. 1156, 1161, 92 L.Ed.
> 1460 (1948) ( Art. IV, § 2Art. IV, § 2, "insure[s] to a citizen of State A who ventures
> into State B the same privileges which the citizens of State B enjoy").

*Bray*, 506 U.S. at  276–77.  Plaintiffs' Complaint only alleges that defendants' actions affected

movement within the State of Texas and in no way involve interstate movement, nor did Plaintiffs

allege that defendants targeted intrastate and interstate movement differently. Plaintiffs' allegations foreclose relief under this theory.

Plaintiffs seemingly try to allege that Mrs. Park conspired with the co-Defendants "to prevent groups from joining together to obstruct free and fair federal elections by intimidating and injuring voters or denying them the ability to engage in political speech." Compl. at ¶ 13. This allegation, like the rest of Plaintiffs' Complaint is a mess. First, Plaintiffs never proffer a single fact to allege that Mrs. Park obstructed a free and fair election. Instead, Plaintiffs allege Mrs. Park drove on the highway on October 30, 2020. There are no allegations regarding the November 3, 2020 election or how Mrs. Park could have somehow obstructed the election, let alone conspired to do so. There are no factual allegations that Mrs. Park intimidated or injured a voter beyond the allegation that Mrs. Park "assisted" John Doe on October 30, 2020 in creating more traffic on the highway. Under *Bell Atlantic*, Plaintiffs' claim must fail. *See Iqbal*, 490 F.3d at 177. Plaintiffs have not alleged that Mrs. Park had a meeting of the minds or acted in concert to act out racial animus. The thin reed upon which Plaintiffs' claim cannot sustain their federal Complaint. Further, Plaintiffs' Complaint fails to allege that Mrs. Park conspired to deny defendants from engaging in political speech. And any 42 U.S.C. § 1985(3) action brought under a First Amendment theory, fails to provide a private cause of action and requires a showing of state action.

### ii. Plaintiffs Have Failed to Allege Mrs. Park Colluded with State Actors.

Conduct that is ostensibly private can be fairly attributed to the state *only if* there is "such a close nexus between the State and the challenged action" that seemingly private behavior "may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). State action may be found where the state exercises "coercive power" over, is "entwined in [the] management or control" of, or provides "significant

encouragement, either overt or covert" to, a private actor, or where the private actor "operates as a willful participant in joint activity with the State or its agents," is "controlled by an agency of the State," has been delegated a "'public function" by the state, or is "entwined with governmental policies." *Id*. at 296.

Plaintiffs make no allegations linking Mrs. Park to state action.  The only mention of state action in the Complaint is an officer responding to Plaintiffs' call and leaving without arresting anyone present and the officer who investigated the car collision that did not involve Mrs. Park. Plaintiffs' Complaint fails to properly assert a 42 U.S.C. § 1985(3) action under the First Amendment.

### iii.  Plaintiffs Have Failed to Allege Mrs. Park Acted Out of Racial Animus.

Perhaps the most glaring error with Plaintiffs' Complaint is that they bring a claim for a violation of the Ku Klux Klan Act of 1871, but they never allege that Mrs. Park conspired or acted out of racial animus.  The Fifth Circuit requires plaintiffs to establish racial animus under the Ku Klux Klan Act. *See, e.g., Kimble v. D. J. McDuffy, Inc.*, 648 F.2d 340, 345–46 (5th Cir. 1981) (requiring the showing of racial animus to allege a claim under 42 U.S.C. § 1985(2) based upon the finding that it is required under § 1985(3)).  Sitting en banc, the Fifth Circuit held,

> The Ku Klux Act was passed amid the lawless conditions existing in the South after the Civil War.  A major aim of the legislation "was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies.  It is readily apparent from the title of the bill itself, "An Act to enforce the Provisions of the Fourteenth Amendment," that the key concern of the legislators was to put force behind the Civil War Amendments by providing an avenue for the redress of injuries suffered by the class of newly emancipated slaves.  Nowhere have we seen it suggested that Congress was concerned about discrimination being practiced against insolvents.

