UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ERIC CERVINI, WENDY DAVIS, DAVID GINS, and TIMOTHY HOLLOWAY,<br><br>             Plaintiffs,<br><br>      v.<br><br><br>ELIAZAR CISNEROS, HANNAH CEH, JOEYLYNN MESAROS, ROBERT MESAROS, DOLORES PARK, and JOHN and JANE DOES,<br><br><br>             Defendants. | Civil Action No. 1:21-cv-00565-RP<br><br><br>Hon. Robert Pitman |

**<u>DEFENDANT DOLORES PARK'S REPLY BRIEF IN SUPPORT OF HER MOTION TO DISMISS</u>**

Richard Thompson
Michigan Bar No. P21410*
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Dr., #J3200
Ann Arbor, MI  48106
Tel. (734) 827-2001
Fax (734) 930-7160
rthompson@thomasmore.org
ATTORNEY FOR DEFENDANT,
Dolores Park
*Pro Hac Vice*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

ARGUMENT ............................................................................................................................1

I.   *Kush* Did Not Hold That First Amendment Activity in Support-or-Advocacy of A Political Candidate Creates a Private Cause of Action ............................................3

II.  Plaintiffs' "Support-or-Advocacy" Theory Fails Because It Alleges a Deprivation of First Amendment Rights, Without a Showing of State Action ...........................6

III. Plaintiffs have Failed to Meet the Pleading Threshold on any of Their Claims......7

CONCLUSION.......................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................... 1, 2, 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 1, 2, 10

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) ...................................... 6

*Bush v. Butler,* 521 F.Supp.2d 63 (D.D.C.2007) ................................................................ 7

*Cantu v. Moody*, 933 F.3d 414 (5th Cir. 2019) .................................................................. 7

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) ........................................ 5

*Griffin v. Breckenridge,* 403 U.S. 88 (1971) ................................................................... 3, 4

*Hillman v. City of McKinney*, 70 F. Supp. 3d 790 (E.D. Tex. 2014) .................................. 8

*Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968) ........................................................... 5

*Kush v. Ruledge*, 460 U.S. 719 (1983) ........................................................................... 2, 3

*Marthall v. State*, 34 Tex. Crim. 22, 36 S.W. 1062 (1894) .............................................. 10

*Murray v. Earle*, 405 F.3d 278 (5th Cir. 2005) ................................................................. 7

*Paynes v. Lee*, 377 F.2d 61 (5th Cir. 1967) ....................................................................... 5

*United States v. Classic*, 313 U.S. 299 (1941) ................................................................... 5

*United States v. Harris,* 106 U.S. 629 (1883) ..................................................................... 4

*United States v. Williams*, 341 U.S. 70 (1951) .................................................................. 5

*United States v. Wood*, 295 F.2d 772 (5th Cir. 1961) ........................................................ 5

*Ex Parte Yarbrough*, 110 U.S. 651 (1884) ........................................................................ 5

**Federal Statute**
Ku Klux Clan Act of 1871, 42 U.S.C. § 1985 ............................................................ *passim*
Ku Klux Clan Act of 1871, 42 U.S.C. § 1985(2) ................................................................ 3
Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3) ....................................................... *passim*

**Rules**
Fed. Civ. P. 12(b)(6) .......................................................................................................... 1

## REPLY

Plaintiffs' Complaint is frivolous. Despite Plaintiffs' numerous attempts to obfuscate controlling law and wrongfully frame Ms. Park's arguments, this case is simple. Even if Plaintiffs' allegations are accepted as true, Plaintiffs have failed to state a claim under Fed. Civ. P. 12(b)(6). Ms. Park was not part of any conspiracy under the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3). Plaintiffs have failed to establish, as a matter of law, any of the elements of their claims against Ms. Park. Plaintiffs' Response is nothing more than smoke and mirrors—with the dreadful goal of expanding and contorting the Ku Klux Klan Act to further their political agenda and thwart the First Amendment activity of driving near a campaign bus to display flags and a bumper sticker of a competing candidate.

