UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ERIC CERVINI, WENDY DAVIS, DAVID GINS, and TIMOTHY HOLLOWAY,<br><br>Plaintiffs,<br><br>v.<br><br>ELIAZER CISNEROS, HANNAH CEH, JOEYLYNN MESAROS, ROBERT MESAROS, DOLORES PARK, and JOHN and JANE DOES,<br><br>Defendants. | Civil Action No. 1:21-cv-00565-RP<br><br>Hon. Robert Pitman |

## **PLAINTIFFS' OPPOSED MOTION FOR A PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 26(c) and Local Rule 26(c), Plaintiffs Eric Cervini, Wendy Davis, David Gins, and Timothy Holloway ("Plaintiffs") respectfully move the Court to enter its standard confidentiality and protective order in this case. Plaintiffs have experienced serious harassment and threats, including harassment from certain Defendants in the above-captioned case, as a result of the events that gave rise to this litigation. Plaintiffs' well-founded concerns for their safety, security, and privacy compel them to respectfully petition the Court for entry of this Court's standard protective order in order to protect the parties' personal or otherwise sensitive information. Counsel for Defendants Eliazar Cisneros, Joeylynn Mesaros, Robert Mesaros, and Dolores Park (collectively, the "Represented Defendants") have indicated that they are opposed to Plaintiffs' motion. Defendant Hannah Ceh has not indicated her position on this motion.

**BACKGROUND**

On June 24, 2021, Plaintiffs brought suit against Defendants Eliazar Cisneros, Hannah Ceh, Joeylynn Mesaros, Robert Mesaros, and Dolores Park (collectively, "Defendants"), as well as John and Jane Does, to hold them accountable for their unlawful conduct and to seek redress for damages under the Ku Klux Klan Act of 1871 ("Klan Act") and Texas law. Dkt. 1. In their complaint, Plaintiffs allege that less than a week before the 2020 presidential election, Defendants—acting in concert with dozens of other supporters of then-presidential candidate Donald Trump (the Jane and John Doe defendants)—used their vehicles to assault, intimidate, and threaten voters who were exercising their constitutional rights while campaigning for the election of President Joseph Biden and Vice President Kamala Harris.[1]

In August 2021, all Defendants in this case filed motions to dismiss, which have since been fully briefed. *See* Dkt. 22, 24, 25, 33, 34, 40, 41. In December 2021, the parties held a Federal Rule of Civil Procedure 26(f) conference and filed a joint Rule 26(f) report, as well as Plaintiffs' proposed scheduling order, on December 30, 2021. Dkt. 43, 44.

On December 31, 2021, one day after the Parties filed their Rule 26(f) report, Plaintiffs served their first set of discovery requests on Defendants. That same day, Defendants moved to stay discovery pending a resolution of the motions to dismiss, which Plaintiffs opposed. Dkt. 45, 46. On January 19, 2022, the Court referred Defendants' pending motion to stay discovery to United States Magistrate Judge Mark Lane. Defendants' motion has not yet been decided.

---

[1] On the same day, Plaintiffs filed a related case against the City of San Marcos and members of the City's law enforcement agencies for violation of a similar provision under the Klan Act which is also pending before this Court. *Cervini et al. v. Stapp et al.*, 1:21-cv-00568-RP (W.D. Tex.) ("*Stapp*"). This Court entered its standard protective order in the *Stapp* case on September 15, 2021. *See Stapp* Dkt. 25.

The parties exchanged initial disclosures between January 11 and January 15, 2022. *See* Dkt. 44. Plaintiffs marked their initial disclosures—which contained personal identifiable information for certain non-party witnesses—as "Confidential," in order to ensure confidential treatment of any personal identifiable information. However, on January 14 and January 24, 2024, counsel for Defendants Park and Joeylynn and Robert Mesaros, respectively, notified Plaintiffs that they did not intend to honor Plaintiffs' Confidential designation absent a court order to do so.

