**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| ERIC CERVINI, WENDY DAVIS, DAVID GINS, and TIMOTHY HOLLOWAY,<br><br>       Plaintiffs,<br><br> v.<br><br>ELIAZAR CISNEROS, HANNAH CEH, JOEYLYNN MESAROS, ROBERT MESAROS, DOLORES PARK, and JOHN and JANE DOES,<br><br>       Defendants. | Civil Action No. 1:21-cv-00565-RP<br><br>Hon. Robert Pitman |

**DEFENDANT DOLORES PARK'S OPPOSITION TO PLAINTIFFS'
MOTION FOR A PROTECTIVE ORDER**

**1. Preliminary Statement**

In deciding Plaintiffs' motion to enter its proposed blanket Protective Order under Fed. R. Civ. P. 26(c) (Dkt 48), the Court is presented with the issue: have the Plaintiffs, as movants met their burden of showing "good cause" under Fed. R. Civ. P. 26(c). The movant for a protective order not only has the burden to show that "good cause" is present, but Rule 26(c) also places the burden upon "the movant [Plaintiffs] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998).

Arguments of counsel are not a substitute for a demonstration of fact. Support for the motion for protective order does not have the backing of a declaration or affidavit initiated by a

Plaintiff.  Not one alleged fact or argument by Plaintiffs' counsel is attributed to any Plaintiff or Plaintiffs.  Plaintiffs' counsel openly described arguably sensitive aspects of his clients' injuries in the filed Complaint (Dkt. 1), aspects he would have most likely designated as classified had they emanated from one of the Defendants.  *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130, 1131 (9th Cir. 2003) "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. *Deford v. Schmid Products Co. Div. of Schmid Lab'ys, Inc.*, 120 F.R.D. 648, 653 (D. Md. 1987) (requiring party requesting a protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm").

Because Plaintiffs' alleged injuries have already been publicly exposed by their attorneys, Defendants have a right to publicly discuss them as well.  Accordingly, Plaintiffs have waived any claim to confidentiality, sensitivity, or embarrassment to support their request for a protective order concerning those subjects.

Plaintiffs cannot meet their burden to show good cause by particular and specific demonstration of facts as distinguished from stereotyped and conclusory statements.  Thus, Defendant respectfully requests this Court to deny Plaintiffs' motion for its proposed protective order.

**2. Background**

On June 24, 2021, Plaintiffs filed a 62-page, 159- paragraph unverified complaint against Defendant Dolores Park and four other named individuals as well as John and Jane Does for allegedly conspiring to violate the Ku Klux Klan Act of 1871 and Texas law. (Dkt. 1)  The Complaint reads like a political press release.  On that same day, Plaintiffs also filed a  lawsuit in this Court against officials of the San Marcos Police Department namely, Chase Stapp and Richard

and Rachel Roes, alleging that they had failed to protect Plaintiffs from the alleged actions of Defendants described in the instant lawsuit in violation of 42 U.S.C. § 1986, Civil Action No. 1:21-cv-00568. (San Marcos Dkt. 1)

According to the San Marcos Complaint, on October 27, 2020, the Biden – Harris campaign announced a three-day "Soul of the Nation" bus tour from October 28 to 30, 2020 (the "Bus Tour"). The Bus Tour was to feature rallies and gatherings in support of the Biden-Harris campaign as well as speeches by campaign surrogates and candidates in local Texas elections. The Bus Tour announced stops in various cities on each day including stops on the third day in Laredo, San Antonio, San Marcos, and Austin (San Marcos Dkt. 1, par 40). In the San Marcos lawsuit, Plaintiffs alleged that "On October 28 and 29, supporters of the Biden-Harris Campaign were intimidated, harassed and attacked at multiple stops along the tour. Some of the assailants displayed weapons. Others screamed death threats." (San Marcos Dkt. 1, par 3). Plaintiffs did not file any lawsuits as a result of those incidents.

Despite the alleged intimidation, harassment, attacks, and death threats by assailants displaying weapons on the previous two days, Plaintiffs decided to continue their third day of the bus tour, October 30, campaigning at several stops as planned.

The emotional injuries and damages allegedly suffered by Plaintiffs because of Defendants' actions on October 30, 2020 are described in a string of exaggerated, conclusory claims (Dkt.1, par 129-134). Additionally, shortly after the lawsuits were filed, some of the Plaintiffs gave their version to the media concerning the events that occurred on I-35 on October 30, 2020, See Exhibits 1-3 press articles. Now, Plaintiffs want to prohibit Defendants' public statements by use of the protective order to prevent the public from knowing Defendants' side of the story and what really happened on I-35 on the afternoon of October 30th.

All the Defendants in this case have filed motions to dismiss which have been fully briefed. Defendants have also moved to stay discovery pending a decision on the motion to dismiss. The motion to stay discovery has been referred to United States Magistrate Judge Mark Lane. None of the parties in this case have been deposed.

3.  **Argument**

"[T]he scope of discovery is broad."….[and] unless limited by court order, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Hernandez v. Baylor University,* 2017 US Dist. LEXIS 65671 (WD Tx.) at 3.

This is not a complex commercial case which requires the processes of a protective order to presumably make discovery less burdensome on attorneys and the courts.  Plaintiffs' case is a garden variety personal injury case made interesting by virtue of its connection to the Trump-Biden presidential campaign and the novel application of the Ku Klux Klan Act of 1871 being used to intimidate President Trump supporters.  The possible overlay of a protection order on a lawsuit fraught with national politics will cause the case to quickly descend into disputes over what is annoyance, embarrassment, oppression, sensitive, trade secret or undue burden or expense.

