UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ERIC CERVINI, WENDY DAVIS, § <br> DAVID GINS, and TIMOTHY HOLLOWAY § <br> § <br> Plaintiffs, § <br> v. § <br> § <br> ELIAZAR CISNEROS, HANNAH CEH, § <br> JOEYLYNN MESAROS, ROBERT § <br> MESAROS, DOLORES PARK, and § <br> JOHN and JANE DOES § <br> § <br> Defendants. § | Civil Action <br><br> No. 1:21-CV-565-RP |

### DEFENDANTS' RESPONSE IN OPPOSITION TO
### MOTION FOR A PROTECTIVE ORDER

Plaintiffs' lawsuit is filled with sensational allegations against Defendants which Defendants expect to be absolutely refuted by the actual evidence in this case. Plaintiffs and their supporters are in possession or control of much of the documents and information that will belie the Plaintiffs' factual assertions. While Plaintiffs launched an aggressive media campaign impugning Defendants' character, which began when they initiated this suit and continues today, now, having damaged Defendants' reputations with salacious allegations, they seek to prevent public disclosure of information relevant to the claims. Defendants Joeylynn Mesaros and Robert Mesaros (collectively, "Mesaros Defendants") are strenuously opposed to the Plaintiffs' motion for a protective order, and Plaintiffs have not met their burden of showing "good cause" for such an overbroad order. Plaintiffs' motion should be denied. If any protective order is entered, it should be limited to the actual kind of sensitive, personal information (e.g., addresses and phone numbers) that the Mesaros Defendants have *already stated* could be protected by an appropriately narrow confidentiality order. Indeed, it is unclear that there is any legitimate

1

dispute here, because such information is the only kind of information the Plaintiffs have actually identified in their motion as presenting any concern.

## BACKGROUND

On June 24, 2021, eight months after the alleged underlying incident occurred, Plaintiffs filed this suit seeking to change binding Fifth Circuit precedent and simultaneously launched a salacious campaign of misinformation. Long before Plaintiffs filed their motion for a protective order, each Defendant filed a motion to dismiss. Briefing for each Defendants' respective motion to dismiss was completed in November 2021. Docs. 22, 24, 25, 33, 34, 40, 41.

On December 31, six months after filing of this suit and shortly *after* Defendants filed a joint motion to stay discovery (Doc. 45) pending resolution of their dispositive motions, Plaintiffs propounded their first set of discovery on Defendants. That motion for a stay remains pending.

On January 7, 2021, Plaintiffs' counsel emailed counsel for Defendants requesting that they agree to a "standard" protective order, but were unable to explicitly indicate what they sought to protect that could not be protected in a more tailored agreement. *See* **Exhibit A** (E-mail exchange between Plaintiffs' and Defendants' counsel). Defendants' counsel indicated that they were ready and willing to agree to a protective order that covered sensitive personal information, including addresses, phone numbers, and information covered under Fed. R. Civ. P. 5.2, but Plaintiffs' counsel unilaterally closed discussions without ever specifying what kind of additional information he was concerned with protecting. *Id*. at 1, 3. Plaintiffs' motion still fails to identify any category or type of information, beyond the sensitive personal information the Mesaroses are happy to keep confidential, which warrants concern.

**ARGUMENT**

"The Judicial Branch belongs to the American people. And [its] processes should facilitate public scrutiny rather than frustrate it." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 421 (5th Cir. 2021) (admonishing parties and district court for issuance of broad protective order). "Legal arguments, and the documents underlying them, belong in the public domain. American courts are not private tribunals summoned to resolve disputes confidentially at taxpayer expense." *Id.*

A party may seek a protective order for "good cause" if it meets *its burden* of showing that it would protect them from "from annoyance, embarrassment, oppression, or undue burden or expense." *In re LeBlanc*, 559 Fed. Appx. 389, 392 (5th Cir. 2014). "The party seeking the protective order bears the burden of showing that a protective order is necessary, which contemplates a *particular* and *specific demonstration of fact* as distinguished from stereotyped and conclusory statements." *Perez v. Bodega Latina Corp.*, No. EP-19-CV-00360-DCG, 2021 WL 3272211, at *3 (W.D. Tex. July 30, 2021) (quoting *EEOC v. BDO USA*, L.L.P., 876 F.3d 690, 698 (5th Cir. 2017) (cleaned up; emphasis added). The default presumption under this standard is against issuing a protective order. *Binh Hoa Le,* 990 F. 3d at 419. Protective orders that grant parties wide latitude to designate "confidential" information and seals entire documents are disfavored. *See id.* This is especially true when there "is no sealing order, there is no sealing analysis—no reasons given, no authorities cited, no document-by-document inquiry," "no mention of the presumption in favor of the public's access to judicial records," and "the secrecy [] granted is 'perpetual' and 'wholesale.'" *Id*. (citations omitted).

