UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ERIC CERVINI, WENDY DAVIS, DAVID GINS, and TIMOTHY HOLLOWAY,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>ELIAZER CISNEROS, HANNAH CEH, JOEYLYNN MESAROS, ROBERT MESAROS, DOLORES PARK, and JOHN and JANE DOES,<br><br>　　　　　　　　　　　Defendants. | Civil Action No. 1:21-cv-00565-RP<br><br>Hon. Robert Pitman |

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER**

Plaintiffs Eric Cervini, Wendy Davis, David Gins, and Timothy Holloway ("Plaintiffs") file this reply in support of their Motion for a Protective Order ("the Motion") in light of the various oppositions filed by Defendants (the "Opposing Defendants"). *See* Dkt. 48 ("Motion"); Dkt. 52 ("Park Opp."); Dkt. 53 ("Mesaros Opp."); Dkt. 54; Dkt. 56.[1]

As an initial matter, nowhere in their briefs do the Opposing Defendants deny that a protective order is necessary in this case; the parties dispute the appropriate breadth of a protective order to govern the public disclosure of certain discovery. As explained in the Motion, Plaintiffs' proposed form protective order (herein "Form Protective Order") is necessary to shield sensitive information from those who would use it to threaten the parties and prevent such information from being used for improper purposes, such as harassment or as fundraising banners.[2]

The Opposing Defendants' arguments are based on a fundamental misunderstanding about the relief Plaintiffs are seeking by confusing a motion for a protective order to protect from *specific* discovery with one to govern all discovery (like at issue here). Contrary to the Opposing Defendants' claims that Plaintiffs are attempting to shield materials *from production*, Plaintiffs do not seek the Court's permission to withhold materials from discovery. They seek only to protect documents from public disclosure consistent with the District's local rules: "disclosure and discovery activity in this action are likely to involve production of confidential, sensitive, or

---

[1] Despite the Opposing Defendants filing separate oppositions, Plaintiffs treat them as one for purposes of this consolidated reply.

[2] Plaintiffs' proposed protective order is identical to the one the Court entered in the related case, *Cervini et al. v. Stapp et al.*, 1:21-cv-00568-RP (W.D. Tex.), and is virtually identical to the form protective order at Appendix H-2 of this Court's local rules. Entering the same protective order in this case will streamline any shared discovery between the two related cases and help meet the aims of Local Rule Appendix H-2, which include to "facilitate the prompt resolution of disputes over confidentiality of discovery materials" and to "adequately protect information the parties are entitled to keep confidential." *See* L.R. App. H-2; *see also* Motion at 7 n.5.

private information for which special ***protection from public disclosure and from use for any purpose other than prosecuting this litigation*** would be warranted." L.R. App. H-2 (emphasis added). The text of the Local Rule Appendix H-2—contemplating the entry of a protective order where discovery is "***likely***" to include sensitive materials—expressly forecloses the Opposing Defendants' argument that Defendants must serve discovery *before* Plaintiffs are able to seek a general protective order. Mesaros Opp. at 4–5. Because it is inevitable that discovery here will include sensitive information about all parties including but not limited to personal addresses and medical and financial records, good cause exists to enter the Form Protective Order.[3]

The Opposing Defendants' filings serve only to strengthen, not counter, the arguments advanced in the Motion for why good cause exists to enter the Form Protective Order for the benefit of all parties. The Mesaros Defendants do not hide that the reason they oppose a protective order is **not** to defend themselves in this litigation but rather to **fundraise** off of public statements about this case and Plaintiffs: "Plaintiffs will severely hamper the Mesaros Defendants' only means of defending themselves in the public eye and, ultimately, may stop them from affording counsel at all." *Id*. at 5. In addition to participating in public conversations endorsing harassment of Plaintiffs and/or this Court detailed in the Motion,[4] Defendant Joeylynn Mesaros apparently

---

[3] The Mesaros Defendants' wrongly claim that Plaintiffs "opted to break off discussions." Mesaros Opp. at 7–8. As their own exhibit proves, Plaintiffs' counsel spent weeks attempting to negotiate a solution, including inviting opposing counsel to provide a redline to the Form Protective Order with an acceptable compromise, which their counsel declined to do. Dkt. 53-2 at 4. The only solution the Mesaros Defendants would offer is to protect an exceedingly narrow set of information that would not sufficiently protect the parties (protections including, but not limited to, a general prohibition against using discovery materials for purposes other than prosecuting or defending the claims in this litigation).

