IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERIC CERVINI, WENDY DAVIS, DAVID GINS, and TIMOTHY HOLLOWAY, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:21-CV-565-RP |
| ELIAZER CISNEROS, HANNAH CEH, JOEYLYNN MESAROS, ROBERT MESAROS, JOHN DOES, JANE DOES, and DOLORES PARK, | § § § § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court are Defendants Eliazer Cisneros ("Cisneros"), Hannah Ceh ("Ceh"), Joeylynn and Robert Mesaros ("the Mesaros defendants"), and Dolores Park's ("Park"), (collectively, "Defendants") Motions to Dismiss, (Dkts. 22, 24, 25, 33); Plaintiffs Eric Cervini, Wendy Davis, David Gins, and Timothy Holloway's (collectively, "Plaintiffs") Response, (Dkt. 34); Park's Reply, (Dkt. 40); and the Mesaros defendants' Reply, (Dkt. 41). Having considered the parties' submissions, the record, and the applicable law, the Court will deny the motions to dismiss.

**I. BACKGROUND**

This case arises out of an incident alleged to have occurred during the 2021 presidential election campaign period. Plaintiffs assert that on October 30, 2020, they were traveling on I-35 between San Antonio and Austin, Texas in a Biden-Harris campaign tour bus. (Compl., Dkt. 1, at 2). At that time, they allege, "dozens of individuals in at least forty vehicles" participated in a "Trump Train" to show support for presidential candidate Donald Trump by surrounding the campaign bus on the highway. (*Id.*). Plaintiffs state that for at least ninety minutes, the Trump Train forced the campaign bus to slow down to a crawl on the highway, that cars came within inches of the campaign

1

bus, and that one Trump Train vehicle slammed into a Biden campaign staffer's car, causing Plaintiffs to fear for their lives and suffer emotional trauma. (*Id.* at 2–3).

Plaintiffs state that Cisneros, Ceh, the Mesaros defendants, Park, and other Jane and John Does coordinated to wait for and surround the campaign bus. (*Id.* at 3). They assert that Cisneros side-swiped another Biden campaign staffer's vehicle, rapidly decelerated in front of the campaign bus, drove within feet of the rear of the bus, and appeared at the campaign bus's next stop. (*Id.* at 31, 40, 52). Plaintiffs state that Ceh drove within inches of the campaign bus and likewise appeared at the next campaign stop. (*Id.* at 39, 46). Plaintiffs assert the Mesaros defendants abruptly cut in front of the bus and, after Cisneros purportedly hit the staffer's car, pulled over to film the staffer's attempts to leave the roadway. (*Id.* at 33, 56). Finally, Plaintiffs allege that Park assisted another Trump Train vehicle in boxing the campaign bus in. (*Id.* at 31). Plaintiffs assert that all Defendants posted on their social media in support of the Trump Train either before, during, or following the alleged incident. (*Id.* at 7, 12, 18, 29, 30, 36, 53).

Based on these allegations, Plaintiffs asserts several causes of action: (1) that Defendants violated the Ku Klux Klan Act, 42 U.S.C. § 1985(3); (2) that Defendants engaged in a civil conspiracy; and (3) that Defendants engaged in a civil assault. (*Id.* at 56–59). Defendants filed four motions to dismiss. Ceh and Cisneros filed virtually identical motions to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Dkts. 22, 25). Their 12(b)(1) motions focus on Plaintiffs' cause of action under the Ku Klux Klan Act, while their 12(b)(6) motions address the civil assault and conspiracy causes of action. (*Id.*). The Mesaros defendants seek dismissal of all three causes of action under Rule 12(b)(6). (Dkt. 24). Finally, Park seeks dismissal of the Ku Klux Klan Act cause of action pursuant to Rule 12(b)(6), and the common law claims pursuant to Rule 12(b)(1). (Dkt. 33).

## II. LEGAL STANDARD

### A. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl.*

3

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

#### A. Ku Klux Klan Act Claims

Each Defendant filed a motion to dismiss Plaintiffs' Ku Klux Klan Act cause of action. Some Defendants filed their motion pursuant to Rule 12(b)(1), while others seek to dismiss this cause of action pursuant to Rule 12(b)(6). However, the motions made by each of the Defendants

share similar underlying arguments, necessitating an examination of the history and case law surrounding the statute.

