UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ERIC CERVINI, WENDY DAVIS, DAVID
GINS, and TIMOTHY HOLLOWAY

          Plaintiffs,

v.

ELIAZER CISNEROS, HANNAH CEH,
JOEYLYNN MESAROS, ROBERT,
MESAROS, JOHN DOES, JANE DOES, and
DOLORES PARK,

          Defendants.

Civil Case No. 1: 21-cv-565

Honorable Robert Pitman

**DOLORES PARK'S OPPOSED EMERGENCY MOTION REQUESTING
THIS COURT TO AUTHORIZE AN INTERLOCUTORY APPEAL**

For the reasons set forth in the accompanying Brief in Support of this motion,

Defendant Dolores Park respectfully requests that this Court certify its March 23,

2022, Opinion and Order [ECF No. 64] for interlocutory appeal, or otherwise amend

that Opinion and Order to authorize Defendant Dolores Park to file an application

for immediate interlocutory appeal of this Court's Opinion and Order.  Specifically,

Defendant Dolores Park requests leave authorizing her to seek interlocutory appeal

on the question of the applicability of Ku Klux Klan Act of 1871, 42 U.S.C. §

1985(3), and whether it applies to private causes of action where no racial animus or

state action is alleged.

Due to the seriousness of the issues in question and the potential harmful effect they could have, and given the statutory time for Defendants to file an application for interlocutory appeal with the Fifth Circuit Court of Appeals, Defendant Dolores Park respectfully requests that this Court hear this motion on an emergency basis and issue an expedited ruling granting this motion as soon as practicable, amending its prior Opinion and Order to reflect the certification for interlocutory appeal.

There was a conference between the attorneys for both parties via telephone and email and Defendant Dolores Park explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought. Plaintiffs oppose the motion.

Respectfully submitted,

/s/ Richard Thompson
**THOMAS MORE LAW CENTER**
Richard Thompson
(Admitted in Michigan, P21410)
24 Frank Lloyd Wright Dr.
Suite 393
Ann Arbor, MI 48106
rthompson@thomasmore.org
(734) 827-2001

Attorney for Defendant Dolores Park

Dated: March 29, 2022

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ERIC CERVINI, WENDY DAVIS, DAVID
GINS, and TIMOTHY HOLLOWAY                    Civil Case No. 1: 21-cv-565

       Plaintiffs,                              Honorable Robert Pitman

v.

ELIAZER CISNEROS, HANNAH CEH,
JOEYLYNN MESAROS, ROBERT,
MESAROS, JOHN DOES, JANE DOES, and
DOLORES PARK,

       Defendants.

**DOLORES PARK'S BRIEF IN SUPPORT OF ITS
EMERGENCY MOTION REQUESTING
<u>THIS COURT TO AUTHORIZE AN INTERLOCUTORY APPEAL</u>**

## <u>CONCISE STATEMENT OF THE ISSUE PRESENTED</u>

Defendant Dolores Park respectfully requests this Court to grant it leave to file an application for interlocutory appeal with the Fifth Circuit Court of Appeals, seeking review of this Court's opinion that the Ku Klux Klan Act provides a cause of action when a defendant did not interfere with the right to vote in a federal election, when the defendant harbors no racial animus, and when the claim fails to involve state action.

Defendant Dolores Park believes that this issue presents a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.  For these reasons, Defendant Dolores Park seeks leave to file an application for interlocutory appeal to the Fifth Circuit Court of Appeals.

## I.     Introduction and Background

On March 23, 2022, this Court entered an Opinion and Order denying four Motions to Dismiss filed by Defendants Eliazer Cisneros, Hannah Ceh, Joeylynn and Robert Mesaros, and Dolores Park [ECF Nos. 22, 24, 25, 33, 40, 41].    The primary of cause of action addressed was the Ku Klux Klan Act.

