UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ERIC CERVINI, WENDY DAVIS, DAVID GINS, and TIMOTHY HOLLOWAY,<br><br>Plaintiffs,<br><br>v.<br><br>ELIAZAR CISNEROS, HANNAH CEH, JOEYLYNN MESAROS, ROBERT MESAROS, DOLORES PARK, and JOHN and JANE DOES,<br><br>Defendants. | Civil Action No. 1:21-cv-00565-RP<br><br>Hon. Robert Pitman |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO RECONSIDER AND MOTIONS REQUESTING INTERLOCUTORY APPEAL

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

LEGAL STANDARDS ..........................................................................................................3

ARGUMENT ..........................................................................................................................4

I.      The Motion for Reconsideration Lacks Grounds................................................4

II.     The Motions for Interlocutory Appeal Fail to Satisfy the Strict Statutory
        Requirements for Certification ..........................................................................5

        A.      There Are No Substantial Grounds for a Difference of Opinion Regarding
                this Court's Interpretation of the Support or Advocacy Clauses ...........................5

                1.      No racial animus is required for a support-or-advocacy clause
                        claim..........................................................................................6

                2.      The support-or-advocacy clauses prohibit purely private
                        conspiracies to interfere with election advocacy .........................................9

        B.      The Order Does Not Involve a Controlling Question of Law. .............................16

        C.      An Immediate Appeal From The Order Will Not Materially Advance The
                Ultimate Termination Of The Litigation...............................................................17

CONCLUSION.........................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bray v. Alexandria Women's Health Ctr.,*
   506 U.S. 263 (1993)..........................................................................................................6

*Breitweiser v. Chesapeake Energy Corp.,*
   No. 3:15-CV-2043-B, 2015 WL 6322625 (N.D. Tex. Oct. 20, 2015)....................................5

*Carpenters v. Scott,*
   463 U.S. 825 (1983)..........................................................................................................9

*Casanova v. Gold's Tex. Holdings Grp., Inc.,*
   No. 5:13-CV-1161-DAE, 2016 WL 1446233 (W.D. Tex. Apr. 11, 2016)............................16

*Caterpillar Inc. v. Lewis,*
   519 U.S. 61 (1996)............................................................................................................3

*Chan v. Korean Air Lines,*
   490 U.S. 122 (1989) .......................................................................................................10

*Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.,*
   702 F.2d 67 (5th Cir. 1983) .............................................................................................3

*Coates v. Brazoria Cnty.,*
   919 F. Supp. 2d 863 (S.D. Tex. 2013) ....................................................................3, 5, 17

*Cockrum v. Donald J. Trump for President, Inc.,*
   365 F. Supp. 3d 652 (E.D. Va. 2019) ..............................................................................14

*Colautti v. Franklin,*
   439 U.S. 379 (1979).........................................................................................................8

*Crankshaw v. City of Elgin,*
   No. 1:18-CV-75-RP, 2020 WL 1866884 (W.D. Tex. Apr. 14, 2020) ................................3, 4

*Fannie Mae v. Hurst,*
   613 F. App'x 314 (5th Cir. 2015) ..................................................................................1, 5

*Federer v. Gephardt,*
   363 F.3d 754 (8th Cir. 2004) ..........................................................................................14

*Gill v. Farm Bureau Life Ins. Co.,*
   906 F.2d 1265 (1990).....................................................................................................14

*Griffin v. Breckenridge,*
    403 U.S. 88 (1971)................................................................................7

*Halprin v. FDIC,*
    No. 5:13-CV-1042-RP, 2017 WL 9808438 (W.D. Tex. Oct. 17, 2017)...................................3

*Hernandez v. Pritchard Indus. (Sw.), LLC,*
    No. SA-20-CV-00508-XR, 2021 WL 1947879 (W.D. Tex. May 14, 2021)..........................17

*Holcombe v. United States,*
    No. 5:18-CV-1151-XR, 2019 WL 13080126 (W.D. Tex. Sept. 10, 2019)................................5

*Kimble v. D.J. McDuffy, Inc.,*
    648 F.2d 340 (5th Cir. 1981) ................................................................7

*Kinney v. Weaver,*
    367 F.3d 337 (5th Cir. 2004) ................................................................7

*Kush v. Rutledge,*
    460 U.S. 719 (1983)................................................................6, 11, 14, 15

*Lavespere v. Niagara Mach. & Tool Works, Inc.,*
    910 F.2d 167 (5th Cir.1990) ................................................................3

*League of United Latin Am. Citizens - Richmond Region Council 4614 v. Pub. Int.*
    *Legal Found.,*
    No. 1:18-CV-00423, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018)................................2, 4, 9

*McCord v. Bailey,*
    636 F.2d 606 (D.C. Cir. 1980) ................................................................13

*Mitchell v. Johnson,*
    No. 07-40996, 2008 WL 3244283 (5th Cir. Aug. 8, 2008) ...................................................7

*Nat'l Coal. on Black Civic Participation v. Wohl,*
    498 F. Supp. 3d 457 (S.D.N.Y. 2020)................................................................2, 4, 9

*Paynes v. Lee,*
    377 F.2d 61 (5th Cir. 1967) ................................................................2, 9, 13

*Ryan v. Flowserve Corp.,*
    444 F. Supp. 2d 718 (N.D. Tex. 2006) ................................................................16

*Serafine v. Abbott,*
    No. 1:20-CV-1249-RP, 2021 WL 3616101 (W.D. Tex. June 11, 2021)................................4

*Shelby, v. City of El Paso,*
    No. EP-12-CV-0200-DCG, 2013 WL 12086211 (W.D. Tex. July 29, 2013) ..........................3

*Stromberg v. California,*
    283 U.S. 359 (1931)............................................................................................12

