UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ERIC CERVINI, WENDY DAVIS, DAVID
GINS, and TIMOTHY HOLLOWAY                          Civil Case No. 1: 21-cv-565

       Plaintiffs,                                      Honorable Robert Pitman

v.

ELIAZER CISNEROS, HANNAH CEH,
JOEYLYNN MESAROS, ROBERT,
MESAROS, JOHN DOES, JANE DOES, and
DOLORES PARK,

       Defendants.

### DOLORES PARK'S REPLY IN SUPPORT OF HER MOTION FOR THIS COURT TO AUTHORIZE AN INTERLOCUTORY APPEAL

       Plaintiffs' Complaint presents one novel, federal claim under the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3).   Since the act was passed by Congress on April 20, 1871, the act has *never* previously been applied in the manner outlined in Plaintiffs' Complaint.  Plaintiffs argue that the Ku Klux Klan act applies to purely private action without alleging racial animus and without alleging a conspiracy to interfere with the right to vote.  Instead, Plaintiffs argue that the act applies broadly to "election advocacy" activity.

       This proper scope and application of the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3) is a controlling question of law.  Cases that hinge on statutory interpretation, such as the instant case, are particularly well-suited for certification under 28 U.S.C. § 1292.  *See, e.g.*, *Vitol, Inc. v. United States*, No. 20-20237, 2022 U.S. App. LEXIS 7681, at *5 (5th Cir. Mar. 23, 2022).  The resolution of this issue in Defendant Park's favor would end this litigation.  There are no other federal claims or basis for this Court's jurisdiction.

Because Plaintiffs' allegation under the Ku Klux Klan Act presents a question of law both controlling and dispositive, because there is substantial ground for difference of opinion on this issue, and because an immediate appeal from the Order may materially advance the ultimate termination of this litigation in federal court, Defendant Park respectfully requests that this Court amend its March 23, 2022 Opinion and Order.

**I.      Plaintiffs' Claim Under the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3) Presents a Controlling Question of Law for Which There is a Substantial Ground for Difference of Opinion.**

Plaintiffs' allegations under the Ku Klux Klan Act are novel.  To support their legal theory, Plaintiffs' counsel cites to a self-authored law review article.  *See, e.g.*, Ps' Resp. at 9, 13 (citing Richard Primus & Cameron O. Kistler, The Support-or-Advocacy Clauses, 89 Fordham L. Rev. 145, 160–76 (2020)).  It should come as no surprise that counsel agrees with themselves.  However, when venturing beyond Plaintiffs' own interpretation of their legal claim, the state of the law becomes far less clear.

**A.  The Showing of Class-Based Animus Provides Substantial Ground for Difference of Opinion.**

42 U.S.C. § 1985(3) provides a cause of action to redress the following:

> If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws;

Let us pause here.  Plaintiffs have made no allegations that Ms. Park conspired with others to deny Plaintiffs the equal protection of the law or that she went "in disguise on the highway" or went "on the premises of another" for this purpose.  42 U.S.C. § 1985.  Instead, Plaintiffs have argued that they need not allege racial animus to establish their federal claim because it involves "election

advocacy." Whether a private claim is properly encompassed under the Ku Klux Klan, however, remains an open question, never squarely decided by controlling authorities.

Plaintiffs acknowledge, as the Court did in its Opinion, that "neither the Supreme Court nor the Fifth Circuit has squarely addressed whether a claim under the support-or-advocacy clauses requires a showing of racial or class-based animus." Pls' Resp. at 8, fn. 2.

