UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERIC CERVINI, et al. | § | |
| | § | |
| Plaintiffs, | § | Civil Action |
| v. | § | |
| | § | No. 1:21-CV-565-RP |
| ELIAZAR CISNEROS, et al., | § | |
| | § | |
| Defendants. | § | |

**MESAROS DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

Defendants, Joeylynn and Robert Mesaros (collectively the "Mesaros Defendants"), move to dismiss the Plaintiffs' First Amended Complaint (ECF 151).

Like the original Complaint, the First Amended Complaint alleges a single federal cause of action (a violation of 42 U.S.C. § 1985(3) in Count I) which should be dismissed for failure to state a claim.  This claim should be dismissed because two necessary elements are entirely absent.  This court's prior order denying Defendants' first motion to dismiss, ECF Nos. 64, devoted most of its attention to the requirement *vel non* of racial animus for a claim arising under the second part of § 1985(3).  ECF 8-12.  While the Mesaros Defendants dispute the court's analysis, they do not re-brief it here, but reassert it by incorporation of their first Motion to Dismiss (ECF 24), Reply (ECF 41), and Motion to Reconsider (ECF 69).  This motion does provide further clarity regarding the necessity of state action to support a cognizable claim of interference with one's electoral "support or advocacy" *in the absence of interference with actual voting activity*.  The court's analysis of this issue in the March 23, 2022 Order—consisting of a single paragraph—fails to recognize material distinctions

(improperly conflating alleged interference with actual voting/registration and alleged interference with speech or association) and thus fails to address the actual issue.

## I.      If a Violation of 1985(3)'s "Speech or Advocacy" Provision Exists Absent Interference with Voting Itself, It Requires State Action.

Plaintiffs lodge no allegation that any Plaintiff (or anyone else) was dissuaded or affected in any way with respect to their ability to actually vote or register to vote. Instead, Plaintiffs' case centers on the claim that their "speech or advocacy"— campaign activity on behalf of their preferred presidential candidate—was impacted by Defendants. *See* First Amended Complaint (ECF No. 151) at ¶ 10 ("Davis, Gins, and others were prevented from exercising their First Amendment rights"), ¶ 49 (discussing that Plaintiffs' bus tour planned to include "rallies and gatherings in support of the Biden-Harris Campaign as well as speeches"), ¶ 145 (referring to "engaging . . . with prospective voters and exercising their First Amendment rights to freedom of speech and association"), ¶ 151 (again referring to "engaging . . . with prospective voters and exercising their First Amendment rights to freedom of speech and association"), ¶ 157 ("Plaintiffs . . . were prevented from exercising their First Amendment rights").

In its March 2022 Order, this court rejected the argument that state action was required for such a claim, reasoning that "the Fifth Circuit has previously stated that 1985(3) was created to allow plaintiffs to recover damages for interference with their *election-related rights* and is a 'specific remedy for interference by private individuals.'" ECF 64 at 12 (quoting *Paynes v. Lee*, 377 F.2d 61 (5th Cir. 1967)) (italics

added).  But the court's generalized reference to "election-related rights" obscures the material distinction between interference with actual voting or voter-registration activity (as in *Paynes*) and interference with "speech or advocacy" itself.  When this distinction is observed, Paynes loses its application, and, under the Supreme Court's rationale in *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 830 (1983), Plaintiffs cannot maintain a claim in the absence of state action.

In its brief analysis rejecting the state action requirement, this court cited the Fifth Circuit's 1967 decision in *Paynes*, and the Supreme Court's 1971 decision in *Griffin v. Breckenridge*, 403 U.S. 88 (1971), for the general proposition that "Section 1985(3) can reach 'private conspiracies to deprive others of legal rights.'"  ECF 64 at 13 (quoting *Griffin*, 403 U.S. at 104).  True enough.  But that does not answer the question in this case.  "Section 1985(3) 'provides no substantial rights itself' to the class conspired against."  *Carpenters*, 463 U.S. at 833 (quoting *Great American Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979)).  "The rights, privileges, and immunities that 1985(3) vindicates must be found elsewhere[.]"  *Id.*  Because Plaintiffs here do not allege interference with anyone's ability to vote or register to vote, their claims, like those of the nonunion workers in *Carpenters*, cannot be founded upon any constitutional or statutory right to vote, but arise only by virtue of the First Amendment's guarantee of speech and association (which Plaintiffs' Complaint itself implicitly acknowledges).  *Carpenters* held that "an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the state is involved in the conspiracy or that the aim of the

3

conspiracy is to influence the activity of the state." 463 U.S. at 830. Fully aware of

the actual violence perpetrated against the nonunion plaintiffs in the case, the

Supreme Court rejected the view that Section "1985(3) provided a remedy for every

concerted effort by one political group to nullify the influence of or do other injury to

a competing group," even "by use of otherwise unlawful means." *Id.* at 836.

