**FILED**

August 17, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ klw
_____DEPUTY

**No. 23-_____**

In the United States Court of Appeals for the Fifth Circuit

_____

*IN RE* DOLORES PARK,

PETITIONER

_____

On Petition for Writ of Mandamus to the United States
District Court for the Western District of Texas,
Austin Division

Case No. 1:21-CV-00565-RP

_____

**PETITION FOR WRIT OF
MANDAMUS OF DOLORES PARK**

_____

Richard Thompson
Erin Elizabeth Mersino
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Dr.
Suite J 3200
Ann Arbor, MI 48106
Tel. (734) 827-2001
Fax (734) 930-7160

**Attorneys for Petitioner Dolores Park**

August 16, 2023

# CERTIFICATE OF INTERESTED PERSONS

No. 23-____

*IN RE* DOLORES PARK,

Petitioner

———————

On Petition for Writ of Mandamus to the United States
District Court for the Western District of Texas,
Austin Division
Case No. 1:21-CV-00565-RP

———————

The undersigned counsel of record certifies the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate their possible recusal or disqualification:

## 1. Petitioner and Counsel:

Petitioner and Defendant below is Dolores Park. Dolores Park is represented in the Fifth Circuit by:

Richard Thompson
Erin Elizabeth Mersino
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Dr.
Suite J 3200
Ann Arbor, MI 48106
Tel: (734) 827-2001
Fax: (734) 930-7160

i

## 2. Respondents and Counsel

As the presiding judge below, the Honorable Robert L. Pitman, U.S. District  Judge, Western District of Texas, is a Respondent.

Respondents and Plaintiffs below are Eric Cervini, Wendy Davis, David Gins, and Timothy Holloway, represented by the following counsel:

Aaron E. Nathan
Willkie Farr & Gallagher LLP
1875 K Street, NW
Washington, DC 20006
Tel: (202) 303-1172
Email: anathan@willkie.com

Anne H. Tindall
The Protect Democracy Project
2020 Pennsylvania Avenue Suite #163
Washington, DC 20006
Tel: (240) 357−1602
Fax: (929) 777−8428
Email: Anne.Tindall@Protectdemocracy.org

Ashley Fernandez Dorsaneo
Texas Civil Rights Project
1405 Montopolis Dr.
Austin, TX 78741
Tel: (512) 474−5073
Fax: (512) 474−0726
Email: ashley@texascivilrightsproject.org

Benjamin L. Berwick
The Protect Democracy Project
15 Main St., Suite 312
Watertown, MA 02472
Tel: (202) 579−4582

Fax: (929) 777–8428
Email: ben.berwick@protectdemocracy.org

Cameron 0. Kistler
The Protect Democracy Project
2020 Pennsylvania Ave. Nw, Suite #163
Washington, DC 20006
Tel: (202) 579–4582
Fax: (929) 777–8428
Email: cameron.kistler@protectdemocracy.org

Cerin Lindgrensavage
The Protect Democracy Project
2020 Pennsylvania Ave. NW, Suite #163
Washington, DC 20006
Tel: (202) 579–3854
Fax: (929) 777–8428
Email: cerin.lindgrensavage@protectdemocracy.org

Jacek Pruski
The Protect Democracy Project
2020 Pennsylvania Ave. Nw, Suite #163
Washington, DC 20006
Tel: (202) 579–4582
Fax: (929) 777–8428
Email: jacek.pruski@protectdemocracy.org

Jamielah I. Yancey
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1196
Email: jyancey@willkie.com

Jared Fletcher Davidson
The Protect Democracy Project
3014 Dauhine Street Suite J
New Orleans, LA 70117

iii

Tel: (202) 579-4582
Fax: (929) 777-8428
Email: jared.davidson@protectdemocracy.org

JoAnna Barbara Suriani
Protect Democracy
2020 Pennsylvania Avenue, NW #163
Washington, DC 20006
Tel: (202) 774−0751
Fax: (202) 303−2961
Email: joanna.suriani@protectdemocracy.org

John Paredes
The Protect Democracy Project
115 Broadway, 5th Floor
New York, NY 10006
Tel: (202) 579−4582
Fax: (929) 777−8428
Email: john.paredes@protectdemocracy.org

Madeleine Tayer
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728−8914
Fax: (212) 728−9914
Email: mtayer@willkie.com

Meryl Conant Governski
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006
Tel: (202) 303−1016
Fax: (202) 303−2000
Email: mgovernski@willkie.com

Michael J. Gottlieb
Willkie Farr & Gallagher LLP

1875 K Street, N.W.
Washington, DC 20006
Tel: (202) 303−1442
Fax: (202) 303−2442
Email: mgottlieb@willkie.com

Mimi M.D. Marziani
Texas Civil Rights Project
1405 Montopolis Drive
Austin, TX 78741
Tel: (512) 474−5073 x108
Fax: (512) 474−0726
Email: mimi@texascivilrightsproject.org

Rebecca N. Heath
Willkie Farr & Gallagher LLP
1875 K Street Nw
Washington, DC 20006
Tel: (202) 303-1113
Fax: (202) 303-2000

Robert J. Meyer
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006
Tel: (202) 303−1123
Fax: (202) 303−2123
Email: rmeyer@willkie.com

Rodkangyil Orion Danjuma
The Protect Democracy Project
115 Broadway, 5th Floor
New York, NY 10006
Tel: (917) 364−0484
Fax: (917) 777−8428
Email: orion.danjuma@protectdemocracy.org

Samuel Gilbert Hall

Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006
Tel: (202) 303−1443
Fax: (202) 303−2443
Email: shall@willkie.com

Sarah Xiyi Chen
Texas Civil Rights Project
1405 Montopolis Dr
Austin, TX 78741
Tel: (512) 474-5073
Email: schen@texascivilrightsproject.org

Veronikah Rhea Warms
Texas Civil Rights Project
1405 Montopolis Dr
Austin, TX 78741
Tel: (512) 474-5073
Email: veronikah@texascivilrightsproject.org

Christina Marie Beeler
Texas Civil Rights Project
2100 Travis Street
Suite 360
Houston, TX 77002
Tel: (512) 914-1249
Email: christinab@texascivilrightsproject.org

Emma Eileen Hilbert
Texas Civil Rights Project
1405 Montopolis Drive
Austin, TX 78741
Tel: (512) 474−5073
Fax: (512) 474−0726
Email: emma@texascivilrightsproject.org

Respondents and Defendants below are Eliazar Cisneros, Hannah

Ceh, Steve Ceh, Randi Ceh, Kyle Kruger, Joeylynn Mesaros, and Robert

Mesaros, represented by the following counsel and *in pro per*:

Attorney for Eliazar Cisneros
Francisco R. Canseco, Attorney at Law
19 Jackson Court
San Antonio, TX 78230
Tel: (210) 901−4279
Email: frcanseco@gmail.com

Hannah Ceh, *in pro per (terminated)*
2039 Wind Chime Way
New Braunfels, TX 78130
Tel: (830) 743−1443

Steve Ceh, *in pro per*

Randi Ceh, *in pro per*

Kyle Kruger, *in pro per (terminated)*
645 Herbelin Rd.
New Braunfels, TX 78132

Attorney for Joeylynn and Robert Mesaros
Jerad W. Najvar
Najvar Law Firm, PLLC
2180 N. Loop W., Ste. 255
Houston, TX 77018
Tel: (281) 404-4696
Fax: (281) 582-4138
Email: jerad@najvarlaw.com

Attorney for Joeylynn and Robert Mesaros
Austin Whatley
Najvar Law Firm

2180 N. Loop W., Ste 255 Houston, TX 77018
Tel: (281) 404–4696
Fax: (281) 582–4138
Email: austin@najvarlaw.com

THOMAS MORE LAW CENTER

RICHARD THOMPSON
President and Chief Counsel

*/s/ Erin Elizabeth Mersino*
Erin Elizabeth Mersino

*Attorneys for Petitioner Dolores Park*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS……………..……………i

