# United States Court of Appeals for the Fifth Circuit

**FILED**
August 28, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ klw
                                    DEPUTY

---

No. 23-50593

---

IN RE JOEYLYNN MESAROS; ROBERT MESAROS,

*Petitioners.*

United States Court of Appeals
Fifth Circuit

**FILED**
August 28, 2023

Lyle W. Cayce
Clerk

---

Petition for a Writ of Mandamus
to the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-565 RP

---

ORDER

Before CLEMENT, ENGELHARDT, and OLDHAM, *Circuit Judges.* [*]

PER CURIAM:

This is a mandamus action. Petitioners request a writ of mandamus compelling the district court to certify its order applying a 152-year-old, Reconstruction-era statute enacted to combat the Ku Klux Klan. The district court's order gives rise to serious constitutional questions, and that court should have certified its order for interlocutory appeal under 28 U.S.C. § 1292(b). But our court apparently has never used the writ of mandamus to cure a district court's denial of certification under § 1292(b). Fortunately, it appears that the district court has ample ground for reconsidering its decision

---

[*] JUDGE CLEMENT concurs only in the denial of mandamus.

No. 23-50593

in this case, thus making mandamus unnecessary at this time. We therefore deny the petition for writ of mandamus.

I.

Respondents allege that on October 30, 2020, they were travelling through Texas in a Biden-Harris tour bus. According to respondents' complaint, Delores Park, Joeylynn Mesaros, and Robert Mesaros (collectively "petitioners") coordinated with others to form a "Trump Train" that surrounded the Biden-Harris bus, blocked its path, and forced it to slow down to 15-25 miles per hour. One participant in the "Train" (not a party to these mandamus proceedings) allegedly side-swiped another vehicle. On respondents' telling, the "Trump Train" caused "significant psychological harm" and resulted in the cancellation of the remaining Biden-Harris campaign events in Texas.

Respondents filed a complaint asserting the "Trump Train" amounted to an actionable conspiracy to thwart, by intimidation, their lawful support of the Biden-Harris campaign. For their cause of action, respondents relied on 42 U.S.C § 1985(3)'s Support-or-Advocacy Clause. Congress passed the Support-or-Advocacy Clause in the Ku Klux Klan Act of 1871. Act of Apr. 20, 1871, ch. 22, 17 Stat. 13. It provides, in relevant part, that one "injured in his person or property" by "two or more persons conspir[ing] to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President . . . may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3).

Petitioners moved to dismiss respondents' claim on the ground that the Support-or-Advocacy Clause only supplies a cause of action against

No. 23-50593

conspiracies that involve state action or are motivated by racial animus, which respondents did not allege. The district court denied the motion and subsequently denied petitioners' motion to certify the denial for interlocutory appeal under 28 U.S.C. § 1292(b). Respondents then filed an amended complaint, and petitioners once more moved for dismissal on the same grounds. The district court denied this motion and petitioners' second motion for certification under § 1292(b) interlocutory appeal.

Petitioners now ask this Court for a writ of mandamus vacating the district court's order denying their motion to dismiss, or in the alternative, mandating that the district court certify the denial for interlocutory appeal. We have jurisdiction under 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.").

II.

A.

Our statutory appellate jurisdiction ordinarily stretches only to final decisions of district courts. *See* 28 U.S.C. § 1291. "A final decision is typically one by which a district court disassociates itself from a case." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (cleaned up). The district court has not disposed Petitioners' case, so we have no jurisdiction under § 1291.

But Congress has determined that some questions may demand answers before the district court disposes of the case. Of relevance here, when a district court's order involves "a controlling question of law as to which there is substantial ground for difference of opinion," and "immediate appeal from the order may materially advance the ultimate termination of the litigation," the district court judge may certify it for interlocutory appeal. 28

No. 23-50593

U.S.C. § 1292(b). The court of appeals may then "permit an appeal to be taken from such order." *Ibid.*

