**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| ERIC CERVINI, WENDY DAVIS, DAVID GINS, and TIMOTHY HOLLOWAY, <br><br>            Plaintiffs, <br><br>    v. <br><br> ELIAZAR CISNEROS, RANDI CEH, STEVE CEH, JOEYLYNN MESAROS, ROBERT MESAROS, and DOLORES PARK, <br><br>            Defendants. | Civil Action No. 1:21-cv-00565-RP <br><br> Hon. Robert Pitman |

## PLAINTIFFS' CONSOLIDATED OPPOSITION TO MESAROS AND PARK DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RESOLUTION OF DISPOSITIVE MOTIONS

As discovery draws to a close, the evidence shows that what happened on October 30, 2020 was not just a peaceful protest. While some who drove with the Biden bus may have done so with peaceful intentions, a subset—including Defendants in this case—coordinated to surround the bus, force it to a crawl, intimidate its occupants with assaultive driving tactics, and "run [it] out of Texas."[1] Facing the mounting evidence against them, and seeking to delay what discovery remains, the Defendants Joeylynn and Robert Mesaros (together, the "Mesaros Defendants") and Defendant Park seek to stay proceedings pending an interlocutory appeal (Dkts. 229, 230). But Defendants have failed to show they are likely to succeed on the legal merits of their appeal. And even were the Fifth Circuit to rule for them, Plaintiffs' state law claims, with the same factual scope, will survive, and Defendants will face the remaining discovery, summary judgment, and trial. Defendants' stay motion is the latest move in an overall strategy of shifting narrative, evasion, and delay that, if granted, will injure Plaintiffs as memories fade and spoliation by Defendants and nonparty witnesses continues. The stay motions should be denied.

## LEGAL STANDARD

A stay is not a matter of right—even where irreparable injury may occur—but "an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433 (2009). The movant for a stay bears the burden of showing why circumstances necessitate it. *Id*.

When considering a stay motion pending appeal, a court must determine the following: (1) whether the movant makes a strong showing of likelihood of success on the merits; (2) whether

---

[1]  Ex. 1. Plaintiffs attach a fact appendix to this brief as permitted by Local Rule CV-7(c)(1) in response to the Mesaros Defendants' inaccurate, factual references and characterizations that pervade their motion and fact appendix. Ex. A. Plaintiffs' appendix represents only a sample of the factual evidence discovered thus far, and paints a far different picture than the Mesaros Defendants.  While the Court need not consult Plaintiffs' fact appendix to decide this motion, Plaintiffs include it to set the record straight.

irreparable injury will befall the movant absent a stay; (3) whether a stay will substantially injure the other parties; and (4) the public interest. *Id.* at 434. Possible success or injury will not carry a movant's burden, *id.*, and injury is only irreparable if money damages will not undo it. *Burgess v. Fed. Deposit Ins. Corp.*, 871 F.3d 297, 304 (5th Cir. 2017). Only where a movant carries the burden on factors (1) and (2) will the court assess harm to other parties and the public interest. *Nken*, 556 U.S. at 435.

The Fifth Circuit recognizes an alternative test if—and only if—factors (2), (3), and (4) are "heavily tilted in the movant's favor" and a "serious legal question is involved." *Hernandez v. Erazo*, No. 23-50281, 2023 WL 3175471, at *2 (5th Cir. May 1, 2023) (per curiam) (unpublished) (quoting *Ruiz v. Estelle*, 650 F.2d 565-66 (5th Cir. Unit A June 26, 1981) (per curiam)). In such a case, a stay may issue where the issue on appeal is one with "patent substantial merit." *Vine v. PLS Financial Servs., Inc.*, 2019 WL 4257108, at *5 (E.D. Tex. Sept. 9, 2019).

