UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ERIC CERVINI, WENDY DAVIS, DAVID GINS, and TIMOTHY HOLLOWAY, <br><br> Plaintiffs, <br><br> v. <br><br> ELIAZAR CISNEROS, RANDI CEH, STEVE CEH, JOEYLYNN MESAROS, ROBERT MESAROS, and DOLORES PARK, <br><br> Defendants. | Civil Action No. 1:21-cv-00565-RP <br><br> Hon. Robert Pitman |

## PLAINTIFFS' OPPOSED MOTION FOR RULE 37 DISCOVERY SANCTIONS AGAINST DEFENDANT JOEYLYNN MESAROS

Pursuant to Federal Rule of Civil Procedure 37(e), Plaintiffs Eric Cervini, Wendy Davis, David Gins, and Timothy Holloway (together, "Plaintiffs") respectfully move the Court to sanction Defendant Joeylynn Mesaros ("Mesaros") for spoliation of evidence. On May 8, 2023, Plaintiffs filed a Motion to Compel Defendant Joeylynn Mesaros to Produce Her iCloud Data and Documents Related to Potential Spoliation of Evidence. Dkts. 191, 194. Following negotiations with counsel for Mesaros, Plaintiffs withdrew their motion to compel, Dkt. 200, after receiving information from counsel as to Mesaros's iCloud backup. Exs. 1, 2. Plaintiffs have since received additional documents from Mesaros and deposed her, shedding light on Mesaros's spoliation of social media data and text messages from a highly relevant time period in this case. Plaintiffs accordingly move this Court to sanction Mesaros under Federal Rule of Civil Procedure 37(e) and award Plaintiffs the relief requested herein, including:

1. That the Court instruct the jury that Mesaros deleted or allowed to be permanently lost documents and communications she was under an obligation to preserve and that the jury may presume that Mesaros deleted or permanently lost such documents and communications because they were unfavorable to Mesaros;

2. Reasonable expenses, including attorneys' fees; and

3. Any other relief the Court deems appropriate.

## <u>BACKGROUND</u>

This lawsuit arises out of a conspiracy to disrupt the Biden-Harris presidential campaign and intimidate its supporters during the 2020 election. On October 30, 2020, Plaintiffs were ambushed by a self-described "Trump Train" that swarmed a campaign bus (the "Bus") traveling from San Antonio to Austin on Interstate 35 as part of a scheduled campaign tour (the "Incident").

Mesaros, a passenger in a participating vehicle, helped coordinate with other participants to target the bus, and documented the Incident through photographs and videos. Dkt. 241-6 at 173:14-174:3; Dkt. 191-6 at 2.

Plaintiffs filed this lawsuit against Mesaros and others on June 24, 2021 to hold them accountable under Section 2 of the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3), and related Texas state torts. Dkt. 1 ¶ 137; Dkt. 151 ¶ 147. Mesaros's own documents indicate she became aware of the litigation that same day. Dkt. 245-44 at 1940. Plaintiffs served Mesaros process and a preservation letter on July 2, 2021, which instructed her to preserve relevant documents, including "social media data, including posts […] and direct or private messages," "cellular phones" and "smart phones." Dkt. 28; Dkt. 191-2. Since December 21, 2021, Plaintiffs have served 42 Requests for Production of Documents ("RFPs") on Mesaros. Exs. 3-5. Mesaros's productions and deposition testimony make clear that responsive social media data and text messages from key

time periods were intentionally deleted or permanently lost.

> *a. Social Media Deletion*

During time periods relevant to this litigation, Mesaros maintained social media accounts. Dkt. 191-16 at 5.[1] Mesaros produced some Facebook and Instagram communications, but she admits that she deleted relevant social media posts after she learned of the lawsuit. Text messages from June 24, 2021, the day that this lawsuit was filed, include an exchange in which Mesaros tells her husband that they "probably need to delete [their] social media posts ASAP about chasing the bus" because "[Plaintiffs are] looking for more people based on other posts, tags and license plates in videos." Dkt. 245-44 at 1940.[2] She goes on, "And make sure Randi, Isaac, and any of them are deleted[;] [b]ecause they're probably gonna throw us under the bus." *Id.* A few minutes later, she sent Robert Mesaros a link to the complaint. *Id.* at 1941. At her deposition, Mesaros confirmed that she followed through on this plan, and deleted social media data "regarding the events of 10/30[.]"[3] Dkt. 241-6 at 267:13-15.

