UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ERIC CERVINI, et al.,<br><br>    *Plaintiffs,*<br><br>v.<br><br><br>ELIAZAR CISNEROS, et al.,<br><br>    *Defendants.* | Civil Action No. 1:21-cv-00565-RP<br><br>Hon. Robert Pitman |

**DOLORES PARK'S CORRECTED OBJECTIONS TO THE EXPERT REPORT AND TESTIMONY OF THERON BOWMAN[1]**

---

[1] Defendant Dolores Park previously filed these objections prior to being in possession of the final version of Dr. Bowman's Deposition. She re-files this document with corrections made to her citations and with the submission of the final copy of Dr. Bowman's deposition transcript.

Defendant Dolores Park has met and conferred with Plaintiffs, who oppose this motion.

On November 8, 2023, pursuant to the case management order, Plaintiffs filed their expert designations and provided the Report of Theron Bowman. (ECF No. 261; Ex. 1., Report of Theron Bowman). On January 16, 2024, Defendants deposed Theron Bowman. (Ex. 2, Dep. of Theron Bowman).[2] Dolores Park hereby objects to the admissibility of his proposed expert opinion and seeks its exclusion, and/or that the Court schedules a *Daubert* hearing.

### PROPOSED EXPERT OPINION OF BOWMAN

Plaintiffs seek to use the opinion of Theron Bowman to analyze Dolores Park's driving, to identify violations of traffic law and the penal code they allege she committed, and to establish required elements of their legal claims. His opinion should be excluded for each of its proffered uses.

### I.   Theron Bowman Lacks the Qualifications to Provide an Expert Opinion in Traffic and Highway Safety.

Theron Bowman obtained a Bachelor's degree in Biology, a Master's in Public Administration, and a Doctorate degree in Philosophy. Ex. 1 at 3. Bowman has worked as a narcotics detective from 1983-85 and then in police administration from 1985-2013 at which point, he worked as a Deputy City Manager from 2012-2017. Ex. 1 at 43-45. Since 1998, Bowman has owned his own consulting firm, Theron L. Bowman, Inc. Consultants ("Bowman, Inc."). *Id*. 44-45. At Bowman, Inc., he serves as a "Police practices expert and investigator on recruit, pre-service, in-service, and

---

[2]Per the protective order, depositions that are attorneys' eyes only or have been designated as confidential will be filed with this Court with a Motion for Leave to File these documents under seal. An unredacted copy of this objection and the exhibits affected by the protective order will be contemporaneously filed with the motion.

1

field training, use of force, internal affairs, misconduct complaints, community policing, bias-free policing, stops, searches and arrests, and recruitment, hiring, and promotions[.]" *Id.* at 44. His work as an expert in administration also "includes audits, inspections, and compliance monitoring." *Id.* His background reveals no scientific or technological training in highway or roadway safety. Ex. 1.

At his deposition, Bowman testified that his expertise for this case is from his review of "police departments and police cases and cases involving traffic -- movement, traffic enforcement." Ex. 2 at 15, Lns. 23-24. It is not clear from his resume or testimony when he worked in traffic enforcement. In federal court, Bowman has testified as a "policies practices expert" in the area of public administration to regarding the appropriateness and applicable of the terms of a consent judgment. *ACLU of Tenn., Inc. v. City of Memphis*, 2020 U.S. Dist. LEXIS 172465, *13 (W.D. Tenn. Sept. 21, 2020).

## II. Bowman's Proposed Opinion is Inadmissible.

Bowman was "asked by Plaintiffs' counsel to review video recordings and other material related to a 'Trump Train' incident on October 30, 2020" on I-35 and asked to "identify potential violations of the Texas vehicle and criminal code and also to assess how the incident affected driving conditions on the road that day." Ex. 1 at 10.[3] Regarding Dolores Park, he concludes, *ipse dixit*, that she broke the law by unlawfully sounding her horn, violating Texas Penal Code, Sec 22.05: Deadly

---

[3] Bowman admitted that he did not consider whether Dolores Park's actions were protected First Amendment activity because that consideration would have been outside of this "scope of work." Ex. 2 at 114, lns. 6-10.

