UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| WENDY DAVIS, DAVID GINS, and TIMOTH HOLLOWAY, | |
| Plaintiffs, | Civil Action No. 1:21-cv-00565-RP |
| v. | Hon. Robert Pitman |
| | Hon. Magistrate Lane |
| | Hon. Magistrate Hightower |
| ELIAZAR CISNEROS, RANDI CEH, STEVE CEH, JOELYNN MESAROS, ROPERT MESAROS, and DOLORES PARK, | |
| Defendants. | |

## DOLORES PARK'S OBJECTIONS TO THE COURT'S JURY SELECTION PLAN

Dolores Park, by and through her counsel, respectfully submits her objections and proposed changes to the Court's jury selection plan pursuant to this Court's August 23, 2024 Order, ECF No. 488.

**I.  Objection and Proposed Change to Section II, B—Statement of Facts.**

Dolores Park objects to the language used in the first paragraph of the Statement of Facts, as it does not describe Plaintiffs' claims in an objective manner, but instead attempts to argue Plaintiffs' disputed factual and legal theories. The language in the "Statement of Facts" unfairly and prejudicially promotes Plaintiffs' arguments and theory of the case, while it does not include language that provide the

1


same opportunity for the Defendants, including Dolores Park. At jury selection, the statements and directions of the Court should err on the side of neutrality and not advocacy. Furthermore, each of the Defendants is entitled to his or her own defense, which should be stated separately as the factual allegations and legal theories against each Defendant are not identical, and each Defendant has the right to put forth a unique defense. And considering Plaintiffs allege that Defendants conspired with one another, grouping the Defendants together as one conglomerate is highly prejudicial, as the jury should weigh the facts and evidence against each Defendant when determining liability.

Therefore, Dolores Park proposes, other than retaining the introductory sentence that established the identity of the parties, that the Court delete the first paragraph of the Statement of Facts and slightly edit the second paragraph, to state as follows:

> This civil case is brought by three Plaintiffs—Wendy Davis, David Gins, and Timothy Holloway—against six Defendants—Eliazar Cisneros, Randi Ceh, Steve Ceh, Joeylynn Mesaros, Robert Mesaros, and Dolores Park.[1]
>
> Plaintiffs bring three claims for monetary damages. In Claim I, Plaintiffs allege that Defendants violated 42 U.S.C. § 1985(3), also referred to as the Ku Klux Klan Act by entering into an unlawful

---

[1] Deleting: "~~Plaintiffs allege that on October 30, 2020, they were campaigning for the Biden-Harris Presidential Campaign in a campaign bus tour traveling on Interstate 35 from San Antonio to Austin. Plaintiffs allege that Defendants, with others, organized and carried out a conspiracy to use force, intimidation, or threats to prevent Plaintiffs from supporting and advocating for their preferred candidate, or to injure them for that support, by surrounding the bus with their cars and trucks in a so-called "Trump Train," impeding its progress and preventing Plaintiffs from making several scheduled campaign stops along I-35.~~"

conspiracy.[2] In Claim II, Plaintiffs allege that Defendants are liable for Civil Conspiracy under Texas State Law. In Claim III, Plaintiffs allege that Defendants are liable for Assault under Texas State Law.

Defendants deny the truth and accuracy of Plaintiffs' allegations and put forth their own defenses.[3]

[*Insert each Defendants' defense*].

Defendant Dolores Park asserts that she did not violate the Ku Klux Klan Act and never entered into an unlawful conspiracy.  Defendant Park asserts that she is not liable for any damages to Plaintiffs, monetary or otherwise.  Dolores Park asserts that Plaintiffs cannot prove each of the required elements of their claims, nor will they establish that their requested damages are appropriate. Dolores Park also asserts that even if Plaintiffs were to satisfy the elements of their claims, her actions were protected speech and association under the First Amendment which provides a complete defense from liability.

