UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| WENDY DAVIS, DAVID GINS, and TIMOTHY HOLLOWAY,<br><br>       Plaintiffs,<br><br> v.<br><br>ELIAZAR CISNEROS, RANDI CEH, STEVE CEH, JOEYLYNN MESAROS, ROBERT MESAROS, and DOLORES PARK,<br><br>       Defendants. | Civil Action No. 1:21-cv-00565-RP<br><br>Hon. Robert Pitman |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE MESAROS DEFENDANTS' MOTION FOR LIMITED DISCOVERY RELATED TO FORTHCOMING ATTORNEYS' FEE APPLICATION**

Robert and Joeylynn Mesaros's (the "Mesaros Defendants") Motion for Limited Discovery ("Motion") amounts to nothing more than baseless speculation. Dkt. 580. Put simply, the Mesaros Defendants seek to reopen discovery for the primary purpose of identifying registered owners of certain vehicles that Plaintiffs' agent had identified or attempted to identify as part of the "Trump Train" caravan on October 30, 2020. *Id.* at 2. But the Mesaros Defendants do not and cannot provide any reason as to why this information would be relevant to a motion for attorneys' fees, as discussed *infra*. Even assuming *arguendo* that Plaintiffs could identify all the drivers on I-35 on October 30, 2020, which they have not and cannot, Plaintiffs are entitled to formulate their case as they choose, and nothing the Mesaros Defendants seek is relevant to the alleged frivolity of Plaintiffs' claims or their alleged bad faith. Thus, the Motion should be denied.

## ARGUMENT

### I. The Post-trial Discovery Request by the Mesaros Defendants is Legally Indefensible and Untimely

The Mesaros Defendants do not cite a single case entitling them to post-trial discovery. Instead, the cases they rely on note that evidentiary hearings or limited discovery can occasionally be appropriate after trial in specific circumstances not present here. The topics of the hearings and discovery contemplated by the cases they cite are incredibly narrow and bear directly on the fee award. *See King v. McCord*, 621 F.2d 205, 206 (5th Cir. 1980) (evidentiary hearing ordered to resolve disputes surrounding insufficient attorneys' fees affidavits); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303–04 (11th Cir 1988) (evidentiary hearing required for dispute regarding whether attorneys were duplicating each other's work or whether a case could have been settled without litigation); *Antero Res., Corp. v. C&R Downhole Drilling Inc.*, 85 F.4th 741, 749 (5th Cir. 2023) (discovery of a third-party settlement relevant to settlement credit can be appropriate after trial); *Jaime Schapiro AIA & Assocs. v. Rubinson*, 784 So. 2d 1135, 1137 (Fla.

3d Dist. Ct. App. 2000) (evidentiary hearing ordered regarding whether a settlement offer was made in good faith); *Menchise v. Akerman Senterfitt*, 532 F.3d 1146, 1153–54 (11th Cir. 2008) (a hearing "might be necessary" regarding whether a settlement offer was made in good faith). None of these cases support the Mesaros Defendants' request to reopen discovery. And this is because their request is legally indefensible (and indeed, this topic of discovery has already been rejected by the court in its pre-trial motion decisions, *see* Dkt. 471). The Mesaros Defendants' theory of post-trial discovery would give every case in federal court an unnecessary and wasteful discovery encore. After all, parties could make unsupported conclusory allegations of bad faith in every case as a pretextual reason to reopen discovery post-trial.

Their Motion is also untimely. The Mesaros Defendants admittedly knew about the issue for which they now seek post-trial discovery at the very latest by May 21, 2024, when they deposed John Polizzi. They could have attempted to seek discovery on this topic but elected not to do so. They admit that they knew about this issue at that time but claim that they had "no need" to pursue it because "they could simply draw further attention to the fact that Plaintiffs had apparently identified registered owners of the most problematic vehicles at trial." Dkt. 580 at 11. The Mesaros Defendants acknowledge that they chose not to propound additional discovery requests or to move to compel information they felt they were entitled to, and now they must accept their decision. The Mesaros Defendants' post-trial discovery request about the facts underlying Plaintiffs' claims is too late.

