UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERIC CERVINI, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | Civil Action |
| v. | § | |
| | § | No. 1:21-CV-565-RP |
| ELIAZAR CISNEROS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MESAROSES DEFENDANTS'
OPPOSED MOTION FOR ATTORNEYS' FEES**

Defendants Robert and Joeylynn Mesaros prevailed against all of Plaintiffs'

claims and should be awarded their attorneys' fees and expenses pursuant to 42

U.S.C. 1988 and/or because Plaintiffs and their attorneys "acted in bad faith,

vexatiously, wantonly, or for oppressive reasons."

## I.      Prevailing Defendant Fee Standard

"While plaintiffs prevailing under 42 U.S.C. § 1988 are entitled to attorneys'

fees unless special circumstances would render an award unjust, prevailing

defendants are entitled to attorney fees *only* when a plaintiff's underlying claim is

frivolous, unreasonable, or groundless." *United States v. State of Miss.*, 921 F.2d 604,

609 (5th Cir. 1991) (internal citations omitted).  The asymmetrical standard was

established in *Christiansburg Garment v. EEOC*, 434 U.S. 412 (1978).  The Court

relied on "equitable considerations" in imposing this standard.  *Id.* at 418.[1]

---

[1] The Court also considered equity in discussion of whether private and government plaintiffs should be treated differently in evaluating fee requests against government as plaintiff. *Christiansburg*, 434 U.S. at 422 n.20.

Mesaros mtn. for fees

"A claim is frivolous under § 1988 if it is not 'colorable' and lacks 'arguable merit.'" *Haygood v. Morrison*, 116 F.4th 439, 444–45 (5th Cir. 2024) (quoting *Vaughan v. Lewisville Indep. Sch. Dist.*, 62 F.4th 199, 204 (5th Cir. 2023)). Put another way, the Fifth Circuit "review[s] frivolity by asking whether the case was so lacking in merit that it was groundless, rather than whether the claim was ultimately successful." *State of Miss.*, 921 F.2d at 609 (internal citations omitted). *State of Mississippi* observed that "factors important to frivolity determinations are (1) whether plaintiff established a prima facie case, (2) whether the defendant offered to settle, and (3) whether the district court dismissed the case or held a full-blown trial." *Id.* (citing *EEOC v. Kimbrough Inv. Co.*, 703 F.2d 98, 103 (5th Cir.1983)). But those factors are not exclusive. *Vaughn v. Lewisville ISD*, 62 F.4th 199, 205 n.22 (5th Cir. 2023). "These factors are guideposts, and frivolousness must be judged on a case-by-case basis." *Provensal v. Gaspard*, 524 F. App'x 974, 976 (5th Cir. 2013) (internal quotation omitted). Contrary to Plaintiffs' suggestion, a party's failure to file or to prevail on a dispositive pretrial motion does not preclude a fee award for groundless or harassing litigation; misleading factual allegations sometimes require a trial to present the correct record. *McKethan v. Tex. Farm Bureau*, 35 F.3d 559, 1994 WL 499701, *4-5 (5th Cir. 1994) (not designated for publication) (citing *Thomas v. Capital Sec. Serv., Inc.*, 836 F.2d 866, 881 (5th Cir.1988) (en banc)). Still, while setting a higher bar for defendants than plaintiffs, a prevailing defendant is not required to show actual bad faith to be entitled to fees under § 1988. *Christiansburg Garment*, 434 U.S. at 419.

2

Federal courts also have inherent power to assess attorneys' fees where the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Batson v. Neal Spelce Assocs., Inc.,* 805 F.2d 546, 550 (5th Cir.1986) (quoting *F.D. Rich Co. v. United States,* 417 U.S. 116, 129 (1974)).

## II.    Defendants are Entitled to Fees Under Section 1988 and/or Under the Court's Inherent Authority.

### a.  Factual background

The Mesaroses summarize certain material background facts in the Factual Appendix, attached to this motion per local rule, but the Court is aware of, and may draw from, the entire record before it at trial.

