UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERIC CERVINI, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | Civil Action |
| v. | § | |
| | § | No. 1:21-CV-565-RP |
| ELIAZAR CISNEROS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MESAROSES DEFENDANTS' OPPOSED MOTION FOR COSTS**

Having conferred with counsel for Plaintiffs regarding the Mesaroses' bill of costs, the parties have not been able to reach agreement, although the Mesaroses have modified their request in response to certain line item objections. Pursuant to Local Rule, the Mesaroses submit this motion requesting costs in a **modified amount of $12,826.90**.

**I.     The Mesaroses Should Be Awarded Costs**

Plaintiffs have stated that it is their "position that the Mesaros Defendants should be denied costs entirely due to their misconduct in discovery and during the course of this litigation. *See Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 540 (5th Cir. 1990); *Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006)." To the contrary, as the party in whose favor the judgment was entered, Fifth Circuit precedent holds that the Mesaroses are presumptively entitled to an award of costs and the Plaintiffs here bear the burden of overcoming this presumption, which they cannot do.

1

Mesaros mtn. for costs

Rule 54(d)(1) of the Federal Rules of Civil Procedure states that "costs—other than attorney's fees—should be allowed to the prevailing party." The Fifth Circuit has a strong presumption that the prevailing party will be awarded costs, and the denial of costs is considered "in the nature of a penalty." *Morris v. Grecon, Inc.*, 388 F.Supp.3d 711 (E.D. Tex. 2019) (quoting *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985)); *Jordan Kahn Music Company, LLC v. Taglioli*, 2023 WL 2266123 (E.D. Tex. Feb. 28, 2023) (not designated for publication).

No penalty is warranted against the Mesaroses. Neither of the cases Plaintiffs cited in the parties' conference support the denial of costs here. In *Sheets*, the district court summarized the prevailing defendants' "repeated and abusive hardball tactics" justifying denial of costs as follows:

> [T]he defendants unjustifiably refused to produce documents in response to discovery, violating an order to compel; they repeatedly and falsely denied having applied for and/or having patent rights in the air snorkel device; they misled the plaintiff about the nature of various documents; and, without any apparent reason, they were unwilling to state that certain information or claims should be directed to one Yamaha entity rather than the other.

891 F.2d at 539–40.

Plaintiffs cannot point to any such behavior on the part of the Mesaroses. In the parties' telephonic conference preceding this motion, the Mesaroses' counsel asked Plaintiffs' counsel what behavior they believe justifies denying costs. The only specific response Plaintiffs' counsel offered was the fact that the court affirmed Magistrate Judge Lane's recommendation for sanctions against Joeylynn Mesaros for her deletion of a finite number of Facebook posts (in a brief period, less than an hour,

after learning of the lawsuit but before learning the Mesaroses were named defendants), and the subsequent loss of certain of her cell phone data.[1] This does not even approximate the level of recalcitrance and gamesmanship reflected in *Sheets*. Moreover, the court already penalized the Mesaroses for the loss of this data by issuing a spoliation instruction to the jury. Despite an instruction inviting the jury to presume the lost data was inculpatory if they wished, the jury found the Mesaroses not liable on all claims after hearing all of the evidence in a two-week trial. The court heard it as well. There was no credible suggestion the Mesaroses were ever driving in a dangerous, harassing, or obstructive manner or facilitating anyone else doing so. Nor was there a shred of evidence that they ever conspired with anyone else to do anything except exercise their right to associate with other Trump Train vehicles in the vicinity of the Biden campaign bus that day. The Plaintiffs' claim that Robert Mesaros dangerously cut in front of the bus was revealed at trial to be facetious, when the jury saw and heard the entire encounter repeatedly, and learned, for one, the material fact that Holloway was laying on the horn as he drove five miles an hour right before Robert rejoined the roadway. Holloway himself failed to even identify that action as dangerous in his deposition, and then contradicted himself at trial. None of the other Plaintiffs claimed Robert's re-entry was dangerous or even notable.