15

*McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977) (en banc) (footnotes omitted); *see also Newberry v. E. Tex. State Univ.,* 161 F.3d 276, 281 n. 2 (5th Cir.1998) (noting that the Supreme Court has never held that non-racial animus is sufficient).

It seems apparent from Supreme Court and Fifth Circuit precedent and from the text of the Ku Klux Klan Act itself that a complaint cannot survive under this cause of action unless the plaintiff plausibly alleges that the defendant's actions in furtherance of a conspiracy are motivated by racial animus.  Plaintiffs have failed to allege that Mrs. Park ever conspired out of racial animus. And with good reason, she did not.  It is unclear from Plaintiffs' Complaint which class of persons they believe were targeted.  It seems, it may be Biden-Harris supporters.  This group, however, is not a class protected under the Ku Klux Klan act.  Plaintiffs seemingly are comprised of different racial classifications, likely hold views that may differ on certain political subjects, and their views certainly are not immutable.  Like the class the Supreme Court reviewed in *Bray*, what Plaintiffs have alleged in the Complaint "is not the stuff out of which a § 1985(3) 'invidiously discriminatory animus' is created."  506 U.S. at 275.

## II.   PLAINTIFFS CLAIMS ALLEGED UNDER STATE LAW MUST BE DISMISSED UNDER 12(b)(1)

The federal claim, under the Ku Klux Klan Act of 1871, alleged by Plaintiffs to establish subject matter jurisdiction is, in law and in fact, frivolous.  *See, e.g., Baker v. Carr,* 369 U.S. 186 (1962); *Bell v. Hood,* 327 U.S. 678 (1946).  Upon dismissing Plaintiffs' federal claim, this Court should also dismiss the state law claims brought under 28 U.S.C. § 1367 for want of jurisdiction.

If the Court were to decide to reach Plaintiffs' state law allegations, it would find those claims are frivolous as well.  Under state law conspiracy (Claim II), Plaintiffs need to allege that Mrs. Park had a meeting of the minds, with two or more people, sought to accomplish a certain course of action to commit an unlawful act that resulted in damages.  Importantly the injury has to

16

be one "the conspirators specifically intend to cause." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Plaintiffs allegations do not plausibly establish these elements. It is unclear whether Plaintiffs are alleging their state law assault claim (Claim III) against Mrs. Park as she is not named in paragraphs 150 and 151, and Plaintiffs do not raise any factual allegations that Mrs. Park was involved in the collision between the white truck and Defendant Cisneros. Compl. at ¶¶ 150-51. However if Plaintiffs are trying to allege that Mrs. Park committed assault, none of the elements were pled in the complaint, and the claims must also be dismissed. *Sanchez v. Striever*, 614 S.W.3d 233, 239 (Tex. Ct. App. 2020).

Plaintiffs' frivolous Complaint, motivated by political animus, seeks to intimidate and chill Mrs. Park's political speech. Plaintiffs fail to allege that Ms. Park conspired to commit any act protected under Ku Klux Klan Act. Their claims strike at the heart of the U.S. Constitution's guaranteed right of free speech in the form of a flag and a bumper sticker in a public forum. Mrs. Park did not assault anyone, threaten anyone, or attempt to intimidate anyone. She drove on the highway displaying a bumper sticker and flag. Plaintiffs have alleged nothing more than Mrs. Park exercised her First Amendment rights in response to Plaintiffs exercising theirs on a campaign bus.

## CONCLUSION

For the reasons stated above, the Complaint against Mrs. Park requires dismissal under Fed. R. Civ. P. 12(b)(6), (b)(1).

Respectfully Submitted,

*/s/ Richard Thompson*
Richard Thompson
Michigan Bar No. P21410*
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Dr., #J3200
Ann Arbor, MI  48106

Tel. (734) 827-2001
Fax (734) 930-7160
rthompson@thomasmore.org
ATTORNEY FOR DEFENDANT,
Dolores Park
*Pro Hac Vice*


## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on August 30, 2021, Dolores Park's Motion to Dismiss pursuant to Fed R. Civ. P. 12(b)(1), (b)(6),  was served by CM/ECF as follows upon all counsel record.

*/s/ Richard Thompson*
Richard Thompson (P21410)*

18