Plaintiffs' Response demonstrates that they have alleged no actionable legal claim against Ms. Park under the Ku Klux Klan Act, that they have a gross misunderstanding of the Act itself, and that they have a shocking penchant for exaggeration.[1]

## ARGUMENT[2]

Plaintiffs' Complaint fails to state a claim pursuant to the standards the United States Supreme Court announced in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell*

---

[1] Plaintiffs make a number of arguments in their Response that are hyperbolic and misleading (*e.g.,* "Defendants do not seriously dispute that Plaintiffs' allegations satisfy the elements of their claims pursuant to the Ku Klux Klan Act of 1871 ("Klan Act") and Texas law;" "Defendants cannot avoid the merits of this case by merely crying frivolity;" and claiming defendants conspired to "silence the targets of their conspiracy" and engaged "in a 90-minute vehicular assault," a "violent and traumatizing coordinated vehicular assault," *inter alia*). *See* Pls' Resp. Br. at 1, 2, 3, 7. Ms. Park trusts that this Court is adept in recognizing such tactics of skilled exaggeration and can parse these arguments from the factual allegations against Ms. Park in the Plaintiffs' Complaint.

[2] It should be noted that Plaintiffs make no attempt to contest, and therefore concede, Ms. Park's arguments under Texas' Anti-SLAPP statute.

1

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In order to survive a motion to dismiss, a complaint must state a claim that is *plausible* on its face—as a matter of law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading, like Plaintiffs' here, that offers mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do." *Id*. "Plausibility" requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plaintiffs' claims against Ms. Park, forwarded under the Ku Klux Klan Act, make no sense.

Plaintiffs clarify in their Response that their federal claim is based on a support-or-advocacy clause theory that Defendants infringed their First Amendment right to advocate for the Biden-Harris Campaign. Compl. at ¶¶ 3, 183; Pls' Resp. at 5 (claiming "All Plaintiffs suffered significant psychological harm, and all were prevented from exercising their First Amendment rights to advocate for their chosen candidates."). Under the Ku Klux Klan Act, however, any claim alleging the infringement of First Amendment rights *must* be accompanied by State Action. This theory simply fails as a matter of law.[3] This is why Plaintiffs cannot point to even a single similar case that supports their legal theory.

This Reply discusses: 1) the proper scope of *Kush v. Ruledge*, 460 U.S. 719 (1983), 2) how Plaintiffs' support-or-advocacy clause claim fails as a matter of law—it is alleged

---

[3] Since Plaintiffs never alleged State Action, Ms. Park believed that the Plaintiffs may have been asserting a theory that Defendants conspired to injure persons or property under the Act. Since the only property damage alleged in the Complaint was damage to the white truck, Ms. Park raised in her Motion to Dismiss that she was not involved in that property damage accident. Plaintiffs have now clarified that their claim is *not* based on this theory and *only* based on a support-or-advocacy theory—which clearly fails as a matter of law.

2

not as a federal voting claim, but as a First Amendment claim which requires a showing of State Action, and 3) how Plaintiffs have failed to meet the pleading threshold on any of their claims. The Complaint should be dismissed against Ms. Park.

### I. *Kush* Did Not Hold That First Amendment Activity in Support-or-Advocacy of a Political Candidate Creates a Private Cause of Action.

The Supreme Court began its opinion in *Kush* by stating "[t]he issue before us is narrow and may be briefly stated." *Kush*, 460 U.S. at 720. The narrow issue before the Court was: did the specific sections of 42 U.S.C. § 1985(2) that addressed the performance of official duties by federal officers, the administration of justice in federal courts, and the administration of justice in state courts require a plaintiff to also show racial animus. *Kush*, 460 U.S. at 724. The Court recognized the distinction made in *Griffin v. Breckenridge,* 403 U.S. 88 (1971), where a unanimous Court held that 42 U.S.C. § 1985(3) applied to private conspiracies when the plaintiffs established racial or class-based invidiously discriminatory animus that deprived them of *equal* protection, or *equal* privileges and immunities. *Kush*, 460 U.S. at 725-26. "The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin*, 403 U.S. at 102. The Court in *Kush* distinguished §1985(2), necessarily involving official government action, from the §1985(3) causes of action addressed in *Griffin*. *Kush*'s holding was intentionally limited to §1985(2). *Kush,* 460 U.S. at 727 (holding Congress had the "power to prohibit intimidation of parties, witnesses, and jurors in federal courts.").