Prior to the exchange of initial disclosures, on January 7, 2022, Plaintiffs attempted to seek consensus with counsel for the Represented Defendants and with Defendant Ceh to jointly enter this Court's standard protective order, but counsel for the Represented Defendants indicated their opposition to Plaintiffs' proposal. On January 21, 2022, Plaintiffs requested that Defendants reconsider entering a jointly-stipulated protective order. On January 24, 2022, counsel for Defendants Joeylynn and Robert Mesaros and Park stated that they would consider a narrow protective order, but again rejected the joint entry of the Court's standard protective order. On January 26, 2022, counsel for Defendants Joeylynn and Robert Mesaros elaborated that he would only agree to a protective order protecting the confidentiality of information enumerated in Fed. R. Civ. P. 5.2. Plaintiffs promptly notified counsel for the Represented Defendants and Defendant Ceh that the parties were at an impasse regarding the appropriate protective order for this litigation.

*Harassment and Threats Toward Plaintiffs and Witnesses*

Plaintiffs have experienced harassment, threats, and language encouraging others to be violent toward them that warrant entry of an appropriate protective order. In addition to the incident that gave rise to this lawsuit, Defendants and their supporters have engaged in harassing and threatening behavior toward Plaintiffs, as well as toward witnesses and others who they perceive as sympathetic to Plaintiffs. For example, on October 31, 2020, mere hours after Plaintiff Cervini

tweeted about his experience on Interstate 35 ("I-35"), Defendant Cisneros identified Plaintiff Cervini's Facebook page and posted the message, "How did you like Texas?" On his Facebook profile, Defendant Cisneros bragged about "slamming that fucker" on I-35 and "welcom[ing] Biden/Harris" with "35 in [inch] tires," and posted a prominent picture holding a gun. *See* Dkt. 1 at ¶¶ 120-128. Plaintiff Cervini also received several thousand harassing social media messages and a number of threatening emails in response to his tweets about the incident. *See id*.

Plaintiffs and witnesses have also experienced harassment and threats from Defendants and sympathizers since filing their lawsuit. In October 2021, Defendant Cisneros stated in an interview that he was trying to track down the identity of the driver of the white SUV that had he alleged hit him during the incident via the driver's license plate:

> DEFENDANT CISNEROS: [Plaintiffs] don't even let him say his name. And it's crazy we—we got his license plates. [line is cut]
>
> HOST: [. . .] I wish you a lot of luck on your fight here, I hope you're able to break these people. Because they deserve and need to be broken.[2]

Defendants Cisneros and Joeylynn and Robert Mesaros have also posted on social media suggesting harassment, retribution, and threats against Plaintiffs, politicians, and this Court. *See, e.g.*, Exhibit A (J. Mesaros and Cisneros Facebook posts regarding Plaintiff Gins); Exhibit B (picture of R. Mesaros wearing a "Make Politicians Afraid Again" hat); Exhibit C (J. Mesaros replying, "amen!!!!" to a commenter who posted "I pray God makes an example of the judge, if he doesn't do the right thing!! I sure don't want to be him!!").

---

[2] Steve Noxon, *Eliazar "Cisco" Cisneros*, Talk of the Town (Oct. 8, 2021), http://stevenoxon.com/2021/10/08/eliazar-cisco-cisneros/, at approx. 7:31 (hereinafter, "Cisneros Talk of the Town Interview").

Supporters of Defendants have also identified Plaintiffs' private social media accounts in order to threaten and intimidate them. In September 2021, Plaintiff Gins received a Facebook message calling him "Treasonous" and stating, "Everyone who worked for the Biden ministration is on that bus [sic] is going to get more for the rest of their lives. Keep trying to bankrupt patriots . . . All the shits gonna be dealt with in the near future!!!" *See* Exhibit D. Defendant Joeylynn Mesaros also participated in interviews in which sympathizers suggested extra-judicial ways of getting even with Plaintiffs and their supporters. In one, the host states, "This is a frivolous lawsuit. I hope they [the Mesaroses] win, and if they don't win, I hope they go after them hardcore—I know ways they can go after them if they don't win."[3] Collectively, these calls to violence against Plaintiffs and witnesses demonstrate a risk that private personal information may be made available to third parties who may act on these threats in the absence of a protective order.

---

[3] April LaJune, *WOW! SYMBOLISM WILL BE THEIR DOWNFALL ILLUMINATI INFILTRATORS* (Dec. 1, 2021), https://rumble.com/vq2ufz-wow-symbolism-will-be-their-downfall-illuminati-infiltrators.html, at approx. 33:03 (hereinafter, "Mesaros-LaJune Interview").