The proposed protection order would allow Plaintiffs to preemptively exclude documents from discovery, and thereby force a legal battle over the issue of discovery. That is because the order would allow Plaintiffs to designate as "Classified Information" any documents and information they do not want made public.  Plaintiffs use of the protection order is unlimited because of the phrase "include, but are not limited to."

> "Information and documents that may be designated as Classified Information include, but are not limited to, trade secrets, confidential or proprietary financial information, business operational data, plans, and competitive analyses, personnel files, and other personal information that is protected by law, and other sensitive information that, if not restricted as set forth in this order, may subject the producing or disclosing person to competitive or financial injury or harassment or potential legal liability to third parties.
>
> "Correspondence and other communications between the parties or with nonparties may be designated as Classified Information if the communication was made with the understanding or reasonable expectation that the information would not become generally available to the public. (Dkt. 48-3 at 3)

Although a court may for good cause issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, the burden is still upon the party seeking the protective order to show the necessity for its issuance; this burden contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements. *Hernandez v. Baylor University* 2017 US Dist., WL 162-8992.

"A party asserting good cause bears the burden, for each particular document it seeks to protect a showing that specific prejudice or harm will result if no protective order is granted. Broad allegations of harm, unsubstantiated by specific examples or articulated by reasoning did not satisfy the Rule 26(c) test. *Deford v. Schmid Products Co.*, 120 F.R.D. 648, 653 (D. Md. 1987) (requiring party requesting a protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm").

The parade of harms listed by Plaintiffs to support their proposed protective order, such as risk of public exposure for improper purposes, integrity of litigation, inefficient discovery, taint

to the potential jury pool, are speculative and insufficient "good cause" for a protective order. *Shingara v. Skiles*, 420 F.3d 301 (3d Cir. 2005) ("the concern that the disclosure of discovery materials to the media *could* unduly prejudice the public is exactly the type of broad, unsubstantiated allegation of harm that does not support a showing of good cause") (emphasis in the quote). In fact, what Plaintiffs are really concerned with is that the public will discover the truth.

Plaintiffs, by characterizing their proposed protective form as standard and commonly used, overstate its importance. Local rule CV–26 (c) provides that:

> "Upon motion by any party *demonstrating good cause*, the court may enter a protective order in the form set out in appendix H-1, or, in more complex cases, in Appendix H-2, *or any other appropriate form.* In cases *where the parties agree to a protective order*, the form set- out in appendix H-1 and Appendix H-2 are approved. (emphasis added)

Referring to protective order H-1 as a "standard form" or "commonly used" gives unearned credibility to the form. The court does not hold out H-1 as the preferred form. The court gives parties an alternative with the phrase, "or any other appropriate form."   No form is automatically approved by the court. There still must be: 1) a demonstration of "good cause" and 2) an agreement by the parties. Neither factor exists here. The fact that Plaintiffs were able to obtain a stipulated protective order in the San Marcos case has no precedential value to the instant case. Moreover, the parties have other options:  they can stipulate to their own protective order with the approval of the court on showing good cause or enter into a private agreement on how confidential matters will be handled.

For purposes of Rule 26(c) "there is good cause when a party shows that disclosure will result in a clearly defined, specific and serious injury but that broad allegations of harm are not sufficient to establish good cause." *Shingara v. Skiles*, 420 F.3d 301 (3d Cir. 2005).

"[T]he concern that the disclosure of discovery materials to the media *could* unduly prejudice the public is exactly the type of broad, unsubstantiated allegation of harm that does not support a showing of good cause." Id. at 307.  Moreover, quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) "an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious." In the case at bar, Defendants have not shown any risk that "particularly serious embarrassment will result from release of the documents."

The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order; any other conclusion would turn Federal Rule 26(c) on its head.

"As the District Court explained, Rule 26(c) places the burden of persuasion on the party seeking the protective order. To overcome the presumption, the party seeking the protective order must show good cause by demonstrating a particular need for protection.  Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning do not satisfy the Rule 26(c) test." (requiring "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements"). Moreover, the harm must be significant, not a mere trifle.  (internal citations omitted).

"A party may generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal. The federal rules do not themselves limit the use of discovered documents or information. Rule 26(c) does, however, afford district courts the ability to impose limits." *Harris v. Amoco Prod. Co.,* 768 F.2d 669, 683-684.

**4. Conclusion**

For the foregoing reasons, Defendant Dolores Park respectfully requests that the Court deny Plaintiffs' motion for a protective order.

DATED:  February 9, 2022                    Respectfully Submitted,

s/Richard Thompson
Richard Thompson
Attorney for Defendant Dolores Park
Michigan Bar No. P21410
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Dr., J3200
Ann Arbor, MI  48106
PH. 734-827-2001 / Fax 734-930-7160
rthompson@thomasmore.org

*Attorney For Defendant Dolores Park*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, Defendant Dolores Park's Opposition to Plaintiffs' Motion for Protective Order, has been served via the Court's electronic case filing system upon all counsel of record and Hannah Ceh, pro se, via email.

Date:  February 9, 2022                    s/Richard Thompson
Richard Thompson
Counsel for Dolores Park