When considering the "particular and specific" facts and *this* particular order, Plaintiffs have not met their burden in showing "good cause" for this protective order. Further, even if Plaintiffs had met their burden of showing "good cause" in general or with respect to specific

3

documents, the unique facts of this lawsuit would make *this* unbridled protective order unwarranted.

### I. The Factors Used to Determine the Appropriateness of a Protective Order Weigh Heavily in Favor of Denial

Despite the Plaintiffs' assertions, the factors for determining whether "good cause" exists to issue a protective order over the presumption of denial, weigh in favor of denial. *Fifield v. Schindler Enterprises, Inc.*, No. SA-14-CA-574-FB, 2015 WL 11661758, at *2–3 (W.D. Tex. May 28, 2015).[1]  Indeed, only two of the seven factors weigh in their favor.

The lack of "good cause" here is punctuated by two unique considerations. First, Plaintiffs seek such an order only after they have embarked on a massive media campaign publicizing intricate alleged facts concerning the underlying accusations. Second, Defendants are not opposed to the issuance of an appropriately limited protective order, but rather specifically object to the broad protective order requested by Plaintiffs, which is drafted with business disputes (involving things like trade secrets) in mind.

Factors one and two cannot weigh in favor of Plaintiffs at this juncture as *no* discovery has been propounded to them by the Mesaros Defendants and, likely, weigh in favor of Defendants as Defendants are not opposed to a tailored protective order that would assuage privacy concerns. Unless Plaintiffs have the ability to transcend time, there can be no disclosure made violative of privacy interests or sought in bad faith as Plaintiffs do not even know what discovery will be propounded to them in the future.

---

[1] (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

Likewise, it is difficult to say how any discovery will cause embarrassment when Plaintiffs cannot point to any potentially embarrassing responses (as there is no discovery propounded from Defendants) and Plaintiffs have already made public the underlying facts and their misleading accusations of fact in this case. Indeed, failing to articulate how the non-existent discovery could lead to discovery, Plaintiffs fail to note their and their counsel's numerous press releases, interviews, and quotes all specifically designed to air their grievances and supposedly "embarrassing" facts. This Court should not allow Plaintiffs to rely on gamesmanship to simultaneously compel silence upon the Defendants and the Court itself while shouting their misleading narrative from the rooftops.

Finally, two of the final three factors, dismissed by Plaintiffs' in two sentences and no analysis, also weigh in favor of Defendants. The dismissal of these factors is particularly revealing as they weigh heavily in favor of Defendants. It was only after embarking on their media campaign and igniting eight months of coordinated harassment against the Mesaros Defendants do the Plaintiffs now seek to avoid the public eye. If successful in doing so, Plaintiffs will severely hamper the Mesaros Defendants' only means of defending themselves in the public eye and, ultimately, may stop them from affording counsel at all. Plaintiffs stretch credulity when stating there is merely "some public interest" in this matter when their complaint—by their own actions—sparked international news. **Exhibits B** and **C** (directly quoting language from complaint and Plaintiffs counsel's own press releases). Plaintiffs and their counsel have specifically and relentlessly courted the public eye during the pendency of this suit, but now seek an order granting them the ability to shield videos, communications, and other information that will undermine their claims from the public's eye, effectively cementing the defamatory images Plaintiffs have painted with their misleading characterization of events.

5

Because the factors weigh heavily against a finding of "good cause," Plaintiffs' motion should be denied.

## II. The Specific Peculiarities of this lawsuit means that Plaintiffs Have not Shown "Good Cause" and Even had They Done so, This Protective Order Would be Unwarranted

While Plaintiffs' have failed to show "good cause" for this protective order, even if they had done so, their delay and courtship of media and public attention to the suit directly contradicts their purported concerns and shows that this order is unwarranted.

### a. Despite their Aggressive media campaign, Plaintiffs attempt to now hide the facts underlying this lawsuit from public scrutiny

Immediately on the heels of their mass-media misinformation campaign, counsel for Plaintiffs seeks a protective order virtually unfettered by the type of information at issue or time from the public scrutiny they specifically courted for the past year. **Exhibit D-G**. Plaintiffs' gamesmanship is an affront to judicial sensibility and violates the presumption in favor of public access.