[4] *See* Motion at 3–6, 8–9 (detailing public statements made by certain defendants, including Joeylynn Mesaros replying "amen!!!!" to the statement, "I pray God makes an example of the judge").

intends to launch her own show on Right America Media[5] and has engaged in new interviews about the case, including having the following exchange about Plaintiff Timothy Holloway:

> Host:  So, what does – what – what does the bus driver, what is he after? What does he want out of this deal?
>
> J. Mesaros:  So, in the 62-page civil complaint, they claim, the attorneys claim that the bus driver is so traumatized that he cannot drive a bus again and he wants financial compensation for his annual salary, which was between $600,000 and $700,000 a year to drive like a charter bus down, down the road.
>
> Host: I got a question, I got a question. Do we have private investigators who can dig, have – has anyone dug him open yet?
>
> J. Mesaros: We have had these conversations with our attorney. It's definitely. Should we get the point of discovery going to trial and going through discovery, we would certainly want to know.
>
> Host: Well I can tell you it's, it's, it's one of two things. ***The only reason anyone gets paid that much money to drive something is if they are smuggling humans…***
>
> ***J. Mesaros: Yup!***
>
> ***Host: . . . while, or if they're a trained professional driver that does special things like what happened maybe. I don't know maybe we should dig into that guy and go ahead…***
>
> ***J. Mesaros: I agree.***
>
> ***Host: . . . and just open him up for the public and see what kind of nasty, dirty little secrets*** he has to be the head of their lawsuit like that . . . "[6]

---

[5] Pastor Josh Barnes, *Sued for Driving Beside the Biden Campaign Bus with a Trump Flag? - Joeylynn (interview)*, Point of View (Feb. 4, 2022), https://www.youtube.com/watch?v=oulNECRZuTE, at approx. 19:46.

[6] David Sumrall, *Episode 52, Joeylynn Mesaros 12/10/2022*, Discussion Island (Jan. 11, 2022), https://rumble.com/vse7ks-discussion-island-episode-52-joeylynn-mesaros-12102022.html, at approx. 13:11 (emphasis added). At approximately 20:57, Mr. Sumrall also suggested that "nobody from the Biden-Harris camp go tubing down in San Marcos" because "they may not swim back out, you know what I'm saying?"

- 3 -

Plaintiffs have not sought, and do not seek, a gag order—Defendants are free to speak publicly about the case. However, what the law does not condone—and what a protective order would prevent—is the use of sensitive materials produced in the course of discovery to defame Plaintiffs and to enrich Defendants' own bank accounts or encourage harassment, retaliation, or threats to physical or emotional security. This Court should not sanction the abuse of the litigation process by permitting Defendants to use materials produced and designated in this case for any purpose other than defending themselves in this litigation.

The Opposing Defendants attach nearly one hundred pages of press articles and social media comments about the case as a purported basis to accuse Plaintiffs of having engaged in a "mass-media misinformation campaign" that obviates any good cause for a protective order. *E.g.*, Mesaros Opp. at 5–6. The materials they attach—which include articles quoting the Complaint and Plaintiffs' limited press releases from the day of filing in connection with that filing and in anticipation of press inquiries—do not support the Opposing Defendants' hyperbole about a "mass-media misinformation campaign" or claims of professed victimization caused by Plaintiffs (especially when taking into account the behavior of Defendants at issue in this litigation and their own public media blitz). *Id.*; *see supra* pp. 1–2.[7] But even accepting *arguendo* that Plaintiffs "made public the underlying facts" of the case by filing the lawsuit and the surrounding press, that behavior has no bearing on whether good cause exists to protect sensitive materials. The Opposing Defendants assert but cite no law to support the proposition that Plaintiffs waive the opportunity to designate certain discovery materials simply by filing a lawsuit that alleges personal facts or

---

[7] Plaintiffs disagree with the Opposing Defendants' mischaracterization of not only interactions with the press but also of the merits of the lawsuit, but do not address those arguments herein given their irrelevance to the issue before the Court.

harm. Mesaros Opp. at 4–5, Park Opp. at 2. Nor would such a blanket rule make sense because so holding would encourage plaintiffs to file complaints entirely under seal, which is contrary to the presumption of public filings. *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 433–34 (5th Cir. 1981) (discussing *Nixon* Court's holding that there is a "the presumption—however gauged—in favor of public access to judicial records.") (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 602 (1978)). Even where allegations of general financial, physical, or emotional harm may not warrant sealing, Local Rule Appendix H-2 recognizes that discovery materials may include "confidential, sensitive, or private information for which special protection from public disclosure," such as medical and financial records. L.R. App. H-2. The materials attached by the Opposing Defendants reflect exactly why those underlying discovery materials should be subject to a protective order that benefits *all* parties by mitigating against harassment, doxing, threats to physical or emotional security, and potential witness or jury taint.[8]

In the interest of protecting all parties from harassment and intimidation, Plaintiffs respectfully request this Court grant Plaintiffs' Motion.