1. The parties' arguments

The Ku Klux Klan Act (42 U.S.C. § 1985(3)) provides that:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

In their motions, Defendants Ceh and Cisneros seek dismissal of the Ku Klux Klan Act cause of action under Rule 12(b)(1). (Dkts. 22, 25). They argue that § 1985(3) does not extend jurisdiction to federal courts when both parties were exercising their First Amendment rights, and that § 1985(3) "contemplates racial motives." (*Id.*). The Mesaros defendants likewise argue in their rule 12(b)(6) motion that § 1985(3) requires that Plaintiffs' pleadings include that any conspiracy against them be predicated in race-based animus. (Dkt. 24, at 6). The Mesaros defendants also argue that Plaintiffs failed to allege facts sufficient to show a "conspiracy," as required under the Ku Klux Klan Act. (*Id.* at 9). Finally, in her 12(b)(6) motion, Park asserts that the Ku Klux Klan Act does not create a cause of action against private actors for conspiracies to deprive rights, but that, instead, Congress's intent was to prevent the deprivation of rights through conspiracies based on racial bias.

5

(Dkt. 33, at 8–11). Park further argues that, even if the Court finds that the Ku Klux Klan Act creates a cause of action for the incident alleged in this case, Plaintiffs have failed to sufficiently plead that Park engaged in a conspiracy to deprive Plaintiffs of their rights due to racial animus. (*Id.* at 11–16).

Plaintiffs filed a consolidated response to each of the motions to dismiss. In it, they assert in response to Ceh and Cisneros's 12(b)(1) motions that the Court has federal question jurisdiction, as the Ku Klux Klan Act is federal law and the claim is not frivolous. (Dkt. 34, at 6). Regarding Park and the Mesaros defendants' Rule 12(b)(6) motions, Plaintiffs argue that § 1985(3) does not require that the Plaintiffs plead that any conspiracy against them was based on racial animus. (*Id.* at 7–8). Instead, Plaintiffs assert that the legislative history and case law surrounding § 1985(3) demonstrates that it was meant to be read in two parts; the first part stating that it is unlawful for:

> two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws;

and the second part stating that it is unlawful for:

> two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy . . .

42 U.S.C. § 1985(3). Plaintiffs argue that the first part of § 1985(3) (which their claim is based on) is meant to regulate state interests and requires a class or race-based animus, while Congress intended the second part of § 1985(3) to regulate federal interests and be interpreted more broadly so as not include a race-based animus requirement. (Dkt. 34, at 9–13).

In response to Park's contention that § 1985(3) did not create a cause of action for plaintiffs to sue private actors, Plaintiffs argue that Congress had the authority to enact § 1985(3) to regulate federal elections and that the statute gives rise to an independent and substantive right that is enforceable against private parties. (*Id.* at 13–17). Finally, Plaintiffs assert that they sufficiently plead all elements of their § 1985(3), rendering dismissal pursuant to Rule 12(b)(6) unwarranted. (*Id.* at 18–29). In their replies, Park and the Mesaros defendants reiterate their arguments that claims under § 1985(3) require plaintiffs to plead racial animus, which, they assert, Plaintiffs failed to do here. (Dkts. 40, 41).

    a. Ceh and Cisneros's challenge to jurisdiction under Rule 12(b)(1)

Ceh and Cisneros challenge the Court's jurisdiction to hear Plaintiffs' § 1985(3) under Rule 12(b)(1). (Dkts. 22, 24). They state, "the suit does not give rise to federal-question jurisdiction" because both parties were asserting their First Amendment rights and § 1985(3) "contemplates racial motives." (*Id.*). Neither Ceh nor Cisneros cite any authority for the proposition that both parties exercising their First Amendment rights is a defense to a civil suit under § 1985(3). Further, the Court finds that this case unquestionably presents a federal question. This Court has federal-question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Ku Klux Klan Act, one of the three causes of actions appearing on the face of the Complaint, is federal law.[1] Therefore, the Court denies Ceh and Cisneros's motions to dismiss the § 1985(3) claim under Rule 12(b)(1).

    b. Defendants' challenges to the Ku Klux Klan Act cause of action under Rule 12(b)(6)

Park claims that Plaintiffs' complaint fails to state a claim upon which relief can be granted because the Ku Klux Klan Act does not create a general, private cause of action. Both Park and the

---

[1] Plaintiffs also argue this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1343(a)(1). (Dkt. 34, at 6).