The Court states in its Opinion and Order "the parties' disagreements at this stage arise from the question of whether § 1985(3) requires the Plaintiffs to plead that the conspiracy against them stemmed from race-based animus."  ECF 64 at 8. This Court recognizes that this is an unresolved question of law: "Notably, the Court has not reached the issue of whether the second portion of § 1985(3), which, like the first portion of § 1985(2) also lacks the "equal protection" language, likewise lacks the requirement to plead race-based animus." ECF 64 at 9.  The Court characterizes U.S. Supreme Court precedent as leaving this resolution of this question of law "open." ECF 64 at 10.

The Court relies on persuasive, out of jurisdiction authority for the conclusion that election-based claims under the Ku Klux Klan Act have a relaxed pleading standard.  *Gill v. Farm Bureau Life Ins. Co. of Missouri*, 906 F.2d 1265, 1269 n.21 (8th Cir. 1990).  The holding in *Gill*, however, highlighted the narrow circumstances under which a plaintiff may use the Ku Klux Klan Act as a mechanism to vindicate the interference with one's right to vote.  *Id.* at 1270-71 (discussing that the right is

limited "to the right to vote."). The Eighth Circuit then determined the claims at issue in *Gill* were not voting claims but conduct implicating the First Amendment, and quickly rejected for want of establishing state action. *Id.*

Under existing precedent, one might have expected the same result here. However, this Court denied Defendants' Motions to Dismiss without requiring Plaintiffs establish a violation of their right to vote in a federal election. Instead, the Court held that it was enough to plead in a complaint that the activity involved "election advocacy." ECF 64 at 11.

This case presents an important, unresolved question of federal law. As this Court noted, "neither the Supreme Court nor the Fifth Circuit have addressed this question head on." ECF 64 at 10.

While Defendants respect this Court's ruling and analysis, this ruling does nothing short of change the law, broadening the scope of the Ku Klux Klan Act. The Court acknowledged that the U.S. Supreme Court has, on more than one occasion, reigned in the scope of the Act. *See, e.g.*, ECF 64 at 10 (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993)). This Court's Opinion and Order of March 23, 2022, seems to believe that the Court would rule in a different direction moving forward. This creates conflict with other courts' rulings.

Because the scope of the Ku Klux Klan Act presents a question of law both the controlling and dispositive for the case, and because there is substantial ground

for difference of opinion and an immediate appeal from the Order may materially advance the ultimate termination of this litigation, Defendants respectfully request that this Court amend its March 23, 2022 Opinion and Order to reflect that this case involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, or otherwise authorize such an interlocutory appeal.[1]

## II.    An Interlocutory Appeal as to the Proper Scope of the Ku Klux Klan Act is Appropriate

As noted above, 28 U.S.C. § 1292 permits for interlocutory appeals:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . .

28 U.S.C. § 1292.  When the district court is of the opinion that these factors have been met, the district court shall permit a party to appeal a non-final order.  *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007); *In re Trump*, 874 F.3d 948, 950-51 (6th

---

[1] Pursuant to 28 U.S. Code § 1292, a district court "shall so state in writing in such order" for the order to be subject to interlocutory appeal.  Such an appeal shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Cir. 2017).  If so, the district court must expressly find in writing that all three §
1292 requirements are met.  *Aparicio v. Swan Lake*, 643 F.2d 1109, 1110 n.2 (5th
Cir. 1981).  Here, each of these elements is present and the issues in question appear
particularly ripe for interlocutory appeal.

### A. The Question of Law is "Controlling"

All that must be shown in order for a question to be "controlling" is "whether
the issue has 'potential to have some impact on the course of ligation.'"  *La. State*
*Conference of the NAACP v. Louisiana*, 495 F. Supp. 3d 400, 413 (M.D. La. 2020)
(citing *United States v. La. Generating LLC*, No. 09-100, 2012 U.S. Dist. LEXIS
142349, 2012 WL 4588437, at *1 (M.D. La. Oct. 2, 2012); *Tesco Corp. v.*
*Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755, 766 (S.D. Tex. 2010)).  "It is sufficient
to satisfy the controlling question of law standard if resolution on appeal
determines the 'future course of the litigation.'"  *La. State Conference of the*
*NAACP*, 495 F. Supp. 3d at 413 (quoting *Tesco Corp.*, 722 F. Supp. 2d at 766); *see*
*also* 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
3930 (3d ed. 2020).