*Tex. Democratic Party v. Abbott,*
    961 F.3d 389 (5th Cir. 2020) .......................................................................7, 8

*Tex. Democratic Party v. Abbott,*
    978 F.3d 168 (5th Cir. 2020) ............................................................................8

*Texas v. Ysleta del Sur Pueblo,*
    370 F. Supp. 3d 705 (W.D. Tex. 2018).............................................................6

*United States v. Butler,*
    25 F. Cas. 213 (C.C.D.S.C. 1877) ..................................................................12

*United States v. Classic,*
    313 U.S 299 (1941).........................................................................................13

*United States v. Garner,*
    749 F.2d 281 (5th Cir. 1985) ............................................................................1

*United States v. Goldman,*
    25 F. Cas. 1350 (C.C.D. La. 1878) ................................................................11

*United States v. Williams,*
    341 U.S. 70 (1951)..........................................................................................13

*Ex Parte Yarbrough,*
    110 U.S. 651 (1884).............................................................................10, 13, 14

**Statutes**

28 U.S.C. § 1292 ...........................................................................................1, 18

28 U.S.C. § 1292(b) .......................................................................................3, 17

42 U.S.C. § 1985(3) ...................................................................................1, 9, 10

70 Rev. Stat. § 5508 ............................................................................................10

70 Rev. Stat. §§ 5519–5520 ...............................................................................15

Act of May 31, 1870, ch. 114, §§ 3–4, 6, 16, 16 Stat. 140 ...............................10

**Treatises**

16 Wright & Miller, *Federal Practice and Procedure* § 3930 (3d ed.)................16

**Law Reviews**

Note, *The Support or Advocacy Clause of § 1985(3)*, 133 Harv. L. Rev. 1382
(2020) ............................................................................................................................. 13

Richard Primus & Cameron O. Kistler, *The Support-or-Advocacy Clauses*, 89
Fordham L. Rev. 145 (2020) .......................................................................... 9, 13, 15

## INTRODUCTION

Interlocutory appeals are extraordinary remedies granted only in limited and exceptional circumstances. *See* 28 U.S.C. § 1292; *Fannie Mae v. Hurst*, 613 F. App'x 314, 318 (5th Cir. 2015) (citing *Allen v. Okam Holdings, Inc.*, 116 F.3d 153, 154 (5th Cir. 1997)); *United States v. Garner*, 749 F.2d 281, 286 (5th Cir. 1985). Following this Court's carefully reasoned March 23, 2022 Order, Dkt. 64 ("Order"), denying their motions to dismiss this litigation, Defendants Eliazar Cisneros, Joeylynn Mesaros and Robert Mesaros, and Dolores Park (collectively, "Defendants") now ask this Court to certify its Order for interlocutory appeal or reverse itself and disregard Fifth Circuit precedent. Defendants fail to meet the high bar to justify the extraordinary remedy of an interlocutory appeal, nor have they provided any reason for this Court to reconsider its legally correct ruling.

Plaintiffs brought this suit against Defendants for violating the federal Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3), as well as Texas state law, by using their vehicles to assault, intimidate, and threaten voters who were supporting and advocating for the election of President Joseph Biden and Vice President Kamala Harris, Compl. ¶¶ 73, 87, 89, 103. On March 23, 2022, this Court denied Defendants' motions to dismiss Plaintiffs' claims for lack of jurisdiction and for failure to state a claim in their entirety. Dkt. 64; *see also* Dkts. 22, 24, 25, 33 (collectively, the "Motions to Dismiss"). In its Order, this Court correctly held "that a claim under the election advocacy portion of § 1985(3) does not require Plaintiffs to plead racial or other class-based animus" and that § 1985(3) allows suits to recover damages "for interference by private individuals," without a state action requirement. Order 11, 12–13.

The Court's decision is consistent with more than 50 years of precedent in the Fifth Circuit permitting plaintiffs to recover damages from non-state actors under the support-or-advocacy clauses of Section 1985(3) without having to show an underlying constitutional violation. *See, e.g.*,

1

*Paynes v. Lee*, 377 F.2d 61, 63–64 (5th Cir. 1967). It is also consistent with the plain text of the support-or-advocacy clauses, which prohibit interfering with "advocacy" in federal elections and lack the language (found in certain other Klan Act provisions) giving rise to a class-based animus requirement. *See Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 486 n.30 (S.D.N.Y. 2020); *League of United Latin Am. Citizens - Richmond Region Council 4614 v. Pub. Int. Legal Found.*, No. 1:18-CV-00423, 2018 WL 3848404, at *6 (E.D. Va. Aug. 13, 2018) ("*LULAC*"). As this Court rightly concluded, this case involves a straightforward Klan Act violation under Fifth Circuit precedent and the plain text of the statute: a conspiracy to use vehicles to assault, intimidate, and threaten voters who were exercising their constitutional rights while campaigning for the election of federal candidates.

Defendants' instant motions simply rehash arguments from their Motions to Dismiss that this Court correctly rejected, or in some instances, attempt to put new issues before the Court that they could have argued earlier. Defendants now claim an "emergency," Dkt. 66 ("Park Br.") at 1; Dkt. 70 ("Cisneros Br.") at 1, and ask this Court to reverse itself and disregard binding precedent, Dkt. 69 ("Mesaros Br.") at 1, or certify its opinion for interlocutory appeal, Park Br. 1; Mesaros Br. 4; Cisneros Br. 1. Defendants also fail to point to any efficiency to be gained from an interlocutory appeal—because there is none. Assuming *arguendo* that an appeal would result in dismissal of Plaintiffs' Klan Act claim, their remaining state law claims would still require virtually identical proof at trial as with the Klan Act claim in place. This Court did not err, and Defendants come nowhere near meeting the exacting requirements for an interlocutory appeal. Defendants' motions should be denied.