The only Supreme Court case analyzing the Ku Klux Klan Act in recent years is *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993). While the Supreme Court did not expressly determine whether the election clause of the Ku Klux Klan Act required a showing of racial animus, it examined whether § 1985(3) provided a cause of action for women denied access to an abortion clinic. The Supreme Court first held that the petitioners failed to establish class-based animus under the act. *Id*. at 269. The Supreme Court analyzed whether abortion rights under the Fourteenth Amendment or the right to interstate travel created a private cause of action. The Supreme Court found they did not. Petitioners travel never crossed state lines implicating only intrastate travel, and as to abortion, "deprivation of that federal right (whatever its contours) cannot be the object of a purely private conspiracy." *Id*. at 278. The Supreme Court "was mindful of the congressional apprehension that the statute might otherwise turn out to be 'a general federal tort law.'" *Id*. at 299–300 (1993) (Souter, J., concurring) (quoting *Griffin,* 403 U.S. at 102). Therefore, without a showing of class-based animus, a claim forwarding a deprivation of a federal right cannot generally be sustained under the act if it is based on private action.

This holding is not unique but has been adopted throughout the years in various circuits. *See Griffin v. Breckenridge*, 403 U.S. 88 (1971); *Federer v. Gephardt*, 363 F.3d 754 (8th Cir. 2004); *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825 (1983); *Egan v. Aurora*, 291 F.2d 706 (7th Cir. 1961); *Jennings v. Shuman*, 567 F.2d 1213 (3d Cir. 1977) ; *Byrd*

*v. Clark*, 783 F.2d 1002 (11th Cir. 1986) ; *Nashoba Valley Christian Fellowship, Inc. v. Ayer*, 623 F. Supp. 542, 1985 U.S. Dist. LEXIS 12859 (D. Mass. 1985); *Bargainer v. Michal*, 233 F. Supp. 270 (N.D. Ohio 1964); *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096 (9th Cir. 1986); *Torres-Rosado v. Rotger-Sabat*, 335 F.3d 1 (1st Cir. 2003).

In addition to their self-penned law review article, Plaintiffs cite to one other.  The Support or Advocacy Clause of § 1985(3), 133 Harv. L. Rev. 1382 (2020).  In this note, the authors state that "[o]ver the past two years, courts have issued contradictory decisions on three fundamental questions regarding the scope and operation of the [elections] clause [of the Ku Klux Klan Act]." *Id*. at 1386.  It then lists as its first question: "does the Support or Advocacy Clause apply to conspiracies against any citizen, or only to conspiracies driven by animus for members of a protected class?"  *Id*.  As recognized by this Court, the requirement of pleading race or class-based animus is an unsettled legal question that provides substantial ground for a difference of opinion.

### B. Whether "Election Advocacy" Prompts a Private Federal Tort Provides Substantial Ground for Difference of Opinion.

We turn to the next provision in 42 U.S.C. § 1985(3),

> or if two or more persons conspire ***to prevent*** by force, intimidation, or threat, any citizen who is lawfully entitled ***to vote***, from giving his support or advocacy ***in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a member of Congress of the United States***.

(emphasis added).  Plaintiffs have made no allegations that they are lawfully qualified as electors for President or Vice President or that they are members of Congress of the United States.  Nor have they made any allegations that Ms. Park conspired to prevent Plaintiffs from voting or giving support or advocacy "**in a legal manner, toward or in favor of the election of any lawfully qualified person**." 42 U.S.C. § 1985(3) (emphasis added).

Plaintiffs argue that support or advocacy is broad and should be read separately from the phrase qualifying it, "in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a member of Congress of the United States." 42 U.S.C. § 1985(3). However, its qualifying phrase makes clear why Plaintiffs' interpretation is so novel and why it is so unsupported by case law. It provides a cause of action when a defendant prevents a plaintiff from exercising his/her voting rights, not for general claims pertaining to generalized election advocacy.