*Carpenters* warned against

> making the federal courts … the monitors of campaign tactics … a role
> that the courts should not be quick to assume.  If respondents'
> submission were accepted, the proscription of § 1985(3) would arguably
> reach the claim that a political party has interfered with the freedom of
> speech of another political party by encouraging the heckling of its
> rival's speakers and the disruption of the rival's meetings.

*Id.*  Following *Carpenters*, the Eighth Circuit has affirmed the dismissal of a § 1985(3)

claim, both under the equal protection and federal-election "support or advocacy"

provisions, for lack of state action.  *Federer v. Gephardt*, 363 F.3d 754 (2004)

("[B]ecause the substantive federal right that Federer wishes to vindicate is a First

Amendment right, state action is required."); *Gill v. Farm Bureau Life Ins., Co.*, 906

F.2d 1265 (8th Cir. 1990) (holding the Ku Klux Klan act does not provide a cause of

action for an infringement of a First Amendment right without a showing of state

action).

The court was wrong in March 2022 to rely on *Paynes* and *Griffin* for the

general proposition that 1985(3) can reach purely private conspiracies.  Because this

case does not involve any alleged interference with actual voting, or racial animus,

but only claimed interference with rights based in the First Amendment, the

Supreme Court's subsequent decision in *Carpenters* speaks more directly to the issue, and requires state action.  Lacking state action, Plaintiffs are without a claim.

## II.    State Claims Should Be Dismissed

In the event the court dismisses Plaintiffs' lone federal claim, the Mesaroses further request that the court dismiss the pendent state law claims with prejudice or, at a minimum, dismiss them without prejudice, for the reasons provided in the original motion to dismiss (ECF 24 at 9-12).

## III.   In the Event the Court Declines to Dismiss the Complaint, It Should Authorize an Interlocutory Appeal to Determine the Proper Application of Section 1985(3).

If the Court does not reconsider its Order and grant the motion to dismiss, the Mesaroses request that the Court amend the Order to authorize an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Under 28 U.S.C. § 1292(b), a district court judge may certify an order for interlocutory appeal if three conditions are met: the order (1) "involves a controlling question of law"; (2) "there is substantial ground for difference of opinion" on the question; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  A district court judge certifying an order for interlocutory appeal must articulate, in writing, why the order satisfies each of these criteria.  *See Linton v. Shell Oil Co.,* 563 F.3d 556, 557–58 (5th Cir. 2009).  All three criteria are met here, and an interlocutory appeal is particularly appropriate for resolution of the important legal issues of first impression raised at the outset of this case.

### a. The disputed legal question is "controlling."

All that must be shown in order for a question to be "controlling" is "whether the issue has 'potential to have some impact on the course of ligation.'" *La. State Conference of the NAACP v. Louisiana*, 495 F. Supp. 3d 400, 413 (M.D. La. 2020) (citing *United States v. La. Generating LLC*, No. 09-100, 2012 U.S. Dist. LEXIS 142349, 2012 WL 4588437, at *1 (M.D. La. Oct. 2, 2012); *Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755, 766 (S.D. Tex. 2010)). "It is sufficient to satisfy the controlling question of law standard if resolution on appeal determines the 'future course of the litigation.'" *La. State Conference of the NAACP*, 495 F. Supp. 3d at 413 (quoting *Tesco Corp.*, 722 F. Supp. 2d at 766).

Whether Plaintiffs can maintain a claim based on allegations limited to interference with "support or advocacy" alone, without any interference with actual voting, and in the absence of state action contributing to the alleged interference with First Amendment rights or any claim of racial animus, is the controlling question in this matter. If so, then Plaintiffs can proceed; if not, then the sole federal cause of action must be dismissed. An issue could not be more "controlling" than that.

### b. Substantial ground for difference of opinion

A "substantial ground for difference of opinion" exists when (1) the question is difficult, novel, and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question. *Judicial Watch, Inc. v.*

*Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002); *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010) (en banc). An issue is novel "where reasonable jurists might disagree on an issue's resolution." *In re Trump*, 874 F.3d at 952.

This Court recognized in its March 23 Opinion and Order that "[i]ndeed, neither the Supreme Court nor the Fifth Circuit have addressed" "head on" the question "whether the second portion of § 1985(3) … lacks the requirement to plead race-based animus." ECF No. 64 at 10. The Court therefore acknowledges that it was reaching an issue of first impression in holding that allegations of racial animus are not required for a claim to proceed under some subpart of § 1985(3). That alone is an issue sufficient to support an interlocutory appeal.