TABLE OF AUTHORITIES……………………………………………..xi

STATEMENT REGARDING ORAL ARGUMENT…………….………1

STATEMENT OF RELIEF SOUGHT…………………………………..2

STANDARD OF REVIEW………………………………….………...2

INTRODUCTION…………………………………………..………4

ISSUES PRESENTED……………………………………….………6

STATEMENT OF FACTS & PROCEDURAL HISTORY…………...……6

    **I.**    Factual Background……………………………………6

    **II.**    Procedural History………………………….……………11

  ARGUMENT………………………………………..…………....19

  I.    Ms. Park Has No Other Adequate Means to Attain
      the Relief She Desires……………………………………20

  II.    A Writ of Mandamus is Appropriate……………………24

  III.  Ms. Park Has a Clear and Indisputable Right to the Writ…...26

    A.    The District Court Clearly Erred Because It is Beyond
        Dispute that the Act Does Not Create a Private Tort for a
        Deprivation of "Election-related" Speech—Without Alleging
        State Action…………………………………………………27

    B.    The Act Does Not Create a Private Tort to Punish

Deprivations of the Right to Political Speech; Only the Deprivations Concerning the Right to Vote............................32

C.    The Act Requires a Showing of Racial Animus if a Plaintiff Seeks Damages for a Deprivation of Rights Without Alleging a State Action Conspiracy.......................................................33

D.    The Act Requires Plaintiffs Plausibly Allege Defendants Conspired for an Unlawful Purpose.....................................35

CONCLUSION.....................................................................36

CERTIFICATE OF SERVICE...............................................38

CERTIFICATE OF COMPLIANCE.......................................39

# TABLE OF AUTHORITIES

## Cases

*Andrews v. D'Souza,*
Case No. 1:22-cv-04259-SDG (N.D. Ga)………………………….…….……25

*Batiste v. Island Records, Inc.,*
179 F.3d 217 (5th Cir. 1999)……………………………………………..18

*Bray v. Alexandria Women's Health Clinic,*
506 U.S. 263 (1993)……………………………………….18, 26, 28, 29, 35

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,*
531 U.S. 288 (2001)…………………………………………………….31

*Brooks v. Nacrelli,*
473 F.2d 955 (3d Cir. 1973)…………………………………………….30

*Carpenters v. Scott,*
463 U.S. 825 (1983)………………………………………26, 28, 29, 35

*Chaney v. Races & Aces,*
590 F. App'x 327 (5th Cir. 2014)……………………………………….35

*Cheney v. U.S. Dist. Court for D.C.,*
542 U.S. 367 (2004)………………………………………….19, 20, 27

*Cook v. Randolph County,*
573 F.3d 1143, 2009 U.S. App. LEXIS 15201 (11th Cir. 2009)…………..30

*Egan v. Aurora,*
291 F.2d 706 (7th Cir. 1961)……………………………………..…..36

*Elrod v. Burns,*

427 U.S. 347 (1976)..................................................................24

*Experimental Holdings, Inc. v. Farris*,
503 F.3d 514 (6th Cir. 2007)..........................................................18

*Federer v. Gephardt*,
363 F.3d 754 (8th Cir. 2004)....................................................29, 30

*Gerber v. Herskovitz*,
14 F.4th 500 (6th Cir. Sept. 15, 2021)..............................................29

*Gill v. Farm Bureau Life Ins. Co. of Missouri*,
906 F.2d 1265 (8th Cir. 1990).......................................13, 29, 30, 31

*Graham v. Clusen*,
427 F. Supp. 820 (D.D.C. Feb. 24, 1977)..........................................32

*Grambling Univ. Nat'l Alumni Ass'n v. Bd. of Supervisors for the La.
Sys.*, 286 F. App'x 864 (5th Cir. 2008)..............................................28

*Gray v. Darien*,
927 F.2d 69 (2d Cir. 1991)..............................................................30

*Griffin v. Breckenridge*,
403 U.S. 88 (1971).........................................................4, 29, 34, 35

*Grimes v. Smith*,
776 F.2d 1359 (7th Cir. 1985)..........................................................30

*Hilliard v. Ferguson*,
30 F.3d 649 (5th Cir. 1994)..............................................................35

*Howard v. State Dep't of Highways*,
478 F.2d 581 (10th Cir. 1973)..........................................................28

*In re Burlington N., Inc.*,
822 F.2d 518 (5th Cir. 1987)............................................................20

*In re Dean*,

527 F.3d 391 (5th Cir. 2008)..............................................................20

*In re Digicon Marine, Inc.,*
966 F.2d 158 (5th Cir. 1992)...............................................................3

*In re Dresser Indus., Inc.,*
972 F.2d 540 (5th Cir. 1992)...............................................................2

*In re Estelle,*
516 F.2d 480 (5th Cir. 1975)...............................................................3

*In re First S. Sav. Ass'n,*
820 F.2d 700 (5th Cir. 1987)...............................................................3

*In re Gee,*
941 F.3d 153 (5th Cir. 2019)........................................................19, 22

*In re Horseshoe Entm't,*
337 F.3d 429 (5th Cir. 2003)..............................................................21

*In re JPMorgan Chase & Co.,*
916 F.3d 494 (5th Cir. 2019)..............................................................24

*In re Lloyd's Register N. Am., Inc.,*
780 F.3d 283 (5th Cir. 2015)..............................................................24

*In re Paxton,*
60 F.4th 252 (5th Cir. 2023)..............................................................21

*In re Volkswagen of Am., Inc.,*
545 F.3d 304 (5th Cir. 2008)....................................................3, 21, 24

*Johnson ex rel. Wilson v. Dowd,*
305 F. App'x 221 (5th Cir. 2008).........................................................35

*Kimble v. D. J. McDuffy, Inc.,*
648 F.2d 340 (5th Cir. 1981)..............................................................34

*Kinney v. Weaver,*

367 F.3d 337 (5th Cir. 2004)..........................................................36

*Kush v. Rutledge,*
460 U.S. 719 (1983)....................................................................30

*Lugar v. Edmondson Oil Co.,*
457 U.S. 922 (1982)..............................................................28, 29

*Montoya v. FedEx Ground Package Sys.,*
614 F.3d 145 (5th Cir. 2010).....................................................36

*Olsen v. Idaho Bd. of Med.,*
363 F.3d 916 (9th Cir. 2004)......................................................35

*Opelika Nursing Home, Inc. v. Richardson,*

448 F.2d 658 (5th Cir. 1971)........................................................3

*Park v. City of Atlanta,*
120 F.3d 1157 (11th Cir. 1997)...................................................35

*Paynes v. Lee,*
377 F.2d 61 (5th Cir. 1967)...........................................30, 32, 33

*Pulliam v. Allen,*
466 U.S. 522 (1984)....................................................................19

*SEC v. Krentzman,*
397 F.2d 55 (5th Cir. 1968)...........................................................3

*Sims v. ANR Freight Sys., Inc.,*
77 F.3d 846 (5th Cir. 1996).........................................................37

*United Mine Workers of Am. v. Gibbs,*
383 U.S. 715 (1966)....................................................................18

*United States v. Bertoli,*
994 F.2d 1002 (3d Cir. 1993).......................................................25

*Wackman v. Rubsamen*,
602 F.3d 391 (5th Cir. 2010)……………………………………………...35

*Webb v. Goord*,
340 F.3d 105 (2d Cir. 2003)………………………………………………35

## Federal Statutes and Court Rules

28 U.S.C. § 1292(b)…………………………………………………*passim*

28 U.S.C. § 1367………………………………………………………18

28 U.S.C. § 1367(c)(3) ………………………………………………18

28 U.S.C. § 1651(a)……………………………………………………19

42 U.S.C. § 1985(3)……………………………………………*passim*

Fed. R. Civ. P. 12(b)(1)……………………………………12, 17, 20

Fed. R. Civ. P. 12(b)(6)……………………………………12, 17, 20

## Other Resources

Farewell Letter of Bob Dole,
https://www.businessinsider.com/bob-dole-voter-fraud-joke-farewell-
letter-funeral-service-2021-12………………………………………………8

Richard Primus & Cameron O. Kistler,
*The Support-or-Advocacy Clauses*, 89 Fordham L. Rev. 145 (2020)……25

United States Senate Historical Office,
"The Enforcement Acts of 1870 and 1871,"
https://www.senate.gov/artandhistory/history/common/generic/Enforcem
entActs.htm…………………………………………………………………4

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner Dolores Park requests oral argument.  The District Court interpreted the Ku Klux Klan Act of 1871 ("the Act") in a manner universally rejected by all other courts since the Act's inception approximately 150 years ago.  42 U.S.C. § 1985(3).  The District Court's clear error must be corrected at the earliest possible time.  Plaintiffs' frivolous Ku Klux Klan claim against Ms. Park requires dismissal.  And since it is the only basis for providing federal court jurisdiction, the case below should be dismissed for want of jurisdiction.