## B.

The controlling question of law in this case is whether the Support-or-Advocacy Clause affords respondents a cause of action against petitioners. The Support-or-Advocacy Clause was originally enacted in Section 2 of the Ku Klux Klan Act of 1871. As its name suggests, Congress passed the Klan Act to address the racially motivated "murders, whippings, and beatings committed by rogues in white sheets in the postbellum South." *Gill v. Farm Bureau Life Ins. Co. of Missouri*, 906 F.2d 1265, 1269 (8th Cir. 1990) (quotation omitted); *see* Richard Primus & Cameron O. Kistler, *The Support-or-Advocacy Clauses*, 89 Fordham L. Rev. 145, 151 (2020). But the Support-or-Advocacy Clause differs from much Reconstruction legislation, and even other provisions of 42 U.S.C § 1985(3), in that its text says nothing about racial discrimination. *Cf.* 42 U.S.C. § 1981(a) ("All persons . . . shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings…as is enjoyed by white citizens.").

Respondents contend this omission was intentional. They say the Klan Act's provisions are divisible into those that protect federal interests and those that regulate interests traditionally subject only to state police power. Congress could regulate the latter category solely pursuant to the powers granted to it by the Reconstruction Amendments. So it restricted some provisions of the Klan Act to racially motivated conspiracies, *see Kush v. Rutledge*, 460 U.S. 719, 724–25 (1983), and possibly to conspiracies involving state action or, alternatively, private conspiracies so "massive and effective" as to "supplant[]" the authorities and "thus satisf[y] the state

No. 23-50593

action requirement, *Griffin v. Breckenridge*, 403 U.S. 88, 98 (1971).[1] But Congress was not so limited in protecting federal interests *outside* of the Reconstruction Amendments. *See Kush*, 460 U.S. at 724–25. According to respondents, Congress enacted the Support-or-Advocacy Clause pursuant to Article I's Elections Clause, thus sweeping more broadly than its Reconstruction-Amendments powers and protecting the federal interest in the purity of federal elections.

At least at a 60,000-foot level of generality, respondents have some support for their theory. In *The Ku Klux Cases,* the Supreme Court affirmed the constitutionality of the since-repealed criminal companion to the Support-or-Advocacy Clause. *See* 110 U.S. 651 (1884). It did so by pointing to Congress's power to promote "the free, the pure, and the safe exercise of this right of voting." *Id.* at 662. And the Court reasoned this power comes not from the Reconstruction Amendments but rather from Article I's Elections Clause, U.S. CONST. art. 1, § 4, cl. 1, and the Necessary and Proper Clause, *id.* art. 1, § 8, cl. 18. *See The Ku Klux Cases*, 110 U.S. at 658, 662; *see also Burroughs v. United States*, 290 U.S. 534, 545–46 (1934) (recognizing a congressional power to regulate presidential elections). Thus, respondents might be right that racial animus is not a prerequisite to recovery under the Support-or-Advocacy Clause because racial animus is not required by Article I's Elections Clause.

––––––––––––––––––––––

[1] This part of § 1985(3) is an exercise of Congress's enforcement powers under the Reconstruction Amendments: "If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 28 U.S.C. § 1985(3).

No. 23-50593

C.

Still, there is *unquestionably* a "substantial ground for difference of opinion" that necessitates certification of a "controlling question of law" under 28 U.S.C. § 1292(b). Respondents' invocation of the Support-or-Advocacy Clause is unprecedented in the statute's 152-year history. And what little precedent exists cuts squarely against respondents. Without the Support-or-Advocacy Clause, respondents' only federal claim (and hence their only basis for litigating in federal court) fails. By our count, petitioners have at least *four* grounds for substantial difference of opinion, any one of which necessitates certification under § 1292(b).

First, it is unclear whether the Support-or-Advocacy Clause creates new substantive rights or merely supplies a remedy for violations of rights found elsewhere. Respondents have a law review article co-written by one of their lawyers before he filed this suit. *See* Primus & Kistler, 89 Fordham L. Rev. at 168 (arguing the Clause supplies new substantive rights). On the other hand, petitioners have a published Eighth Circuit case that says the opposite. *See Gill*, 906 F.2d at 1270 (holding the Support-or-Advocacy Clause merely provides a remedy for rights found elsewhere). Petitioners also have Supreme Court cases interpreting the clause *immediately preceding* the Support-or-Advocacy Clause to supply only a remedy and not to create new substantive rights. *See, e.g., Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68, 278 (1993) (interpreting § 1985(3)'s first clause); *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 830–31 (1983) (same); *see also Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (reaching the same conclusion regarding another provision of the 1871 Klan Act: "As we have said many times, § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." (quotation omitted)). If the Support-or-Advocacy Clause merely provides a remedy for rights found elsewhere, then respondents appear to