## ARGUMENT

a.  ***The Mesaros and Park Defendants Have Not Made a Strong Showing They Are Likely To Succeed on the Merits***

The Mesaros Defendants argue they meet the first *Nken* factor based solely on the Fifth Circuit panel majority's statement that "there is *unquestionably* a 'substantial ground for difference of opinion' that necessitates certification of a 'controlling question of law' under 28 U.S.C. § 1292(b)."[2] Dkt. 209 at 7; Dkt. 229. at 3-4. But a split panel's identification of "substantial ground for difference of opinion" is far less than a "strong showing" of likelihood of success on the merits, *Nken*, 556 U.S. at 434. Otherwise, the first *Nken* factor would automatically be met every time an interlocutory appeal was certified. The panel majority did not consider the Mesaros Defendants' overall likelihood of success, and its opining on other matters cannot carry the Mesaros

---

[2] Judge Clement evidently disagreed, declining to join the majority's opinion.

Defendants' burden. On the contrary, as discussed in Plaintiffs' response to Defendants' renewed request to certify an interlocutory appeal, the legal issues raised by the panel above—and now pressed by Defendants—all cut definitively in Plaintiffs' favor. Dkt. 240 at 6. Plaintiffs incorporate those arguments by reference here.

Defendant Park argued in turn that she need only present "a substantial case on the merits" because "there is a serious legal question involved" and "the balance of equities weighs heavily in favor of granting the stay." Dkt. 230 at 2-3; *see Hernandez*, 2023 WL 3175471, at *2. Park posits that the mandamus opinion carries her burden of showing both a "serious legal question" and "a substantial case on the merits." *Id.* at 3. Again, Plaintiffs disagree. But Plaintiffs do not ask this Court to reject the majority's conclusion that this case presents a "substantial ground for difference of opinion." Rather, even assuming *arguendo* that Park makes this more modest showing on the merits, she fails to show that the balance of equities tilts in her favor at all, as is required. As discussed below, "the latter three [*Nken*] factors," and thus, "the balance of equities," *Hernandez*, 2023 WL 3175471, at *2, overwhelmingly favor Plaintiffs and weigh against a stay.

### b.    A Stay Denial Would Not Irreparably Injure the Mesaros and Park Defendants

Defendants fail to show they would sustain "irreparable injury" absent a stay pending appeal. Park fails to assert any injury *at all*, instead concluding without argument that "Defendants meet this standard." *See* Dkt. 230 at 2. Park's motion should be denied for that reason alone, given the burden she has taken on to show that "the latter three [*Nken*] factors are heavily tilted in [her] favor," *Hernandez*, 2023 WL 3175471, at *2.

The Mesaros Defendants identify three purportedly irreparable injuries they would incur absent a stay: (1) chill of the exercise of their First Amendment freedoms, Dkt. 229. At 5-6; (2)

being subjected to "ideological and political harassment" in discovery, *id.* at 6-8; and (3) the continued cost of litigation and "excessive" discovery, *id.* at 8-9. None meet their burden.

*First Amendment chill.* The Mesaros Defendants first argue that they will be irreparably harmed absent a stay because Plaintiffs' suit against them is chilling their ability to exercise their First Amendment rights of speech and association. But *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)—the authority they rely on to argue that diversion of time and resources to respond to a civil lawsuit brought by private litigants is irreparable harm—was a standing case concerning the chill of First Amendment activity if enforcement of a state statute regulating campaign speech was not enjoined. As a standing case, *Driehaus* is inapposite—whether a party will suffer irreparable harm sufficient to justify a stay pending appeal is a higher standard than cognizable injury sufficient to confer standing. What is more, nothing about the remaining discovery at issue purports to regulate the Mesaros Defendants' current exercise of their First Amendment rights.

The Mesaros Defendants assert that being forced to participate in a lawsuit *at all* chills their First Amendment speech and therefore irreparably harms them. But this proposition is completely unsupported. Suggesting that an unwilling party to litigation (as most defendants are) is irreparably harmed merely by participation in legal proceedings would *give any defendant* in *any civil litigation* where speech or conduct is part of the factual record grounds to stay discovery. *See FTC. v. Standard Oil Co. of Cal.*, 499 U.S. 232, 244 (1980) ("expense and annoyance of litigation is part of the social burden of living under government"). The Mesaros Defendants also do not make a serious or particularized showing of how their First Amendment rights are being infringed by their remaining participation in this litigation. Their subjective feeling that their

speech may have non-legal consequences does not amount to a chill of First Amendment rights, let alone irreparable harm. *See Nken*, 556 U.S. at 434-35.