> *b. Phone Destruction and Selective Preservation*

After Robert Mesaros saved selected photos and videos from the device, the phone Mesaros used during the Incident was damaged. As a result, Mesaros permanently lost text messages from key time periods, including shortly before, during and after the Incident.

---

[1] Mesaros's discovery responses pointed Plaintiffs to Mesaros's publicly available profiles, Dkt. 191-16 at 5, but failed to identify that posts may have been deleted from those profiles.

[2] Selected text messages between the Mesaros Defendants, and ranging from November 19, 2020 through August 3, 2023, were produced on August 16, 2023 from Robert Mesaros's phone.

[3] Mesaros produced a document showing all of Mesaros's comments on Facebook posts dating back to early 2020. However, for certain comments from October 29 through November 4, 2020, the document displays only the metadata for a comment that once existed, but the document does not display the text or content of that comment. Ex. 6 at 72-79. It is possible that at least some of these comments were part of the Mesaros Defendants' social media purge on June 24, 2021.

Mesaros admitted in her initial discovery responses that the phone she used from 2020 through September 2021 contained key discoverable information, including communications about and recordings of the Incident. *See* Dkt. 191-15 at 2-4; Dkt. 191-6 at 2 (On October 30, 2020, "Robert was driving, so Joeylynn was the one using her phone to record or photograph"); Dkt. 191-16 at 3 (communicating on October 30, 2020 "to find [their] group"). Mesaros failed to preserve anything from her phone except selected photos and videos related to the Incident that Robert Mesaros downloaded and later produced in discovery.[4]

About two months after Mesaros became aware of the litigation, Mesaros dropped her phone such that it was damaged but still functional. Dkt. 241-6 at 260:13-261:13. She took no action to preserve data on the phone. *Id.* Mesaros dropped her phone a second time on September 23, 2021, when it became permanently damaged. *Id.*; Dkt. 191-8 at 2. Mesaros did not disclose her phone damage until *seven months after* it occurred, *after* responding to Plaintiffs' First Sets of RFPs and Interrogatories on March 4, 2022. Dkt. 191-6 at 2.

Upon learning of the potential loss of evidence, Plaintiffs asked the Mesaroses to explain their efforts to preserve or recover data from Mesaros's phone. Dkt. 191-7 at 19. The Mesaroses explained they were unable to "reset" the damaged phone through their own efforts, use of software, or assistance of an Apple technician. Dkt. 191-8 at 2. Given the key evidence at stake, Plaintiffs offered to bear the cost to use Plaintiffs' discovery vendor to recover data from Mesaros's phone. *See* Dkt. 191 at 4. Counsel for Mesaros refused this offer and engaged his own vendor, Crowe LLP ("Crowe"). *Id.* Crowe was unable to recover data from Mesaros's phone, and

---

[4] Robert Mesaros's amended responses asserted that "[a]fter the lawsuit was filed, [he] pulled all the videos and photos from [Joeylynn's now-damaged iPhone] from October 30[,] 2020 and later related [sic] to the Trump Train to send to counsel. He did not pull any other text messages or media from the phone at that time." Dkt. 191-8 at 2.

confirmed Mesaros's iCloud had no text message data between January 27, 2018 and September 24, 2021. Exs. 1, 2.[5]

In an attempt to explain this failure to preserve, Mesaros's counsel stated it had "not occurred to [the Mesaros Defendants] before [October 2021] that the data [on their phones] was not being backed up." Ex. 2 at 1. At her deposition, however, Mesaros admitted that "for years" she received notifications that the data was not backed up. Dkt. 241-6 at 262:3-6.