2

Conduct, and Texas Penal Code, Sec. 42.03: Obstructing Highway or Other Passageway. Ex. 1 at 15. The video evidence and sworn testimony in this case has been as follows:

- Dolores Park never spoke or coordinated with the other Defendants.[4]

- On 10-30-20, Dolores Park drove at a safe distance behind the bus for the near-entirety of the time she traveled on I-35.[5]

- Dolores Park was only in the proximity of the bus for a brief period of time, when she safely passed the bus to exit the freeway and go home.[6]

- For the short time when Dolores Park was in the proximately of the bus, she never caused the bus to slow down and maintained a safe distance from the bus.[7]

Bowman' opinion relies on a different version of the facts—one that does not exist and is contrary to video and testimony. For example, Bowman wrote in his report that Dolores Park drove "directly" in front of the bus at 26:42 in the video attached as Exhibit 3, but when confronted with this mistruth at his deposition Bowman claimed to not recall. Ex. 2 at 63, lns. 7-24. Then, later during the deposition, he changed his opinion and testified that Dolores Park was apparently "directly" in front of the bus "[b]etween 26:43 and -45 or -46" in the video because the bus straddled two lanes. *Id*. at 98, lns. 1-22, Ex. 3, Plaintiffs00000070.mp4. Then, even in the face of video evidence showing his understanding of the facts was simply incorrect, Bowman

---

[4] *See* Dep. of Dolores Park (ECF No. 277-10), Dep. of Steve Ceh (ECF No. 245-8) (does not know Dolores Park); Dep of Eliazar Cisneros (ECF No. 245-11) (same); Dep. of Randi Ceh (ECF No. 245-14) (same); Dep. of Joeylynn Mesaros (ECF No. 245-21) (same); Dep. of Robert Mesaros (ECF No. 245-38) (same).
[5] *See* Exs. 3-5; *see also* Ex. 2 at 178 lns. 16-25 & 179 lns. 1-25 (Bowman cannot say what danger Dolores Park did or did not create when behind the bus).
[6] Exs. 3-5.
[7] Exs. 3-5.

3

went back to his original testimony that Dolores Park drove "directly" in front of the bus. *Id.* at 70, lns. 1-9. "Directly" in this context, of course, communicates that Dolores Park was in front of the bus "with nothing or no one between[.]" https://www.collinsdictionary.com/us/dictionary/english/directly, *last visited* Jan. 29, 2024. And yet, she was never "directly" in front of the bus. Therefore, Bowman then re-defined the word "directly" to mean "in the same lane of travel" even if it is "10 cars ahead[.]" Ex. 2 at 234, lns. 2-8; *see also id.* at 235-36. When asked if using the word "directly" in this way could "giv[e] people a misunderstanding of how far away Dolores Park's vehicle was from the bus", Bowman just said "I was providing a statement of my opinion. And my opinion is that[.]" *Id.* at 236, lns. 4-11.

Bowman boldly concludes, again *ipse dixit*, that Dolores Park's driving was "reckless" and "potentially deadly[.]" Ex. 1 at 18. He provides no analysis of the how his characterizations of *her* driving would rise to that level. Bowman claims that she "intercepted" the bus to interfere with its campaign stops. *Id.* at 42. Yet, Bowman does not point to any evidence that Dolores Park's vehicle impeded with the bus's movement. Bowman ignores that the only time that Dolores Park is in the vicinity of the bus is as she is leaving the highway, and her driving never causes the bus to brake or change speeds or take "evasive manuevers." Ex. 3 (showing Dolores Park in the proximity of the bus at around 26:00); *see also* Ex. 4, Dep. of Timothy Holloway; Ex. 5, Dep. of Dr. Dorothy).

Furthermore, Bowman was "not aware" of the "scheduling details" of the Biden-Harris Bus, and admitted that Dolores Park exited I-35 well before Austin. Ex.