**A.  Contrary to Plaintiffs' Objection, the Jury Should Consider Whether the Facts of the Case Establish that Dolores Park's Actions Were Speech and Association.  If Dolores Park's Actions Constitute Otherwise Lawful Free Speech and Free Association, then the First Amendment Protects Her from Civil Liability.**

Dolores Park's defense centers around her lawful intent and lawful actions in joining a caravan of vehicles to wave flags and protest on I-35.  The First Amendment allows associative activity, such as parades of vehicles and sharing of political messages on public thoroughfares.

Plaintiffs argue in their objection, without citing any legal authority, that the First Amendment cannot provide an affirmative defense.  This is not so.  The First Amendment can indeed serve as an affirmative defense to civil liability in certain

---

[2] Deleting: "~~by conspiring with each other and others to knowingly intimidate constitutionally eligible voters by physically assaulting, threatening, and harassing Plaintiffs while driving on I-35.~~"

[3] This proposed edit sets forth each party's defense separately, as the jurors should consider whether a defendant is liable for each claim on an individual basis.

circumstances, such as here. *See, e.g., Doe v. McKesson*, 71 F.4th 278, 284 (5th Cir. 2023) (explaining that under the standard set forth in *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982), the question is whether a protest participant "authorized, directed, or ratified specific tortious activity." If the defendant did not "authorize, direct, or ratify" unlawful activity, then the First Amendment protects the defendant from civil liability.); *see also Snyder v. Phelps*, 562 U.S. 443 (2011). Here, Dolores was not "in charge" of any Trump Train, nor did she "give orders" to any protestors or members of the caravan, and Plaintiffs never allege that she hold any position of such authority. *McKesson*, 71 F. 4th at 283.

Engaging in speech that constitutes political hyperbole is not ratification of unlawful conduct, nor is associating with others who are engaging in political hyperbole. *Counterman v. Colorado*, 600 U.S. 66 (2023). So even if the Court finds that a conspiracy existed for Defendants to drive down I-35 and some members violated the Texas Driving Code in their conduct, the jury would still need to consider whether that individual Defendant's intent and conduct were protected free speech or whether the Defendant instead had the requisite intent for his or her conduct to cause injury to Plaintiff's property or person causing monetary damages. *Id.*

A Defendant has the right for a jury to determine whether his or her speech and associative activity was political hyperbole or whether it was intended to constitute a true threat of violence. *Id.* Here, Dolores Park believed that driving in a caravan to share political views did not rise to the level of a true threat. So, even if a jury find that she drove in a Trump Train, if the jury finds that the Trump Train

4

caravan, which had the right to freely associate on I-35, a public highway, was for the purpose of expressing political views (even if the sharing those political views felt like "intimidation" or "harassment" or even "forceful" to Plaintiffs and even if Plaintiffs decided to cancel their campaign speech because they felt harassed or intimidated), a jury could still make factual findings the First Amendment protects a defendant's participation in the Trump Train caravan. Otherwise, the Court would be extending a Heckler's Veto to all speech and association deemed by a listener to be harassing, annoying, intimidating, etc.

A jury also could reasonably conclude that Dolores Park's driving as part of caravan and waving her flag carried more components of pure speech activity based on their factual findings, than conduct devoid of speech or associative value. For example, Plaintiffs in this case have alleged that holding onto a political flag while driving was reckless because it required Dolores Park to take a hand off the wheel of the vehicle. Judge Pitman's summary judgment order recognizes that "flag waving" is "expressive conduct," ECF No. 458 at 42. A jury should make the factual determination if the conduct at issue, for example flag waving while driving, is motivated by a lawful desire, or whether the speech or associative activity possesses the recklessness required for a Defendant to lose his or her First Amendment protection.[4]

---

[4] Judge Pitman's denial of Dolores Park's summary judgment motion; however, should not be used to foreclose her from presenting her defenses to a jury, especially when they are based on findings of fact. The question of whether Plaintiffs have established the required elements of their claims beyond a preponderance of the evidence is a different question from whether it was primarily a defendant's speech,