**II.   The Mesaros Defendants' Purported Justification for Reopening Discovery Post-trial is Nonsensical**

Even aside from the untimeliness of the request, the gist of the Mesaros Defendants' theory is absurd. They contend that Plaintiffs identified the drivers whom the Mesaros Defendants now admit were "driving more slowly than necessary" and "frequently braking to maintain their slow

speed" in front of the Bus but elected not to pursue discovery from them because that discovery would somehow reveal that there was no conspiracy. Dkt. 580 at 2. They urge, instead, that Plaintiffs sought discovery from only those more than twenty nonparties that Plaintiffs knew could help support their theory but also simultaneously that Plaintiffs' discovery choices somehow show that they did not think their alleged conspiracy could be substantiated at all. *Id.*; Dkt. 580-1 at 5. Finally, they contend that Plaintiffs' discovery choices demonstrate that Plaintiffs "avoided suing the drivers who . . . were actually causing a problem" because, instead of wanting to hold the "most problematic" actors accountable, Plaintiffs, in a conspiracy of their own, wanted only to secure a verdict against drivers on the "periphery" of the October 30, 2020 "Trump Train" to deter the "Trump Train" as a whole. Dkt. 580 at 7.

Their preposterous theory is a waste of this Court's time and resources.[1] First, the Mesaros Defendants continue to misunderstand basic conspiracy law. Under their theory, Plaintiffs' lawsuit was frivolous or in bad faith because Plaintiffs declined to serve discovery upon certain drivers. Any discovery from those drivers, the Mesaroses claim, would have revealed that the Mesaros Defendants did not conspire with them. *Id*. Plaintiffs have never contended, however, that the Mesaros Defendants personally knew those drivers. Plaintiffs' claims did not require them to do so. As Jury Instruction Number 13 explains, "[o]ne may become a member of a conspiracy without knowing all the details of the unlawful scheme *or the identities of all the other alleged conspirators*." Dkt. 550 at 10 (emphasis added). There need not have been any spoken agreement

---

[1] Plaintiffs reiterate that they reserve the right to seek sanctions and/or fees in connection with this unnecessary briefing. *See* Dkt. 576 at 4. Also, Plaintiffs vehemently disagree with many of the allegations and factual background contained in the Mesaros Defendants' factual appendix. Dkt. 580-1. However, after a nearly two-week trial in this matter (and years of litigation), Plaintiffs believe the existing record is sufficiently clear and that introducing additional, irrelevant factual background would unnecessarily burden the Court.

between the Mesaros Defendants and any other Trump Train drivers. *See id*. It "is sufficient to find that [an] individual Defendant joined a conspiracy" if the "Defendant understood the unlawful nature of [the] plan or scheme and knowingly and intentionally joined in that plan or scheme." *Id*.

To prevail on their claims, Plaintiffs did not have to prove that the Mesaros Defendants huddled with Defendant Cisneros and Jason Peña-Ahuyon to plan "Operation Block the Bus." *See* Dkt. 568 at 3. Nor did they have to prove that the Mesaros Defendants outlined the details of the scheme with the driver of the gray Ford F-150 bearing temporary tag #76022U6 ("Gray Truck Driver"). In its Order on Summary Judgment, the Court found, *inter alia*, that a "jury could reasonably find that Defendants unlawfully conspired and drove in a dangerous manner such that they threatened or assaulted Plaintiffs." Dkt. 475 at 47.

The Mesaros Defendants now admit that at least certain drivers were "problematic," Dkt. 580-1 at 1, "driving more slowly than necessary" and "frequently braking to maintain their slow speed" in front of the Bus, Dkt. 580 at 1. Yet the Mesaros Defendants continued to participate despite witnessing those conditions on the road (and in fact contributing to them). They also celebrated and endorsed the event afterwards. *See* PTX-104 (Joeylynn Mesaros stating that "The Trump Train NB stumbled onto the Biden Bus this afternoon and gave them a proper Texas welcome and a friendly escort out of town!"); PTX-087 (Robert Mesaros stating that "I'd just as quick as run [Biden] out of Texas again!").