### b.  Legal context for Plaintiffs' conspiracy and assault claims.

The context in which this case arose is material to the court's consideration of this motion.  All parties and the court acknowledge that Defendants—driving their vehicles on a public roadway with political signs, in the vicinity of a rival campaign vehicle—were engaged in protected speech and association unless and until they exceeded constitutional boundaries into intimidation or harassment or assault under relevant law.

Plaintiffs alleged that the Mesaroses engaged in a conspiracy under 42 U.S.C. § 1985(3).  As the court's final jury instructions explained, this required Plaintiffs to show:

> **(1)** The existence of a conspiracy of two or more persons; **(2)** [t]he purpose of the conspiracy was *either:* (a) to prevent, by force, intimidation, or threat, one or more citizens who are lawfully entitled to vote, from giving their support or advocacy in a legal manner toward or in favor of the election of any lawfully qualified person as an elector for

President or Vice President, or as a Member of Congress of the United States; *or* (b) to injure any citizen in their person or property on account of such support or advocacy; **(3)** [a]t least one person involved in the conspiracy took an overt act in furtherance of the conspiracy; and **(4)** [a]s a result of the conspiracy, Plaintiffs were injured.

ECF 550 at 8 (numbering modified from textual to numerical). The court explained that, "[t]o prove a conspiracy, Plaintiffs do not need to prove that Defendants entered into any formal agreement, or that they directly stated between themselves all the details of the scheme," but "Plaintiffs must show … an agreement to cause the unlawful purpose of the conspiracy," *and* "a mutual understanding, either spoken or unspoken, between the conspirators to commit at least one unlawful act." Id. at 9. Instruction No. 13 emphasized this requirement, explaining that Plaintiffs "must show" that the individual defendant "joined the conspiracy and agreed on the unlawful purpose." Id. at 10; *see also id.* ("the evidence in the case must show by a preponderance of the evidence that the defendant knew the purpose or goal of the agreement or understanding of that conspiracy and then deliberately entered into the agreement, intending in some way to accomplish the goal or purpose by this common plan or joint action."). The court further stated that "it is also important to keep in mind that mere presence at the scene of an event, even with knowledge that an unlawful act is being committed," "does not necessarily establish proof of the existence of a conspiracy." ECF 550 at 11. Instruction No. 15 further impressed the "specific intent" requirement, cautioning:

> In other words, it is not enough for Plaintiffs to show that a Defendant agreed with other persons to drive out onto the roadway in the vicinity of the Eiden-Harris Campaign Bus in order to express support for President Trump or otherwise protest the Biden-Harris Campaign.

Instead, Plaintiffs must show, by a preponderance of the evidence, that the particular Defendant had the specific intent to prevent Plaintiffs' support or advocacy by "force, intimidation, or threat" or to "injure" them on account of such support or advocacy.

ECF 550 at 12-13. And the third element requires proof that "at least one *of the co-conspirators* during the existence of the conspiracy knowingly did at least one overt act in order to accomplish some object or purpose of the conspiracy." Id. at 13 (emph. added).

These requirements are not merely the function of a statute but constitutionally required, pursuant to a long line of American civil rights jurisprudence. Specific, subjective intent is mandated by *NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982), and such cases. "[T]he presence of activity protected by the First Amendment imposes restraints on the grounds that may give rise to damages liability and on the persons who may be held accountable for those damages." *Claiborne Hardware*, 458 U.S. at 916-17. Participating in a "Trump Train" is obviously expressive conduct, entitled to First Amendment protection, even if not to the same degree as pure speech (the bare act of mounting a flag to one's vehicle, or speaking from a streetcorner). *Claiborne Hardware* recognized that "a peaceful march and demonstration was protected by the rights of free speech, free assembly, and freedom to petition for a redress of grievances." 458 U.S. at 909 (citing *Edwards v. South Carolina*, 372 US 229); *see also Davis v. Francois*, 395 F.2d 730, 732-33 (5th Cir. 1968) ("protection of the First Amendment is not limited to 'pure speech,' but extends … to the peaceful expression of views by Marchers, demonstrations or assemblies.").