In light of all this, there was no basis to believe that any lost information actually inculpated the Mesaroses. Accordingly, in the circumstances of this case,

---

[1] Plaintiffs' counsel also represented that they would review the record for other alleged instances of claimed misconduct, but were unable to identify any other claimed misconduct on the pre-planned conference call.

there is no justification to further penalize the Mesaroses by denying them costs as the prevailing parties. Instead, the trial record definitively shows the Plaintiffs materially misrepresented the facts pertaining to the Mesaroses, in particular with respect to that encounter. The Mesaroses never should have been named defendants in this suit, and they should be awarded costs after having defended themselves for more than three years of burdensome litigation to which they never should have been subjected. Their defense also played an important part in maintaining appropriate consideration of the important First Amendment principles implicated in the underlying activity. The Mesaroses' defense, for example, was instrumental in securing certain modifications to the jury instructions requested by Plaintiffs, including but not limited to the court's insertion of strong instructions on specific intent required in these circumstances and referencing the First Amendment right to drive onto the roadway in the vicinity of the Biden campaign bus, which alone could not be the basis for liability. This was important beyond this single case.

Another factor—their meager financial resources compared to the Plaintiffs' seemingly endless coffers to support the prosecution of this case (reflected, only in part, by the fact Plaintiffs had at least 10-12 attorneys in the court full time for trial)—also strongly supports an award of costs to the Mesaroses. *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 753 (5th Cir. 2018) (identifying disparate resources as a factor). As stated in the Mesaroses' fee motion, the Mesaroses' vigorous attempts at fundraising have still left them tens of thousands of dollars in debt to counsel for fees, expenses, and costs.

4

## II.    Disputes Regarding Compensable Items and Amount of Costs

28 U.S.C. § 1920 provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

To the extent the court finds the Mesaroses should be awarded costs, Plaintiffs stated that they objected to two line items requested in the bill of costs because Plaintiffs believe such line items are not recoverable under 28 U.S.C. § 1920. Specifically, Plaintiffs identified these line items as "process server costs" and "incidental fees and interest for deposition transcripts." The Mesaroses address each category separately below.

### a. Service of trial subpoenas

Having reviewed the authorities cited by Plaintiffs, the Mesaroses agree that present law seems to exclude fees paid to private process servers from costs under the statute. Accordingly, the Mesaroses withdraw their request for reimbursement of the $3,699 paid for service of trial subpoenas.

**b. "Incidental" deposition costs**

The Mesaroses bill of costs requests $19,349.97 for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." ECF 602 at 1. This sum is the cost of copies of deposition transcripts the Mesaroses ordered. Plaintiffs have not objected to any of these deposition transcripts as unnecessary, nor do they object to the cost of the transcripts themselves, which comprises the bulk of the requested costs. Instead, Plaintiffs explained that they object to the portion of this cost attributable to "incidental fees and interest for deposition transcripts."

The Plaintiffs' objection does not seem to pertain to any of the Fortz invoices, which amount to $8,619.40. *See* ECF 602 at 4 (summary of deposition trans. costs).

Regarding the Veritext invoices, the Mesaroses agree with the Plaintiffs that certain charges included in the invoices should not have been assessed against the Mesaroses; indeed, the Mesaroses are disputing those charges and awaiting final resolution from Veritext, as explained in the bill of costs. Veritext has yet to confirm a final resolution of the disputed amounts. Nonetheless, in the interest of avoiding litigation of this relatively minor matter, the Mesaroses modify their request for costs with respect to Veritext invoices such that they now only request the line charge for the transcript itself. This totals $4,207.50 for the three deposition transcripts.

Therefore, the total cost request is now limited to the cost of the deposition transcripts, at a **modified total of $12,826.90**.

Respectfully submitted,

/s/ *Jerad Najvar*
Jerad W. Najvar

6

Tex. Bar No. 24068079
CHALMERS, ADAMS, BACKER & KAUFMAN LLC
2180 North Loop W., Ste. 255
Houston, TX 77018
Phone: (281) 404-4696
jnajvar@chalmersadams.com
*Counsel for Mesaros Defendants*

## CERTIFICATE OF CONFERENCE

The undersigned counsel hereby certifies that he has conferred with opposing counsel for Plaintiffs, who advised that Plaintiffs are opposed to the relief requested for the reasons explained herein.

/s/ *Jerad Najvar*
Jerad Najvar

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on September 19, 2025, the foregoing document, and any accompanying exhibits and proposed order, was served by CM/ECF as follows upon all counsel of record.

/s/ *Jerad Najvar*
Jerad Najvar

7