In contrast, *Griffin*, analyzing §1985(3) stated that in order to state a claim under this section "that there must be interference with or influence upon state authorities, or that there must be a private conspiracy so massive and effective that it supplants those

3

authorities and thus satisfies the state action requirement." *Griffin*, 403 U.S. at 98.[4]  The Court went onto find a private cause of action was properly alleged in the complaint before the Court because it implicated racial discrimination under the Thirteenth Amendment and the right to interstate travel under the Fourteenth Amendment. *Id.* at 106-07.

Plaintiffs ask this Court to make the leap that racial animus need not be plead in their Complaint because this case involves the support-or-advocacy clause.  Plaintiffs argue that Ms. Park's Motion to Dismiss "fails to recognize or address the fact that the support-or-advocacy clauses were passed pursuant to Congress's powers under Article I to regulate federal elections." Pls' Resp. Br. at 13.  This is, however, an incorrect statement of history.  The Ku Klux Klan Act was passed not to generally "regulate federal elections" but to make sure that racism and the people who commit acts of racism, such as the Ku Klux Klan, would never prevent Black Americans from getting to the voting booth.  *See, e.g.*, The United States Senate Historical Office, "The Enforcement Acts of 1870 and 1871," available at https://www.senate.gov/artandhistory/history/common/generic/EnforcementActs.htm, last visited Sept. 20, 2021.  The *Griffin* Court believed targeted racism could constitute a private federal cause of action pursuant to the Thirteenth Amendment. 403 U.S. at 105 ("By the Thirteenth Amendment, we committed ourselves as a Nation to the proposition that the former slaves and their descendants should be forever free. To keep that promise, 'Congress has the power under the Thirteenth Amendment rationally to determine what

---

[4] Interestingly, if §1985(3) is only to be considered in separate sections, as Plaintiffs request, the portion of the statute under which Plaintiffs assert their claims would not have been brought back to life by the *Griffin* Court which noted *United States v. Harris*' "invalidation of an entire statute" but then only addressed "the language of §1985(3) now before us." *Griffin*, 403 U.S. at 104.

4

are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation.'") (quoting *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 439 (1968)).

Plaintiffs, astoundingly, ask this Court to re-write the Ku Klux Klan Act's legislative history and provide a general private action to any person who is supporting or advocating for a political candidate. The fatality of Plaintiffs' argument here is that they have alleged no interference with their ability to vote in a federal election. The Fifth Circuit has recognized the federal government's role in protecting the right of a citizen to *vote* in Congressional elections and for Presidential electors, *United States v. Williams*, 341 U.S. 70 (1951); the right to be free from bodily injury *during the exercise of the right of franchise*, *Ex Parte Yarbrough ("The Ku Klux Cases")*, 110 U.S. 651 (1884) ; the right to be free from threatened harm and the right to be protected from violence for *an attempted exercise of registering to vote or voting*, *Paynes v. Lee*, 377 F.2d 61, 64 (5th Cir. 1967), the right *to vote in a primary election*, *United States v. Classic*, 313 U.S. 299 (1941), and the right to register to vote, *United States v. Wood*, 295 F.2d 772, 774 (5th Cir. 1961).

The right to advocate for or support a political candidate, however, is not the same as the act of voting—as it implicates not whether a person casts his/her vote, but instead "speech that expressly advocates the election or defeat of a candidate." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010). So while the Ku Klux Klan Act may have created a federal right for interference with federal voting rights, Courts have never held that right to be independent of the showing of racial discrimination or the aims of the Thirteen Amendment, nor does that right extend to the creation of private causes of action for alleged interference with political speech.

### II. Plaintiffs' "Support-or-Advocacy" Theory Fails Because It Alleges a Deprivation of First Amendment Rights, Without a Showing of State Action.

Plaintiffs' "support-or-advocacy" theory, per the allegations in the Complaint, is premised upon a deprivation of First Amendment rights. *See* Compl. at ¶¶ 1, 3, 10, 11, 12, 135, 141, 144, 147. The Complaint alleges the following:

- "The Constitution's guarantee of free speech, association, and assembly is empty if those rights cannot be freely exercised." Compl. at ¶ 12;

- Defendants were involved in "preventing Plaintiffs from engaging in the political process with prospective voters and exercising their First Amendment rights to freedom of speech and association." Compl. at ¶ 135;

- Plaintiffs "were prevented from exercising their First Amendment rights" Compl. at ¶ 141; and

- "Defendants Cisneros, Ceh, Joeylynn Mesaros, Robert Mesaros, Park, and John/Jane Does, together, sought to accomplish a course of action: to intimidate and threaten the Biden-Harris Campaign's staff and volunteers in an effort to stifle their political advocacy." Compl. at ¶ 144.