Supporters of Defendants have also suggested consequences for this Court should it make any rulings in favor of Plaintiffs. Another interview of Defendant Joeylynn Mesaros includes this exchange:

> HOST: Privately, if you would, could you get me the name of that judge? So, if I need to use that judge's name at some later date, I will to help in any way. […]
>
> DEFENDANT JOEYLYNN MESAROS: …The judge assigned to the case is Judge Pitman. Uh… and he is an Austin judge in the Western District of Texas. And he was appointed by Obama. And the first openly gay judge in Austin, Texas.
>
> HOST: You see why we needed that judge's name? Because we may need that judge's name. You can't make that stuff up, either.

David Scarlett, *Take FiVe October 8: Joeylynn Mesaros*, His Glory (Oct. 8, 2021), https://www.facebook.com/hisgloryme/videos/4363947257056697/?__so__=permalink&__rv__=related_videos, at approx. 28:05 (hereinafter, "Mesaros His Glory Interview").

Finally, as a public figure and former elected official, Plaintiff Davis has a long history of being subjected to public harassment and serious security incidents that predates this case but continues to raise a unique concern for her privacy and safety.[4] As a recent candidate for Congress to represent the area where Defendants and other members of the Trump Trains at issue in this litigation reside, and someone who is well-known in her community, Plaintiff Davis continues to experience deep concern about the probability of harassment and threats to her privacy and safety.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) authorizes a court to issue a protective order "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The moving party has the burden of "show[ing] the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Intern., Inc.*, 134 F.3d 302 (5th Cir. 1998); *see also Hernandez v. Baylor Univ.*, No. 6:16-CV-69-RP, 2017 WL 1628992, at *2 (W.D. Tex. May 1, 2017). If the moving party is able to demonstrate good cause, the "burden then shifts to the party opposing the protective order, who must 'show the protective order [is] unwarranted.'" *Perez v. Bodega Latina Corp.*, No. EP-19-CV-00360-DCG, 2021 WL 3272211, at *3 (W.D. Tex. July 30, 2021) (citing *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 436 (5th Cir. 1990)). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also*

---

[4] *See, e.g.*, Emily Ramshaw & Aman Batheja, *Updated: Mentally Ill Man Faces Arson Charge in Attack on Davis' Office*, TEX. TRIB. (Mar. 21, 2012) (detailing Molotov cocktail attack on Plaintiff Davis' state senate office); Nellie Bowles, *Former lawmaker Wendy Davis: 'Trolls want to diminish and sexualize you'*, THE GUARDIAN (Mar. 12, 2016), https://www.theguardian.com/culture/2016/mar/12/wendy-davis-sxsw-2016-texas-trolls-online-abuse (detailing past online abuse).

*Perez*, 2021 WL 3272211, at *3 (W.D. Tex. July 30, 2021) (citing *id.*).

## ARGUMENT

I. **Good Cause Exists For the Court to Enter a Protective Order**

Good cause exists for the Court to enter its standard protective order in this case. As a threshold matter, Plaintiffs merely seek an order mandating the standard protections for the exchange of discovery that are commonly stipulated to in this jurisdiction for the protection of all parties involved in a litigation.[5] Plaintiffs' claims under 42 U.S.C. § 1985(3) and Texas law are likely to involve discovery by all parties into sensitive information such as personal addresses and phone numbers, medical records, and personal financial records. Plaintiffs' past and ongoing experiences with harassment and threats, and the very nature of the incident that gave rise to their claims against Defendants, demonstrate a clear need to put a mechanism in place to protect such sensitive information.

This Court analyzes the following factors to determine whether good cause exists for the entry of a protective order:

> (1) whether disclosure will violate any privacy interests;
> (2) whether the information is being sought for a legitimate purpose or for an improper purpose;
> (3) whether disclosure of the information will cause a party embarrassment;
> (4) whether confidentiality is being sought over information important to public health and safety;
> (5) whether the sharing of information among litigants will promote fairness and efficiency;

---

[5] Indeed, the parties in the related case, *Stapp*, stipulated to this Court's standard protective order, which this Court entered on September 15, 2021. *See Stapp* Dkt. 25. The Proposed Order submitted with this motion is identical to the order entered in *Stapp*, which is an earlier version of the current standard protective order that appears in the latest version of the Local Rules at Appendix H-2. While Plaintiffs' respectfully submit that the same order should be entered in both related cases—which are likely to overlap in discovery, *see Stapp* Dkt. 39 at 6-7 (explaining overlap)—the protective order at Appendix H-2 of the Local Rules would also be appropriate for this case.