The same day that Plaintiffs filed the complaint in this suit, they initiated a media blitz with a press release designed to lead to the obfuscation of the facts and public outcry against Plaintiffs. **Exhibit H**. Among numerous divisive statements, Plaintiffs' counsel stated:

> "What happened here — a mob of Trump supporters engaging in a preplanned vehicular assault against the campaign bus of their opponents — was an egregious example of using fear, intimidation, and threats of violence to silence political foes," said Cameron Kistler, Counsel at Protect Democracy. "This is exactly the type of behavior that the Klan Act was enacted to deter."
>
> "Those who engage in organized threats — whether they're online death threats or mob violence — are breaking the law and will be called to account for their actions in federal court," said Michael Gottlieb, Partner at Willkie Farr & Gallagher LLP

*Id*. Tellingly, despite their complete inability to tie this lawsuit's facts to any racial animus motive—as required by their claims under § 1985—the press release and subsequent media

6

campaign obfuscate this and attempt to fool readers about Defendants' alleged actions and motivations. *Id.* Unfortunately for Defendants, this divisive misinformation campaign was successful and has resulted in an unrelenting barrage of harassment, which includes language as apparent "jokes" about Defendant Joeylynn Mesaros future assault in prison, claims that the Mesaros Defendants have been reported to the Texas Department of Family and Protective Services for being "terrorists," the spread of misinformation that the Mesaros Defendants directly drove their vehicle into the bus, attempts to "doxx" the Mesaros Defendants' address and claims that such attempts were successful, and potential threats that the Mesaros Defendants should "lose their kid and [their] freedom . . . [and] should lose more than that." **Exhibit I**.

This abhorrent treatment represents a fraction of the vitriol that Plaintiffs unleashed through their misleading media blitz. But, conveniently, now that Plaintiffs have established a public narrative, they ask this Court to grant them the almost unfettered ability to secret away the actual evidence of facts underlying this suit. As just a single example, the Plaintiffs' claim that the Mesaroses waited on the shoulder for the bus to approach, in order to "dangerously and abruptly cut[] right in front of it," Doc. 1 ¶ 87, is a false statement of fact, and Defendants expect Plaintiffs may have evidence in their possession that demonstrates the falsity of this statement. Such discovery materials will refute the Plaintiffs' misleading characterization of events, and Plaintiffs have not established any reason why the Defendants should be foreclosed from correcting the misleading narrative that has been seeded.

      **b. Defendants were, and still are, amendable to a properly tailored protective order that ensures sensitive information is protected**

On January 7, 2022, Plaintiffs' counsel proposed that the parties agree to the "standard protective order used in the Western District of Texas." Exhibit A at 7-8. However, when counsel for Defendants replied that they would not consent to the broad order and offered to

enter into a narrower protective order that would protect personal information (such as addresses, phone numbers, financial and medical information), Plaintiffs declared that as the parties were at an impasse. *Id.* 1-2. Despite directly stating that Defendants were open to discussions over precisely what information should be subject to a protective order, Plaintiffs *were only able to highlight the same information specifically approved of and agreed to by Defendants*. *Id.* at 1-2. Rather than continue these discussions and inform Defendants of what information they sought to protect, Plaintiffs opted to break off discussions and file their opposed motion for an inappropriately broad protective order. Notably, the motion is still bereft of a single example of the kind of information beyond sensitive personal information that Plaintiffs believe warrants an exception from the default rule in federal cases.

It is hard to see how Plaintiffs can rely on fears of "harassment" when their identity is already publically known and been widely publicized by the Plaintiffs themselves and Defendants have repeatedly stated that they are amendable to a protective order that would protect sensitive personal information such as addresses and phone numbers. *See Perez*, 2021 WL 3272211, at *6 (finding that a party's willingness to enter into a more limited protective order supported a finding that movant had failed to show "good cause.")

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' Motion for a Protective Order in full so that the parties may resume discussions and enter into an appropriately tailored protective order.

Respectfully submitted,

*/s/ Jerad Najvar*
Austin M. B. Whatley
Texas Bar No. 24104681
austin@najvarlaw.com

                                                     Jerad W. Najvar  
                                                    Texas Bar No. 24068079  
                                                    jerad@najvarlaw.com  
                                                    NAJVAR LAW FIRM, PLLC  
                                                    2180 N. Loop W., Ste. 255  
                                                    Houston, TX 77018  
                                                    281.404.4696 phone  
                                                    281.582.4138 fax  

### CERTIFICATE OF SERVICE

      The undersigned counsel hereby certifies that on February 9, 2022, the foregoing document, and any accompanying exhibits and proposed order, was served by CM/ECF upon all counsel of record.

                                                    */s/ Jerad Najvar*_____  
                                                    Jerad Najvar