---

[8] For example, the 31-page exhibit that the Mesaros Defendants moved for permission to file is replete with crude and insulting posts on social media, including references to obtaining addresses, and reflects how a protective order would inure to the benefit of Plaintiffs and Defendants alike. (Dkt. 55 (Ex. I)). It also belies their argument that protective orders are more appropriate for the protection of corporate information as opposed to individual defendants who are just as (if not more) likely to suffer harm from the public disclosure or misuse of discovery materials. Courts in this district routinely enter protective orders in cases involving individuals, not only corporations. *See Cullipher v. Estrella Oaks Rehab. Care Ctr.*, 1:20-cv-00030-RP, Dkt. 36 (W.D. Tex. Oct. 26, 2021); *Pantermuehl v. St. Edward's Univ., Inc.*, 1:19-cv-00887-RP, Dkt. No. 21 (Oct. 13, 2020 W.D. Tex.); *Horton v. Gigg Express*, 1:19-cv-00824-RP, Dkt. 29 (Aug. 28, 2020 W.D. Tex.*);* *Corpus v. Wal-Mart, Inc.*, 1:20-cv-00274-SH, Dkt. 6 (W.D. Tex. Apr. 13, 2020).

DATED:  February 16, 2022                    Respectfully submitted,

/s/ Jared Fletcher Davidson

**TEXAS CIVIL RIGHTS PROJECT**
Mimi Marziani (TX Bar No. 24091906)
Emma Hilbert (TX Bar No. 24107808)
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741
Telephone: (512) 474-5073
Facsimile: (512) 474-0726
Email: mimi@texascivilrightsproject.org
emma@texascivilrightsproject.org

**THE PROTECT DEMOCRACY PROJECT, INC.**
John Paredes (NY Bar No. 5225412) (*pro hac vice*)
Orion Danjuma (NY Bar No. 4942249) (*pro hac vice*)
The Protect Democracy Project, Inc.
115 Broadway, 5th Floor
New York, NY 10006
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
john.paredes@protectdemocracy.org
orion.danjuma@protectdemocracy.org

Cameron O. Kistler (DC Bar No. 1008922) (*pro hac vice*)
Cerin Lindgrensavage* (NY Bar No. 5541354) (*pro hac vice*)
The Protect Democracy Project, Inc.
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
cameron.kistler@protectdemocracy.org
cerin.lindgrensavage@protectdemocracy.org
*Not yet admitted in D.C., practicing under supervision

Benjamin L. Berwick (MA Bar No. 679207) (*pro hac vice*)
The Protect Democracy Project, Inc.

15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
ben.berwick@protectdemocracy.org

Jared Fletcher Davidson (LA Bar No. 37093)
(*pro hac vice*)
The Protect Democracy Project, Inc.
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
jared.davidson@protectdemocracy.org

**WILLKIE FARR & GALLAGHER LLP**
Michael Gottlieb (DC Bar No. 974960) (*pro hac vice*)
Robert Meyer (DC Bar No. 405632) (*pro hac vice*)
Samuel Hall (DC Bar No. 242110) (*pro hac vice*)
Meryl Conant Governski (DC Bar No. 1023549) (*pro hac vice*)
JoAnna Suriani (DC Bar No. 1645212) (*pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006-1238
Telephone: (202) 303-1000
Facsimile: (202) 303-2000
Email: mgottlieb@willkie.com
rmeyer@willkie.com
shall@willkie.com
mgovernski@willkie.com
jsuriani@willkie.com

Madeleine Tayer (NY Bar No. 5683545)
(*pro hac vice*)
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: mtayer@willkie.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 16, 2022, a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case File System of the Western District of Texas, in compliance with the Federal Rules of Civil Procedure as well as via e-mail pursuant to an agreement of the parties.

                                            */s/ Jared Fletcher Davidson*