7

Mesaros defendants assert that a claim under § 1985(3) must allege a conspiracy and race-based animus, which Plaintiffs here have failed to do.

                i.   Class-based animus

Many of the parties' disagreements at this stage arise from the question of whether § 1985(3) requires the Plaintiffs to plead that the conspiracy against them stemmed from race-based animus. Park argues that the Supreme Court has steadily adopted more limited views of the types of conduct § 1985(3) was intended to protect against, and that the Court has held that claims brought under § 1985(3) must allege a conspiracy "aimed at" the denial of equal protection based upon discriminatory animus. (Dkt. 33, at 8–11) (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275–76 (1993)). The Mesaros defendants argue that the Fifth Circuit has made clear that a claim under § 1985(3) must include race-based animus. (Dkt. 24, at 7–8) (citing *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019); *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000) ("In this circuit, we require an allegation of a race-based conspiracy.")). Plaintiffs agree that this requirement applies to the first portion of § 1985(3) but assert that it does not apply to the second part of the statute, which is the portion of the statute under which they assert their cause of action. (Dkt. 34, at 9–13).

In the Supreme Court case *Griffin v. Breckenridge*, plaintiffs alleged that defendants stopped them on a highway, and assaulted and injured them due to plaintiffs' race. 403 U.S. 88, 89–92 (1971). The plaintiffs brought suit under the first portion of § 1985(3), which provides a cause of action when there is a conspiracy to deprive individuals the "equal protection of the laws" or "equal privileges and immunities under the laws . . ." *Id.* at 96. The Court held that to allege a violation of § 1985(3), there must be a "class-based, discriminatory animus behind the conspirators' action." *Id.* at 102. Ultimately, the Court concluded that the plaintiffs had succeeded in pleading their § 1985(3) claim. *Id.* at 106.

Over ten years later, in *Kush v. Rutledge*, the Supreme Court discussed whether another provision of the Ku Klux Klan Act, § 1985(2), is subjected to the *Griffin* requirement that the pleadings include allegations of racial animus. 460 U.S. 719, 722–27 (1983). The Court concluded that the Ku Klux Klan Act could be divided into five classes of prohibited conspiracies: one proscribed by § 1985(1), two proscribed by § 1985(2), and two proscribed by § 1985(3). *Id.* at 724. The Court stated that of the five categories, three of them—specifically, § 1985(1), the first section of § 1985(2), and the second section of § 1985(3)—the federal elections provision at issue in the present case—relate to institutions and processes of the federal government and "contain no language requiring that the conspirators act with intent to deprive their victims of the equal protection of the laws." *Id.* at 724–25. The other two provisions—the second portion of § 1985(2) and the first portion of § 1985(3)—address primarily state concerns and require that the conspirators' actions be "motivated by an intent to deprive their victims of the equal protection of the laws." *Id.* at 725.

In light of these distinctions, the Court revisited its holding in *Griffin*, stating that its holding that the pleadings must allege racial animus cannot be applied to every portion of § 1985. *Id.* at 726. The Court noted that the holding in *Griffin* only applied to first portion of § 1985(3), or, in other words, the portion of § 1985(3) making it unlawful to engage in a conspiracy to deprive individuals the "equal protection of the laws" or "equal privileges and immunities under the laws . . ." *Id.* The Court ultimately concluded that the requirement to plead race-based animus does not apply to the first clause of § 1985(2). *Id.* at 726–27. The Court reasoned that this portion of the Ku Klux Klan Act did not contain the "equal protection" language, which the Court relied heavily on to reach its conclusion in *Griffin*. *Id.* Notably, the Court has not reached the issue of whether the second portion of § 1985(3), which, like the first portion of § 1985(2) also lacks the "equal protection" language, likewise lacks the requirement to plead race-based animus.

9

Indeed, neither the Supreme Court nor the Fifth Circuit have addressed this question head-on. Park, the Mesaros defendants, and Plaintiffs each cite *Bray v. Alexandria Women's Health Clinic* in support of their arguments. In *Bray*, the Supreme Court reaffirmed that "the language of § 1985(3) requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (emphasis in original) (cleaned up). Park and the Mesaros defendants assert that this holding demonstrates the Supreme Court's intent that racial animus be required to state a claim under § 1985(3) even after *Kush*. (Dkt. 33, at 10; Dkt. 24, at 7). Plaintiffs assert that that *Bray* supports their arguments that the racial animus requirement is only applied to the first portion of § 1985(3), and not the second. (Dkt. 34, at 16). This Court is inclined to agree with Plaintiffs, at least to the extent that *Bray* left open the question of whether a plaintiff must plead racial animus to state a claim under the second half of § 1985(3). Further, this Court notes that Justices Stevens and Blackmun dissented in *Bray*, arguing that the case should have been decided under a different portion of § 1985(3) that *did not* require plaintiffs to plead racial animus. *Bray*, 506 U.S. at 340 (Stevens, J., dissenting). Both Stevens and Blackmun were on the Supreme Court when *Kush* was decided, suggesting that at least some of the Justices believed *Kush* to stand for the proposition that only the first part of § 1985(3) required a plaintiff to plead racial animus.