The Court's interpretation and application of the Ku Klux Klan Act is
"controlling" to this matter.  Plaintiffs have made clear from the beginning that their
basis for federal jurisdiction revolves around this claim brought under the Act.  It is
their only federal cause of action.  Underlying the controlling nature of this claim,

this Court spent the better part of twelve pages in the Opinion and Order in question analyzing the Ku Klux Klan Act, prior to devoting only about one page to the remainder of the claims and its conclusion.  The Ku Klux Klan Act claim represents 100% of the federal claims before the Court.  The cause of action comprises one-third of Plaintiffs' causes of action, and counts two and three are predicated on the same underlying alleged "conspiracy."

The resolution of the scope of the Ku Klux Klan Act is clearly a controlling issue and one that could materially affect the outcome of the litigation in this Court. This issue could also have a broader applicability, as the present interpretation of the Ku Klux Klan Act creates a private tort for interference with "election advocacy." This will lead to additional lawsuits from members of various political parties who will now bring lawsuits against private actors for infringement with their advocacy efforts if such efforts relate to a political candidate or an election.   This will have a chilling effect on otherwise lawful political discourse.  As noted below in more detail, it also leads to different standards in the federal circuits and a novel interpretation of existing U.S. Supreme Court precedent.  This matter is an important one and indeed a controlling one—both in this matter and others.

### B. A Substantial Ground for Difference of Opinion Exists as to the Statutes in Question

There also exists clear and substantial grounds for differences of opinion as to the statutes in question.  A "substantial ground for difference of opinion" exists

when: (1) the question is difficult, novel, and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question. *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002); *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010) (en banc).  An issue is novel "where reasonable jurists might disagree on an issue's resolution." *In re Trump*, 874 F.3d at 952.

This Court recognized in its March 23 Opinion and Order that "[i]ndeed, neither the Supreme Court nor the Fifth Circuit have addressed this question head on." ECF No. 64 at 10.

There have been multiple long-standing U.S. Supreme Court and Court of Appeals opinions that would reasonably lead a jurist to a conclusion contrary to the Court's ruling.  No Court has ever interpreted the Ku Klux Klan Act, as the Court did in its Opinion and Order here, as providing a private cause of action for interference with "election advocacy."

The Court's holding expands the traditional application of § 1985(3) of the Ku Klux Klan Act, that encompasses stifling specific and formal acts of voting, to non-voting First Amendment "election advocacy" activities.  There are several cases that limit that Act's application to *voting*.  *See Paynes v. Lee*, 377 F.2d 61 (5th Cir.

1967) (interference with the specific act of registering to vote); *United States v. Williams*, 341 U.S. 70 (1951) (protecting the right to actually vote in federal elections); *Ex Parte Yarbrough,* 110 U.S. 651 (1884) (protecting the right to cast one's vote); *United States v. Classic*, 313 U.S. 299 (1941) (protecting the right to cast one's vote in a primary election); *United States v. Wood*, 295 F.2d 772, 774 (5th Cir. 1961) (protecting the right to register to vote).

These cases have been considered the settled law of the U.S. Supreme Court and Fifth Circuit for years, cited by treatises and secondary sources, and generally understood to be the controlling law. These cases conflict with this Court's recent opinion, underlying that there is a difference of opinion as to this issue. But this Court also noted the lack of precedent from the U.S. Supreme Court and Fifth Circuit on point. Thus, this Court believes there is little controlling precedent, and the precedent that does exist is in conflict with this Court's latest ruling.