## LEGAL STANDARDS

"The Federal Rules of Civil Procedure do not recognize a 'motion for reconsideration'" like the one proffered by Joeylynn and Robert Mesaros (together, "Mesaros Defendants"). *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc). A court may, however, treat a motion to reconsider a denial of a Rule 12 motion to dismiss as a motion to "reconsider an interlocutory order pursuant to Rule 54(b)." *Shelby, v. City of El Paso*, No. EP-12-CV-0200-DCG, 2013 WL 12086211, at *1 (W.D. Tex. July 29, 2013). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient'"—"as justice requires." *Halprin v. FDIC*, No. 5:13-CV-1042-RP, 2017 WL 9808438, at *1–2 (W.D. Tex. Oct. 17, 2017) (quoting *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)). This Court has refused to grant Rule 54(b) motions in the absence of an "evolution in the case that would warrant reconsideration." *Id.* at *2.

To "avoid[] the delay and extra effort of piecemeal appeals," *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983), interlocutory appeals are "generally disfavored," *Crankshaw v. City of Elgin*, No. 1:18-CV-75-RP, 2020 WL 1866884, at *2 (W.D. Tex. Apr. 14, 2020) (quoting *Fannie Mae*, 613 F. App'x at 318); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996). Section 1292(b) empowers a district court in its discretion to order an interlocutory appeal when it (1) "involves a controlling question of law," (2) "as to which there is a substantial ground for difference of opinion," and that (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). *See also Clark-Dietz*, 702 F.2d at 69. The party moving for an interlocutory appeal bears the burden of demonstrating its necessity, *Coates v. Brazoria Cnty.*, 919 F. Supp. 2d 863, 866–67 (S.D. Tex.

2013), and must show that such a motion meets all three criteria in order to be certified, *Crankshaw*, 2020 WL 1866884, at *1 (citing *Clark-Dietz*, 702 F.2d at 69).

## ARGUMENT

### I.   THE MOTION FOR RECONSIDERATION LACKS GROUNDS

The Mesaros Defendants' motion for reconsideration acknowledges that it largely rehashes arguments "described in the Mesaroses' filings." Mesaros Br. 1. On that basis alone, their motion should be denied. *See Serafine v. Abbott*, No. 1:20-CV-1249-RP, 2021 WL 3616101, at *2 (W.D. Tex. June 11, 2021) (denying a Rule 54(b) motion that "raises arguments that could have been and were raised during the initial briefing related to [the motion for which reconsideration is sought] and raises no manifest errors of law warranting reconsideration").

The sole argument the Mesaros Defendants appear to advance relevant to analysis of a motion for reconsideration is that the Court committed a "manifest error[] of law," *id.*, in failing to address the issue of whether "a cause of action (rather than jurisdiction) is lacking under 1985(3) for interference with 'support or advocacy' in the absence of state action," Mesaros Br. 3. As further detailed below, the Mesaros' Defendants' contentions fail entirely on the merits, and they have offered nothing that should change this Court's analysis. Though the Mesaros Defendants did not advance this argument in their Motion to Dismiss, their motion fails to acknowledge that the Court considered and dismissed Defendant Park's argument that Plaintiffs are required to allege some state action in order to pursue a claim under § 1985(3). As the Court held, "the Fifth Circuit has previously stated that § 1985(3) was created to allow plaintiffs to recover damages for interference with their election-related rights and is a 'specific remedy for interference by private individuals,' unlike a claim based on the Fourteenth Amendment, which requires state action." Order 12–13 (citing *Paynes*, 377 F.2d at 63–64); *see also Nat'l Coal.*, 498 F. Supp. 3d at 486 n.30; *LULAC*, 2018 WL 3848404, at *6. Given the Court's previous consideration and rejection of these

arguments, the Mesaros Defendants motion for reconsideration amounts to little more than the advancement of arguments the Court has already considered and correctly rejected—and has therefore failed to show grounds for reconsideration.

## II.   THE MOTIONS FOR INTERLOCUTORY APPEAL FAIL TO SATISFY THE STRICT STATUTORY REQUIREMENTS FOR CERTIFICATION

Interlocutory appeals are exceptional remedies reserved for exceptional cases that meet the "strictly construed" statutory requirements under 28 U.S.C. § 1292. *Fannie Mae*, 613 F. App'x at 318 (quoting *Allen*, 116 F.3d at 154). Defendants' motions fail to meet that burden.

### A.   There Are No Substantial Grounds for a Difference of Opinion Regarding this Court's Interpretation of the Support or Advocacy Clauses

Defendants' argument rests upon their assertion that there "exist[] clear and substantial grounds for differences of opinion as to the statutes in question." Park Br. 5; Mesaros Br. 5–7. Showing substantial ground for difference of opinion requires more "than mere disagreement or even the existence of some contrary authority." *Coates*, 919 F. Supp. 2d at 868. A substantial ground for difference of opinion is more likely to exist where "the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Holcombe v. United States*, No. 5:18-CV-1151-XR, 2019 WL 13080126, at *2–3 (W.D. Tex. Sept. 10, 2019); *Breitweiser v. Chesapeake Energy Corp.*, No. 3:15-CV-2043-B, 2015 WL 6322625, at *9 (N.D. Tex. Oct. 20, 2015) (denying interlocutory appeal on a question on which there was disagreement outside but consensus within the circuit). The arguments presented in Defendants' briefs do not come close to meeting this bar.