And the supermajority of cases analyzing § 1985(3) support this reading of the statute, limiting it specifically to voting rights. *See, e.g., Graham v. Clusen*, 427 F. Supp. 820, 821 (1977) (holding that while Congress had an interest in protecting an informed vote when passing § 1985(3) "***the statute specifically provides that the conspirators must have intended 'to prevent by force, intimidation, or threat' a voter from exercising that right. In this Court's view, these words clearly indicate that Congress intended that a more narrowly focused conspiracy and a more nearly total deprivation have existed***.") (emphasis added); *Gill v. Farm Bureau Life Ins. Co.*, 906 F.2d 1265 (8th Cir. 1990) (affirming district court's dismissal of claim on ground that plaintiff did not allege he was intimidated from voting); *Paynes v. Lee*, 377 F.2d 61 (5th Cir. 1967) (protecting the right to be free from voter intimidation when registering to vote); *Brooks v. Nacrelli*, 473 F.2d 955 (3d Cir. 1973) (discussing interference with voting at a designated polling location during the election); *Grimes v. Smith*, 776 F.2d 1359 (7th Cir. 1985) (holding that § 1985(3) does not provide a cause of action for politically motivated conspiracy among private parties to mislead voters in primary election); *Gray v. Darien*, 927 F.2d 69 (2d Cir.), cert. denied, 502 U.S. 856, 112 S. Ct. 170 (1991) (discussing restrictions on polling places and voting hours); *Cook v. Randolph County*,

573 F.3d 1143, 2009 U.S. App. LEXIS 15201 (11th Cir. 2009) (discussing change of voting district).

In their Response, Plaintiffs cite to two cases for their proposition that the voting rights clause in § 1985(3) is "broad" and even includes travel on the interstate or "election advocacy." In the first case, *Paynes v. Lee*, 377 F.2d 61 (5th Cir. 1967), the Fifth Circuit determined that the plaintiff had a claim under the Ku Klux Klan Act when two white men, motivated by racial animus, came to his house, and threated to "destroy or annihilate" him if he registered to vote. *Id*. at 63. The case specifically involved registering to vote in a federal election. It never extended the elections clause of § 1985(3) to amorphous "election advocacy."

The second case cited by Plaintiffs is *United State v. Goldman*, 25 F. Cas. 1350 (C.C.D. La. 1878). The portion of the dicta Plaintiffs cite dramatically misrepresents its meaning. The court in *Goldman* did not hold that advocacy should be interpreted broadly. It found that the *details of a conspiracy* regarding how the defendants planned to prevent plaintiff's support or advocacy could be broadly interpreted, so long as the details of the conspiracy could rightfully be construed as preventing the plaintiff's right to vote in the election. *Id*. at 1353-54. The court found that the acts of the alleged conspiracy, while not "giving details of time and place" of the election, were sufficient to establish what the conspiracy was aimed to prevent. *Id*. at 1352. And the Court upheld the constitutionality of the law after answering, "What was the purpose of [its] enactment? Clearly that the elector might be free to vote according to his choice." *Id*. at 1354. Plaintiffs make no allegations that they were prevented from voting in the November 2020 election.

Plaintiffs also argue that drafters of the Ku Klux Klan Act during The Reconstruction Era knew how to use the word "vote," quoting § 1985(3), and referring to the language of the statute indicating its protection would only apply to voters. Pl's Resp. at 10, fn. 4. If the statutes'

protections were to extend to all election advocacy activities, as Plaintiffs contend, why would Congress limit its application in this way.  Simply stated, it would not.  Congress intended for the act to protect the act of voting.

The Fifteenth Amendment was passed by Congress on February 26, 1869, and ratified on February 3, 1870.  It states,

> Section 1
> The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude–

> Section 2
> The Congress shall have the power to enforce this article by appropriate legislation.

U.S. Const. amend XV.  The Ku Klux Klan Act was passed as an enforcement provision for the Fourteenth and Fifteenth Amendments. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 205-07 (1970) (discussing the history of the act).

The Supreme Court has construed the act narrowly to avoid interpreting the act to include additional causes of action unintended by Congress.  "The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment." *Griffin v. Breckenridge*, 403 U.S. 88, 104 (1971).