But there is more. The Court's holding expands the second part of § 1985(3) to reach non-voting First Amendment "election advocacy" activities. But as *Gill* held, "[t]he independent constitutional right relating to federal elections as part of the basic institutions and processes of the national government is limited, under existing case law, to the right to vote—to cast a ballot and have it honestly counted." 906 F.2d at 1270 (requiring state action in claim implicating associational activity because "Gill does not allege that he was actually deterred from voting"). This is consistent with longstanding court decisions limiting the Act's application to *voting*. *See Paynes v. Lee*, 377 F.2d 61 (5th Cir. 1967) (interference with the specific act of registering to vote); *United States v. Williams*, 341 U.S. 70 (1951) (protecting the right to actually vote in federal elections); *Ex Parte Yarbrough,* 110 U.S. 651 (1884) (protecting the

right to cast one's vote); *United States v. Classic*, 313 U.S. 299 (1941) (protecting the right to cast one's vote in a primary election); *United States v. Wood*, 295 F.2d 772, 774 (5th Cir. 1961) (protecting the right to register to vote).  *See Mesaros Reply In Support of Mtn. to Dismiss* (ECF 41) at 4-5, 5 n.4 (distinguishing *Paynes* on this basis).  The Order thus recognizes not only a right to proceed without an element that the Fifth Circuit has otherwise always required (racial animus), but also without any allegation of interference with actual voting, or any element of state action.  Even if a claim can arise under the cited clause of § 1985(3) for interference with "support or advocacy," the notion that it can proceed without state action is contrary to Supreme Court's opinion in *Carpenters* and other Circuit precedent.

There is clearly substantial ground for difference of opinion where the Court's Order admittedly decides a novel legal issue as to racial animus, and where it contemplates a "support or advocacy" claim without any requirement of state action, contrary to Supreme Court and other Circuit precedent.

### c. Interlocutory appeal will materially advance the ultimate termination of this litigation.

Obviously, if Defendants are correct regarding the interpretation of § 1985(3), then the Plaintiffs' sole federal cause of action would be ordered dismissed.  Such a holding would clearly advance the ultimate termination of this litigation.   But "[a]n interlocutory appeal" also "materially advances the litigation when it 'saves judicial resources and litigant expense.'" *Newsome v. Young Supply Co.*, 873 F.Supp.2d 872, 878 (E.D. Mich. 2012). All parties and the Court have an interest in knowing as soon as possible whether the Plaintiffs or the Defendants are correct regarding the scope

of the Act.  The sooner that question is answered, the sooner the parties will either be spared the further expense of proceeding with the detailed discovery implicated by the live complaint (should the Mesaroses' view prevail), or know that such discovery is necessary, with perhaps some clarification of the scope of the claim(s), should the Plaintiffs' view prevail on appeal.  The worst scenario, for all involved, would be for the parties and the Court to invest time and resources for months or years before being allowed the opportunity to secure resolution of this foundational issue of statutory interpretation.

## IV.    No Prejudice to Plaintiffs

The Court may grant this motion without prejudice to the Plaintiffs.  Indeed, as noted above, all parties will benefit by a prompt resolution of the proper interpretation of the relevant statute driving this litigation.  And an interlocutory appeal would not even delay the progress of discovery unless this Court or the Court of Appeals were to grant a stay of discovery after considering a motion for same.

### CONCLUSION

The Mesaros Defendants respectfully request that the Court grant their motion to dismiss the First Amended Complaint.  In the alternative, should the Court deny the motion to dismiss, the Mesaroses request that the Court authorize an interlocutory appeal.

Respectfully submitted,

*/s/ Jerad Najvar*
Jerad W. Najvar
Texas Bar No. 24068079

9

jerad@najvarlaw.com
NAJVAR LAW FIRM, PLLC
2180 N. Loop W., Ste. 255
Houston, TX 77018
Phone:        (281) 404-4696
Facsimile:    (281) 582-4138
*Counsel for Mesaros Defendants*

### CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on February 8, 2023, the foregoing document, and any accompanying exhibits and proposed order, was served by CM/ECF upon all counsel of record.  I emailed the foregoing documents to Hannah Ceh per agreement of the parties, and I sent via First Class U.S. Mail a copy of the foregoing to Defendants Ceh, Ceh, and Kruger at the following addresses provide by Plaintiffs:

Kyle Kruger
645 Herbelin Rd.
New Braunfels, Texas 78132

Steve Ceh
18501 FM 306
Canyon Lake, Texas 78133

Randi Ceh
18501 FM 306
Canyon Lake, Texas 78133

*/s/ Jerad Najvar*
Jerad Najvar