The District Court's orders below advance an unsound, universally rejected use of the Act that will have wide-sweeping negative consequences.  It threatens First Amendment rights and weaponizes the Act, morphing it into a general tort claim to hurl at one's political foes.  Oral argument is likely to assist the Court in its resolution of this serious matter.

## STATEMENT OF RELIEF SOUGHT

Petitioner Dolores Park (hereinafter Ms. Park) requests a writ directing the District Court to (i) vacate its denial of Ms. Park's motions to dismiss, App. 22-35 and 78-86, and issue an order dismissing the claims against her because Plaintiffs have failed to state a claim under the Act, or in the alternative (ii) vacate its denial to certify an interlocutory appeal, App. 36-42 and 78-86, and direct the District Court to certify this appeal under 28 U.S.C. § 1292(b) so the matter may be reviewed by this Court without delay.

Ms. Park also seeks a stay of the District Court's scheduling order and the proceedings below to allow this Court time to consider this petition for writ of mandamus.

## STANDARD OF REVIEW

Mandamus relief is appropriate "when the trial court has exceeded its jurisdiction or has declined to exercise it, or when the trial court has so clearly and indisputably abused its discretion as to compel prompt intervention by the appellate court." *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir.1992). Mandamus may correct the District Court's discretionary and non-discretionary decisions. When the District Court

violates a non-discretionary duty, a party necessarily has a clear and indisputable right to relief. *In re Digicon Marine, Inc.*, 966 F.2d 158, 160 (5th Cir. 1992) (granting mandamus because "the district court had no discretion" not to remand a case to state court when the cause of action failed to establish federal question jurisdiction); *see also In re Volkswagen of Am., Inc.,* 545 F.3d 304, 318–19 (5th Cir. 2008); *In re Estelle*, 516 F.2d 480, 483 (5th Cir. 1975); *SEC v. Krentzman*, 397 F.2d 55, 59 (5th Cir. 1968).   A District Court's duty to properly consider a challenge to its subject-matter jurisdiction is non-discretionary. *Opelika Nursing Home, Inc. v. Richardson*, 448 F.2d 658, 666 (5th Cir. 1971).

If the issue is discretionary, mandamus is appropriate when the issue involves "a clear and indisputable right to the issuance of the writ of mandamus" when the "district court has clearly abused its discretion, such that it amounts to a judicial usurpation of power." *In re First S. Sav. Ass'n*, 820 F.2d 700, 707 (5th Cir. 1987).  "[A]n extremely bad judicial decision might justify mandamus under the rubric of 'usurpation.'" *In re Estelle*, 516 F.2d at 488 (internal citation omitted).  The District Court's decision to certify an appeal under 28 U.S.C. § 1292(b) is discretionary. This petition satisfies both standards.

# INTRODUCTION

Approximately 150 years ago, Congress passed the Ku Klux Klan Act to protect the voting rights of Americans unlawfully targeted against due to the color of their skin by hate groups, such as the members of the vile namesake of the Act. *See, e.g.*, *Griffin v. Breckenridge,* 403 U.S. 88, 102-05 (1971); United States Senate Historical Office, "The Enforcement Acts of 1870 and 1871," available at https://www.senate.gov/artandhistory/history/common/generic/Enforcem entActs.htm, last visited August 14, 2023. Undeterred by the history of the Act, its plain language, or the Supreme Court's limitations on the Act since its inception, Plaintiffs Wendy Davis, Eric Cervini, David Gins, and Timothy Holloway ("Plaintiffs") filed this lawsuit alleging that Ms. Park, a private citizen, violated the Act's "support-or-advocacy" clause. App. at 55-86.

Four clear errors plague the District Court's decisions:

1) A claim under the Act's support-or-advocacy clause that alleges a violation of First Amendment rights requires that Plaintiffs plausibly establish that the private citizen conspired *with a state actor*. Plaintiffs never allege this. And the District Court just glossed over this

requirement.  App. at 55-68, 69-75, 76-77, and 78-86.

2) The District Court treated political speech, taking place days before the November 3, 2020 election, the same thing as the act of voting. The latter is actionable under the Act without a showing of a conspiracy with state actors, but the former not.  The District Court drew no distinction between the right to speak and the right to vote and how the activities are treated quite differently under the Act.

3) A claim under the Act, brought against a private citizen without any showing of state action in the conspiracy, requires plausible allegations of racial animus to state a claim.  Plaintiffs provide none, nor did the District Court require it.

4) Under the Act, Plaintiffs must establish plausible facts that the defendants conspired to carry out an unlawful purpose.  Here, there are no factual allegations that Defendants conspired to engage in unlawful activity pled with specificity.  All that is pled: overly dramatic hyperbole, threadbare recitals, and conclusions.

In sum, Plaintiffs' allegations fail to meet the elements required to state a claim under the Act.  Their lawsuit presents no federal claim.  The District Court clearly erred.

## ISSUES PRESENTED

I.      Whether the District Court clearly erred by denying Ms. Park's motions to dismiss when no defendant ever in history has been held liable under the Act under the legal theory Plaintiffs allege?

II.     Whether Ms. Park should continue to be subjected to Plaintiffs' frivolous and politically motivated claims when they cannot, under any circumstances, state a claim for which relief should be granted?

III.    Did the District Court abuse its discretion by failing to certify immediate appellate review under 28 U.S.C. § 1292(b)?

## STATEMENT OF FACTS & PROCEDURAL HISTORY

### I.      Factual Background

On October 30, 2020, Plaintiffs exercised their political expression on the highways and streets of Texas via a "25-ton" bus wrapped in campaign logos and slogans for the Biden-Harris ticket. App. at 55, 442.[1]

---

[1] No allegations establish that Plaintiff Cervini was ever even on the Biden-Harris bus. *See* App. at 466, ¶ 73; 467, ¶ 75-77 (describing that Plaintiffs Holloway and Gins were on the bus) and App. at 467, ¶ 77 (stating that "Plaintiff Cervini was driving about a mile ahead of the bus, and other Biden-Harris campaign and political aides and volunteers, including Campaign Staffer A, were driving in vehicles accompanying the bus."). While it is unclear from Plaintiffs' allegations how Ms. Park



App. at 153.   The Biden-Harris bus frequently attracted counter-protestors on the public highway in various cities in Texas.   App. at 50-55 and 455-59.   Given the size and appearance of the bus, including that it was fully wrapped in political messaging, it would be surprising had it not attracted speech and assembly of other political voices, both in support and opposition.

Plaintiffs' Complaint discusses events, groups, and communications that have no connection to Ms. Park.   App. at 454- 59. And Plaintiffs' allegations fail to specify any connection between Ms. Park and these events, groups, and communications.   App. at 454- 59.[2]

_____

entered into an unlawful conspiracy to deprive any of the Plaintiffs of their First Amendment rights, it is especially inexplicit for Plaintiff Cervini.