No. 23-50593

recognize they lose. Perhaps the district court had good reasons for picking respondents' novel theory and law review article—co-written by an attorney in this case—over petitioners' authorities. Regardless, petitioners' judicial authorities constitute an obviously "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). *See, e.g.*, *Washington v. HCA Health Servs. of Texas, Inc.*, 152 F.3d 464, 466 (5th Cir. 1998) (mere fact that order involves "novel question" sufficient to warrant certification), *cert. granted, judgment vacated on other grounds*, 527 U.S. 1032 (1999) (mem.).

Second, it is unclear how respondents' theory comports with the text of the Support-or-Advocacy Clause. The Clause applies to conspiracies:

> to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Is the formation of a "Trump Train" a conspiracy to exercise "force, intimidation, or threat"?[2] Or, as the Eighth Circuit held, does § 1985(3) require something more closely related to the postbellum violence that necessitated the statute's enactment? *See Gill*, 906 F.2d at 1269 (holding the phrase "force, intimidation, or threat" means "something much more serious and terrifying than a written notice of cancellation of a contract designating Gill as an agent to sell Farm Bureau insurance"). Does

---

[2] As noted above, respondents also point to one defendant who allegedly side-swiped the vehicle of a campaign staffer. But respondents offer no allegation that petitioners *conspired* to side-swipe anyone. *See United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003) ("The Court has repeatedly said that the essence of a conspiracy is 'an agreement to commit an unlawful act.'") (listing cases). And § 1985(3) reaches only *conspiracies*.

No. 23-50593

it matter that no one on the Biden-Harris bus was going to vote? Or is the text better read to "provide[] a cause of action when a defendant prevents a plaintiff from exercising his/her voting rights, but not for broad-spectrum claims pertaining to generalized election advocacy"? Park Pet. 32. There are myriad reasons for preferring petitioners' reading of statutory text—not the least of which is that it comports with judicial authorities like *Bray* and *Carpenters*, which interpret the clause immediately preceding the Support-or-Advocacy Clause in § 1985(3). *See also Federer v. Gephardt*, 363 F.3d 754 (8th Cir. 2004) (same). Again, that is far more than necessary to create a "substantial ground for difference of opinion." 28 U.S.C. § 1292(b).

Third, it is unclear how respondents' reading of the Support-or-Advocacy Clause comports with Article I of the Constitution. Recall that respondents' theory requires that we hold the Support-or-Advocacy Clause is "valid under Congress's Article I powers." Primus & Kistler, *supra*, 89 Fordham L. Rev. at 168. But Congress has no freestanding Article I power to regulate election-related activity. *See* Robert G. Natelson, *The Original Scope of the Congressional Power to Regulate Elections*, 13 U. Pa. J. Const. L. 1, 44 (2010). Congress only has power to regulate "The Times, Places and Manner of holding Elections . . . ." U.S. Const. art. 1, § 4, cl. 1. And while the Supreme Court has said Congress may promote the "purity" of federal elections, *see Ex parte Siebold*, 100 U.S. 371, 382 (1879), it has only affirmed applications of laws intimately related to ballot-casting. *See, e.g.*, *id.* at 373 ("[A]n indictment against each of the petitioners was found in said court, for offences alleged to have been committed by them respectively at their respective precincts *whilst being such judges of election*." (emphasis added)); *The Ku Klux Cases*, 110 U.S. at 657 ("[D]efendants conspired to intimidate Berry Saunders, a citizen of African descent, *in the exercise of his right to vote* for a member of the congress of the United States." (emphasis added)). Respondents cite no case that embraces the breathtakingly broad

No. 23-50593

counter-interpretation of Congress's Article I powers. Again, that is far more than necessary to create a "substantial ground for difference of opinion." 28 U.S.C. § 1292(b).