*Ideological and political harassment.* The Mesaros Defendants next argue that they have been subject to ideological and political harassment as a result of Plaintiffs' discovery. As they admit, the bounds of relevancy in discovery are broad, Dkt. 229 at 6, and Plaintiffs have remained well within the bounds of the federal rules in seeking discovery. It is not harassment to engage in thorough discovery on relevant topics.

Each discovery topic the Mesaros Defendants identify as political or ideological harassment is in fact quite relevant to the case and well within the scope of Rule 26. All of the topics—community group and political affiliation, interactions with then-Congressional candidate Chip Roy, knowledge of QAnon beliefs, actions of "Antifa," knowledge of Proud Boys' or Three Percenters' affiliation with any Trump Train, and the legitimacy of the 2020 election and related political or civil violence—are topics that feature prominently in relevant social media postings and other communications involving coordination and execution of the October 30, 2020 incident.[3] Parties need not justify the admissibility of any discovery sought for it to be permissible, Fed. R. Civ. P. 26(b)(1) ("[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable"), but to put even a finer point on the appropriateness of Plaintiffs' discovery, exploration of these topics not only seeks facts that may directly prove Plaintiffs' claims, but also facts regarding other acts admissible under Federal Rule of Evidence 404(b), including intent, motive, preparation and plan, and absence of mistake. The Mesaros Defendants' attempts to characterize questions regarding their attendance at Solomon's Porch meetings as religious

---

[3] **Chip Roy**: Exs. 2A and 2B. **QAnon**: Exs. 3A, 3B; and 3C. **Antifa**: Exs. 4A, 4B, 4C, 4D, 4E, 4F, and 4G. **Proud Boys**: Exs. 5A, 5B, 5C, 5D, 5E, 5F, 5G, and 5H. **Three Percenters**: 6A and 6B. **Political/civil violence**: 7A and 7B.

harassment are equally overstated—the relationships between co-defendants, such as the Mesaroses and the Cehs, who run the Solomon's Porch meetings, are highly probative in a conspiracy case, and public videos posted to YouTube show that the facts underlying this lawsuit were discussed at Solomon's Porch meetings. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Inquiry into Defendants' participation in and perspective on the riot at the U.S. Capitol on January 6, 2021 are also plainly relevant here. Participating in a riot meant to stop the peaceful transfer of power after a free and fair election is probative of Defendants' state of mind as the election loomed, including what they were prepared to do and how far they were prepared to go to ensure their preferred candidate held power, and how comfortable they were with use of force to achieve that end. Defendant Cisneros, ████████████████████████████

████████████████████████████ Ex. 10; ████████████ He did this ████████

████████████████████████████, a group he associates with the driver of the staffer vehicle he hit on October 30, 2020. Ex. 12 at 7:40 ("As far as [the staffer] being Antifa, I'm more than sure.").

Defendants' opinions on January 6th are also probative of their credibility in describing the events of October 30, 2020. For example, Steve and Randi Ceh took pictures on the Capitol steps as those around them scaled the scaffolding and walls of the building. Ex. 13; Ex. 14 at 304:4-306.

████████████████████████████████████████████████

████████ Both Randi and Steve claim that ████████████████████████████

████████████████████████████████████████████████

████████████████████████ Their perspective on the events of January 6th—which were

widely publicized—contextualizes what they mean when they describe the events of October 30th

████████████████████████████████████████████████████

████████, and how reliable they are as witnesses when describing the actions of fellow Trump

supporters or those they see as their political enemies. ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████.

Tellingly, in the nearly two years that discovery has been ongoing, no Defendant has ever

moved for a protective order to shield them from Plaintiffs' purported harassing discovery, nor has

any Defendant objected to the scope of discovery. Defendants have largely forfeited objections to

the topics they now call irreparably harmful. Plaintiffs have served discovery requests on the

Mesaros Defendants asking about a range of relevant topics from their fundraising efforts relating

to the Trump Train incident, Ex. 15 at 9; Ex. 16 at 9; their opinions of Democrats and liberals, Ex.