When Plaintiffs filed this lawsuit, Mesaros was aware her documents and communications were relevant and important for this litigation, yet she deleted evidence, encouraged her husband to do the same, and failed to take basic steps to preserve key text messages even though she saved other data from the same device. Plaintiffs expended considerable time and resources determining that the missing data cannot be recovered. This prejudices Plaintiffs' ability to prove essential elements of their claims. Plaintiffs therefore move the Court to sanction Mesaros under Rule 37(e).

## **ARGUMENT**

Federal Rule of Civil Procedure 37(e) provides that:

If electronically stored information [("ESI")] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it

---

[5] Plaintiffs Motion to Compel and Notice of Correction (Dkts. 191, 194) contain a description of the back and forth between parties in the intervening ten months. On May 24, 2023, Plaintiffs agreed to withdraw the motion to compel, based on receipt of the Crowe reports, which confirmed the text messages from the relevant time period that Plaintiffs sought had been irrevocably lost. *See* Dkt. 200.

may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

I.     **Plaintiffs Have Established the Four Predicate Elements of Rule 37(e)**

"[T]o apply Rule 37(e), a court must determine that the following four predicate elements exist: [1] there is ESI that should have been preserved; [2] that ESI has been lost; [3] the ESI was lost because of a party's failure to take reasonable steps to preserve it; and [4] the ESI cannot be restored or replaced." *Via Vadis, LLC v. Amazon.com, Inc.*, 2021 WL 3134257, at *3 (W.D. Tex. July 23, 2021); *see also Jim S. Adler, P.C. v. McNeil Consultants, LLC*, 2023 WL 2699511, at *8 (N.D. Tex. Feb. 15, 2023); *Eagan v. Walgreen Co.*, 2022 WL 683636, at *3 (5th Cir. Mar. 8, 2022). Mesaros's loss of ESI satisfies these elements.

Mesaros's social media data and text messages should have been preserved, as she was aware of the litigation against her and the relevance of her social media and text messages since June 24, 2021—when she texted her husband that their social media posts and communications with fellow Trump Train participants could expose them both to civil liability. Dkt. 191-2. "[A] party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation[.]" *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). Mesaros's duty to preserve ESI covered at the very least her communications with participants in the October 30, 2020 Trump Train, her communications about the Incident, and records of what she witnessed on October 30, 2020.

The ESI at issue was also lost either as a direct result of Mesaros's intentional deletion or failure to take reasonable steps to preserve it. Mesaros admitted to deleting social media data. Dkt. 245-44 at 1940; Dkt. 241-6 at 267:13-15.[6] Plaintiffs have reason to believe that key social media

---

[6] In April and May 2021, Plaintiffs collected screenshots of public posts made by the Mesaros

data from this time is missing. For example, Defendants Eliazar Cisneros ("Cisneros"), and the Mesaroses all testified that they had no formal interactions until the lawsuit was filed, when Cisneros reached out on social media to Mesaros (or she reached out to him) to introduce himself. Dkt. 241-6 at 259:9-14; Dkt. 241-7 at 103:12-104:1; Dkt. 241-4 at 67:7-68:10. Neither Cisneros nor the Mesaros Defendants have produced this initial introductory communication. *See* Exs. 7, 8.[7] Plaintiffs *have* located a post from November 3, 2020 in which Mesaros indicates her husband was already friends with Cisneros on Facebook. Ex. 9. Neither of the Mesaroses explained this inconsistency at their depositions. *See* Dkt. 241-6 at 259:15-260:12; Dkt. 241-7 at 105:16-107:22. There is no way to recover these or any other missing messages or interactions between Cisneros and the Mesaros Defendants from this time, as Cisneros's Facebook profile was also deleted by "unknown persons." Dkt. 109-7 at 3.