4

2 at 172, lns. 20-21; *id.* at 237, lns. 3-6. There is no explanation to bridge the gap between what the video shows and what the deposition testimony has yielded, and what Bowman's concludes. Bowman finishes his report by claiming that Dolores Park's actions were both "random" and "coordinated" with the other Defendants (clearly opposites), "posed a serious danger to the bus" (not substantiated by the video, *see* Ex. 3), "violated Texas motor vehicle driving safety and Texas criminal laws" (improper legal conclusion), "caused other motorists to alter their driving in ways that created additional peril to the Bus and other motorists" (not substantiated by the video, *see* Ex. 3), and "caused the collision between Biden Campaign Staffer A's vehicle and the vehicle operated by Defendant Eliazar Cisneros" (not substantiated by all available evidence). Ex. 1 at 42. There is no evidence that Dolores was ever involved in the collision in any way, nor did Plaintiffs' Complaint allege she was. At the time of the collision, Dolores Park was numerous car lengths behind the bus. Ex. 5; Dep. of Dolores Park (ECF No. 277-10).

Bowman admitted that had someone wanted to run the Biden bus off the road or hit it, it would have been readily easy to do so. Ex. 2 at 162-65 163, lns.2-10. He begrudgingly admitted that this did not happen, and the bus was never damaged. *Id*. 163, lns. 17-18 and 165 lns.17-18 Lastly, Bowman conceded in his deposition that most of the infractions that he identified Dolores Park as committing in his report are things either Bowman himself has done while driving or otherwise do not rise to the level of reckless driving. *See* Ex. 2 at 187, lns. 1-15 (taking hands off wheel, eating while driving, picking up a device I dropped), at 188, lns. 1-9 (driving while using a

5

cell phone or hands occupied); at 189, lns. 15-18 (holding cell phone while driving does not equate reckless driving), at 190, lns. 1-3 (honking the horn "would not be an arrestable offense for reckless driving"). While Bowman shares generic statements and hypothetical speculation about dangerous driving, he did not provide an admissible opinion based on the video evidence or depositions as to Dolores Park's actual driving.

## OBJECTIONS

Fed. R. Evid. 702 governs the admissibility of expert testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597-98 (1993). Under *Daubert* and Rule 702, the Court must act as the "gatekeeper" to ensure that an expert's testimony. An expert's opinion is only admissible if the expert is qualified in the area of the proposed testimony, and if the proffered evidence is both relevant and reliable. *United States v. Cooks,* 589 F.3d 173, 179 (5th Cir. 2009); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999). The principles behind *Daubert* apply to scientific and non-scientific alike. *Id.* Courts should not allow a proposed expert opinion that is rooted in the unsupported assertions of the expert. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Courts must also determine whether proposed expert testimony is reliable or whether "there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146. The party seeking to introduce the testimony carries the burden of proof to establish its admissibility. Fed. R. Evid. 104(a).

**I. Bowman's Proffered Opinion is Not Based on the Video Evidence and Deposition Testimony and is Unreliable.**

An expert's testimony must be based on sufficient facts and data and be the product of reliable principles and methods, applied reliably to the case. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Bowman's Report and Testimony lacks this foundation. Bowman ignores what is captured on video and disregards or ignores relevant deposition testimony. Bowman's report describes many situations that he believes to be "deadly dangerous," such as "pulling in front of a motor coach bus and then slowing down to impede traffic" or forcing the bus to "change lanes" or [p]ulling so close to the back bumper that you risk colliding with a bus," etc. Ex. 1 at 17-18. There is no evidence, however, that Dolores Park did any of these things. Much of Bowman's testimony is based on conjecture and speculation. For example, his testimony conflated two separate events: one where Dolores Park comments on letting people onto the freeway and two when she passes a semi-truck without exhibiting unsafe driving. *See* Exs. 3 and 5. During his deposition, Bowman had to be corrected by the deponent for confusing the facts he was asked to analyze, which are captured on the videos. Ex. 2 at 169, lns. 17-21 ("we're talking about two different things"). Bowman insisted that Dolores Park drove "directly" in front of the bus, when the video clearly shows a different vehicle directly in front of the bus at all the time markers to which Bowman referred. Ex. 3. Bowman then used his confused misunderstanding of the factual record to speculate that Dolores Park *could have* caused an accident. *Id.* at 224-25, lns.1-11.