Allowing for the expression of dissenting views, and for the association of those who hold those views, is a critical part of the political process. The First Amendment might even "best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminiello v. City of Chi.,* 337 U.S. 1, 4 (1949). While this does not mean that every manner of speech or association of speakers deserves constitutional protection, it does mean that the First Amendment should be broadly interpreted to favor the allowance of more speech, not less. *Cox v. Louisiana,* 379 U.S. 536, 578 (1965) ("[W]hen passing on the validity of a regulation of conduct, which may indirectly infringe on free speech, this Court ... weigh[s] the circumstances in order to protect, not to destroy, freedom of speech." (internal quotation marks omitted)) (Black, J., concurring)). This broad interpretation should extend not to just small matters in a case that do not mean much, but also to the words stated directly to the jury who will be deciding the defendants' fate. And it would be appropriate for the words requested by Dolores Park, to reach the jury in the Court's discussion of the defenses she has raised.[5]

---

association, or conduct that caused a plaintiff to feel harassed or intimidated or whether a defendant should be protected from liability under the First Amendment because a jury finds that the facts at trial reveal that the defendant's speech and association do not rise to a true threat.

[5] Plaintiffs seem to allude to the Fifth Circuit rejecting Defendant's First Amendment defense. This could not be further from the reality of the Fifth Circuit's decision, which found that the case raised important questions of law regarding the Plaintiffs' claims and the implications they could have to First Amendment protections. The Fifth Circuit merely decided not to issue an extraordinary writ in response to Defendants' petition for a writ of mandamus.

**II.     Objection to the Specific Question at Section III, A—Which Inappropriately Discusses That a Settlement was Reached in *Cervini v. Stapp*.**

Dolores Park objects to one of the specific questions posed to the jury, as it highlights that the City of San Marcos reached a settlement with the Plaintiffs who brough this case. The Specific Question to the venire asks, "Have you heard anything about a case brought by Plaintiffs against the City of San Marcos and others that resulted in a public settlement in 2023?." The way the question is posed communicates to the jury that these Plaintiffs have previously obtained a settlement in their favor, that they obtained this settlement for what occurred in San Marcos, and that the settlement would be publicly available if they researched it or did an internet search. This question inappropriately and unfairly bolsters Plaintiffs' claims before the jury. Dolores Park proposes editing the question to: "Have you heard anything about any other case brought by Plaintiffs?" This would achieve the desired result of filtering out bias in the jury pool without exposing the jury to prejudicial information that would unfairly and negatively affect the defendants.

**III.    Objection to the Number of Jurors.**

Fed. R. Civ. P. 48 provides that "A jury must begin with at least 6 and no more than 12 members, and each juror must participate in the verdict unless excused under Rule 47(c). (b) Verdict. Unless the parties stipulate otherwise, the verdict must be unanimous and must be returned by a jury of at least 6 members." Rule 48 allows for a jury of 12 members to be impaneled. Dolores Park requests that 12 jurors be impaneled on the jury in this case. This case involves multiple defendants, multiple

7

claims, monetary damages, and a potential award of several millions of dollars in attorneys' fees. If Plaintiffs are successful in this case, the Defendants will be thrust into bankruptcy, publicly humiliated, branded as individuals who violated the Ku Klux Klan Act, etc. The outcome of this lawsuit will have a substantially detrimental effect on their lives and their futures. Considering the high stakes of this litigation, the Court should expand the number of jurors deciding the case to 12, as is expressly allowed under Rule 48, to ensure that defendants receive a fair process and that the jury reaches the correct and fair result that is supported by the evidence and the facts.

### IV. Objection to Any Sharing of Pre-emptory and For Cause Challenges of Defendants.

28 U.S.C. §1870 allows in civil cases that "each party shall be entitled to three peremptory challenges." It further states that "[s]everal defendants or several plaintiffs may be considered as a single party for the purposes of making challenges, or the court may allow additional peremptory challenges and permit them to be exercised separately or jointly." Dolores Park asks for each Defendant to be allowed three peremptory challenges. The factual allegations that Plaintiffs have pled against each defendant are unique, and each Defendant has his or her own theories of the cases and defenses. Further, there are 6 defendants in this case. Each defendant and defense counsel should be afforded the opportunity to exercise peremptory challenges to weed out bias and unfair prejudice particular to each specific defendant.