Second, the Mesaros Defendants falsely claim that "Plaintiffs did not sue, or seek discovery from, *any* of the drivers or registered owners of *any* of the vehicles that served as the operational linchpin of the claimed conspiracy." Dkt. 580 at 2. In discussing the "operational linchpin of the claimed conspiracy," *id.*, it is clear that the Mesaros Defendants are referring to "'a [red] Toyota Tundra bearing Texas License Plate # GLB 9729'; 'a gray Ford F-150 bearing [temporary] tag #

76022U6'; and 'a black Toyota Tundra bearing Texas License Plate # NKS 8130'" in addition to former Defendant Kyle Kruger, *id.* at 2, 7. Plaintiffs disagree with the Mesaros Defendants' characterization of the "operational linchpin" of the conspiracy, but even adopting the Mesaros Defendants' framing, Plaintiffs amended their complaint to add Kyle Kruger as a party and sought discovery from him, which the Mesaros Defendants do not address.

Third, the Mesaros Defendants' explanation for why the material they seek is relevant to a future motion for attorneys' fees is insufficient at best. Their only attempt to connect the request to attorneys' fees seems to be the argument that, if Plaintiffs had identified certain drivers and not sought discovery from them, this shows that Plaintiffs' claims were frivolous and evinces bad faith. Even setting aside that Plaintiffs in fact sought discovery concerning the identity of the drivers the Mesaros Defendants pointed out (including from the Mesaros Defendants themselves)[2] and *did* bring claims against the problematic drivers Plaintiffs were eventually able to identify, frivolity is not about whether Plaintiffs could have put on a stronger case if they had made different

---

[2] *See, e.g.*, Dkt. 572-2 at 157:12–22 (Robert Mesaros Deposition):
Q. Okay. Is that truck in front of the bus one that you recognize? Do you have any idea whose it was?
A. I have no idea whose it was. I believe in the picture of the first -- that when we were at Solms Road, I think that's the truck that was actually parked in front of me, but I don't think I had any contact with that person.
Q. And what about the red truck to the left in the next lane over, do you recognize that truck?
A. I don't.

Dkt. 572-1 at 176:12–21 (Joeylynn Mesaros Deposition):
Q. Okay. And those two vehicles in front of the Trump -- or in front of the bus, are those Trump Train vehicles?
A. Yes. They appear to be.
Q. Okay. Do you recognize either one of those vehicles?
A. No, ma'am.
Q. Okay. So you don't know either one of those drivers?
A. No, ma'am

strategic choices. Under that framework, a strong case would be frivolous if hypothetically compared to a stronger case that could have been made.

The Mesaros Defendants themselves outline the appropriate factors for frivolity determinations as "(1) whether plaintiff established a prima facie case, (2) whether the defendant offered to settle, and (3) whether the district court dismissed the case or held a full-blown trial." *United States v. State of Miss.*, 921 F.2d 604, 609 (5th Cir. 1991) (cleaned up). None of these factors are connected to whether Plaintiffs were able to and chose not to pursue certain parties or claims. The Mesaros Defendants note that these are nonexclusive factors, but they do not point to any case law that directly supports their view of frivolousness, *i.e.*, that a case is frivolous if different strategic decisions might have resulted in a stronger case. Nor do they respond to the fact that if their theory is correct in this instance, *every case* that is only partially successful at trial would be rendered frivolous. Indeed, Plaintiffs were successful against the Mesaros Defendants at all other stages of litigation—including at the motions to dismiss and summary judgment stages.

The Mesaros Defendants also fail to explain how further discovery would show that Plaintiffs "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" by electing not to pursue every potential co-conspirator. *Batson v. Neal Spelce Assocs., Inc.*, 805 F.2d 546, 550 (5th Cir.1986) (quoting *F.D. Rich Co. v. U.S. ex rel Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)). The most the Mesaros Defendants can muster is speculation, stating that "if the documents . . . prove that Plaintiffs *had* identified likely registered owners of any of these vehicles, their failure to seek discovery will beg the question why."[3] Dkt. 580 at 7. They then speculate further, alleging that if

---

[3] Plaintiffs encountered significant difficulties in discovery in this matter, in part due to the intentional destruction of evidence by Defendants Joeylynn Mesaros and Eliazar Cisneros. *See* Dkt. 389. Despite these obstacles, Plaintiffs diligently pursued discovery regarding the identity of the drivers in the Trump Train on October 30, 2020. These efforts included serving over twenty nonparties with Rule 45 subpoenas to, *inter alia*, obtain documents that might reveal the identities

the Plaintiffs "identified the registered owner of the [Gray Truck Driver], their failure to seek discovery from him…will suggest Plaintiffs knew their theory was not likely to be substantiated if they probed too deeply" and that the vehicles discussed in their Motion "would have been *the primary targets* for any reasonable attorney." *Id.* at 6–7. Put simply, the Mesaros Defendants suggest that if every co-conspirator is not pursued, then a conspiracy case is frivolous, which contradicts the basics of conspiracy law.