5

### c. Plaintiffs' claims were frivolous and/or brought for impermissible purposes warranting fees and/or sanctions.

In light of the well-defined distinctions in the law—protecting space for peaceful marchers/protesters even where other people at a given event might engage in illegal activities or even violence—Plaintiffs' prosecution of this case was frivolous and harassing. As summarized in the factual appendix, Plaintiffs not only failed to sue, but failed to even seek discovery from the drivers or registered owners of the handful of vehicles that were driving obnoxiously, apart from Kyle Kruger and Hannah Ceh. Neither Kruger nor Ceh provided any actionable suggestion that Kyle's obnoxious driving was coordinated with or agreed to by any other drivers on the road that day, and certainly not by the Mesaroses.

The fact that a plaintiff is not required to sue all members of a conspiracy does not save Plaintiffs' case or protect them from a finding of frivolity or harassment. That rule has valid application where a plaintiff has no means of identifying all conspirators, and likely derives from such considerations. But here, there were a handful of drivers that primarily generated the Plaintiffs' grief on the road— evidenced by Plaintiffs own video—and Plaintiffs had in hand the information needed to identify the drivers or at least registered owners. The record does not reflect whether any of those drivers were among the six (or more) vehicle owners Gryphon identified from visible license plates and reported to Plaintiffs, because Plaintiffs withheld the fact that such report existed in defiance of Defendants' discovery

6

requests and defiance of the Federal Rules, and the court declined to allow the Mesaroses to propound post-trial discovery on that limited issue.[2]

Nonetheless, the record reflects that, in addition to failing to disclose the information Plaintiffs learned from Gryphon about additional vehicles, Plaintiffs failed to subpoena or depose any of the handful of obnoxious vehicle owners/drivers. Plaintiffs undertook aggressive discovery, but they deliberately avoided seeking discovery from the owners/drivers of those vehicles driving slowly in front of them. Instead, they pursued their claims against the Mesaroses and other drivers, on the periphery of the incident and never in a position to slow down the bus.  This reflects an apparent strategy to attempt to secure a settlement or judgments of liability against peaceful drivers/protesters, because that would effectively shut down not just dangerous driving or actual interference but the Trump Trains in general.  Plaintiffs' failure to sue or seek discovery from those drivers actually driving slowly and obstructing, distinguished from their relentless, spare-no-expense prosecution of the Mesaroses and other defendants here, is only explainable if this lawsuit was deliberately aimed not at visiting justice upon those responsible but at shutting down protected association/protest on the road.

Plaintiffs' litigation strategy reflects a conscious disregard for the well-established rights of peaceful marchers/protesters, which the Trump Train drivers

---

[2] *Even without* these documents, however, the record clearly reflects that Plaintiffs *had and have responsive information that they failed to disclose*, violating their discovery obligations to the Mesaroses. And given the clear visibility of the license plates of those handful of drivers consistently in front of the bus driving slowly, it is likely that Plaintiffs did identify owners of some or all of those vehicles.

were in these circumstances.  Further evidence: Plaintiffs' sophisticated lawyers proposed jury instructions that would have minimized or wholly ignored the well-established specific intent requirement for such a conspiracy.  *See* Exh. E (Plfs' Proposed Jury Instructions With Defendants' Proposed Changes), esp. p. 12 n.35. Despite having relied upon the Fifth Circuit's pattern jury instructions for their proposed conspiracy charges, they omitted the specific intent instructions from those same pattern instructions.  Defendants' joint proposed instructions pointed out this grievous omission and cited the relevant caselaw, and the court rightly inserted the specific intent requirement.  But imagine the predicament other defendants might have easily found themselves in without counsel experienced in First Amendment law with the wherewithal to locate the relevant authorities and insist upon the correction.  Plaintiffs' proposed instructions were a nefarious attempt to mislead the jury by watering down the distinction between peaceful and impermissible protest/march activity—precisely mirroring Plaintiffs' entire case.