The fatal flaw Plaintiffs face under this theory is that 1) there are no allegations that Defendants prevented Plaintiffs from actually voting, and 2) the allegations are entirely based upon the argument that their First Amendment freedoms of assembly, speech, and political advocacy were abridged. To bring a §1985(3) claim under that theory when no racial animus is plead, Plaintiffs *must* allege State Action. *See, e.g., Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993) (explaining how the Supreme Court rejects "claim[s] that an alleged private conspiracy to infringe First Amendment rights violated § 1985(3)."). They did not. This claim

6

must be dismissed.

### III. Plaintiffs have Failed to Meet the Pleading Threshold on any of Their Claims.

Plaintiffs have failed, as a matter of law, to meet the elements of a violation of the Ku Klux Klan Act. If Plaintiffs' claim seeks to prosecute "emotional injury," Plaintiffs would need to establish that Ms. Park conspired to commit an act inspired by racial animus. Plaintiffs' Complaint does not make any such allegations. Further, if Plaintiffs' claim seeks to prosecute Ms. Park on the basis that she thwarted their political speech under the support-or-advocacy clause, this fails as well because such a First Amendment based claim requires the showing of State Action. As a matter of law, the legal theories presented by Plaintiffs fail as a matter of law.

To survive a motion to dismiss a claim under §1985(3) for conspiracy to deprive persons of civil rights or voting rights, a plaintiff *must* set forth more than conclusory allegations of an agreement, and, state sufficient facts to support an agreement. A plaintiff is required to allege the existence of events, conversations, and/or documents indicating there was an agreement between the *defendants* and the purpose of that agreement was to violate *plaintiff's* rights. *See, e.g., Cantu v. Moody*, 933 F.3d 414 (5th Cir. 2019), *Bush v. Butler,* 521 F.Supp.2d 63 (D.D.C.2007). There are no allegations that plausibly state a claim under the federal pleading requirement.

Plaintiffs have also failed to allege conspiracy under state law. There are a minority of jurisdictions which do not require that the aim of the conspiracy be unlawful. Texas, however, is not one of them. In Texas, a plaintiff must prove that the parties to the alleged conspiracy shared an unlawful objective. *See, e.g., Murray v. Earle*, 405 F.3d 278 (5th Cir. 2005). In order to prevail on a claim for conspiracy under Texas law, plaintiffs must be able

7

to prove five elements: (1) combination of two or more people; (2) an object to be accomplished that is either an unlawful purpose, or a lawful purpose by unlawful means; (3) a meeting of the minds on the course of action or the object to be accomplished; (4) one or more unlawful acts; and (5) damages as the result of the acts. *Hillman v. City of McKinney*, 70 F. Supp. 3d 790 (E.D. Tex. 2014). There are no plausible factual allegations that Ms. Park conspired with the co-Defendants for any purpose, let alone an unlawful one.

Plaintiffs have failed to allege that Ms. Park conspired to engage in an unlawful act.[5] Plaintiffs claim that they have satisfied their pleading requirement against Ms. Park because:

> The Complaint pleads a violation of the support-or-advocacy clauses of the Klan Act by alleging that: (i) Defendants engaged in a prohibited conspiracy to intimidate or injure lawful voters (Plaintiffs) for providing support or advocacy for the Biden-Harris presidential campaign; and (ii) Defendants acted on the conspiracy by participating in the Trump Train; (iii) which injured Plaintiffs in their person or property and/or deprived them of exercising a right or privilege as citizens of the United States.

Plaintiffs misrepresent 1) the elements of proving conspiracy and a violation of the Ku Klux Klan Act and 2) the factual allegations that concern Ms. Park. It is implausible to conclude that waving a Trump flag and displaying a bumper sticker in a parade surrounding the Biden-Harris campaign bus was a "conspiracy to intimidate or injure lawful voters." Ms. Park had no intention to "intimidate or injure lawful voters," and no allegations legitimately or plausibly speak to this contention. The Complaint fails to allege that Ms. Park even knew of any "lawful voters" on the Biden-Harris bus.