(6) whether a party benefitting from the order of confidentiality is a public entity or official; and
(7) whether the case involves issues important to the public.

*Fifield v. Schindler Enterprises, Inc.*, No. SA-14-CA-574-FB, 2015 WL 11661758, at *2–3 (W.D. Tex. May 28, 2015) (directing entry of Court's standard protective order); *see also Kelly v. Cowboy's Motorsports of San Antonio*, LLC, No. SA-12-CA-347-FB, 2013 WL 12345010, at *2 (W.D. Tex. Oct. 15, 2013).

Most, if not all, of these factors weigh in Plaintiffs' favor. First, disclosure of sensitive or personal identifiable information without a protective order in place will violate Plaintiffs' basic privacy interests. *See, e.g.*, *Doss v. City of Kerrville*, No. CV SA-11-CA-116-FB, 2012 WL 13029588, at *3 (W.D. Tex. Feb. 13, 2012) (allowing protection of health and personal identifiable information via redaction from produced files). Defendants' willingness to harass and put Plaintiffs in danger goes to the heart of the claims in this case—as Plaintiffs allege in their Complaint, Defendants used their vehicles to assault, intimidate, and threaten Plaintiffs in an effort to traumatize and silence them from political participation and speech. *See* Dkt. 1. Since the filing of this case, Plaintiffs have experienced physical and online harassment by Defendants and their supporters, particularly from Defendants Cisneros and Joeylynn Mesaros, who have already demonstrated a willingness to research the personal information of Plaintiffs, witnesses, and this Court and threaten or tolerate threats against them. *See, e.g.,* Cisneros Talk of the Town Interview (researching key witness's license plate); Mesaros-LaJune Interview (suggesting ways to "go after" Plaintiffs); Exhibit A (posts about Plaintiff Gins); Exhibit D (anonymous threat to Plaintiff Gins). Disclosure of personal identifiable information such as personal phone numbers and home addresses creates a serious risk that Plaintiffs may be "doxxed" or have their personal information published on the internet to foment further harassment. In particular, Plaintiff Davis—who still

resides in Texas and faced serious and personalized threats of political violence even prior to this lawsuit—could be put at serious risk of physical harm if her personal residential information were to be disclosed. In addition, as stated in their positions from the parties' Rule 26(f) Report, almost all Defendants intend to seek discovery of sensitive information such as Plaintiffs' "medical records[,] mental health records[, and] federal and state tax records." Dkt. 44. Public disclosure of this type of sensitive information exchanged in discovery would create a serious violation of Plaintiffs' medical and financial privacy.

Second, the information Plaintiffs seek to protect is at risk of public disclosure for the improper purpose of harassing or intimidating Plaintiffs or to otherwise affect the integrity of this litigation. Critically, Plaintiffs are not requesting in this motion for the Court to withhold any information from Defendants' counsel. Plaintiffs merely seek the ability to designate certain sensitive information as protected from public or party disclosure, where appropriate. As detailed above, certain Defendants have already openly talked about using information about Plaintiffs and witnesses to identify, harass, and threaten them, and sympathetic social media users have already identified and threatened Plaintiffs on their personal social media pages. Further, Defendants' public comments to date about Plaintiffs, this Court, and the litigation process threaten to impugn the integrity of this Court and taint this case's potential jury pool. *See, e.g.,* Mesaros His Glory Interview (discussing this Court); Exhibit C ("I pray God makes an example of the judge"); *cf. Seattle Times Co.*, 467 U.S. at 28 ("the interest of the judiciary in the integrity of its discovery processes . . . is adequate to sustain a rule like CR 26(c) which authorizes a trial court to protect the confidentiality of information given for purposes of litigation"). The structure of this Court's standard protective order ensures that any sensitive information may be used for Defendants'

legitimate purposes—as evidence in this litigation—while protecting it from the improper purpose of harassment, intimidation, and manipulation through disclosure to third parties.