The other post-*Kush* Supreme Court and Fifth Circuit cases cited by Park and the Mesaros defendants do not answer the question of whether Plaintiffs were required to plead racial animus. *See United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 834 (1983) (requiring racial animus under first portion of § 1985(3)); *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) (same); *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000) (not explicitly specifying which portion of § 1985(3) the claim arose under, but noting it was an equal protection

claim); *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 271 (5th Cir. 2001) (addressing an employment discrimination claim with no relation to election advocacy); *Newberry v. E. Texas State Univ.*, 161 F.3d 276, 280–81 (5th Cir. 1998) (same).

The same issues befall the out-of-circuit cases cited by the Mesaros defendants—none of the cases cited deals with the election advocacy portion of § 1985(3). *See Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 109 (1st Cir. 2008) (quoting the first portion of § 1985(3)); *Farber v. City of Paterson*, 440 F.3d 131, 140 (3d Cir. 2006) (relying on § 1985(3)'s equal protection language as the basis for the claim); *Grimes v. Smith*, 776 F.2d 1359, 1366 (7th Cir. 1985) (same); *Brown v. Reardon*, 770 F.2d 896, 905 (10th Cir. 1985) (same); *Harrison v. KVAT Food Mgmt., Inc.*, 766 F.2d 155, 161 (4th Cir. 1985) (same); *Prescott v. Jefferson*, No. 17-13584-A, 2018 WL 3937045, at *2, (11th Cir. May 31, 2018) (same). Indeed, the only out-of-circuit case this Court could identify as addressing this issue head-on found that the portion of § 1985(3) at issue here does not require a pleading of racial animus:

> The Court in *Kush* went on to note that [*Griffin*] was a case under § 1985(3) where the purpose of the alleged conspiracy was to deprive the victim of equal protection of the laws. Hence the limitation in *Griffin* requiring "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" did not apply in *Kush,* brought under § 1985(2) and involving conspiracy to intimidate witnesses in federal court . . . *Griffin* involved beating blacks with clubs, blackjacks, and pipes because one of them was thought to be a civil rights worker; it was clearly an equal protection claim. *Kush,* on the other hand, was a case relating to "institutions and processes of the Federal Government[,]" *where by clear dictum category (e) relating to elections would likewise be classified along with category (b) and not be subject to the racial or other invidious discrimination requirement applicable to equal protection claims.*

*Gill v. Farm Bureau Life Ins. Co. of Missouri*, 906 F.2d 1265, 1269 n.21 (8th Cir. 1990) (emphasis added). For these reasons, this Court finds that a claim under the election advocacy portion of § 1985(3) does not require Plaintiffs to plead racial or other class-based animus and thus denies Park and the Mesaros defendants' claims that Plaintiffs' complaint should be dismissed on that basis.

    ii.   Conspiracy-related pleadings

11

The parties do not dispute that Plaintiffs are required to allege facts sufficient to demonstrate a conspiracy in support of their Ku Klux Klan Act claim. However, both Park and the Mesaros defendants assert that there are deficiencies in Plaintiffs' allegations of conspiracy under the Ku Klux Klan Act. The Mesaros defendants and Park both argue that the conspiracy requirement is inextricable from the race-based animus requirement—the conspiracy must have been entered into in order to further some discriminatory motive. (Dkt. 24, at 9; Dkt. 33, at 12–13). As the Court has already determined that discriminatory animus is not required in pleadings under the second portion of § 1985(3), this argument fails. Park further alleges that Plaintiffs broadly failed to allege that Park conspired to prevent interstate travel or obstruct elections. The Court disagrees. Plaintiffs alleged that, through local "Trump Train" groups in New Braunfels and San Antonio, Park (along with other Defendants) coordinated to wait for the campaign bus. (Compl., Dkt. 1, at 3). Plaintiffs assert that such coordination resulted in all Defendants participating in dangerous or reckless driving on the highway, and specifically that Park assisted another Trump Train vehicle in boxing the campaign bus in, and stated "If my husband sees me he's going to kill me for driving like this!" (*Id.* at 31, 38). They further assert that all Defendants, including Park, posted on their social media in support of the Trump Train either before, during, or immediately following the alleged incident. (*Id.* at 7, 12, 18, 29, 30, 36, 53). Based on these allegations, the Court finds that Plaintiffs have stated "a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678.