Indeed, even in *Gill,* that this Court relies on as persuasive authority, the Eighth Circuit states, "the independent constitutional right relating to federal elections . . . is limited, under existing case law, to the right to vote -- to cast a ballot and have it honestly counted." *Gill*, 906 F.2d at 1270-71 (citing *U.S. v. Classic*, 313 U.S. 299, 315 (1941); *U.S. v. Mosley*, 238 U.S. 383, 386, (1915)). The plaintiff in *Gill* "[s]ignificantly" "does not allege that he was actually deterred from voting." 906 F.2d at 1270. The Court then finds that fundraising activities and supporting a

candidacy is a right protected, not under the Ku Klux Klan Act, but by the First Amendment. *Id*. at 1270-71.

To be sure in the instant case, Plaintiffs' Complaint fails to state any allegations that involve interference with voting. The complaint, in contrast, repeatedly alleges infringement with Plaintiffs' free speech activities. *See* Compl. at ¶¶ 1, 3, 10, 11, 12, 135, 141, 144, 147. The Court's Opinion and Order, in practical effect, establishes a separate constitutional claim for interference with the First Amendment activity of "election advocacy"—one that does not require that plaintiff allege the involvement of state action or racial animus. This holding conflicts with relevant precedent.

Courts have traditionally held that a constitutional claim alleging an interference with First Amendment rights, such as advocacy for a political cause, require that a plaintiff allege the involvement of state action. For example, in *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993), the U.S. Supreme Court rejected a "claim that an alleged private conspiracy to infringe First Amendment rights violated § 1985(3)." *See also United Brotherhood of Carpenters, Local 610 v. Scott*, 463 U.S. 825 (1983); *Federer v. Gephardt*, 363 F.3d 754 (8th Cir. 2004).

Courts have also held that § 1985(3)'s requires a plaintiff to plead factual allegations that establish an equal protection violation, when asserting voter

intimidation claim under the Act.  For example in 2020, the Fifth Circuit applied the four-part test from *Hilliard v. Ferguson*, 30 F.3d 649 (5th Cir. 1994) to a voter intimidation claim. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 410 (5th Cir. 2020).  When analyzing the claim, the Fifth Circuit held that one reason why the state officials had not violated § 1985(3) was because they "did not deprive anyone of the equal protection of the laws." *Tex. Democratic Party*, 961 F.3d at 410.

This Court's Opinion and Order, in not following the aforementioned cases, has caused the instant case to be an outlier unsupported by longstanding precedent interpreting the Ku Klux Klan Act.

As this Court noted at the outset of its Opinion and Order, this is an unresolved question of federal law.  ECF 64 at 10 ("neither the Supreme Court nor the Fifth Circuit have addressed this question head on").  This Court also stated that "Notably, the Court has not reached the issue of whether the second portion of § 1985(3), which, like the first portion of § 1985(2) also lacks the "equal protection" language, likewise lacks the requirement to plead race-based animus."  ECF 64 at 9.  These statements indicate there is no clear direction for courts to follow to answer the questions raised by Plaintiffs' Complaint.

There are substantial grounds for differences of opinion regarding the statute in question.  Thus, this matter, respectfully, is particularly suited for interlocutory appeal.

### C. An Appeal Will Materially Advance the Ultimate Termination of this Litigation

The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law. "When litigation will be conducted in substantially the same manner regardless of the court's decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002); *see also Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006) ("A controlling question of law—although not consistently defined—at the very least means a question of law the resolution of which could materially advance the ultimate termination of the litigation—thereby saving time and expense for the court and the litigants."). When litigation would be conducted in a substantially *different* manner depending on the appeal, therefore, an interlocutory appeal is appropriate.

This Court pointed out in its opinion that the supplemental state law claims in question mirror criminal claims. ECF 64 at 13. This ruling—in breaking from federal precedent—not only changes this civil litigation but also infuses a criminal element to it. These claims would be without jurisdiction upon the Court dismissing the § 1985(3) claim against Defendant Park. Dismissal of the lone pending federal claim could drastically change the manner in which this matter is defended.