The Court observed that "neither the Supreme Court nor the Fifth Circuit have addressed th[e] question head-on" whether racial animus is required for a § 1985(3) claim. Order 10. But that is not sufficient to show a substantial ground for difference of opinion. *Holcombe*, 2019 WL

13080126, at *2–3; *Texas v. Ysleta del Sur Pueblo*, 370 F. Supp. 3d 705, 710 (W.D. Tex. 2018) ("[J]ust because a court is the first to rule on a particular question . . . does not mean there is such a substantial difference of opinion as will support an interlocutory appeal.") (internal citations omitted). There should be no substantial disagreement as to the legal questions Defendants posit (albeit obliquely) throughout their briefs: (1) whether the support-or-advocacy clauses require plaintiffs to plead that the conspiracy at issue be motivated by racial animus (they do not), Park Br. i, 1, 8; Mesaros Br. 1–3, 6–7, or (2) whether the support-or-advocacy clauses—which, by their text prohibit interference with *advocacy* in federal elections—prohibit purely private conspiracies to interfere with advocacy (they do), Park Br. i, 2, 8; Mesaros Br. 3–4, 7.

*1.    No racial animus is required for a support-or-advocacy clause claim*

In their brief in opposition to Defendants' Motions to Dismiss, Plaintiffs explained why a claim under the support-or-advocacy clauses does not require an allegation of racial or class-based animus and why that conclusion necessarily follows from Supreme Court and Fifth Circuit precedent. *See* Pls.' MTD Opp'n, Dkt. 34, at II.A, II.D. Defendants have proffered no basis for interlocutory appeal on this issue. *See* Park Br. i, 1,8; Mesaros Br. 1–3, 6–7. Nor could they, since Defendants' interpretation is foreclosed by controlling precedent.

*First*, as this Court noted in its canvass of the relevant authority, *see* Order 8–11, the Supreme Court has made clear that a showing of racial or class-based animus is required *only* for claims invoking portions of the Klan Act containing "the critical language" related to equal protection and equal privileges and immunities. *Kush v. Rutledge*, 460 U.S. 719, 720, 725–26 (1983); *id.* at 725 (explaining that the animus requirement does not apply to those portions of Section 1985 that "contain no language requiring that the conspirators act with intent to deprive their victims of the equal protection of the laws"); *Bray v. Alexandria Women's Health Ctr.*, 506 U.S. 263, 281 n.13 (1993) (Scalia, J.) (reaffirming, when interpreting Section 1985(3)'s hindrance

clause, that the presence (or absence) of equal protection language was "of greatest importance" when determining whether a Klan Act plaintiff must show class-based animus and stating that "*Griffin*'s animus requirement rested on 'the equal protection language' of § 1985(3)" (quotations omitted)); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.").

*Second*, the en banc Fifth Circuit has recognized that the court's brief non-textual interpretive approach in *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 347 (5th Cir. 1981) (en banc) (holding that class-based animus was required for a Klan Act claim under federal-court-proceedings clause of Section 1985(2)), *abrogated by Kush*, 460 U.S. 719, did not survive *Kush*. *See Kinney v. Weaver*, 367 F.3d 337, 352 n.14 (5th Cir. 2004) (en banc) ("*Kush* is notable because it *rejected* a non-textual limiting construction that certain circuits, including this one, had erroneously embraced."); *see also Mitchell v. Johnson*, No. 07-40996, 2008 WL 3244283, at 3 & n.1 (5th Cir. Aug. 8, 2008) (Smith, J.). Instead, following *Kush*, the Fifth Circuit now looks to the statutory text and applies a class-based animus requirement only where a provision's language requires a denial of the equal protection or equal privileges and immunities. *See* Pls.' MTD Opp'n 23 (citing cases).[1]

---

[1] Defendant Park misstates the law when she asserts that a plaintiff claiming voter intimidation under the Klan Act is required to plead an equal protection violation. *See* Park Br. 8–9. In the case Park cites for that proposition, *Tex. Democratic Party v. Abbott*, 961 F.3d 389 (5th Cir. 2020), the plaintiffs' only Klan Act claim was under the equal protection clauses (not the support-or-advocacy clauses) of Section 1985(3). *See* Pls.' First Am. Compl. ¶¶ 105, 107, *Tex. Democratic Party v. Abbott*, No. 5:20-cv-00438-FB (W.D. Tex. Apr. 19, 2020), ECF No. 9 (alleging conspiracy under 42 U.S.C. § 1985 "for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws"). Thus, a Fifth Circuit motions panel examined the claim under the circuit's test for the

The support-or-advocacy clauses, of course, do not contain the equal protection language that the Supreme Court has said is the textual source for requiring racial or class-based animus. And defendants still haven't explained—despite having now filed over ten briefs on the issue—how their erroneous interpretation of the Klan Act's support-or-advocacy clauses would not make the clauses entirely redundant with the Klan Act's equal protection clauses in violation of the rules of statutory interpretation. *Id.* at 25–26 (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute.") (cleaned up)); *Colautti v. Franklin*, 439 U.S. 379, 392 (1979) (rejecting interpretation that "would make either the first or the second condition redundant or largely superfluous"). Thus, as multiple courts have held, claims under the support-or-advocacy clauses do not require a showing of class-based animus. *See* Pls.' MTD Opp'n 24–25 (citing lower court cases and other authorities).[2] There is no substantial disagreement on whether a showing of racial or class-based animus is required for the support-or-advocacy clauses, and Defendants should not have an interlocutory appeal on this point.