Several courts have interpreted the act as upholding a federal conspiracy claim, but only for cases where a constitutional right has been violated because the act does not confer additional rights.  It can only enforce otherwise existing rights. *Howard v. State Dep't of Highways*, 478 F.2d 581, 585 (10th Cir. 1973) (holding that § 1985(3) "clearly create[s] no separate rights . . . but instead confer[s] remedies for enforcement of rights arising under the Constitution or federal

law."); *Grambling Univ. Nat'l Alumni Ass'n v. Bd. of Supervisors for the La. Sys.*, 286 F. App'x 864, 871 (5th Cir. 2008) ("The civil rights laws were intended to redress legitimate discriminatory conduct--they are not a solution for every possible problem."); *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) ("Having concluded that Plaintiffs' substantive claims fail on the merits, their conspiracy claim fails as well"); *Papaiya v. City of Union City*, 238 F. App'x 848, 851 (3d Cir. 2007) ("§1985 does not itself create any substantive rights but acts as a 'vehicle to vindicate [other] federal rights and privileges'").

Plaintiffs, however, ask this Court to interpret § 1985(3) in a manner that would create a new right: to create a private cause of action to protect "election advocacy." This is not supported by the history of the Ku Klux Klan Act, the text of the act, or the relevant case law. A similar argument was expressly rejected by the Supreme Court in *Bray*. 506 U.S. at 278. In sum, there is substantial ground for a difference of opinion.

The last section of the Ku Klux Klan Act states,

or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Plaintiffs' Complaint discusses an automobile accident, but none of the Plaintiffs own the vehicle that was damaged. None of the Plaintiffs have alleged injury of property. Plaintiffs' claim seemingly is based on an alleged deprivation of a right or privilege due to interference with "election advocacy." Plaintiffs, however, as private actors cannot be liable for First Amendment violations absent the involvement of state action. And there are no allegations that Plaintiffs were deprived of their right to vote. Therefore, Plaintiffs have not established an injury to sustain their

claim. *See Bray*, 506 U.S. at 278 (applying *Carpenters* v. *Scott, 463* U.S. 825, 833 (1983) and holding "Respondents' § 1985(3) 'deprivation' claim must fail, then, because they have identified no right protected against private action that has been the object of the alleged conspiracy.").

## II.   Immediate Appeal Will Materially Advance the Ultimate Termination of the Litigation.

Plaintiffs alleged only one federal cause of action.  When the outcome of an immediate appeal results in a federal court ceding its jurisdiction, federal courts find that this requirement is met.  *See McClelland v. Gronwaldt*, 958 F. Supp. 280, 283 (E.D. Tex. 1997) ("This court is of the opinion that its certification of an interlocutory appeal on the issues of federal question and supplemental jurisdiction will materially advance the ultimate termination of this case."); *see also Regal Stone Ltd. v. Longs Drug Stores, Cal*., L.L.C., 881 F. Supp. 2d 1123, 1131 (N.D. Cal. 2012) ("[A]n immediate appeal of the order would materially advance the ultimate termination of the litigation in the sense that if the motion to remand were granted, the federal courts would cede jurisdiction of this matter to the California state courts, effectively ending federal litigation of this case."); *Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1099 (C.D. Cal. 2005) ("Resolution of the issue will both materially advance the litigation and avoid the needless expenditure of judicial resources if the Court of Appeals concludes this court lacks jurisdiction.").

## CONCLUSION

Dolores Park respectfully requests this Court to grant her leave to file an application for an interlocutory appeal to the Fifth Circuit Court of Appeals.

Respectfully submitted,

/s/ Richard Thompson
**THOMAS MORE LAW CENTER**
Richard Thompson
(Admitted in Michigan, P21410)
24 Frank Lloyd Wright Dr.

Suite J-3200
Ann Arbor, MI 48106
rthompson@thomasmore.org
(734) 827-2001

Attorney for Defendant Dolores Park

Dated: April 19, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 19, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all registered ECF participants listed for this case.

Respectfully submitted,

/s/ Richard Thompson
**THOMAS MORE LAW CENTER**
Richard Thompson
(Admitted in Michigan, P21410)
24 Frank Lloyd Wright Dr.
Suite J-3200
Ann Arbor, MI 48106
rthompson@thomasmore.org
(734) 827-2001

Attorney for Defendant Dolores Park