[2] Throughout this litigation, Plaintiffs seemingly associate Ms. Park with random people in other cities throughout the State of Texas to whom she has no connection.  Plaintiffs allege other people who supported Donald Trump in the 2020 election attended events armed, behaved rudely in gesture and language, interacted poorly with children, and even followed

Plaintiffs state that the Biden-Harris campaign stopped pre-announcing all of their bus tour stops in Texas.  App. at 461, ¶ 63.  Therefore, Defendants would not have known where the bus was stopping for Plaintiffs to share their campaign-related speech.  App. at 461, ¶ 63.

Ms. Park is not frequently mentioned in Plaintiffs' allegations.  In most instances when her name is mentioned, the allegations provide only dramatic hyperbole, conclusions, and threadbare recitals void of factual specificity.  Plaintiffs allege:

- At some point in time, Ms. Park posted a graphic on Facebook that said "Join Us Friday 12:30 Location: STAY TUNED!  BRING FLAGS & WEAR YOUR TRUMP GEAR."  App. at 460, ¶ 60.  The graphic also said, "WE WILL GREET THE BIDEN BUS TRUMP STYLE."  App. at 460, ¶ 60.

- Ms. Park entered the public highway and drove behind the

_____

the Biden-Harris bus in a hearse (which Plaintiffs seem to take as a death threat even though it forwards a longstanding joke that democrats obtain votes from dead people).  App. at 455-59; *see also* Farewell Letter of Bob Dole, available at https://www.businessinsider.com/bob-dole-voter-fraud-joke-farewell-letter-funeral-service-2021-12, last visited Aug. 14, 2023.  To be clear, just like the absence of any meaningful link between Ms. Park and the other Defendants, there is no substance linking Ms. Park to such allegations.

Biden-Harris bus.  App. at 72, ¶ 86 and 471, ¶ 91.

- Ms. Park posted to Facebook that she is escorting the Biden-Harris bus as it leaves San Antonio, followed by an "LOL" next to a picture of her vehicle with a Trump bumper sticker and flag as it travels behind the bus.  App. at 72, ¶ 86 and 471, ¶ 91.

- Ms. Park's vehicle implausibly somehow "assisted" a gray F-150 "driven by a John Doe" as the F-150 (not Ms. Park's vehicle) allegedly deaccelerates in front of the bus.  App. at 72, ¶ 86 and 473, ¶ 94.  Despite its palpable improbability, Plaintiffs allege that Ms. Park entered into an unspoken agreement with "John Doe" (identity unknown) to "assist" him in "boxing the bus in."  App. at 473, ¶ 94.  In the First Amended Complaint, immediately beneath this allegation are pictures of other vehicles—not Ms. Park's.  On the following page, the First Amended Complaint shows a photograph of Ms. Park's vehicle safely in a separate lane from the bus, a distance ahead of it.  App. at 474.

- There are no allegations Ms. Park knew or ever communicated with the unknown driver of the F-150.  There is no description to support or explain Plaintiffs' conclusion that Ms. Park somehow "assisted" the unknown driver.

- No allegations prove or suggest that Ms. Park conspired with the unknown driver for the purpose of him slowing down in front of the bus or for the purpose of silencing Plaintiffs' political speech at campaign events.

- Ms. Park comments that the Biden-Harris bus is "surrounded by Trump flags!" App. at 80, ¶ 92.

- Ms. Park comments that she allows vehicles to go into front of her on the freeway and is avoiding vehicles that are trying to cut in front of her. App. at 80, ¶ 92 and 478-79, ¶ 100.

- She expresses excitement that her pro-Trump viewpoint is well represented. App. at 478-79, ¶ 100.

- Ms. Park ambiguously comments on her Facebook that: "If my husband sees me like this he's going to kill me for driving like this!" App. at 478-79, ¶ 100. This statement, however, is not presented in connection with any factual allegations involving Plaintiffs. The statement has no meaningful context. It is presented immediately after Ms. Park says that the "Biden bus is surrounded by Trump flags!" App. at 478-79. Plaintiffs never explain what "like this" means.

- The allegations against Ms. Park demonstrate that she only

intended to lawfully exercise her right to free speech by displaying her Trump flag and joining with others for the purpose of voicing support for Donald Trump.   App. at 460 (describing the purpose of meeting as "bringing a flag and wearing Trump gear"); App. at 478-79 (same).

In sum, Plaintiffs' allegations claim that 1) Ms. Park, by being near an unknown driver (aka "John Doe") on the public highway, somehow "assisted" him (we are not told how) and subsequently the unknown driver (not Ms. Park) slowed down in front of the bus (for an unidentified period of time), and 2) that Ms. Park made some ambiguous statements on Facebook, and she openly supported Trump in the 2020 election.  This is not enough to establish factual plausibility, nor legal sufficiency. Plaintiffs have failed to state a claim under the Act.

## II.   Procedural History

On June 24, 2021, Plaintiffs filed their Complaint.  App. at 87-148. On August 30, 2021, Ms. Park motioned to dismiss the one federal claim against her, brought under the Act, and for the District Court to dismiss the state claims for want of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and (6).  App. at 149-70.  Seven months later on March 23, 2022, the District Court entered an Opinion and Order denying Ms.

11

Park's motion to dismiss, along with three other motions to dismiss filed by Defendants Eliazer Cisneros, Hannah Ceh, and Joeylynn and Robert Mesaros, (Doc. Nos. 22, 24, 25, 33, 40, 41).  App. at 55-68.

Notably, the District Court did not address Ms. Park's Fed. R. Civ. P. 12(b)(1) motion and treated her motion as only filed under Fed. R. Civ. P. 12(b)(6).  App. at 60.  The District Court acknowledged that Ms. Park forwarded two arguments.  First, the case should be dismissed because the Act does not create a cause of action against a private actor for a deprivation of First Amendment rights and, second, because the pleadings established no racial animus.  App. at 61.

The District Court began by addressing whether alleging class-based animus was required.  App. at 62.  The District Court found that this inquiry involved an unresolved question of law: "Notably, the Court has not reached the issue of whether the second portion of § 1985(3), which, like the first portion of § 1985(2) also lacks the 'equal protection' language, likewise lacks the requirement to plead race-based animus." App. at 59-64. The District Court characterized U.S. Supreme Court precedent on this issue as leaving its resolution "open." App. at 64.  The District Court stated that "neither the Supreme Court nor the Fifth

12

Circuit have addressed this question head-on" and then concluded that 42 U.S.C. § 1985(3) of the Act did not require any showing of racial animus.  App. at 64-65.

In coming to its erroneous decision, the District Court relied on out-of-jurisdiction authority for the supposition that election-based claims under the Act have a relaxed pleading standard.  *Gill v. Farm Bureau Life Ins. Co. of Missouri*, 906 F.2d 1265, 1269 n.21 (8th Cir. 1990). The holding in *Gill*, however, highlighted the narrow circumstances under which a plaintiff may use the Act as a mechanism to vindicate the interference with one's right to vote. *Id*. at 1270-71 (discussing that the right is limited "to the right to vote."). The Eighth Circuit then determined the claims at issue in *Gill* were ***not*** voting claims implicating the right to vote but conduct implicating the First Amendment and rejected the claims for want of establishing state action. *Id*.  *Gill* supports dismissal.  Under all existing precedent since the Act was passed over 150 years ago, one would have expected the same result here.

The District Court's next holding was just as surprising and erroneous.  The District Court found that to state a claim under 42 U.S.C. § 1985(3) of the Act, it is enough for a plaintiff to allege a deprivation of

"election-related" speech.  App. at 83.  No longer would the Act just provide a private cause of action for voting, but according to the District Court, the Act's purview now extends to private infringements of free speech.  App. at 83.