Fourth, it is unclear how respondents' reading of the Support-or-Advocacy Clause comports with the First Amendment. There is no doubt that the First Amendment protects speech any reasonable person would find intimidating. *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443 (2011). And even otherwise constitutional applications of statutes that burden a substantial amount of protected speech might violate the First Amendment. *See Broadrick v. Oklahoma*, 413 U.S. 601, 614–15 (1973). These principles at least cut against respondents' theory that they can sue private individuals for the intimidation they associated with the "Trump Train." At the very least, there are serious questions that far exceed the standard for interlocutory certification under § 1292(b).

III.

Nevertheless, the question is not what we would have done if we sat in the district court. Petitioners ask us for a writ of mandamus, which "is an extraordinary remedy for extraordinary causes." *United States v. Denson*, 603 F.2d 1143, 1146 (5th Cir. 1979) (en banc). We may grant a writ "only if (1) the petitioner has 'no other adequate means' to attain the desired relief; (2) the petitioner has demonstrated a right to the issuance of a writ that is 'clear and indisputable;' and (3) [we], in the exercise of [our] discretion, [are] satisfied that the writ is 'appropriate under the circumstances.'" *In re Dean*, 527 F.3d 391, 394 (5th Cir. 2008) (quoting *In re United States*, 397 F.3d 274, 282 (5th Cir. 2005)).

It is unclear that this is an extraordinary case. That is for two reasons. First, § 1292(b) creates a substantial role for district courts in the certification of interlocutory appeals. Appellate courts have accordingly been reluctant to

No. 23-50593

compel § 1292(b) certification through writs of mandamus. *See In re Ford Motor Co.*, 344 F.3d 648, 654 (7th Cir. 2003) (listing cases); *Fernandez-Roque v. Smith*, 671 F.2d 426, 431 (11th Cir. 1982) (compelling certification in a "truly rare" case which presented "a controlling question of national significance."); *see also* 16 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3929 ("Although a court of appeals may be tempted to assert mandamus power to compel certification, the temptation should be resisted. The district judge is given authority by the statute to defeat any opportunity for appeal by certification, in deference to familiarity with the case and the needs of case management. Special needs for review should be met by other means."). Our court similarly has said it will compel certification in "very rare" circumstances. *See In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1167 (5th Cir. 1987) (en banc), *cert. granted, judgment vacated on other grounds by Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989). But it appears those circumstances are *so* rare that they have never occurred. *See id.* at 1167–68 (denying mandamus).

Second, petitioners' § 1292(b) motion raised only questions about whether the Support-or-Advocacy Clause requires allegations of racial animus or the presence of state action. Petitioners are correct that the district court should have granted the § 1292(b) motion on that basis. But that is only one of the four quite obvious bases for certifying the viability of respondents' Support-or-Advocacy claim under § 1292(b). *See supra* Part II.C. We are confident that the district court will reach the correct certification decision if given another opportunity, which suggests petitioners have another adequate means to secure their requested relief. *See In re Dean*, 527 F.3d at 394. And if petitioners renew their § 1292(b) motion and again lose in the district court, they are free to renew their request for mandamus relief.

No. 23-50593

\*        \*        \*

IT IS ORDERED that the petition for mandamus is DENIED.

**A True Copy**
**Certified order issued Aug 28, 2023**

*Tyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

August 28, 2023

Mr. Philip Devlin
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

    No. 23-50593   In re: Joeylynn Mesaros
               USDC No. 1:21-CV-565

Dear Mr. Devlin,

Enclosed is a copy of the judgment issued as the mandate.

                              Sincerely,

                              LYLE W. CAYCE, Clerk

                              By: _____
                              Melissa B. Courseault, Deputy Clerk
                              504-310-7701

cc w/encl:
    Mrs. Christina Beeler
    Mr. Francisco Raul Canseco Sr.
    Mr. Randi Ceh
    Mr. Steve Ceh
    Mr. Jared Fletcher Davidson
    Mr. Michael Julian Gottlieb
    Mr. Cameron Oatman Kistler
    Ms. Erin Elizabeth Mersino
    Mr. Jerad Wayne Najvar
    Mr. Aaron E Nathan