15 at 8; Ex. 16 at 8; their use of violent, intimidating, or racist language, Ex. 15 at 8-9; Ex. 16 at

8-9; and discussion and knowledge of white nationalist groups and groups like the Proud Boys and

Oath Keepers involved in planning the insurrection on January 6th RFP No. 22. Ex. 15 at 9; Ex. 16

at 9. The Mesaros Defendants responded *without objection* to these discovery requests throughout

the spring of 2022. *See* Exs. 15, 16.

***Litigation costs.*** Litigation costs are not irreparable harm. *See Burgess*, 871 F.3d at 304;

*Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1975) ("litigation expense [is not]

irreparable injury"). What is more, the Mesaroses have only exacerbated the time and expense of

discovery in this litigation through their obstinacy and non-compliance. They have stonewalled

the exchange of basic discovery information and refused reasonable stipulations, forcing Plaintiffs

to engage in time-consuming motions practice to conduct basic discovery. *See, e.g*, Dkt. 147 (opposing additional depositions) and 191 (Pls. Motion to Compel Production of iCloud Data); Ex. 17; Ex. 18 (J. Mesaros R&Os to Plfs. Third Set of Requests for Production, dated more than a month after they were due). Twice now, they produced highly material documents on the eve of a deposition, forcing it to be left open (S. Evans) or cancelled (J. Mesaros and R. Mesaros). Exs. 19 and 20.[4]

But more importantly, Defendants cannot show that they will be irreparably injured absent a stay because the discovery they seek to avoid will occur *even if* they succeed on appeal. As argued in Plaintiffs' opposition to 1292(b) certification, and incorporated by reference here, even if Plaintiffs' Klan Act claims are dismissed, their state law claims will survive and continue to be litigated, whether in this Court through its exercise of supplemental jurisdiction, or in state court. And their federal and state law claims arise from the same set of facts, call for substantially the same evidence and, therefore, require substantially the same discovery. Dkt. 240 at 8-11.

c.      ***Issuance of the Stay Will Substantially Injure Plaintiffs***

Plaintiffs would also be substantially harmed by a stay in discovery. Defendants and witnesses in this case have engaged in rampant spoliation of evidence. A stay in discovery would only permit more evidence to be lost and seriously prejudice Plaintiffs. Multiple defendants have admitted to deleting evidence. *See* Ex. 24 at 1940 ("We probably need to delete our social media posts ASAP about chasing the bus."); ███████████████

---

[4] In any case, the Mesaroses have raised more than sufficient funds to cover the costs of litigation. By their own account, they have spent approximately $100,000 in litigation expenses, ██████ ████████████████████████████████████████████; Ex. 22 at 27; Ex. 23 at 3.

████████████████ Ex. 25 (admitting that he deleted an Instagram account in the fall of 2021); Ex. 26 (explaining that she does not "save" her text messages).

Several Defendants, including Joeylynn Mesaros and Park, also lost access to large swaths of relevant discoverable data through apparently inadvertent means, such as deactivation of social media accounts and missing or damaged mobile devices. *See* Dkt. 191 at 2–3 (explaining that Joeylynn Mesaros's phone was permanently damaged and none of its contents recoverable); Dkt. 190 at Exs. 1, 4, 14 (showing that information on Joeylynn Mesaros's phone was not recoverable by a forensic vendor and that no texts could be recovered from her iCloud account between Sept. 1, 2020 and Dec. 31, 2020); Ex. 26 at No. 24 (stating Park "do[es] not save" her text messages); Ex. 27 at RFP Nos. 3, 4; Ex. 28 at Rog Nos. 3, 9 (explaining that Randi Ceh changed her phone and lost all iCloud data as well as access to her Parler, MeWe and Discord accounts); Ex. 29 at RFP No. 1 (explaining that Steve Ceh no longer has "access" to the phone he used on October 30, 2020).

Defendant Cisneros's egregious spoliation demonstrates the extent to which certain co-conspirators have and may continue to destroy evidence if a stay is instituted. Cisneros has been unable to conclusively answer simple questions regarding discoverable evidence he admits he has not produced, including his assertion that his social media accounts and mobile phones were hacked and deleted by an unknown actor, and his ability to produce a mobile phone that he admits contained discoverable information. His contradictory and often patently false statements regarding where responsive information may exist, whether it still exists, and if and how responsive material was lost cannot be reconciled and indicate a significant pattern of spoliation, if not a strategy of withholding or destroying documents to prevent disclosure.