Mesaros is also intentionally responsible for the loss of her text messages, as she repeatedly failed to take reasonable precautions to preserve this data over several months. That Mesaros damaged her phone by dropping it accidentally—twice—does not excuse her failure to preserve, particularly as she could easily have done so by simply expanding her iCloud storage plan. *See*

---

Defendants. However, this collection was limited to posts that appear on the Mesaros Defendants' public timeline, and could have not reached posts with certain privacy settings, posts made in private groups, comments on private profiles, or private messages. Mesaros's assertion that Plaintiffs already saved the posts she deleted seemingly refers at least in part to posts and comments from a private Facebook group she was a member of at the time of the Incident, Dkt. 241-6 at 267:16-19, but Mesaros was banned from this group when she deleted her Facebook posts and comments (June 2021). As a result, posts in this group, which were produced by a non-party, *could not have been the same as those that Mesaros deleted.*

[7] These are the only message chains between Mesaros and Cisneros produced in this case. Neither contains an introduction as described in the Defendants' testimony, nor does the Facebook message contain the automatic script Plaintiffs have seen at the beginning of other messages from this platform (*see, e.g.*, Dkt. 245-110) which says, "You can now message and call each other and see info like Active Status and when you've seen messages."

*Brewer v. Leprino Foods Co.*, 2019 WL 356657, at *10 (E.D. Cal. Jan. 29, 2019) (holding that failure to back up phone data constitutes failure to take reasonable steps to preserve such data). Mesaros received notifications "[f]or years" that her phone's data was not backed up. Dkt. 241-6 at 262:3-6. Preserving it was as easy as selecting an option on her iPhone and paying a marginal fee.[8] Instead, Mesaros and her husband preserved certain photographs and videos from October 30, 2020 and the days after, but failed to preserve her text messages from this same time period on the same device. Dkt. 191-8 at 2. Mesaros's repeated failures to take simple steps to save these text messages make her directly responsible for their loss.

Finally, this important ESI cannot be replaced. Mesaros deleted posts from her Facebook profile—which automatically deleted those same posts from other locations where they may have been shared. Mesaros's own forensic expert confirmed her text messages are lost, and efforts to collect copies from third parties have been similarly unsuccessful. *See* Exs. 1, 2; *see also* Ex. 10 (third-party produced no text message exchanges with Mesaros). Instead, Plaintiffs are forced to rely on Mesaros's representations about her Facebook activity and text messages, despite the many inconsistencies in her documents and testimony.

## II.   Plaintiffs Are Entitled To A Jury Instruction That The Jury May Presume the Lost Information Was Unfavorable to Mesaros Under Rule 37(e)(2)

After satisfying the predicate elements, as Plaintiffs have, a court may issue "appropriate responsive measures," upon a showing of prejudice. *Via Vadis*, 2021 WL 3134257, at *3 (citation omitted). These measures may include awarding attorneys' fees, deeming certain facts admitted,

---

[8] As of the date of this filing, 50 gigabytes of iCloud storage costs $0.99 per month. iCloud+ Plans and Pricing, https://support.apple.com/en-us/HT201238, last visited December 12, 2023. To date, the Mesaroses have raised over $248,000 on their public fundraising account to finance this litigation. *See* https://www.givesendgo.com/mesaros.

giving an adverse inference instruction to the jury, and entering a default judgment. *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 801 (N.D. Tex. 2011). "[P]rejudice [] is satisfied where a party's ability to present its case . . . is compromised." *Id.* (internal quotations omitted). In other words, "to satisfy the prejudice requirement, the party seeking sanctions must demonstrate that the missing or altered evidence would have been relevant to her case." *Id.* Plaintiffs are entitled to an adverse inference jury instruction upon a showing that Mesaros "acted with the intent to deprive" Plaintiffs "of the information's use." *Id.*; Fed. R. Civ. P. 37(e)(2).