First and foremost, she did not, nor did she force other cars to react in a manner that might have created such a scenario. *See* Exs. 3-5. And secondly, Bowman's

7

opinion to support this speculation "shows none of his work." *Tang v. Toyota Motor Corp.*, 2022 U.S. Dist. LEXIS 123169, at *5 (W.D. Tex. Jan. 20, 2022). He testified in his deposition that he "had no way of measuring th[e] distance" between Dolores Park and the bus, and therefore seemingly between the other vehicles he observed on the video as well. Ex. 2 at 236, ln. 3. Bowman provided no calculations, did not test his opinions, failed to seek peer review, and did not consider other alternative explanations. Bowman assumed that Defendants "coordinated" their driving but did not take into account that Dolores Park never communicated with any of the Defendants and did not know them. There is no evidence of a plan that she should be in a certain position. The video shows that Dolores Park followed behind the bus and was only in the proximity of the bus for a brief moment, at which time the bus did not brake, slow down, or respond to her vehicle. Exs. 3-5. Contrary to the dramatic hyperbole of Bowman, Dolores Park did not drive in a manner next to the bus that was threatening, intimidating, dangerous, or reckless. Instead, she drove away from the bus to exit the freeway and go home and did so without any accompaniment from the co-Defendants. Ex. 3.

While "[t]rained experts commonly extrapolate from existing data[,]" neither *Daubert* nor Rule 702 "requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146. When a proposed opinion is "based on facts and speculations designed to bolster [a party's] position" and "lacks factual foundation[,]" it also lacks reliability. *Duhon v. Marceaux*, 33 Fed. App'x 703, 2002 U.S. App. LEXIS 6387, at *1 (5th Cir.

8

2001) (affirming trial court's exclusion of officer's opinion regarding who caused a traffic accident and ordering redaction of the report to reflect same where officer was not qualified to testify as an expert in accident reconstruction nor did he witness the accident). Here, Bowman's proposed opinion relies less on the factual record, an objective methodology and reliable principles, and more on the adoption of Plaintiffs' legal arguments. The Court should "insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). Unfortunately, with Bowman, his opinion does not.

### II. Bowman's Opinion that Defendants Violated Traffic Laws and the Texas Penal Code is Improper Legal Conclusion.

Bowman should not be allowed to testify to violations of the law, nor should he be allowed to testified that Dolores Park drove "recklessly." Rule 702's "Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). Furthermore, a witness is prohibited from providing "*legal* conclusions." *Id*. "[A]n expert may *never* render conclusions of law." *Reitz v. Woods*, 85 F.4th 780, 787-788 (5th Cir. 2023) (internal citations omitted). Bowman's opinion concludes that Dolores Park committed traffic and criminal violations, and claims (erroneously, in light of video evidence to the contrary) she drove "dangerously" and "recklessly"—which is a legal finding of an ultimate issue of law regarding whether protest activity is "outside the bounds of First Amendment protection." *Counterman v. Colorado*, 143 S. Ct. 2106 (2023). It is improper for any proposed expert to opine on such a conclusion of law.

**III. Bowman's Opinion is Misleading and More Prejudicial than Probative.**

A court may exclude evidence "if its probative value is substantially outweighed by the danger of . . . confusion of the issues or misleading the jury." Fed. R. Evid. 403. The prejudice that would be caused to Dolores Park by Bowman drawing factually inaccurate claims (that conflict with the videos evidence) and using the full weight of his past in law enforcement to bolster Plaintiffs' legal arguments far outweighs the probative value of Bowman's opinion.

## CONCLUSION

Plaintiffs have failed to satisfy their burden under *Daubert* and Rules 702 and 403. Bowman's proposed expert testimony should be excluded.

Respectfully submitted,                                Dated: July 22, 2024

THOMAS MORE LAW CENTER

/s/ Richard Thompson
Richard Thompson

/s/ Erin Elizabeth Mersino
Erin Elizabeth Mersino
THOMAS MORE LAW CENTER
30 Frank Lloyd Wright Drive
Suite J-3200
Ann Arbor, MI 48106
Tel: (734) 827-2001
Fax: (734) 930-7160
Email: rthompson@thomasmore.org
emersino@thomasmore.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all registered ECF participants listed for this case. I sent via email per agreement of the parties a copy of the foregoing to Defendants Steve Ceh and Randi Ceh at the following addresses provided by the parties:

Steve Ceh
Email: steveceh33@gmail.com

Randi Ceh
Email: randiceh716@gmail.com

/s/ Erin Elizabeth Mersino
Erin Elizabeth Mersino