## V.    Objection to Impaneling Only One Jury for All Six Defendants.

While Dolores Park's Motion in Limine requesting a separate trial denied, she still has serious concerns regarding the arguments raised in that motion. *See* ECF No. 489.[6] Those concerns could be partially addressed by impaneling a separate jury to decide the claims specifically brought against Dolores Park, who could be specifically instructed as to which evidence or statements of other co-defendants, could and could not be considered by the jury under the Federal Rules of Evidence. As it stands now, Dolores Park will be substantially prejudiced by the statements, many wholly unrelated, of the individuals Plaintiffs named as her co-Defendants. The Court has also ruled that events that co-Defendants participated in that are highly prejudicial and occurred after the incident date of October 30, 2020, could be introduced into evidence, such as evidence pertaining to January 6th. Dolores Park has no connection, knowledge, or association to January 6th, yet the evidence will assuredly cast a negative light onto all the co-defendants merely because they are named together as defendants. Having a separate jury, where that jury could be instructed that such evidence cannot be considered in their deliberations regarding Dolores Park and is not evidence for the Plaintiffs' claims against her would help to cure the prejudice created by trying all 6 of the defendants together.

When many defendants are tried together in a complex case and they different degrees of culpability, this risk of prejudice is heightened. *Kotteakos* v. *United*

---

[6] Dolores Park hereby incorporates by reference the factual record and arguments raised in ECF No. 489.

9

*States,* 328 U. S. 750, 774-775 (1946). Evidence that is probative of one defendant's guilt but technically admissible only against a co-defendant also may present a risk of prejudice. *Bruton* v. *United States,* 391 U. S. 123 (1968). In this complex case, with multiple defendants who have may have varying degrees of culpability, the risk of prejudice is heightened. Therefore, judicial measures should be employed to mitigate prejudice. Having separate juries impaneled to decide the liability of the particular defendant to whom they are assigned would help in preventing a jury from making an unreliable judgment based on evidence that is inadmissible as to one of the co-defendants but not to another. Some of such evidence in this case particularly poses a danger to substantially prejudice Dolores Park, mislead the jury, and confuse the issues. Even within joint trials, the Court can choose to employ mechanisms to ensure that each defendant and each claim is considered separately. Impaneling a jury to only consider the liability of Dolores Park, considering only the evidence admissible against her, is a reasonable mechanism that should be employed here.

    **V.**    **Objection to Time Limitation for Defense Counsel.**

Dolores Park objects to the designation of only 45 minutes for all 6 defendants to conduct voir dire, that will have to be shared amongst the defense counsel, one litigation team who entered the case just a couple days ago, only a week before this trial. Defense counsel is not coordinated in the same sense that Plaintiffs' counsel is, as the Defendants each have different interests, arguments, theories of their defense, witnesses, etc. If this Court is inclined to give each party 15 minutes of time to conduct voir dire, as it seems to be (giving 3 Plaintiffs 45 minutes of voir dire

questioning), then in the very least this Court should give each Defendant the same use of 15 minutes per party (for a total of 90 minutes to be shared among the defense counsel). This case presents multiple claims, multiple parties, and difficult and complex factual and legal issues. Defense counsel should be given more time to voir dire the jury, especially when the time is divided to give Plaintiffs" counsel additional time to question the jury than any defense counsel, who must share 45 minutes between 6 defendants and other defense counsel representing individual defendants. As it stands now, the Order unfairly prejudices the Defendants.

Respectfully submitted,                                Dated: September 4, 2024

THOMAS MORE LAW CENTER

/s/ Richard Thompson
Richard Thompson

/s/ Erin Elizabeth Mersino
Erin Elizabeth Mersino
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Drive
Suite J-3200
Ann Arbor, MI 48106
Tel: (734) 827-2001
Fax: (734) 930-7160
Email: rthompson@thomasmore.org
emersino@thomasmore.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2024 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all registered ECF participants listed for this case.

<div style="text-align:right">

/s/ Erin Elizabeth Mersino
Erin Elizabeth Mersino

</div>