First, the "theory," *id.* at 7, that the Mesaros Defendants reference here is based on a misunderstanding of Plaintiffs' burden in proving a conspiracy, as discussed *supra*. Second, the Mesaros Defendants' theory asks the Court to believe that Plaintiffs' lawyers have the uncanny ability to predict the results of discovery before pursuing it. Otherwise, it is tough to explain why, as the Mesaros Defendants acknowledge, "Plaintiffs deposed dozens of witnesses and sent discovery subpoenas demanding documents from several others." Dkt. 580-1 at 5. If the Plaintiffs, as the Mesaros Defendants allege, knew that further discovery would hurt their case, Plaintiffs' significant discovery efforts would make little sense. Dkt. 580 at 7.

The Mesaros Defendants also speculate that "Plaintiffs avoided suing the drivers who, if anyone, were actually causing a problem, and instead sued drivers on the periphery, like the Mesaroses, because they *wanted* to secure a verdict against people *on the periphery*, which would amount to a verdict against *the Trump Train itself* as a form of association or protest." Dkt. 580 at 7–8. Even adopting the Mesaros Defendants' position that they were "on the periphery," which they were not, the Mesaros Defendants forget about their co-Defendants and former co-

---

of the unknown drivers. Plaintiffs' Rule 45 subpoenas to non-parties Jenifer Capizzi, Jason Peña-Ahuyon, Kyle Kruger, Shana Evans, Edward Niño, Malorie Lerma, and others, included a request for "Documents and Communications sufficient to show the names and identities of all individuals You are aware of who participated in the Incident or the Trump Train that was involved in the Incident."

Defendants, including Defendant Eliazar Cisneros, whom the jury found liable under 42 U.S.C. § 1985, and Kyle Kruger, who admitted wrongdoing pursuant to a settlement agreement. Defendant Cisneros planned #OperationBlocktheBus, served as the lookout for the Bus, and admitted to "slamming" the Biden staffer's vehicle. *See* Dkt. 568 at 3, 6; PTX-033, PTX-034. And Kyle Kruger, by the Mesaros Defendants' own admission, was part of the "operational linchpin" of the conspiracy Plaintiffs alleged. Dkt. 580 at 2. The drivers against whom Plaintiffs brought suit, including the Mesaros Defendants, were not on the "periphery." But even if Plaintiffs had chosen to sue co-conspirators "on the periphery," *id.* at 7, that is Plaintiffs' strategic choice to make.

### III. The Mesaros Defendants' Motion Comes after Ignoring Plaintiffs' Motion for a Protective Order

As discussed in Plaintiffs' Reply in Support of Plaintiffs' Opposed Motion for a Protective Order, the Mesaros Defendants have warped the briefing on this matter, essentially ignoring Plaintiffs' Motion for a Protective Order. *See* Dkt. 576. Plaintiffs filed their Motion for a Protective Order on November 11, 2024. It was the Mesaros Defendants' burden to demonstrate that Plaintiffs' requested protective order was unwarranted, and they failed to carry that burden. *See id.* at 4. In fact, they admit that they willfully ignored it to "brief the matter fully" entirely on their own schedule (a schedule they failed to adhere to when they missed several of their self-selected deadlines). Dkt. 575 at 3. Plaintiffs maintain that this issue could have been resolved with one set of briefs. Instead, the Mesaros Defendants chose to start a new round of briefing, causing Plaintiffs to expend significant additional resources in responding and wasting this Court's time and resources.