Fees are therefore appropriate and necessary in these circumstances.[3] Plaintiffs never had any evidence that the Mesaroses were part of any conspiracy, nor that they assaulted the bus or anyone else.

An award of fees will also serve as an equitable measure to at least assist the Mesaroses with the financial stress this case has caused.  A court finding that Plaintiffs' case was frivolous or harassing might also assist somewhat in correcting

---

[3] The Mesaroses further adopt the grounds for fees argued in the Cehs' motion for fees, filed today.

the public perception deliberately created by Plaintiffs' misleading public narrative, which has caused untold grief for the Mesaroses from June 2021 through today. Joeylynn Mesaroses' attached declaration describes the very real stress and effect on their personal lives this frivolous litigation has caused. This includes vicious online harassment. *See* Exh. C. Many of the comments assembled there from people commenting on Joeylynn's social media pages are unfit to reproduce in this document, but they are in the record in Exhibit C. *See also* Exhibit D (documenting Joeylynn's hair loss from stress).

## III.   Fee Request

### a.  Method of calculation

The Fifth Circuit uses a two-step process to calculate attorneys' fees. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). First, a court calculates a "lodestar" figure "by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Id*. In so doing, the court considers whether the attorneys demonstrated proper billing judgment by "writing off unproductive, excessive, or redundant hours." *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). The plaintiff has the burden of showing the reasonableness of the hours billed and proving the exercise of billing judgment. *Id*. at 770.

After calculating the lodestar, the court may increase or decrease it based on the factors set forth in *Johnson v. Georgia Highway Express*, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87

9

(1989). *Heidtman*, 171 F.3d at 1043.  Those factors are: (1) the time and labor required by the litigation; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. *Id.* at 1043 n. 5 (citing *Johnson*, 488 F.2d at 717–19). *See also Hensley*, 461 U.S. at 434 n.9 (noting that many of the Johnson factors are "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate").   Reasonable travel time should be compensable under section 1988. *Henry v. Webermeir*, 738 F.2d 188, 194 (7th Cir. 1984).

### b.  Application to the instant litigation

Najvar has served as lead counsel for the Mesaroses throughout this litigation, from 2021 through the present.  *See* Exh. F (Najvar decl.).  He contemporaneously recorded a total of 730 hours from his initial contact with the Mesaroses through the end of September 2024. *Id.*  At the requested reasonable rate of $450/hour, this yields a fee request of **$328,500**.  *Id.*; Exh. H (summary of fee statements); Exh. I (fee statements)

**Expenses.**  Reimbursable expenses for travel and lodging total to **$8,264.37**, as shown itemized in the attached Exhibit G.  The Mesaroses further request

reimbursement for the **$9,649.38** paid to Plaintiffs' experts for their deposition preparation and attendance time.  Exh. G.

.

Respectfully submitted,

/s/ *Jerad Najvar*
Jerad W. Najvar
Tex. Bar No. 24068079
CHALMERS, ADAMS, BACKER & KAUFMAN LLC
2180 North Loop W., Ste. 255
Houston, TX 77018
Phone: (281) 404-4696
jnajvar@chalmersadams.com
*Counsel for Mesaros Defendants*

### CERTIFICATE OF CONFERENCE

The undersigned counsel hereby certifies that he has conferred with opposing counsel for Plaintiffs, who advised that Plaintiffs are opposed to the relief requested.

/s/ *Jerad Najvar*
Jerad Najvar

### CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on August 29, 2025, the foregoing document, and any accompanying exhibits and proposed order, was served by CM/ECF as follows upon all counsel of record.

/s/ *Jerad Najvar*
Jerad Najvar