Further, Defendants define "unlawful act" as "participating in the Trump Train." Plaintiffs, however, have not demonstrated that participation in the Trump Train, per se, was

---

[5] To be clear, contrary to Plaintiffs' argument in their Response brief, Ms. Park has not conceded that Plaintiffs have met any of the elements of their conspiracy claims. Pls' Resp. Br. at 1.

an unlawful activity.  Certainly, the activity took place on a public highway, a traditional public forum for the purpose of the First Amendment.  There is no indication that the purpose of the Trump Train, and more specifically Ms. Park's limited involvement in it, was to injure anyone or to intimidate anyone not to vote.  Voicing speech, political or not, in traditional public forums is a valid exercise of one's First Amendment freedoms.  The pictures and allegations pertaining to Ms. Park show her driving near the Biden-Harris bus to display her flag and bumper sticker.  There are no allegations that she lunged her car at anyone, or assisted someone else in doing so.  There are no allegations Plaintiffs were prevented from voting due to any actions of Ms. Park.  The Defendants seemingly hold onto two statements by Ms. Park to infer intent to enter into an unlawful conspiracy. The first is "This Biden bus is surrounded! Like seriously surrounded by Trump flags!" Pls' Resp. Br. at 3.  In this sentence Ms. Park is describing what she is seeing in real time and expressing her political sentiments, not an intent to harm anyone.  The second sentence is "If my husband sees me like this he's going to kill me for driving like this!" Pls' Resp. Br. at 3.  This sentence, albeit vague, does not forward the idea that Ms. Park has engaged in a conspiracy to commit an unlawful offense punishable by the Ku Klux Klan Act.  It simply means that her husband would not want her to publicly participate in a Trump train, nothing more.  Yet, even taken at its worst, this statement does not show any intent to injure Plaintiffs or to prevent Plaintiffs from voting.

In truth, Plaintiffs' allegations that Ms. Park committed assault are absurd.  Being in a different lane, kitty-corner from the Biden-Harris bus while in traffic fails to establish an assault.  Even if Ms. Park braked in this lane next to the bus, the bus would have been unaffected in its own lane.  Texas law at minimum requires that allegations of an assault be

coupled with the actual ability to commit a battery. *See, e.g., Marthall v. State*, 34 Tex. Crim. 22, 36 S.W. 1062 (1894).  No allegations that pertain to Ms. Park establish anything close.

Lastly, Plaintiffs do not allege any damage to person or property.  Instead, Plaintiffs claim economic damages, which are not available under the Ku Klux Klan Act, and emotional damages, which are not available under the Ku Klux Klan Act.  Plaintiffs allege Defendants somehow prevented them from exercising their First Amendment rights, but the Complaint shows this was Plaintiffs' decision to cancel their next campaign event. Compl. at ¶ 96 ("Plaintiff Gins made the decision to cancel the Texas State event.") and ¶ 116 ("the Biden-Harris Campaign had decided to cancel").  And Plaintiffs make no allegations that Defendants prevented them or intimidated them so they could not vote.

## CONCLUSION

For the reasons stated here and in Ms. Park's original Motion to Dismiss, Plaintiffs' Complaint fails as a matter of law under the *Iqbal/Twombly*[6] standard and must be dismissed.

Dated: October 4, 2021                    Respectfully submitted,

/s/ *Richard Thompson*
Richard Thompson
Michigan Bar No. P21410*
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Dr., #J3200
Ann Arbor, MI  48106
Tel. (734) 827-2001 / Fax (734) 930-7160
rthompson@thomasmore.org
ATTORNEY FOR DEFENDANT
Dolores Park
**Pro Hac Vice*

---

[6] In Plaintiffs' Response, it seems they conflate the argument that the factual allegations in their Complaint are implausible with the incorrect notion that Ms. Park is trying to create an issue of fact at the motion to dismiss stage.  To be clear, there are no issues of fact.  The factual allegations used to support Plaintiffs' claims are implausible for the purpose they use them.  Their Complaint is exaggeration, at best, and blind political animus, at worst.  Whatever the case, it is clear that the Complaint is legally frivolous for the claims that they have brought against Ms. Park.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on October 4, 2021, Dolores Park's Reply Brief in Support of her Motion to Dismiss, pursuant to Fed R. Civ. P. 12(b)(1), (b)(6), was served by CM/ECF as follows upon all counsel record.

*/s/ Richard Thompson*
Richard Thompson (P21410)