Third, as discussed above, public disclosure of Plaintiffs' personal contact or home address information is likely to result in harassment, which will cause Plaintiffs not only embarrassment, but possibly physical danger. This factor weighs strongly in Plaintiffs' favor.

Fourth, far from impeding fairness or efficiency in discovery, entry of this Court's standard protective order will *promote* fair and efficient discovery by ensuring that sensitive information is shared among litigants with proper protections. As detailed above, Plaintiffs do not seek in this motion to withhold information from any litigant, but rather to ensure that information can be shared safely between the parties without concerns regarding privacy, safety, and improper public disclosure. The absence of a protective order governing discovery will result instead in inefficient discovery if it requires Plaintiffs to seek Court intervention to protect individual documents.

The final three factors, while less relevant to this litigation, do not weigh against Plaintiffs. Plaintiffs do not seek confidentiality over information important to the public health or safety, nor are any parties current public officials or entities. Finally, while this case involves a political intimidation incident that has generated some public interest, none of the information Plaintiffs seek to protect from disclosure go to the heart of the issues of interest to the public.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the same standard protective order that was entered in the related case, *Stapp*. A proposed order is attached.

DATED:  January 26, 2022　　　　　　　　　Respectfully submitted,

*/s/ John Paredes*

**TEXAS CIVIL RIGHTS PROJECT**
Mimi Marziani (TX Bar No. 24091906)
Emma Hilbert (TX Bar No. 24107808)
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741
Telephone: (512) 474-5073
Facsimile: (512) 474-0726
Email: mimi@texascivilrightsproject.org
emma@texascivilrightsproject.org

**THE PROTECT DEMOCRACY PROJECT, INC.**
John Paredes (NY Bar No. 5225412) (*pro hac vice*)
The Protect Democracy Project, Inc.
115 Broadway, 5th Floor
New York, NY 10006
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
john.paredes@protectdemocracy.org

Cameron O. Kistler (DC Bar No. 1008922) (*pro hac vice*)
The Protect Democracy Project, Inc.
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
cameron.kistler@protectdemocracy.org

Benjamin L. Berwick (MA Bar No. 679207) (*pro hac vice*)
The Protect Democracy Project, Inc.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
ben.berwick@protectdemocracy.org

Jared Fletcher Davidson (LA Bar No. 37093) (*pro hac vice*)

The Protect Democracy Project, Inc.
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
jared.davidson@protectdemocracy.org

**WILLKIE FARR & GALLAGHER LLP**
Michael Gottlieb (DC Bar No. 974960) (*pro hac vice*)
Robert Meyer (DC Bar No. 405632) (*pro hac vice*)
Samuel Hall (DC Bar No. 242110) (*pro hac vice*)
Meryl Conant Governski (DC Bar No. 1023549) (*pro hac vice*)
JoAnna Suriani (DC Bar No. 1645212) (*pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006-1238
Telephone: (202) 303-1000
Facsimile: (202) 303-2000
Email: mgottlieb@willkie.com
rmeyer@willkie.com
shall@willkie.com
mgovernski@willkie.com
jsuriani@willkie.com

Madeleine Tayer (NY Bar No. 5683545) (*pro hac vice*)
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: mtayer@willkie.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2022, a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case File System of the Western District of Texas, in compliance with the Federal Rules of Civil Procedure as well as via e-mail pursuant to an agreement of the parties.

/s/ *John Paredes*

## CERTIFICATE OF CONFERENCE

I certify that on January 7, January 21, January 24, and January 26, 2022, counsel for Plaintiffs conferred with, and attempted to gain consensus from, counsel for Defendants Cisneros, Joeylynn Mesaros, Robert Mesaros, and Park, and with Defendant Ceh who is *pro se* in this action, with respect to a protective order via email correspondence. I further certify and represent that counsel for Defendants Cisneros, Joeylynn Mesaros, Robert Mesaros, and Park stated their opposition to this Motion for a Protective Order. Defendant Hannah Ceh has not indicated her position on this motion.

/s/ *John Paredes*