### iii. Independent substantive right and state-action requirement

Finally, Park argues that the complaint should be dismissed because the Ku Klux Klan Act did not create an independent, substantive right to sue, and because Plaintiffs failed to allege that Park colluded with state actors. (Dkt. 33, at 8–11, 14–15). However, the Fifth Circuit has previously stated that § 1985(3) was created to allow plaintiffs to recover damages for interference with their election-related rights and is a "specific remedy for interference by private individuals," unlike a

12

claim based on the Fourteenth Amendment, which requires state action. *Paynes v. Lee*, 377 F.2d 61, 63–64 (5th Cir. 1967). Section 1985(3) can reach "private conspiracies to deprive others of legal rights." *Griffin*, 403 U.S. at 104 (citing *Ex Parte Yarbrough*, 110 U.S. 651, 658 (1884) (upholding a criminal statute nearly identical to § 1985(3) under Congress's power to regulate elections)). Thus, this Court declines to rule in Park's favor on that basis.

### B. Civil Conspiracy and Civil Assault Claims

The elements of a civil conspiracy include: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Finally, the elements of a civil assault mirror those of a criminal assault. *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012)). A defendant can commit assault by "intentionally or knowingly threaten[ing] another with imminent bodily injury." Tex. Penal Code § 22.01(a)(2).

Park's motion seeks to dismiss Plaintiffs' civil conspiracy and civil assault claims under Rule 12(b)(1). The Mesaros defendants, Ceh, and Cisneros filed motions to dismiss these claims under Rule 12(b)(6). Both Park and the Mesaros defendants argue that, should the Court dismiss the Ku Klux Klan Act, the Court should remand the state law claims to state court. (Dkt. 24, at 16–17; Dkt. 33, at 9–12). However, as the Court is not dismissing Plaintiffs' federal cause of action, it will deny Park and the Mesaros defendants' motions to dismiss the state law claims on that basis.

Ceh and Cisneros argue in their 12(b)(6) motions that mental and emotional damages, which Plaintiffs allege they suffered, are not recoverable damages under Texas law. (Dkt. 22, at 2–3; Dkt. 23, at 2–3). They further argue that Plaintiffs have alleged a civil conspiracy but have failed to plead an underlying tort, as required by Texas law. (*Id.*). Regarding Ceh and Cisneros's damages argument, the Court first notes that Plaintiffs alleged not only emotional injuries, but non-emotional injuries as well, including loss of employment. (Compl., Dkt. 1, at 54–56). Further, courts have permitted civil

13

conspiracy and civil assault claims to move forward when plaintiffs seek damages for mental and emotional injuries. *See, e.g., Tademy v. Sw.-Tex Leasing Co.*, No. SA-05-CA-0620-RF, 2006 WL 8434113, at *5 (W.D. Tex. Oct. 30, 2006) (denying Defendant's motion for summary judgment where Plaintiff was seeking damages for civil conspiracy and civil assault).[2] Finally, the Court finds that Plaintiffs have pled that Defendants' conspiracy had an underlying tort—they assert that the object of the conspiracy was to assault, threaten, and harass Plaintiffs, as well as include a claim of civil assault. (Compl., Dkt. 1, at 58–60). The Court will therefore deny Ceh and Cisneros's Rule 12(b)(6) motions.

## IV. CONCLUSION

For these reasons, the Court **IT IS ORDERED** that Defendants' motions to dismiss, (Dkts. 22, 24, 25, 33), are **DENIED**.

**SIGNED** on March 23, 2022.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[2] Ceh and Cisneros cite two cases in support of their argument that Texas law does not permit mental and emotional anguish damages. However, in *Parkway Company v. Woodruff*, the Texas Supreme Court denied the mental and emotional anguish damages based on a lack of evidence; it did not deny the damages because they were not recoverable as a rule. *See* 901 S.W.2d 434, 444–45 (Tex. 1995). Further, in *City of Tyler v. Likes*, the Texas Supreme Court noted that Texas does not recognize mental anguish damages in a negligence suit unless other elements are present. 962 S.W.2d 489, 494 (Tex. 1997). However, Plaintiffs here are not alleging negligence.