Defendant Dolores Park's strategy for defense could be drastically altered based on this ruling (or based on the Fifth Circuit's ruling if permitted to appeal). Defense counsel can attest that already their thoughts on defense strategy (*i.e.*, the manner in which this matter might be litigated) are evolving based on this Court's latest ruling.

The entire manner of the litigation could be altered.  It could also lead to the need to limit or to cease further discovery, or conversely to pursue additional discovery, engage in more discovery disputes, and experience protracted litigation of issues that otherwise would not be present.  "An interlocutory appeal materially advances the litigation when it 'saves judicial resources and litigant expense.'" *Newsome v. Young Supply Co.*, 873 F.Supp.2d 872, 878 (E.D. Mich. 2012).

This litigation going forward will be conducted in a substantially different manner depending on the appeal.  And clarification upon appeal could lead to a vast savings in judicial resources and litigant expense.  Therefore, it would appear that an interlocutory appeal would be appropriate.

### III.    An Interlocutory Appeal Will Cause No Prejudice or Delay

While it is not an element or factor that need be met or analyzed, it is worth noting that if this Court gives Defendant Dolores Park the grounds to seek interlocutory appeal, none of the parties will be prejudiced and there will be no delay in the instant matter.  Pursuant to 28 U.S.C. §1292, an "application for an appeal

hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." The matter before this Court, therefore, shall proceed apace, unless this Court or the Fifth Circuit wish to grant a stay. And the Fifth Circuit's internal rules permit for expedited interlocutory appeals upon a showing of good cause. *See* 5 Cir. I.O.P. 34.5; 5 Cir. I.O.P. 47.7. Thus, neither party will be prejudiced by an interlocutory appeal and there will be no delay to this matter proceeding in this Court.

## IV.    Defendants Respectfully Request an Emergency Ruling

Pursuant to 28 U.S.C. § 1292, the Fifth Circuit can permit an appeal taken from the Opinion and Order in question so long as "application is made to it within ten days after the entry of the order." Thus, Defendants respectfully request that this Court dispense with a full briefing schedule and any oral argument and issue an emergency opinion granting this motion. This is also warranted given the impact of the decision and its potential far reaching effect.[2] Under the present Opinion and Order, any heckler at a candidate's political rally could find themselves a defendant for interference with "election advocacy" under the Ku Klux Klan Act. The

---

[2] Defendants understand that pursuant to Fed. R. App. P. 5, the Court may amend its Order at any time in order to certify the issue for interlocutory appeal, and that in that event the time to petition runs from entry of the amended order. Nonetheless, given the seriousness of the issues in question, Defendant Dolores Park respectfully believes that an expedited appeal is warranted.

important question of law should be answered and clarified now, as this Court's ruling is likely to cause an influx of political litigation.

## V.     Conclusion

Defendant Dolores Park respects this Court and its latest ruling.  Nonetheless, as this Court seemingly acknowledges in its Opinion and Order, this is an important issue that is unresolved under federal law.  Thus, this question is likewise ripe for interlocutory appeal and review by the Fifth Circuit.  Because of the importance of these issues, Defendant Dolores Park respectfully requests permission from this Court authorizing her to seek interlocutory appeal on the question of the applicability of the Ku Klux Klan Act to the instant case.

Respectfully submitted,

/s/ Richard Thompson
**THOMAS MORE LAW CENTER**
Richard Thompson
(Admitted in Michigan, P21410)
24 Frank Lloyd Wright Dr.
Suite 393
Ann Arbor, MI 48106
rthompson@thomasmore.org
(734) 827-2001

Attorney for Defendant Dolores Park

Dated: March 29, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 29, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all registered ECF participants listed for this case.

Respectfully submitted,

/s/ Richard Thompson
**THOMAS MORE LAW CENTER**
Richard Thompson
(Admitted in Michigan, P21410)
24 Frank Lloyd Wright Dr.
Suite 393
Ann Arbor, MI 48106
rthompson@thomasmore.org
(734) 827-2001

Attorney for Defendant Dolores Park

14