---

equal protection clauses. *Tex. Democratic Party*, 961 F.3d at 410 (citing *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994)). The motions panel's order did not say—much less hold—that an equal protection allegation is required for any claim under the support-or-advocacy clauses, whether related to voter intimidation or not. Indeed, the Supreme Court explained in *Kush* that it is improper to import equal protection elements into the clauses of Section 1985 that do not contain the equal protection language. *Supra* at 7–8. In any event, the motions panel order cited by Park is not the controlling disposition of the issue; the merits panel (whose disposition controls) vacated the Klan Act claim on different grounds. *See Texas Democratic Party v. Abbott*, 978 F.3d 168, 176 & n.2 (5th Cir. 2020) (describing the motions panel order in *Texas Democratic Party* and noting that "opinions and orders of a panel with initial responsibility for resolving motions filed in an appeal are not binding on the later panel that is assigned the appeal for resolution"), *cert. denied*, 141 S. Ct. 1124 (2021).

[2] In its Order, this Court correctly observed that neither the Supreme Court nor the Fifth Circuit has squarely addressed whether a claim under the support-or-advocacy clauses requires a showing of racial or class-based animus. But the Supreme Court has been clear about the Klan Act language that does and does not trigger a showing of animus, and there is no dispute here that the support-or-advocacy clauses lack that language. Defendants cite no authority to suggest otherwise.

2.    *The support-or-advocacy clauses prohibit purely private conspiracies to interfere with election advocacy*

Defendants' suggestion that a support-or-advocacy claim requires state action, *see* Park Br. 2, 8; Mesaros Br. 3–4, 6–7, is incorrect for the reasons previously given by Plaintiffs, *see* Pls.' MTD Opp'n II.D.2, II.B, and by this Court, *see* Order 12–13. Especially relevant here, and as this Court emphasized, Defendants' position is contrary to Fifth Circuit precedent. *See* Order 12–13 (citing *Paynes*, 377 F.2d at 63–64).[3]

To the extent Defendants' argument for state action is related to their view that the support-or-advocacy clauses protect only pre-existing constitutional rights, such as First Amendment rights, *see, e.g.*, Park Br. 8, that view is incorrect. The support-or-advocacy clauses give "rise to an independent substantive right" enforceable against private parties without identifying "a violation of a separate constitutional right." *Nat'l Coal*, 498 F. Supp. 3d at 486 n.30; *see, e.g.*, *Paynes*, 377 F.2d at 63–64; *LULAC*, 2018 WL 3848404, at *6; *see generally* Richard Primus & Cameron O. Kistler, *The Support-or-Advocacy Clauses*, 89 Fordham L. Rev. 145, 160–76 (2020) (explaining why reading support-or-advocacy clauses as providing a vehicle to enforce the pre-existing right to vote and First Amendment is wrong).

That conclusion follows from the statutory text. The support-or-advocacy clauses of Section 1985(3) cover conspiracies to prevent "any citizen [of the United States] lawfully entitled to vote, from giving his *support or advocacy* . . . in favor of" candidates for federal office or to "injure any citizen in person or property on account of *such support or advocacy*." 42 U.S.C. § 1985(3) (emphasis added). If Congress had meant to limit the support-or-advocacy clauses to

---

[3] *Carpenters v. Scott*, 463 U.S. 825 (1983), cited by the Mesaros Defendants, Br. 3, is inapposite. That case arose under the equal protection clauses of Section 1985(3), not the support-or-advocacy clauses. *See also* Order 10 (noting that *Carpenters* addressed the "first portion of § 1985(3)").

violations of the right to vote or the First Amendment, it would have said so. After all, the support-or-advocacy clauses themselves use the word "vote," just not in the statutory language at issue here,[4] and the Klan Act's equal protection clauses already provide a vehicle by which pre-existing constitutional rights can be enforced.[5] Similar provisions can be found in other Reconstruction statutes as well.[6] The Reconstruction Congress knew well how to limit a statutory remedy to violations of both the First Amendment and the right to vote when it wanted to.

In the key operative language of the support-or-advocacy clauses, however, Congress said "support or advocacy." It did not say "vote," "voting," "First Amendment," or "constitutional rights." And that intentional textual difference between the support-or-advocacy clauses and statutory language found elsewhere in the same statutory provision as well as other contemporaneous statutes should be fatal to Defendants' interpretation of the Klan Act, both because it is inconsistent with the statutory text, *see, e.g.*, *Chan v. Korean Air Lines*, 490 U.S. 122, 132 (1989) (Scalia, J.) (rejecting interpreting differing statutory language to have the same meaning as "it would be a flouting of the text"), and would improperly make the support-or-

---

[4] *See, e.g.*, 42 U.S.C. § 1985(3) ("if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to *vote*, from giving his support or advocacy in a legal manner . . . ." (emphasis added)).

[5] And, of course, 42 U.S.C. § 1983 (which was passed as Section 1 of the Klan Act), also created a cause of action for violations of pre-existing constitutional rights under color of law.

[6] *See, e.g.*, Act of May 31, 1870, ch. 114, § 6, 16 Stat. 140, 141 (making it a felony to "conspire together . . . to injure, oppress, threaten, or intimidate any citizen with intent to prevent or hinder his free exercise and enjoyment of any right or privilege granted or secured to him by the Constitution or laws of the United States"), *codified at* 70 Rev. Stat. § 5508 (1878), *ruled constitutional in Ex Parte Yarbrough*, 110 U.S. 651, 663–67 (1884); Act of May 31, 1870, ch. 114, §§ 3–4, 16 Stat. at 140–41 (using the term "vote" or "voting" at least 6 times), *ruled unconstitutional as a vehicle to enforce 15th Amendment in United States v. Reese*, 92 U.S. (2 Otto) 214 (1875).

advocacy clauses redundant with other portions of the Klan Act (which already provide a vehicle to enforce violations of pre-existing constitutional rights), *see* Pls.' MTD Opp'n 25–26.