The District Court then held that Plaintiffs sufficiently pled a conspiracy because their allegations established that Defendants "coordinated" to be involved in a "Trump Train."  App. at 66.  The District Court never addressed that the Complaint shows no communications between Ms. Park and the other Defendants.  There are no allegations that she ever received any communications from other Defendants, or that they received or knew of her Facebook.  The District Court seemed satisfied to assume that everyone supporting Donald Trump on I-35 that day must have agreed to the same plan and to the same unlawful goals. The District Court concluded that being involved in a Trump Train meant agreement to engage in "dangerous or reckless driving" for the purpose of depriving Plaintiffs of speaking at campaign events.  App. at 66.  The District Court believed that the implausible allegations that Ms. Park entered into an agreement with an unknown driver of an F-150 while driving on the highway and assisted (we are never told how) the unknown

driver to "box in" the 25-ton bus substantiated Plaintiffs' conspiracy theory. App. at 66.

Lastly, the District Court made short shrift of Ms. Park's principal argument for why Plaintiffs' claim under the Act must fail: a claim alleging a deprivation of First Amendment rights must be accompanied by a showing of state action. The Act was never meant to create a private cause of action for this deprivation, nor has it ever been interpreted this way before. The District Court never squarely addressed this fatal flaw. Instead, the District Court repeated its erroneous conclusion that since "voting" is protected under the Act, so is Plaintiffs' "election-related" speech. App. at 66-67.

On March 29, 2022, Ms. Park filed an emergency motion requesting that the District Court certify an interlocutory appeal. App. at 327-44, 383-92. On August 19, 2022, the District Court denied Ms. Park's motion finding that even though it previously found the interpretation of the requirements of the Act were "open" and undecided by the Supreme Court and Fifth Circuit, the motion did not present a question of "controlling law to which there is substantial ground for difference of opinion." *Compare* App. at 64 to App. at 74. The District

Court also held that certification would not "materially advance the ultimate termination of the litigation" because Plaintiffs brought state-law claims and another case against the San Marcos Police Department was also filed in the Western District of Texas before Judge Pitman with the same Plaintiffs. However, the cases have been litigated separately. Discovery has not been combined. There have been no shared depositions. The District Court stated that "*Cervini v. Stapp*, 1:21-cv-568, is dependent on the continuing litigation in this case." App. at 74. But, it never explained how. To Defendants in this case, that conclusion brings only stupefaction.

On October 28, 2022, Plaintiffs motioned for leave to file a First Amended Complaint. App. at 393-402. Ms. Park opposed the motion as futile because Plaintiffs failed to state a claim under the Act. App. at 403-426. The District Court held that since it "already denied [Ms.] Park's motion to dismiss for failure to state a claim" and since Ms. Park "has not met her burden to show the claims would be futile," it found "no substantial reason to deny leave." App. at 77.

On January 18, 2023, Plaintiffs filed their First Amended Complaint. App. at 440-504. In response, Ms. Park filed a second motion

to dismiss and again requested that the District Court certify an interlocutory appeal under 28 U.S.C. § 1292(b).  App. at 505-513.  On August 3, 2023, the District Court denied her motions, as well as the motions to dismiss filed by Joeylynn Mesaros, Robert Mesaros, and Eliazar Cisernos.  App. at 78-86.

In its Opinion, the District Court provided the standard of review for Fed. R. Civ. P. 12(b)(1) and (6) motions and for certification of an appeal under 28 U.S.C. § 1292(b) but provided little to no analysis.  App. at 80-82.  The District Court merely found that it had already ruled on Ms. Park's arguments in and "finds no reason to deviate from its prior findings."  App. at 83.[3]

---

[3] The District Court's ruling on Plaintiffs' patently frivolous state-law assault claim shows just how far the District Court will go to rule in Plaintiffs' favor, no matter how erroneous or ill-advised.  Claim III of Plaintiffs' First Amended Complaint is entirely devoid of any plausible factual allegations related to Ms. Park.  It states, "Defendants Cisneros, Kruger, and Robert Mesaros intentionally and/or knowingly threatened Plaintiffs" and then proffers allegations regarding Defendants Cisneros, Kruger, and Robert Mesaros' driving.  *See* App. at 500-01, ¶ 160-61; *see also* App. at 481-89, ¶¶ 110-117; App. at 481, ¶ 110.  Beyond a generalized legal conclusion in Paragraph 162 which simply adds Ms. Park's name to the list of Defendants, there is no explanation how she assisted or took part in the alleged assault.  App. at 500-01, ¶¶ 159-162; *see* App. at 506-09 and App. at 541-44 (providing Ms. Park's full argument).

Ms. Park now files this petition for a writ of mandamus, seeking relief from the District Court's clear errors.  Contrary to the holdings of the District Court, Plaintiffs' allegations do not establish a violation of the Act, but a failure to mirror Plaintiffs' political orthodoxy.  This case reflects the sad state to which the country's politics have divulged and how low politically motivated individuals will go to castigate those who hold differing beliefs in the court of law.  Some cases present close questions of law.  This one does not.  The District Court failed to follow the law, so we need you to.

---

Yet even more unusual, when denying certification for interlocutory appeal, the District Court alluded to its discretion to exercise supplemental jurisdiction over Plaintiffs' state law claims—which were at the pleading stage, just after denial of Ms. Park's first motion to dismiss—was a reason not to certify. App. at 79-80 (noting that Plaintiffs argue against certifying because "it would not prevent Plaintiffs from continuing to pursue their state law claims" and therefore certification "would not materially advance the termination of this litigation."). While 28 U.S.C. § 1367 authorizes a federal district court to exercise supplemental jurisdiction over state law claims in some circumstances, "[g]enerally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); 28 U.S.C. § 1367(c)(3).  And when all federal claims are dismissed before trial, the District Court has a "powerful reason" to decline pendant jurisdiction of state-law claims. *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).

## ARGUMENT

Under the All Writs Act, this Court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004). Yet, because mandamus "is one of the most potent weapons in the judicial arsenal, three conditions must be satisfied before it may issue." *Ibid.* (quotation omitted). Although mandamus is issued "in theory to prevent [a judge] from exceeding his jurisdiction or to require him to exercise it, . . . "[i]n practice" it can appropriately provide relief for "all manner of errors." *Pulliam v. Allen*, 466 U.S. 522, 532-33 (1984); *In re Gee*, 941 F.3d 153, 158 (5th Cir. 2019).

"A writ of mandamus may issue only if (1) the petitioner has 'no other adequate means' to attain the desired relief; (2) the petitioner has demonstrated a right to the issuance of a writ that is 'clear and indisputable;' and (3) the issuing court, in the exercise of its discretion, is satisfied that the writ is 'appropriate under the circumstances.'" *In re Dean*, 527 F.3d 391, 394 (5th Cir. 2008) (quotation and citation omitted); *see also Cheney*, 542 U.S. at 380–81. "These hurdles, however demanding, are not insuperable." *Id.* at 381. And "[t]his case presents

the exceptional circumstances making mandamus review appropriate." *In re Burlington N., Inc.*, 822 F.2d 518, 522-23 (5th Cir. 1987).

The District Court clearly erred by denying Ms. Park's Fed. R. Civ. P. 12(b)(1) and (6) motions.  It abused its discretion by failing to certify an interlocutory appeal under 28 U.S.C. §1292(b).  Ms. Park has (1) "no other adequate means to attain the relief [s]he desires." *Cheney*, 542 U.S. at 380, (2) "the writ is appropriate under the circumstances." *id.* at 381, and (3) Ms. Park has a "clear and indisputable right to the writ." *Id.*  This Court should issue a writ of mandamus to correct the District Court's errors.

## I.      Ms. Park Has No Other Adequate Means to Attain the Relief She Desires.

Ms. Park seeks immediate interlocutory review of the District Court's clearly erroneous rulings.  She has no other adequate means available to her for this relief.  Ms. Park has twice motioned to dismiss Plaintiffs' complaints and has twice been denied.  App. at 149-70, 505-13. She has opposed the filing of Plaintiffs' First Amended Complaint to no avail.  App. at 403-26.  And she has twice motioned for the District Court to certify an interlocutory appeal under 28 U.S.C. § 1292 (b).  App. at 327-44, 505-13.  The District Court has denied this motion twice as well.

App. at 69-75, 78-86.  There is nothing more Ms. Park can do under the Federal Rules to obtain immediate relief from the District Court's patently egregious errors.