The saga of Defendant Cisneros's mobile phone illustrates what Plaintiffs likely would endure in the event of a stay. As detailed at length in Plaintiffs' eventual motion to compel the device, Dkt. 109, throughout March and April 2022 Cisneros stated in interrogatory responses and related discovery correspondence that discoverable documents were "destroyed" when his mobile phone was "'hacked' and 'deleted'" after October 30, 2020. Dkt. 109 Ex. 7 at 1-2. In June 2022, however, Cisneros stated in another interrogatory response that he had already provided Plaintiffs all responsive data from the his phone. Dkt. 109 Ex. 8 at 3. And at all times during this period Cisneros insisted he maintained custody over the purportedly compromised device. Plaintiffs moved to compel production of the phone to reconcile these conflicting accounts, and in two affidavits submitted to fend off Plaintiffs' motion, Cisneros again contradicted himself, stating that he had produced to Plaintiffs all relevant content from his phone, but also that he wished he could locate the device because it contained lost data that could "serve in [his] defense[.]" Dkt. 115-1 at 1–2. For the first time, he also stated that he had lost the device sometime around April 2022. *Id.*; Dkt. 133, Ex. 1 at 3.

Cisneros' story regarding the location of the mobile phone changed again during an October 28, 2022 hearing before Judge Lane, during which he testified that he believed his brother may have stolen the phone, preventing its production, despite also testifying that his brother had been incarcerated until approximately late-September 2022, meaning he could not have caused the phone to go missing between April 2022, when he supposedly extracted and produced data from it, and September 2022. Ex. 30 (E. Cisneros Spoliation Hrg. Tr.) at 27:5-31:5. The Court did not find his account credible and granted Plaintiffs' motion. *Id.* at 5:17-23, 62:8-25 ("I smell a rat").

Shortly after that hearing, Cisneros found and produced the phone, which he testified at his August 22, 2023 deposition █████████████████████████████████████

But Plaintiffs were able to gain access to its contents only after several months of working with an expert vendor because Cisneros could not recall the passcode he had set to unlock the device. The coda to this long-standing dispute is a frustrating one: ████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████, a forensic analysis of the phone did not recover *any* of these text messages. After a nearly 18-month dispute, Plaintiffs have been unable to recover key text messages regarding the intent or motive of the alleged conspiracy despite repeated testimony, attestations, and corroborating documentary evidence, that those communications at one time existed. *See* Ex. 31.

A similar fate has befallen the mobile phones and social media accounts of the non-party witnesses. *See, e.g.* Ex. 32 (explaining that third party K. Lee does "not have access to twitter, periscope, discord or any other info . . . due to censorship"); Ex. 33 at 121:24—122:22 (explaining third party C. Guzman was locked out of MeWe, Discord, and her email by AT&T due to a "password issue"); Ex. 34 at 21-23 (explaining that third party J. Pena got a new phone in 2021 and no longer has the old phone).

### d.    *The Public Interest Cuts Against a Stay*

The public interest is served by courts applying their discretionary powers in an equitable manner. *See, e.g. All. for Hippocratic Med. v. Food & Drug Admin.,* No. 23-10362, 2023 WL 2913725, at *19 (5th Cir. Apr. 12, 2023) (observing in their analysis of the public interest factor that it is "it's unclear on this record that applicants have embraced 'the principles of equity and righteous dealing'") (quoting *Binh Hoa Le v. Exeter Fin. Corp.,* 990 F.3d 410, 416 (5th Cir. 2021) (noting that a party's own imperfect conduct can prejudice their request for equitable relief). Here, such equitable considerations weigh heavily against a stay, as Defendants have engaged in bad

faith gamesmanship that threaten the integrity of this litigation; *supra* at 8-11. For example, the Mesaros Defendants have repeatedly produced responsive and highly material documents at the last minute before depositions—including their own—thereby requiring last minute rescheduling or holding depositions open. Exs. 19 and 20.