Mesaros's spoliation has prejudiced Plaintiffs. The missing social media data and text messages are highly relevant to Plaintiffs' case, including Mesaros's contemporaneous communications regarding her plans to attend the October 30, 2020 Trump Train and what she witnessed on the day of the Incident. *See* Dkt. 191-15 at 2-4; Dkt. 191-6 at 2; Dkt. 191-16 at 3; Dkt. 241-6 at 267:13-15. Their loss deprives Plaintiffs of insight into Mesaros's motivations, state of mind, and communications with potential co-conspirators, as she and her husband "chas[ed] the [B]us." *See* Dkt. 191-15 at 2-4; Dkt. 191-6 at 2; Dkt. 191-16 at 3; Dkt. 241-6 at 267:9-15; Dkt. 245-44 at 1940. "Proving the existence of a conspiracy is usually difficult . . . especially where . . . the proof is largely in the hands of the alleged conspirators." *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 447 (5th Cir. 1992) (cleaned up). Plaintiffs have experienced this difficulty firsthand. For example, the nature and extent of the relationship between Cisneros and Mesaros at the time of the Incident are crucial facts made harder to pin down by the loss of data.

What is more, Mesaros's June 24, 2021 message made clear her intention to delete social media data, and encourage her husband to do the same, with the intent to deprive Plaintiffs of relevant ESI. Dkt. 245-44 at 1940. She was aware of the lawsuit and aware she had evidence that could subject her to civil liability. *Id.* And, although Mesaros claims the destruction of her phone

was inadvertent, her failure to take the most basic steps to back up her texts—even after the phone was initially damaged—demonstrates similar intent with regard to her phone data. *Adler*, 2023 WL 2699511, at *30 ("[I]ntent can be proved indirectly and [a party] d[oes] not need to find a smoking gun before [seeking] sanctions[.]"). This inference is further supported by her selective preservation of only the photos and videos (but not texts), which she publicly stated she feels are exculpatory.[9] *Culhane v. Wal-Mart Supercenter,* 364 F. Supp. 3d 768, 774 (E.D. Mich. 2019) (concluding selective preservation of video evidence supports an inference of intent to deprive plaintiffs of the lost video). Such actions amount to the "destruction of information for the purpose of hiding adverse information." *Adler*, 2023 WL 2699511, at *21–22. Therefore, this Court should "presume that the lost information was unfavorable to [Mesaros]," Fed. R. Civ. P. 37(e)(2)(A), and thus order that a jury instruction "that [the jury] . . . may presume the information [Mesaros deleted] was unfavorable to [Mesaros]." Fed. R. Civ. P. 37(e)(2)(B); *Ashton*, 772 F. Supp. 2d at 801.[10] Plaintiffs further request that the Court award Plaintiffs reasonable expenses and attorneys' fees, along with any other relief the Court deems appropriate.

## CONCLUSION

FOR THE FOREGOING REASONS, Plaintiffs respectfully ask the Court to grant this Motion and enter the Proposed Order attached.

---

[9] *See, e.g.,* Nov. 23, 2021 Interview with Cannabis and Combat, https://rumble.com/vpou7g-robert-and-joeylynn-mesaros-vlog-0289.html ("We have tons of video footage proving it was really boring […]").

[10] "[T]he Fifth Circuit has not clarified whether its prior spoliation jurisprudence has been abrogated . . . pursuant to the amendment of Rule 37(e)[(2)]" but its "only decision citing or applying amended Rule 37(e) laid out the 'bad faith' and Rule 37(e)(2) 'intent to deprive' standards together, suggesting that . . . for ESI spoliation, they overlap or even are interchangeable." *Adler*, 2023 WL 2699511, at *11, 12.

Respectfully submitted,

DATED:  December 12, 2023

BY: */s/ Samuel Hall*

**TEXAS CIVIL RIGHTS PROJECT**
Ashley Fernandez Dorsaneo (TX Bar No. 24127393)
Christina M. Beeler (TX Bar No. 24096124)
Sarah Xiyi Chen (CA Bar No. 325327) (*pro hac vice*)
Veronikah Rhea Warms (TX Bar No. 24132682) (*pro hac vice*)
Texas Civil Rights Project
1405 Montopolis Drive
Austin, TX 78741
Telephone: (512) 474-5073
Facsimile: (512) 474-0726
Email: ashley@texascivilrightsproject.org
christinab@texascivilrightsproject.org
schen@texascivilrightsproject.org
veronikah@texascivilrightsproject.org