**IV.     The Mesaros Defendants Seek Documents and Information that are Protected by the Work Product Privilege**

Plaintiffs' counsels' communication with its agent and the related work product are privileged. Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's . . . agent.")). The Mesaros Defendants' argument that these communications and documents are not privileged because they were not included on a privilege log are unavailing. All parties established a practice in the case that communications among attorneys and their agents were not logged, and indeed, no parties (including the Mesaros Defendants, who similarly hired at least one agent) ever logged such communications and work product. To the extent the Mesaros Defendants sought to challenge that practice, they needed to do so during discovery. *See* Local Rule CV-16(e) ("Absent exceptional circumstances, no motions relating to discovery, including motions under Rules 26(c), 29, and 37, shall be filed after the expiration of the discovery deadline, unless they are filed within 14 days after the discovery deadline and pertain to conduct occurring during the final 7 days of discovery.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Mesaros Defendants' Motion.

DATED: February 4, 2025                                       Respectfully submitted,

*/s/ Samuel Hall*

**TEXAS CIVIL RIGHTS PROJECT**
Christina M. Beeler (TX Bar No. 24096124)
Sarah Xiyi Chen (CA Bar No. 325327) (*pro hac vice*)
Veronikah Rhea Warms (TX Bar No. 24132682) (*pro hac vice*)
Travis Fife (TX Bar No. 24126956)
Texas Civil Rights Project
1405 Montopolis Drive
Austin, TX 78741
Telephone: (512) 474-5073
Facsimile: (512) 474-0726
christinab@texascivilrightsproject.org
schen@texascivilrightsproject.org
veronikah@texascivilrightsproject.org
travis@texascivilrightsproject.org

**THE PROTECT DEMOCRACY PROJECT, INC.**
John Paredes (NY Bar No. 5225412) (*pro hac vice*)
Orion Danjuma (NY Bar No. 4942249) (*pro hac vice*)
The Protect Democracy Project, Inc.
82 Nassau Street, #601
New York, NY 10038
Telephone: (202) 579-4582
Facsimile: (202) 769-3176
john.paredes@protectdemocracy.org
orion.danjuma@protectdemocracy.org

Cerin Lindgrensavage (DC Bar No. 1741602) (*pro hac vice*)
JoAnna Suriani (DC Bar No. 1645212) (*pro hac vice*)
Anne Harden Tindall (DC Bar No. 494607) (*pro hac vice*)
The Protect Democracy Project, Inc.
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
Facsimile: (202) 769-3176

cerin.lindgrensavage@protectdemocracy.org
joanna.suriani@protectdemocracy.org
anne.tindall@protectdemocracy.org

Benjamin L. Berwick (MA Bar No. 679207) (*pro hac vice*)
The Protect Democracy Project, Inc.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (202) 769-3176
ben.berwick@protectdemocracy.org

Jared Fletcher Davidson (LA Bar No. 37093) (*pro hac vice*)
The Protect Democracy Project, Inc.
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Telephone: (202) 579-4582
Facsimile: (202) 769-3176
jared.davidson@protectdemocracy.org

**WILLKIE FARR & GALLAGHER LLP**
Michael Gottlieb (DC Bar No. 974960) (*pro hac vice*)
Robert Meyer (DC Bar No. 405632) (*pro hac vice*)
Samuel Hall (DC Bar No. 242110) (*pro hac vice*)
Meryl Conant Governski (DC Bar No. 1023549) (*pro hac vice*)
Jamielah Yancey (DC Bar No. 1619055) (*pro hac vice*)
Rebecca Heath (DC Bar No. 1644402) (*pro hac vice*)
Amy R. Orlov (DC Bar No. 1780213) (*pro hac vice*)
Noah Mussmon (DC Bar No. 90006660) (*pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006-1238
Telephone: (202) 303-1000
Facsimile: (202) 303-2000
Email: mgottlieb@willkie.com
rmeyer@willkie.com

shall@willkie.com
mgovernski@willkie.com
jyancey@willkie.com
rheath@willkie.com
aorlov@willkie.com
nmussmon@willkie.com

Aaron E. Nathan (NY Bar No. 5478227)
(*pro hac vice*)
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: anathan@willkie.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 4, 2025, a true and correct copy of the foregoing has been served on all counsel of record through the Electronic Case File System of the Western District of Texas, in compliance with the Federal Rules of Civil Procedure.

*/s/ Samuel Hall*