Not surprisingly, given the statute's text, the Supreme Court has described the support-or-advocacy clauses as protecting "the right to support candidates in federal elections." *Kush*, 460 U.S. at 724. And courts at the time of the Klan Act's passage understood that the support-or-advocacy clauses protected more than the right to register and deposit a ballot in a ballot box. In *United States v. Goldman*, for example, the Circuit Court for the District of Louisiana made clear that a conspiracy "to prevent an influential person of the opposite political party from giving his support and advocacy to a particular candidate, to arrest him and restrain him of his liberty until after the election, and actually carry their purposes into execution" would be a "complete" violation of the support-or-advocacy clauses. 25 F. Cas. 1350, 1352 (C.C.D. La. 1878). And in upholding the constitutionality of the support-or-advocacy clauses under the Elections Clause, the *Goldman* court rejected the distinction that Defendants here attempt to draw, explaining that the right to advocate for candidates in in federal elections is part-and-parcel of protecting the right to vote in federal elections:

> An election is not simply the depositing of a ballot in a box . . . . An election is the expression of the free and untrammeled choice of the electors. There must be a choice and the expression of it to constitute an election. Under our American constitution an election implies a free interchange and comparison of views on the part of the people who are voters, and finally an independent expression of choice. Any interference with the right of the elector to make up his mind how he shall vote is as much an interference with his right to vote as if he were prevented from depositing his ballot in the ballot-box after he had made up his mind.

*Id.* at 1353–54.[7]

---

[7] *See also* Pls.' MTD Opp'n 13–17, 26 (explaining why Article I allows Congress to create an independent substantive right to engage in support-or-advocacy).

Likewise, in *United States v. Butler*, Chief Justice Waite's jury instructions in a criminal prosecution under the Klan Act and the Enforcement Act of 1870 distinguished between the charges based upon the since-repealed criminal enforcement provisions of the Klan Act's support-or-advocacy clauses (counts 2 and 3, premised on Section 5520 of the Revised Statutes) and the criminal enforcement provisions of Section 6 of the Enforcement Act of 1870, which made it a felony to conspire to injure or intimidate citizens from the free exercise of constitutional rights (counts 4 and 5, premised on Section 5508). *See* 25 F. Cas. 213, 223–24 (C.C.D.S.C. 1877). Only when discussing counts 4 and 5 did the Chief Justice clarify that the underlying right alleged to have been violated was the "right and privilege of voting," *id.* at 223, which the Chief Justice treated as distinct from injury and intimidation "on account of his support or advocacy of any political party," *id.* at 224. So, again, "support-or-advocacy" meant something different to contemporaneous jurists (including the Chief Justice) than pre-existing constitutional rights.

The reason none of those contemporaneous cases recognized the distinction that Defendants now attempt to draw is that Defendants rely on an anachronistic understanding of Reconstruction-era constitutional law. When the Klan Act was passed in 1871, First Amendment rights could only be asserted against the federal government and not against state governments. It was not until roughly a half-century later that the Supreme Court held that the First Amendment applied to state governments as well (via the Fourteenth Amendment). *See, e.g.*, *Stromberg v. California*, 283 U.S. 359 (1931). Thus, if Defendants are correct, then the support-or-advocacy clauses would have only provided a remedy against the federal government for First Amendment violations, and not against state governments, when it was originally passed. That was not what Congress meant—such an interpretation would give a plaintiff a cause of action against General William Tecumseh Sherman (a federal officer) but not against either Nathan Bedford Forrest (the

first Grand Wizard of the Klan) or the even Klan when it constituted a state actor, thus defeating

one of the key purposes of the Klan Act—providing a legal remedy against the Klan. *See, e.g.*,

*McCord v. Bailey*, 636 F.2d 606, 615 (D.C. Cir. 1980) (stating that "[t]he statute has its roots in

the racial violence" and "chaos" perpetrated by the Klan). An interpretation of the Klan Act on

which the support-or-advocacy clauses do not reach Klan violence cannot be right. *See* Primus &

Kistler, 89 Fordham L. Rev. at 160–62 (2020); Note, *The Support or Advocacy Clause of

§ 1985(3)*, 133 Harv. L. Rev. 1382, 1403 (2020) (view that the support-or-advocacy clauses are

somehow limited to remedying First Amendment violations is "ahistorical and unnecessarily

limiting").

Defendants have no answer to the statute's plain language and no explanation as to why

the term "advocacy" in the support-or-*advocacy* clauses should not be construed to cover

advocacy. Instead, they erroneously assert that "[t]here are several cases that limit [the Klan] Act's

application to *voting*" and "conflict with this Court's recent opinion." Park Br. 6–7; Mesaros Br.

7 (similar). But the Supreme Court and Fifth Circuit cases cited by Defendants do no such thing—

*none* of them limit the Klan Act's support-or-advocacy clauses to the act of voting only.[8]

---

[8] In *Paynes*, the Fifth Circuit held that Section 1985(3) created a cause of action that gave rise to federal jurisdiction over a claim involving intimidation of a plaintiff who sought to register to vote. 377 F.2d 61. In *United States v. Williams* (which is not even a support-or-advocacy case), the Supreme Court held that an allegation that defendants acted under color of state law in an indictment under 18 U.S.C. § 241 did not extend that section's protection to rights which the Constitution guarantees against abridgement by states. 341 U.S. 70 (1951). In *Ex Parte Yarbrough*, the Supreme Court recognized that the support-or-advocacy clauses are exercises of Congress's power to make rules for the conduct of federal elections and upheld the constitutionality of a criminal prosecution that proceeded in part under section 5520 of the Revised Statutes—that is, the support-or-advocacy clauses. 110 U.S. 651 (1884). And in *United States v. Classic* (which, as with *Williams*, is not even a support-or-advocacy case), the Court upheld Congress's power to regulate party primaries. 313 U.S 299 (1941). *None* of these cases purported to limit the Klan Act's support-or-advocacy clauses to voting only, as Park and the Mesaros Defendants claim.