Further, the District Court's unlawful exercise of federal jurisdiction imposes special harm.  First, it forces Ms. Park to litigate this case in federal court when Plaintiffs have pled no federal cause of action.  The state court is the proper venue for the adjudication of Plaintiffs' state law claims.  *See, e.g., In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc) (stating that mandamus can be appropriate to challenge the denial of a venue transfer); *In re Horseshoe Entm't*, 337 F.3d 429, 432 (5th Cir. 2003) (same).

Ms. Park has been noticed to be deposed.[4]  A trial date in federal court has been set.  Discovery has been ordered, and Ms. Park tasked with meeting the demands of Plaintiffs' numerous lawyers, many out of Washington, D.C. and the Northeast who fly into Texas in the multiples

---

[4]*In re Paxton*, 60 F.4th 252, 260 (5th Cir. 2023) (recognizing that "compelled testimony cannot be undone or corrected by the district court").  *In re Paxton* examined whether to issue mandamus to protect a high-level state official's right from being forced to testify under a non-party subpoena, but the implications here are still important.  Ms. Park should not have to be compelled to testify in federal court when Plaintiffs have no federal cause of action.

for each hearing, deposition, etc., and who have the ability if successful on their 42 U.S.C. § 1985(3) claim to collect all reasonable attorneys' fees and costs. *See* Certificate of Interest Parties, Pet. at i (listing Plaintiffs' attorneys).  If the District Court's errors stand uncorrected, Defendants face paying all of their own attorneys' fees and costs of the litigation, *and all of Plaintiffs'* under 42 U.S.C. § 1988. *In re Gee*, 941 F.3d at 169-71 (stating that the cost shifting of a prevailing party imposed upon the United States was a "special factor" to be considered when determining whether to issue a writ of mandamus).  And just as the Court found in *In re Gee*, "fees and expenses" in this case could "be astronomical." *Id.* at 169.

Furthermore, the District Court's interpretation of the Act penalizes Ms. Park's exercise of free speech and association.  The District Court found that joining a caravan of Trump Supporters waving flags on the public highway was tantamount to agreeing to a conspiracy to "drive recklessly" and unlawfully deprive Plaintiffs of their right to election-advocacy.  These findings chill free speech and hinder free association.

The District Court's errors created a federal civil cause of action,

imposing liability, damages, costs, and attorneys' fees, for anything that occurs while driving in a caravan on the highway. The District Court's conspiracy findings hinged on being associated with a Trump Train. The District Court's opinions effectively target and punish political speech and association: Imagine for a moment that Ms. Park's Facebook post said "Bring flags, wear Biden gear. Greet the bus, Biden style!" Now imagine that Ms. Park engaged in the exact same actions on I-35 but with a Biden flag and a Biden bumper sticker. She would not be a defendant in this case, nor would she be branded as a "conspirator."

In other words, the District Court brands everyone who associates with a certain political message and communicates that message on the public roadway with the assumption that they have all unlawfully conspired to anything anyone in the group does. This is not how the protections of the First Amendment or the Act is meant to work. This chill and attack on Ms. Park's free speech and association should be addressed immediately by this Court to stop ongoing irreparable harm. *Elrod v. Burns*, 427 U.S. 347 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

And lastly, this Court has the discretion to issue a writ of mandamus when the lower court has reached a "patently erroneous result." *In re Volkswagen of Am., Inc.*, 545 F.3d at 319. The special factors in this case exemplify why interlocutory review is necessary and why the errors of the District Court deserve this Court's immediate attention. Since the District Court clearly erred in its interpretation of the Act, this Court should use its discretion to immediately correct Judge Pitman's errors and alleviate the special hardship placed on Ms. Park.

## II. A Writ of Mandate is Appropriate.

Granting the writ would be "especially appropriate where the issues implicated have importance beyond the immediate case." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 499 (5th Cir. 2019) (quoting *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 294 (5th Cir. 2015)); *In re Volkswagen*, 545 F.3d at 319. The issues raised in Ms. Park's petition "implicate not only the parties' interests but those of the judicial system itself." *United States v. Bertoli*, 994 F.2d 1002, 1014 (3d Cir. 1993). Ms. Park's petition raises preeminent questions regarding the scope of the application of the Act to private citizens, and questions pertaining to the

First Amendment right to engage in political speech and association, raised by both Plaintiffs and Defendants.    Recently, several other complaints have been filed which test the scope and application of 42 U.S.C. § 1985(3) throughout the country.   *See, e.g., Andrews v. D'Souza*, Case No. 1:22-cv-04259-SDG (N.D. Ga) (alleging violation of 42 U.S.C. § 1985(3) because defendants unlawfully intimidated, defamed, and invaded the privacy of plaintiff by engaging in speech that promoted a movie called *2000 Mules*).   A law review article, written by Plaintiffs' attorney Cameron O. Kistler, seems to have spurred on these cases which seek to expand the meaning and use of the statute.   Richard Primus & Cameron O. Kistler, *The Support-or-Advocacy Clauses*, 89 Fordham L. Rev. 145 (2020).   And while Plaintiffs' wish to use the federal courts to test their bogus legal theory, what they have ignored is the real-world implications defendants in these lawsuits now face.   And their suffering serves no legitimate purpose.   There has never been a cause of action under 42 U.S.C. § 1985(3), for a deprivation of election-related speech without a showing of state action.   It would be appropriate for this Court to issue a writ of mandamus to enforce the 150 years of precedent from the Supreme Court and Fifth Circuit that rejected Plaintiffs'

interpretation of the Act. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993); *Carpenters v. Scott,* 463 U.S. 825 (1983). Lastly, and critically, this Court should issue mandamus to stop Plaintiffs' tactics, which allow for the abusive manipulation of federal law and federal court procedures, which allow free speech and association to be targeted based on political affiliation and viewpoint, which create a new federal cause of action which would allow plaintiffs to obtain attorneys' fees and damages against private actors, and which hauls defendants into federal court for matters that would otherwise not present a federal question and would lack subject-matter jurisdiction. If ever there was a petition where the issuance of mandamus was appropriate, it is this petition.

### III.   Ms. Park Has a Clear and Indisputable Right to the Writ.

This petition presents a clear and indisputable right to a writ of mandamus. The District Court has clearly abused its discretion. *Cheney,* 542 U.S. at 281, 2576; *see also In re Volkswagen*, 545 F.3d at 308. "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996) (*citing Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("a district court would necessarily abuse its discretion if it based its ruling on an

erroneous view of the law")).

The District Court clearly abused its discretion by applying the wrong legal standard in four ways:

> **A.    The District Court Clearly Erred Because It is Beyond Dispute that the Act Does Not Create a Private Tort for a Deprivation of "Election-related" Speech— Without Alleging State Action.**

The District Court held that the Act supported a cause of action for the deprivation of First Amendment rights (the loss of campaign-related speech) without requiring that Plaintiffs plead that their alleged conspiracy involved state action.  This is a fatal blow to Plaintiffs' lone federal claim, and the District Court fails to adequately address it.  App. at 55-68, 69-75, 76-77, and 78-86.

The pertinent section of the Act states,

> [I]f two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; . . . or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation.

42 U.S.C. § 1985(3).  The Act only protects the deprivation of a "right or

privilege of a citizen of the United States" (*i.e.*, an existing right). *Id.*; *Howard v. State Dep't of Highways*, 478 F.2d 581, 585 (10th Cir. 1973) *Grambling Univ. Nat'l Alumni Ass'n v. Bd. of Supervisors for the La. Sys.*, 286 F. App'x 864, 871 (5th Cir. 2008).