While the Mesaros Defendants accuse Plaintiffs of misrepresenting the facts in this litigation, the evidence accumulated to date confirms Plaintiffs' version of events. It is the Mesaroses and other Defendants who have presented implausible and ever-shifting accounts of their own conduct, and who have extended discovery through obfuscation and delay. As just one example, in their response to Plaintiffs' Requests for Admission served on May 9, 2022, the Mesarsos Defendants provided the following explanation for their dangerous driving, and in particular, why they cut off the Biden-Harris bus by pulling out suddenly from the shoulder:

> [T]he bus *pulled up behind Defendant's vehicle as he was stopped[5] on the shoulder*, and the bus honked incessantly,[6] clearly indicating to Defendant that the driver of the bus wanted Defendant to pull back out into the driving lane in front of the bus. *The bus came to a near dead stop, as it pulled behind Defendant's vehicle on the shoulder*, honking.

Ex. 36 at 5 (emphasis added). About a month later, the Mesaros Defendants doubled down on this story, going so far as to send Plaintiffs' counsel a letter threatening Rule 11 sanctions if Plaintiffs did not withdraw the relevant allegations in the complaint. *See* Ex. 37. In a letter, counsel for the Mesaros Defendants describes the incident by saying, "*the Biden campaign bus pulled up behind the Mesaros's position on the shoulder, coming to a near complete stop (despite the clear lane ahead of the bus)*,[7] and continued honking incessantly until Robert Mesaros slowly and safely re-

---

[5] Video evidence shows that the Mesaroses' truck never came to a complete stop on the shoulder before pulling back onto the highway again.  Ex. 35 (R. Mesaros Dep. Ex. 12) at 2:27 – 2:46.
[6] The bus honked once.  Ex. 35 at 2:27 – 2:46.
[7] This statement in parentheses is demonstrably false. During the entire time that Robert Mesaros was driving on the shoulder, a gray truck with Trump flags was driving directly ahead of the bus

entered the right lane and pulled away." *Id.* at 2 (emphasis added). Counsel for the Mesaros Defendants asserted that this version of events is supported by the Plaintiffs' video evidence. *Id.*

But at his deposition, ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████.

Although in their stay motion the Mesaroses continue to summarily deny the truth of Plaintiffs' allegations as to Robert's driving, their *own* story has changed. Now, instead of claiming the bus came to "almost a complete stop" "behind the Defendants' vehicle on the shoulder," they now admit the bus was "deliberately brought […] to a crawl in the right lane." Ex. A. at 4. This

---

in the right lane. Ex. 35 (R. Mesaros Dep. Ex. 12) at 2:27 – 2:46. In fact, after pulling out suddenly from the shoulder, Robert Mesaros had to hit his breaks in order to squeeze in between the bus and the truck in front of it. *Id.*

distinction is more than semantics. In the Mesaroses' original story, they were stopped on the shoulder and the bus pulled over onto the shoulder behind them, slowing to almost a stop and honking, despite an open lane ahead. But as the video shows and Robert Mesaros now admits, that is not what happened. The Mesaros Defendants now claim they ██████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████ Despite this meaningful adjustment to their sworn testimony when faced with documentary evidence, the Mesaros Defendants make no acknowledgement of the change, let alone provide a justification for it. Instead, their Motion and attached Fact Appendix imply this has been their story all along.

The Mesaros Defendants mischaracterize other Defendants' conduct, as well. Discussing the collision between Cisneros and a campaign staffer, the Mesaros Defendants describe Cisneros's conduct as "pull[ing] forward in a normal fashion," "driving normally in the right lane," and "legally and safely driving."  Dkt. 229-1 at 4.

Video evidence contradicts this version of events. For example, the video cited as Exhibit F in the Mesaros Defendant's Fact Appendix depicts the bus, followed closely by the staffer vehicle, changing from the right lane to the middle lane, before sliding back into the right lane. As the bus merges back into the right lane, Cisneros' truck speeds up, preventing the staffer vehicle from following, and tailgates the bus so closely that he is forced to break to avoid a collision. Although this video cuts off before the collision, other videos show that shortly thereafter, rather than yield to the staffer vehicle which was attempting to stay with the bus, Cisneros used his truck to push the staffer vehicle back into the middle lane. Ex. 39.