Travis Fife (TX Bar No. 24126956)
Texas Civil Rights Project
PO Box 1108
Houston, TX 77251
Telephone: (817) 991-4607
Facsimile: (512) 474-0726
travis@texascivilrightsproject.org

**THE PROTECT DEMOCRACY PROJECT, INC.**
John Paredes (NY Bar No. 5225412) (*pro hac vice*)
Orion Danjuma (NY Bar No. 4942249) (*pro hac vice*)
The Protect Democracy Project, Inc.
82 Nassau Street, #601
New York, NY 10038
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
john.paredes@protectdemocracy.org
orion.danjuma@protectdemocracy.org

Cameron O. Kistler (DC Bar No. 1008922) (*pro hac vice*)
Cerin Lindgrensavage (DC Bar No. 1741602) (*pro hac vice*)
JoAnna Suriani (DC Bar No. 1645212) (*pro hac vice*)
Anne Harden Tindall (DC Bar No. 494607) (*pro hac vice*)
The Protect Democracy Project, Inc.
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
cameron.kistler@protectdemocracy.org
cerin.lindgrensavage@protectdemocracy.org
joanna.suriani@protectdemocracy.org
anne.tindall@protectdemocracy.org

Benjamin L. Berwick (MA Bar No. 679207) (*pro hac vice*)
The Protect Democracy Project, Inc.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
ben.berwick@protectdemocracy.org

Jared Fletcher Davidson (LA Bar No. 37093)
(*pro hac vice*)
The Protect Democracy Project, Inc.
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
jared.davidson@protectdemocracy.org

**WILLKIE FARR & GALLAGHER LLP**
Michael Gottlieb (DC Bar No. 974960) (*pro hac vice*)
Robert Meyer (DC Bar No. 405632) (*pro hac vice*)
Samuel Hall (DC Bar No. 242110) (*pro hac vice*)
Meryl Conant Governski (DC Bar No.

1023549) (*pro hac vice*)
Jamielah Yancey (DC Bar No. 1619055)
(*pro hac vice*)
Rebecca Heath (DC Bar No. 1644402) (*pro hac vice*)
Amy R. Orlov (DC Bar No. 1780213) (*pro hac vice*)
Aaron E. Nathan (NY Bar No. 5478227)
(*pro hac vice*)
Noah Mussmon (DC Bar No. 90006660)
(*pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006-1238
Telephone: (202) 303-1000
Facsimile: (202) 303-2000
Email: mgottlieb@willkie.com
rmeyer@willkie.com
shall@willkie.com
mgovernski@willkie.com
jyancey@willkie.com
rheath@willkie.com
aorlov@willkie.com
anathan@willkie.com
nmussmon@willkie.com

Madeleine Tayer (NY Bar No. 5683545)
(*pro hac vice*)
John P. Catalanotto (NY Bar No. 5857750)
(*pro hac vice*)
Christina Adele Peck (NY Bar No. 5923545) (*pro hac vice*)
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: mtayer@willkie.com
jcatalanotto@willkie.com
cpeck@willkie.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF CONFERENCE

I hereby certify that on December 11, 2023, counsel for Plaintiffs communicated via email with counsel for Defendant Joeylynn Mesaros regarding their intention to file this motion. Counsel for Defendant Joeylynn Mesaros responded to Plaintiffs' email on December 12, 2023, indicating that he opposed the motion.

DATED:  December 12, 2023                Respectfully submitted,

*/s/ Samuel Hall*
**WILLKIE FARR & GALLAGHER LLP**
Samuel Hall (DC Bar No. 242110) (*pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006-1238
Telephone: (202) 303-1000
Email: shall@willkie.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2023, a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case File System of the Western District of Texas in compliance with the Federal Rules of Civil Procedure. I further certify that the foregoing was emailed to Steve Ceh and Randi Ceh per agreement of the parties.

DATED:  December 12, 2023                Respectfully submitted,

*/s/ Samuel Hall*
**WILLKIE FARR & GALLAGHER LLP**
Samuel Hall (DC Bar No. 242110) (*pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006-1238
Telephone: (202) 303-1000
Email: shall@willkie.com