As a final effort to manufacture a substantial disagreement on this issue, Defendants point to non-binding authority to suggest that state action is required. Park Br. 7–8; Mesaros Br. 6–7. To the extent the Eighth Circuit in *Gill v. Farm Bureau Life Insurance Co.* analyzed a support-or-advocacy clause claim only in terms of the First Amendment or the constitutional right to vote, 906 F.2d 1265 (1990), that narrow approach is incorrect and should not be followed by this court.[9] First, it imposes limitations on the support-or-advocacy clauses found nowhere in the text and contrary to the Act's history, as discussed already. Second, *Gill* appears to rest on a misunderstanding of Congress's authority in enacting the support-or-advocacy clauses. The Supreme Court has already upheld the support-or-advocacy clauses as a valid exercise of Congress's Article I power under the Elections Clause and the Necessary and Proper Clause. *See Ex parte Yarbrough*, 110 U.S. 651, 658–62 (1884); *see also* Pls.' MTD Opp'n 13–14. And since Congress's Article I powers provide a broad and complete basis for the support-or-advocacy clauses, including protecting citizens who are engaged in providing support or advocacy in federal elections, there is no reason to limit the scope of those clauses (contrary to their plain text) to remedy of constitutional injury only. *See* Pls.' MTD Opp'n 14–17.

If Defendants mean to cast some doubt on the proper scope of, or Congress's authority to enact, the support-or-advocacy clauses, their argument is baseless.[10] Congress enacted the support-

---

[9] *Federer v. Gephardt*, cited by the Mesaros Defendants, Mesaros Br. 3, suffers from the same illogic as *Gill*. 363 F.3d 754 (8th Cir. 2004) (following *Gill*'s First Amendment analysis).

[10] Nor can Defendants find support in *Cockrum v. Donald J. Trump for President, Inc.*, 365 F. Supp. 3d 652, 661 (E.D. Va. 2019). The key reasoning of *Cockrum*—that the support-or-advocacy clauses must be remedial because judicial decisions interpreting Section 1985(3)'s equal protections clauses have found those clauses to be remedial—is foreclosed by *Kush*. As *Kush* explains, the Klan Act provisions now found in Section 1985 were all passed as part of Section 2 of the Klan Act, which was "one long paragraph when it was originally enacted" and "outlawed five broad classes of conspiratorial activity." 460 U.S. at 724; *see also id.* at 726–29 (providing text of Section 2 of the Klan Act). Those broad classes of prohibited conspiracies invoked different constitutional authorities (and prompted different constitutional controversies as a result), *see id.*

or-advocacy clauses in 1871 as part of a statute intended to fight the Ku Klux Klan's campaign to maintain white supremacy and impede federal governance. As the text makes clear, Congress intended to protect support or advocacy for federal candidates. The law protects people's ability to support or advocate in connection with federal elections, including by prohibiting conspiracies like the one alleged here, in which Plaintiffs used vehicles to assault, intimidate, and threaten voters who were campaigning for the election of federal candidates.

*       *       *

Defendants' arguments regarding the scope of the Klan Act are inconsistent with the relevant precedents of the Supreme Court as well as the Fifth Circuit—which properly concluded in *Paynes* that the support-or-advocacy clauses extend beyond violations of pre-existing constitutional rights—as well as the plain text of the statute. This Court should accordingly reject Defendants' attempt to manufacture grounds for substantial disagreement based on atextual

---

at 726; some of the provisions of Section 2 were plainly substantive and some were plainly remedial, *see* Primus & Kistler, 89 Fordham L. Rev. at 152–53. As a result, because at least some of the provisions passed as part of the same paragraph in Section 2 of the Klan Act were substantive, a court cannot use the fact that the support-or-advocacy clauses share the same subsection in the United States Code with the remedial equal protection clauses to conclude that the support-or-advocacy clauses must be remedial too. The subsequent choice by the codifiers to group the civil support-or-advocacy clauses with the civil equal protection clauses "was not intended to change the substantive meaning of the 1871 Act," and thus should not be used to determine the meaning of the support-or-advocacy clauses. *Kush*, 460 U.S. 724 & n.6. After all, such a grouping certainly was not necessary or required, as the criminal enforcement provisions of the equal protections clauses and the support-or-advocacy clauses—which come from the same statutory text—were codified separately in the Revised Statutes. *See* 70 Rev. Stat. §§ 5519–5520 (1878). So rather than looking to the codification of various Klan Act provisions to determine the Klan Act's meaning as *Cockrum* erroneously suggests, this Court should look to the statutory text and accord it the meaning that its plain text requires and that Congress plainly intended—that it creates a new, independent substantive right to engage in support or advocacy in federal elections. *See also* Pls.' MTD Opp'n 13–17 (demonstrating that support-or-advocacy clauses are valid exercises of Congress's Article I powers under Elections Clause and Necessary and Proper Clause); Primus & Kistler, 89 Fordham L. Rev. at 169–76.

arguments weakly supported by a few unpersuasive and anachronistic out-of-circuit decisions. That is insufficient to meet the statutory requirement under § 1292.

### B.      The Order Does Not Involve a Controlling Question of Law.

"[A] question of law is 'controlling' within the meaning of Section 1292(b) only if [the] resolution of that issue could have an immediate impact on the course of the litigation." *Casanova v. Gold's Tex. Holdings Grp., Inc.*, No. 5:13-CV-1161-DAE, 2016 WL 1446233, at *1 (W.D. Tex. Apr. 11, 2016) (quoting *Oasis Rsch., LLC v. EMC Corp.,* Nos. 4:10-CV-435, 4:12-CV-526, 2015 WL 5318119, at *4 (E.D. Tex. Sept. 11, 2015)). The issue of whether a question of law is controlling is "closely tied to the requirement that the appeal will materially advance the ultimate termination of the litigation." *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006) (internal citation omitted).