The District Court, however, interpreted the Act to create a new right: a private cause of action for infringements upon "election-related" speech. A similar argument was expressly rejected by the Supreme Court in *Bray*. 506 U.S. 263, 267-68, 278 (1993) (holding that the deprivation of the right to inter-state travel and abortion "cannot be the object of a purely private conspiracy.") (applying *Carpenters*, 463 U.S. at 833 and holding "Respondents' § 1985(3) 'deprivation' claim must fail, then, because they have identified no right protected against private action that has been the object of the alleged conspiracy."); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 938-39 (1982); *Gerber v. Herskovitz*, 14 F.4th 500, 511 (6th Cir. Sept. 15, 2021); *Gill*, 906 F.2d 1265; *Federer v. Gephardt*, 363 F.3d 754 (8th Cir. 2004).

For example, in *Federer,* the plaintiff brought a claim of action against his democratic party opponent and several of his opponent's supporters alleging that they broke into his home, showed up at a

parade he was marching in and assaulted him, and otherwise prevented

him from engaging in "support-or-advocacy" under the Act.  363 F.3d at

757.  The *Federer* court stated,

> For a private conspiracy to come within the ambit of the first clause of § 1985(3), the plaintiff must also establish (1) "that some racial, or perhaps otherwise class based, invidiously discriminatory animus [lay] behind the conspirator's action;" and (2) "that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68, 122 L. Ed. 2d 34, 113 S. Ct. 753 (1993) (quoting *Griffin*, 403 U.S. at 102, and *Carpenters*, 463 U.S. at 833). **Passing the question of whether or not a political party is a "class"** under the statute *Carpenters*, 463 U.S. at 836, **it is clear that the "rights" involved here are solely First Amendment rights. As such, they are not rights that are "protected against both private and official encroachment."** The First Amendment "erects a shield exclusively against governmental misconduct. It provides no protection against private behavior, no matter how egregious." *Montano*, 120 F.3d at 848 (internal citation omitted).  **Thus, § 1985(3) provides no remedy for a private conspiracy based on a violation of Federer's First Amendment rights.**

*Federer*, 363 F.3d at 759-760 (quoting *Montano v. Hedgepeth*, 120 F.3d.

844 (8th Cir. July 23, 1997))(emphasis added).  The Eighth Circuit

explained that "[t]he second part of § 1985(3) relates generally to the

'institutions and processes of the Federal Government,' and specifically

to federal elections." *Id*. (quoting *Kush v. Rutledge*, 460 U.S. 719, 724

(1983)); *see also Gill*, 906 F.2d 1265; *Paynes v. Lee*, 377 F.2d 61 (5th Cir. 1967) (protecting the right to be free from voter intimidation when registering to vote); *Brooks v. Nacrelli*, 473 F.2d 955 (3d Cir. 1973) (discussing interference with voting at a designated polling location during the election); *Grimes v. Smith*, 776 F.2d 1359 (7th Cir. 1985) (holding that § 1985(3) does not provide a cause of action for politically motivated conspiracy among private parties to mislead voters in primary election); *Gray v. Darien*, 927 F.2d 69 (2d Cir. 1991), cert. denied, 502 U.S. 856, 112 S. Ct. 170 (1991) (discussing restrictions on polling places and voting hours); *Cook v. Randolph County*, 573 F.3d 1143, 2009 U.S. App. LEXIS 15201 (11th Cir. 2009) (discussing change of voting district).

In other words, to allege a private conspiracy under the "support or advocacy" clause, plaintiffs must either 1) allege interference or intimidation involving an official government process directly related to "federal officers, federal courts, or federal elections," *Kush*, 460 U.S. at 726, or 2) allege interference with advocacy during a campaign **when accompanied by the involvement of state action in the conspiracy**. *Federer*, 363 F.3d at 759-60 ("because the substantive federal right that Federer wishes to vindicate is a First Amendment

right, state action is required.") (emphasis added); *see also Gill*, 906 F.2d at 1270 ("the essence of plaintiff's claim is the assertion of a First Amendment type right vindicating advocacy and association," and holding that "a First Amendment claim cannot be actionable in the absence of State Action.").

Plaintiffs as private actors cannot be liable for First Amendment violations absent the involvement of state action.  State Action is "such a close nexus between the State and the challenged action" that seemingly private behavior "may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001).  The District Court never attempted to link the allegations against Ms. Park to state action.  And the Act does not, and has never, provided a private cause of action for a deprivation of First Amendment rights (*i.e.*, campaign speech)—without a showing of state action.  Therefore, the District Court has clearly erred.

> **B.    The Act Does Not Create a Private Tort to Punish Deprivations of the Right to Political Speech; Only the Deprivations Concerning the Right to Vote.**

The District Court conflates speech for the purpose of "election-advocacy" with voting.  The District Court never explains why First

Amendment speech should be treated the same as voting activity under the Act. The Act provides a cause of action when a defendant prevents a plaintiff from exercising his/her voting rights, but not for broad-spectrum claims pertaining to generalized election advocacy. *Graham v. Clusen*, 427 F. Supp. 820, 821 (D.D.C. Feb. 24, 1977) (holding that while Congress had an interest in protecting an informed vote when passing § 1985(3) and stating that "the statute specifically provides that the conspirators must have intended 'to prevent by force, intimidation, or threat' a voter from exercising that right. In this Court's view, these words clearly indicate that Congress intended that a more narrowly focused conspiracy and a more nearly total deprivation have existed.") (emphasis added); *see also* Pet. at Section III, B.

The District Court relies on *Paynes v. Lee* for the proposition that the Act is broad enough to include "election advocacy". In *Paynes*, this Court held that the plaintiff had a claim under the Act when two white men, motivated by racial animus, came to his house, and threated to "destroy or annihilate" him if he registered to vote. 377 F.2d at 63. The case involved registering to vote in a federal election. It never extended the Act to First Amendment activity like "election advocacy." Other cases

cited by the District Court are similarly inapplicable.  App. at 66-67.  The District Court failed to provide any legal basis for treating the deprivation of First Amendment rights the same as a claim challenging the regulation of voting in a federal election under the Act.

### C.    The Act Requires a Showing of Racial Animus if a Plaintiff Seeks Damages for a Deprivation of Rights Without Alleging a State Action Conspiracy.

A claim under the Act, brought against a private citizen, without alleging state involvement in the conspiracy, requires Plaintiffs plausibly allege racial animus.  The Supreme Court has regarded this requirement as being an essential limitation on the Act: "The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment." *Griffin v. Breckenridge*, 403 U.S. 88, 104 (1971).

This Circuit also has required plaintiffs to plead racial animus. *Kimble v. D. J. McDuffy, Inc.*, 648 F.2d 340, 345–46 (5th Cir. 1981) (requiring the showing of racial animus to allege a claim under 42 U.S.C. § 1985(2) based upon the finding that it is required under § 1985(3)).  This

33

Court explained that the Act "was passed amid the lawless conditions existing in the South after the Civil War." *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 932 (5th Cir. 1977) (en banc). It further explained,

> It is readily apparent from the title of the bill itself, "An Act to enforce the Provisions of the Fourteenth Amendment," that the key concern of the legislators was to put force behind the Civil War Amendments by providing an avenue for the redress of injuries suffered by the class of newly emancipated slaves. Nowhere have we seen it suggested that Congress was concerned about discrimination being practiced against insolvents.

*Id.* (footnotes omitted); *see also Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 281 n. 2 (5th Cir.1998) (noting that the Supreme Court has never held that non-racial animus is sufficient). Supreme Court and Fifth Circuit precedent provide that a claim brought under the Act cannot survive unless the plaintiff plausibly alleges that the defendant's actions were motivated by racial animus. The District Court held that this requirement was not necessary. This was clear legal error that conflicts with the holdings of this Court and the holdings of the Supreme Court in *Griffin*, *Bray*, and *Carpenters*. *See, e.g., Bray*, 506 U.S. at 275.