- 14 -

If these videos left any room for doubt about what happened, Defendant Cisneros resolved it. The day of the incident, he posted a video of the collision saying, "Texas welcomes Biden-Harris. We serve brisket, sausage, leg quarters, Whataburger, and 35-inch tires," and he identifies his vehicle as the one "slamming the f****r." Ex. 40 (expletive removed). ███████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████.

These are just some of the examples. Defendants' request for a stay pending appeal is just the latest in a pattern of gamesmanship and dishonesty that threatens the integrity of this litigation. The public interest counsels against a stay.

## CONCLUSION

For the foregoing reasons, the Mesaros Defendants' and Defendant Park's motions to stay the case pending resolution of their motions for reconsideration and any interlocutory appeal should be denied.

Respectfully submitted,

**DATED:** September 29, 2023.

By:    */s Samuel Hall*

**TEXAS CIVIL RIGHTS PROJECT**
Ashley Fernandez Dorsaneo (TX Bar No. 24127393)
Christina M. Beeler (TX Bar No. 24096124)
Sarah Xiyi Chen (CA Bar No. 325327) (*pro hac vice*)
Veronikah Rhea Warms (TX Bar No. 24132682) (*pro hac vice*)
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741
Telephone: (512) 474-5073

Facsimile: (512) 474-0726
Email: ashley@texascivilrightsproject.org
christinab@texascivilrightsproject.org
schen@texascivilrightsproject.org
veronikah@texascivilrightsproject.org

**THE PROTECT DEMOCRACY
PROJECT, INC.**
John Paredes (NY Bar No. 5225412) (*pro
hac vice*)
Orion Danjuma (NY Bar No. 4942249) (*pro
hac vice*)
The Protect Democracy Project, Inc.
82 Nassau Street, #601
New York, NY 10038
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
john.paredes@protectdemocracy.org
orion.danjuma@protectdemocracy.org

Cameron O. Kistler (DC Bar No. 1008922)
(*pro hac vice*)
Cerin Lindgrensavage (DC Bar No.
1741602) (*pro hac vice*)
JoAnna Suriani (DC Bar No. 1645212) (*pro
hac vice*)
Anne Harden Tindall (DC Bar No. 494607)
(*pro hac vice*)
The Protect Democracy Project, Inc.
2020 Pennsylvania Ave. NW, Suite # 163
Washington, D.C. 20006
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
cameron.kistler@protectdemocracy.org
cerin.lindgrensavage@protectdemocracy.org
joanna.suriani@protectdemocracy.org
anne.tindall@protectdemocracy.org

Benjamin L. Berwick (MA Bar No. 679207)
(*pro hac vice*)
The Protect Democracy Project, Inc.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
ben.berwick@protectdemocracy.org

- 16 -

Jared Fletcher Davidson (LA Bar No. 37093)
(*pro hac vice*)
The Protect Democracy Project, Inc.
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
jared.davidson@protectdemocracy.org

**WILLKIE FARR & GALLAGHER LLP**
Michael Gottlieb (DC Bar No. 974960) (*pro hac vice*)
Robert Meyer (DC Bar No. 405632) (*pro hac vice*)
Samuel Hall (DC Bar No. 242110) (*pro hac vice*)
Meryl Conant Governski (DC Bar No. 1023549) (*pro hac vice*)
Jamielah Yancey (DC Bar No. 1619055) (*pro hac vice*)
Rebecca Heath (DC Bar No. 1644402) (*pro hac vice*)
Aaron E. Nathan (NY Bar No. 5478227) (*pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006-1238
Telephone: (202) 303-1000
Facsimile: (202) 303-2000
Email: mgottlieb@willkie.com
rmeyer@willkie.com
shall@willkie.com
mgovernski@willkie.com
jyancey@willkie.com
rheath@willkie.com
anathan@willkie.com

Madeleine Tayer (NY Bar No. 5683545)
(*pro hac vice*)
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

- 17 -

- 18 -

Email: mtayer@willkie.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2023, a true and correct copy of the foregoing has been served on all counsel of record and Defendants Steve Ceh and Randi Ceh through the Electronic Case Filing System of the Western District of Texas in compliance with the Federal Rules of Civil Procedure and by email as agreed by the parties.

**DATED:** September 29, 2023.

By:  /s Samuel Hall