Defendant Park argues that the "resolution of the scope of the Ku Klux Klan Act" is a controlling issue, but she does not specify how this Court's decision on the "scope of the Ku Klux Klan Act" is sufficiently "material" that it would terminate the litigation if answered in her favor. Park Br. 5. Nor could she. "[T]here is little doubt that a question is not controlling if the litigation would be conducted in the same way no matter how it were decided." 16 Wright & Miller, *Federal Practice and Procedure* § 3930 (3d ed.). As laid out below, a ruling from the Fifth Circuit on the scope of the Ku Klux Klan Act would not prevent Plaintiffs from continuing to pursue their state law claims in litigation. For similar reasons, the Mesaros Defendants miss the mark by asserting that the legal sufficiency of Plaintiff's Klan Act claim is a controlling issue because it could determine whether or not that claim proceeds. Mesaros Br. 5. Therefore, the question Defendants propose for the basis of the interlocutory appeal is not a "controlling question" of the law.

C.     **An Immediate Appeal From The Order Will Not Materially Advance The Ultimate Termination Of The Litigation.**

The "extraordinary remedy" of an interlocutory appeal under § 1292(b) is appropriate only if "an immediate appeal from the order may materially advance the ultimate termination of the litigation" and avoid a protracted and expensive litigation process. 28 U.S.C. § 1292(b). In considering this factor of the statutory criteria under § 1292, courts customarily consider whether allowing an interlocutory appeal would "(1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Coates*, 919 F. Supp. 2d at 867 (denying interlocutory appeal in part because it "will not eliminate the need for trial on the other claims" which "will presumably require much of the same evidence, examination, and argument").

Allowing Defendants' interlocutory appeal to move forward would not end this litigation or materially advance it to conclusion. Even if the Fifth Circuit were to accept, in full, Defendants' interpretation of the Ku Klux Klan Act and its precedents, it would not result in the immediate dismissal of any defendants or the litigation in its entirety. Plaintiffs' civil conspiracy and civil assault claims would remain, requiring virtually identical evidence and discovery as with the Klan Act claim still in place. *See, e.g.*, *Hernandez v. Pritchard Indus. (Sw.), LLC*, No. SA-20-CV-00508-XR, 2021 WL 1947879, at *3 (W.D. Tex. May 14, 2021) (finding an interlocutory appeal would not materially advance the ultimate termination of the litigation because of the need for trial on the remaining claims). And even if the Court were to decline to exercise supplemental jurisdiction over the remaining state claims and remove them to state court, the appeal would not have materially advanced the termination of litigation, but instead would simply result in a change in forum.

Likewise, an interlocutory appeal would simplify neither the trial nor discovery. Discovery on all issues of fact—including Plaintiffs' state law claims—is already underway. "[U]nless the district judge or the Court of Appeals or a judge thereof shall so order," discovery would continue apace during the pendency of any appeal. 28 U.S.C. § 1292.

## CONCLUSION

For the foregoing reasons, Defendants' motion to reconsider and motions requesting interlocutory appeal should be denied.

DATED:  April 12, 2022                    Respectfully submitted,

*/s/ John Paredes*

**TEXAS CIVIL RIGHTS PROJECT**
Mimi Marziani (TX Bar No. 24091906)
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741
Telephone: (512) 474-5073
Facsimile: (512) 474-0726
Email: mimi@texascivilrightsproject.org


**THE PROTECT DEMOCRACY
PROJECT, INC.**
John Paredes (NY Bar No. 5225412) (*pro hac vice*)
Orion Danjuma (NY Bar No. 4942249) (*pro hac vice*)
The Protect Democracy Project, Inc.
115 Broadway, 5th Floor
New York, NY 10006
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
john.paredes@protectdemocracy.org
orion.danjuma@protectdemocracy.org

Cameron O. Kistler (DC Bar No. 1008922) (*pro hac vice*)
Cerin Lindgrensavage* (NY Bar No. 5541354) (*pro hac vice*)
Jacek Pruski (DC Bar No. 888325144) (*pro hac vice*)
The Protect Democracy Project, Inc.
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
cameron.kistler@protectdemocracy.org
cerin.lindgrensavage@protectdemocracy.org
*Not yet admitted in D.C., practicing under supervision

Benjamin L. Berwick (MA Bar No. 679207)
(*pro hac vice*)
The Protect Democracy Project, Inc.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
ben.berwick@protectdemocracy.org

Jared Fletcher Davidson (LA Bar No. 37093)
(*pro hac vice*)
The Protect Democracy Project, Inc.
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
jared.davidson@protectdemocracy.org


**WILLKIE FARR & GALLAGHER LLP**
Michael Gottlieb (DC Bar No. 974960) (*pro hac vice*)
Robert Meyer (DC Bar No. 405632) (*pro hac vice*)
Samuel Hall (DC Bar No. 242110) (*pro hac vice*)
Meryl Conant Governski (DC Bar No. 1023549) (*pro hac vice*)
JoAnna Suriani (DC Bar No. 1645212) (*pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006-1238
Telephone: (202) 303-1000
Facsimile: (202) 303-2000
Email: mgottlieb@willkie.com
rmeyer@willkie.com
shall@willkie.com
mgovernski@willkie.com
jsuriani@willkie.com

Madeleine Tayer (NY Bar No. 5683545)
(*pro hac vice*)
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000

Facsimile: (212) 728-8111
Email: mtayer@willkie.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2022, a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case File System of the Western District of Texas, in compliance with the Federal Rules of Civil Procedure as well as via e-mail pursuant to an agreement of the parties.

*/s/ John Paredes*