**D.    The Act Requires Plaintiffs Plausibly Allege Defendants Conspired for an Unlawful Purpose.**

Under the Act, Plaintiffs must allege plausible facts that the defendants conspired to carry out an unlawful purpose. To establish civil conspiracy, Plaintiffs must provide factual allegations, with specificity, that: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Wackman v. Rubsamen*, 602 F.3d 391, 408 (5th Cir. 2010).[5]

When a complaint fails to allege that an agreement existed to establish a conspiracy, the claim must fail. *Olsen v. Idaho Bd. of Med.*, 363 F.3d 916, 929-30 (9th Cir. 2004); *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003); *Egan v. Aurora*, 291 F.2d 706 (7th Cir. 1961). This Court requires that in order to establish liability under the Act, the "adverse action" taken by a conspirator must serve the "predominant purpose" of deterring a plaintiff from exercising the federal right at issue. *Montoya v. FedEx Ground Package Sys.*, 614 F.3d 145, 149-50 (5th Cir. 2010)

---

[5] *See Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994) (stating required elements for 42 U.S.C. § 1985(3) conspiracy, one being that "the plaintiff must show that the conspiracy was motivated by a class-based animus"); *see also Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997); *Chaney v. Races & Aces*, 590 F. App'x 327, 330 (5th Cir. 2014); *Johnson ex rel. Wilson v. Dowd*, 305 F. App'x 221, 224 (5th Cir. 2008).

(quoting *Kinney v. Weaver*, 367 F.3d 337, 353 (5th Cir. 2004)).

The District Court failed to apply the correct legal standard by not requiring that Plaintiffs plausibly allege that Ms. Park conspired ***to achieve an unlawful end***.  The District Court makes no plausible or specific factual findings to establish that Ms. Park conspired with two or more people to stop Plaintiffs from speaking at scheduled Biden-Harris campaign events.  The First Amended Complaint does not even allege that Ms. Park knew of any scheduled campaign events.  To the contrary, Plaintiffs allege they did not publish their event schedule.  The District Court concluded that participating in a Trump Train was a conspiracy to drive dangerously and recklessly and that was enough. The District Court clearly erred by applying the wrong legal standard.

## CONCLUSION

While district court judges have broad discretion in managing their dockets, "discretion has its limits."  *Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir. 1996).  And forcing Ms. Park to have to continue to defend herself in this legally frivolous lawsuit, when universally and through all of history no defendant has ever been subjected to Plaintiffs' wrongheaded and politically motivated theory of liability, is beyond that

limit.  The Court should grant mandamus relief directing the District Court to grant Ms. Park's motion to dismiss.  In the alternative, this Court should issue a writ of mandamus directing the District Court to certify its opinion to allow interlocutory appellate review.

Date: August 16, 2023                    Respectfully submitted,

                                                  THOMAS MORE LAW CENTER

                                                  RICHARD THOMPSON
                                                  President and Chief Counsel

                                                  */s/ Erin Elizabeth Mersino*
                                                  Erin Elizabeth Mersino

                                                  *Attorneys for Petitioner Dolores Park*

## CERTIFICATE OF SERVICE

I certify that this document was filed with the Court via the court's electronic filing system, on the 16th day of August 2023, and an electronic copy of this document was served on all counsel of record and parties via the District Court's electronic filing system and via e-mail on the same date and was also delivered to the Hon. Robert Pitman via electronic filing.  A copy of this document was also sent via First Class U.S. Mail to all *in pro per* parties.

*/s/ Erin Elizabeth Mersino*
Erin Elizabeth Mersino

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limitations of Federal Rule of Appellate Procedure 21(d) because this document contains 7,609 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 21 and 32 and 5th Cir. R. 21.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Office Word 2023 in 14-Point Century Schoolbook font.

*/s/ Erin Elizabeth Mersino*
Erin Elizabeth Mersino

# *United States Court of Appeals*

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

August 17, 2023

Ms. Erin Elizabeth Mersino
Thomas More Law Center
P.O. Box 393
Ann Arbor, MI 48106

     No. 23-50585   In re: Dolores Park
              USDC No. 1:21-CV-565

Dear Ms. Mersino,

We have docketed the petition for writ of mandamus, and ask you to use the case number above in future inquiries.

Filings in this court are governed strictly by the Federal Rules of **Appellate** Procedure. We cannot accept motions submitted under the Federal Rules of **Civil** Procedure. We can address only those documents the court directs you to file, or proper motions filed in support of the appeal. See FED. R. APP. P. and 5TH CIR. R. 27 for guidance. We will not acknowledge or act upon documents not authorized by these rules.

All counsel who desire to appear in this case must electronically file a "Form for Appearance of Counsel" naming all parties represented within 14 days from this date, see FED. R. APP. P. 12(b) and 5TH CIR. R. 12. This form is available on our website www.ca5.uscourts.gov. Failure to electronically file this form will result in removing your name from our docket. Pro se parties are not required to file appearance forms.

ATTENTION ATTORNEYS: Attorneys are required to be a member of the Fifth Circuit Bar and to register for Electronic Case Filing. The "Application and Oath for Admission" form can be printed or downloaded from the Fifth Circuit's website, www.ca5.uscourts.gov. Information on Electronic Case Filing is available at www.ca5.uscourts.gov/cmecf/.

ATTENTION ATTORNEYS: Direct access to the electronic record on appeal (EROA) for pending appeals will be enabled by the U S District Court on a per case basis. Counsel can expect to receive notice once access to the EROA is available. Counsel must be approved for electronic filing and must be listed in the case as attorney of record before access will be authorized. Instructions for accessing and downloading the EROA can be found on our website at http://www.ca5.uscourts.gov/docs/default-

source/forms/instructions-for-electronic-record-download-feature-of-cm.  Additionally, a link to the instructions will be included in the notice you receive from the district court.

Sealed documents, except for the presentence investigation report in criminal appeals, will not be included in the EROA.  Access to sealed documents will continue to be provided by the district court only upon the filing and granting of a motion to view same in this court.

We recommend that you visit the Fifth Circuit's website, www.ca5.uscourts.gov and review material that will assist you during the appeal process.  We especially call to your attention the Practitioner's Guide and the 5th Circuit Appeal Flow Chart, located in the Forms, Fees, and Guides tab.

ATTENTION:  If you are filing Pro Se (without a lawyer) you can request to receive correspondence from the court and other parties by email and can also request to file pleadings through the court's electronic filing systems.  Details explaining how you can request this are available on the Fifth Circuit website at http://www.ca5.uscourts.gov/docs/default-source/forms/pro-se-filer-instructions. This is not available for any pro se serving in confinement.

**Special guidance regarding filing certain documents:**

General Order No. 2021-1, dated January 15, 2021, requires parties to file in paper highly sensitive documents (HSD) that would ordinarily be filed under seal in CM/ECF.  This includes documents likely to be of interest to the intelligence service of a foreign government and whose use or disclosure by a hostile foreign government would likely cause significant harm to the United States or its interests.  Before uploading any matter as a sealed filing, ensure it has not been designated as HSD by a district court and does not qualify as HSD under General Order No. 2021-1.

A party seeking to designate a document as highly sensitive in the first instance or to change its designation as HSD must do so by motion. Parties are required to contact the Clerk's office for guidance before filing such motions.

**Sealing Documents on Appeal:**  Our court has a strong presumption of public access to our court's records, and the court scrutinizes any request by a party to seal pleadings, record excerpts, or other documents on our court docket.  Counsel moving to seal matters must explain in particularity the necessity for sealing in our court.  Counsel do not satisfy this burden by simply stating that the originating court sealed the matter, as the circumstances that justified sealing in the originating court may have changed or may not apply in an appellate proceeding.  It is the obligation of counsel to justify a request to file under seal, just as it is their obligation to notify the court whenever sealing is no longer necessary.  An unopposed motion to seal does not obviate a counsel's obligation to justify the motion to seal.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Roeshawn Johnson, Deputy Clerk
504-310-7998

cc:  Mr. Jared Fletcher Davidson
     Mr. Philip Devlin
     Mr. Cameron Oatman Kistler
     Mr. Aaron E Nathan

Provided below is the court's official caption.  Please review the parties listed and advise the court immediately of any discrepancies.  If you are required to file an appearance form, a complete list of the parties should be listed on the form exactly as they are listed on the caption.

_____

Case No. 23-50585

_____

In re:  Dolores Park,

                    Petitioner