**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| WENDY DAVIS, DAVID GINS, and TIMOTHY HOLLOWAY,<br><br>                              Plaintiffs,<br><br>        v.<br><br><br>ELIAZAR CISNEROS, RANDI CEH, STEVE CEH, JOEYLYNN MESAROS, ROBERT MESAROS, and DOLORES PARK,<br><br>                              Defendants. | Civil Action No. 1:21-cv-00565-RP<br><br>Hon. Robert Pitman |

## PLAINTIFFS' OPPOSITION TO THE CEH DEFENDANTS' MOTION FOR FEES

On August 29, 2025, Defendants Steve and Randi Ceh (the "Ceh Defendants") filed a motion seeking attorneys' fees under 42 U.S.C. § 1988 ("Motion"). Dkt. 603. This Court should deny their Motion.

The Ceh Defendants argue that they are entitled to attorneys' fees under § 1988 because Plaintiffs' claims against them were frivolous, as they did not plead racial animus. The Ceh Defendants then attempt to argue in the alternative by rewriting the decades-old standard for awarding attorneys' fees to prevailing defendants under 42 U.S.C. § 1988 in a manner that runs afoul of both binding case law and the statute's purpose and legislative history. The Ceh Defendants' position falls apart under even the slightest scrutiny.

*First,* the Ceh Defendants cannot meet their steep burden of showing that Plaintiffs' claims are frivolous, unreasonable, or groundless, or that Plaintiffs acted in bad faith. *See United States v. State of Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991). The Ceh Defendants appear to rest their

entire argument upon their assertion that Plaintiffs did not prove the Ceh Defendants acted with racial animus. But that issue has already been resolved (in at least three separate decisions by this Court, Dkts. 64, 204, 475) in Plaintiffs' favor. In fact, this Court has expressly warned the similarly situated Mesaros Defendants that "it is hard to see how [they] could prevail in meeting their high burden of showing that Plaintiffs' case was frivolous or brought in bad faith." Dkt. 589 at 10. And this is true for the Ceh Defendants as well—the Court has ruled in Plaintiffs' favor on all dispositive motions brought by the Defendants in this case, including all motions to dismiss, *see* Dkts. 64, 204; all motions for summary judgment, *see* Dkt. 475; and all motions for judgment as a matter of law that each Defendant, including the Ceh Defendants, brought during trial, affirming that Plaintiffs presented legally sufficient evidence that could support a verdict in favor of the Plaintiffs on all of their claims. Plaintiffs are unaware of *any* case, in *any* jurisdiction, where a court has deemed a suit in this posture to be frivolous or in bad faith, nor have the Ceh Defendants pointed Plaintiffs or this Court to such a case. *See* Dkt. 603.

*Second*, the Ceh Defendants' arguments for rewriting the standard for prevailing *private* party defendants to recover attorneys' fees is not supported by any of the sources they cite. Instead, it is clear that the rigorous standard for awarding *any* defendants fees under § 1988 is both binding on this Court and unambiguously baked into the legislative history of that statute.

*Finally*, the Ceh Defendants' calculation of fees is deficient and unsupported. In turn, even if the Court found that a fee award is possible here under the governing standard (it should not), it should exercise its discretion under § 1988 to deny the award.

## ARGUMENT

**I.     The Ceh Defendants Are Not Entitled to Fees Under 42 U.S.C. § 1988 Because Plaintiffs' Claims Were Not Frivolous, Unreasonable, or Groundless, or Brought in Bad Faith**

Under 42 U.S.C. § 1988, "district courts, in their discretion, [may] award fees to the prevailing party for actions brought under" 42 U.S.C. § 1985(3). *See Merced v. Kasson*, 577 F.3d 578, 595 (5th Cir. 2009); 42 U.S.C. § 1988(b). This departure from the traditional "American Rule," in which each party is responsible for their litigation costs, aims to incentivize *plaintiffs* to vindicate their rights by bringing civil rights suits, even when the cost of litigation is daunting. *See Vaughner v. Pulito*, 804 F.2d 873, 878 (5th Cir. 1986) ("The primary purpose of [the statute] is to encourage private enforcement of the civil rights statutes.").

Defendants, on the other hand, face a high barrier to recovery. *Merced*, 577 F.3d at 595. They "cannot recover § 1988 fees without demonstrating that the plaintiff's underlying claim was frivolous, unreasonable or groundless." *Id.* (quoting *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1053 (5th Cir. 1998)). Courts "review frivolity by asking whether the case was so lacking in merit that it was groundless, rather than whether the claim was ultimately successful." *State of Mississippi*, 921 F.2d at 609; *accord Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999). The factors this Court should consider in determining frivolity include:

> [1] whether the plaintiff established a prima facie case, [2] whether 'squarely controlling precedent' foreclosed the plaintiff's legal argument, [3] whether the plaintiff's evidence was so lacking that 'there is no basis from which to say the[] claims were not frivolous,' [4] whether the defendant offered to settle, and [5] whether the plaintiff's claim was so obviously meritless that it was dismissed prior to trial.

(the "*Vaughan* factors"). *Vaughan v. Lewisville Indep. Sch. Dist.*, 62 F.4th 199, 204–05 (5th Cir. 2023) (citing *State of Mississippi*, 921 F.2d at 609).[1] None of these factors support the Ceh Defendants here.

### A. Plaintiffs' Claims Are Not Frivolous Under the *Vaughan* Factors

Indeed, the *Vaughan* factors plainly favor Plaintiffs: Plaintiffs established a prima facie case; there is no squarely controlling precedent that forecloses their claims; two conspirators (Hannah Ceh and Kyle Kruger) who were deeply tied to the Ceh Defendants settled and admitted wrongdoing prior to trial; and Plaintiffs defeated all Defendants' motions to dismiss and motions for summary judgment before proceeding to a full, contentious trial with extensive supporting evidence, during which Plaintiffs also defeated Defendants' motions for judgment as a matter of law.

The Ceh Defendants rest the entirety of their argument on whether Plaintiffs establish a prima facie case, conceding the remaining factors. But that issue has already been decided in Plaintiffs' favor. Plaintiffs established a prima facie case on all claims because "it cannot be reasonably said that [they] had no evidence to support [their] claim[s] or that [their] claim[s were] without arguable merit." *See Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1141 (5th Cir. 1983). As this Court recently summarized, "[t]he Court repeatedly denied Defendants' motions to dismiss Plaintiffs' claims, (*see* Dkts. 64, 100, 204), and in its order on Defendants' motions for summary judgment, the Court held that a reasonable jury could find Defendants liable on all of Plaintiffs'

---

[1] In *United States v. State of Mississippi*, the Fifth Circuit laid out three factors "important to frivolity determinations": "(1) whether plaintiff established a prima facie case, (2) whether the defendant offered to settle, and (3) whether the district court dismissed the case or held a full-blown trial." 921 F.2d 604, 609 (5th Cir. 1991). The Fifth Circuit has since clarified that "district courts are not constrained to those three factors alone when evaluating the frivolous nature of a civil rights claim." *Vaughan*, 62 F.4th at 205 n.22. Regardless of whether this Court looks at only those three factors or at the broader range, Defendants fail to show frivolity entitling them to attorneys' fees.

claims, (*see* Dkt. 475). **Plaintiffs thus established a prima facie case.**" Dkt. 589 at 10 (emphasis added). Although the Ceh Defendants did not file a motion for summary judgment, and their motion to dismiss raised only timeliness challenges, Dkts. 170-1, 170-2, Defendants Park and Cisneros and the Mesaros Defendants each filed those motions, relying on the same rejected arguments the Ceh Defendants now raise here. *See* Dkts. 64, 204, 475.[2]

The case then proceeded to a two-week trial during which the Court denied all of the Defendants' motions for judgment as a matter of law, after hearing the evidence in full, ruling that Plaintiffs presented legally sufficient evidence that would support a verdict in favor of Plaintiffs on all of their claims. At the conclusion of the trial, the jury found that Plaintiffs made their case that a conspiracy under § 1985(3) existed, and found one Defendant, Eliazar Cisneros, liable for both compensatory and punitive damages. Dkt. 557.

Plaintiffs note that the Ceh Defendants boldly (and baldly) mischaracterize Plaintiffs' evidence against them in their Motion. As just one example, they state that "[t]he undisputed evidence further showed that on October 30, 2020, the Cehs encouraged their group to do just what they had done previously: peacefully demonstrate with a flag run." Dkt. 603 at 3. They do so without a single specific reference to the record, despite it being *their* burden to show that Plaintiffs' claims were frivolous. What is more, they conveniently ignore the fact that Plaintiffs presented evidence to the jury showing that Defendant Randi Ceh tracked the Biden Bus's location on October 30, 2020, PTX-047, coordinated the October 30, 2020 Trump Train (including by instructing people where to meet to intercept the bus and telling them that there was still time to

---

[2] In Section 1 of the Ceh Defendants' Motion, they appear to argue (although it is not clear) that Plaintiffs' pleadings should be dismissed under Federal Rule of Civil Procedure 12(b)(6) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). But these arguments—in addition to being unsupported by their brief and simply incorrect—are also plainly untimely and waived. *See* Fed. R. Civ. P. 12.

catch it, even as the participants made clear that they intended on blocking and intimidating the bus into leaving), PTX-049, communicated with former Defendant Hannah Ceh while she and Kyle Kruger (both of whom settled with Plaintiffs and admitted wrongdoing) participated in surrounding the bus, drove in the "Trump Train," and posted about the incident the following day with the phrase "#OperationBlocktheBus," PTX-044. The Ceh Defendants' Motion also ignores that Defendant Steve Ceh participated in the "Trump Train," and celebrated it afterwards—posting online that he was "[v]ery proud of our Trump Train. Escorted evil anti-God and anti-Americans out of our city," PTX-060 at 36. He also texted former Defendant Hannah Ceh that he was "proud" of her in response to her message that "[laughing emojis] we cancelled them" along with a screen capture showing that the Biden bus campaign events had been cancelled, PTX-050 at 4. But putting their mischaracterizations here aside, the Ceh Defendants' arguments about the sufficiency of Plaintiffs' evidence are precluded by this Court's rejection of their motions for judgment as a matter of law.

Binding Fifth Circuit precedent squarely confirms that a district court abuses its discretion in granting fees to a prevailing defendant in such circumstances. In *Stover v. Hattiesburg Public School District*, the Fifth Circuit reversed a district court's decision to award a defendant fees when the defendant ultimately won at trial but had previously lost its motion for summary judgment and motion for judgment as a matter of law during the trial. 549 F.3d 985, 998 (5th Cir. 2008). The Fifth Circuit emphasized that district courts must "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 997 (quoting *Christiansburg Garment*

*Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421–22 (1978)).[3] Thus, because "[t]here was plausible evidence supporting [the plaintiff's] claim, as set forth in the district court's order on summary judgment and the testimony at trial," an award of fees to the defendant was reversible error. *Stover*, 549 F.3d at 998. Similarly, the Fifth Circuit reversed an award of attorneys' fees to the defendant in *Plemer*, holding that the defendant's win at trial was an insufficient basis upon which to find that the plaintiff's claims were frivolous because "it cannot be reasonably said that [the plaintiff] had no evidence to support her claim." 713 F.2d at 1141–42.

The Fifth Circuit's reasoning in *Stover* and *Plemer* applies with even greater force here. This Court repeatedly rejected the Defendants' substantive motions,[4] including after the conclusion of evidence at trial. The trial ultimately ended in a verdict against Defendant Cisneros,[5] vindicating Plaintiffs' allegations of a conspiracy under § 1985(3) on October 30, 2020. The fact that a jury declined to hold the Ceh Defendants liable as part of that conspiracy does not mean that Plaintiffs' claims were frivolous; rather, as in *Stover*, "it simply means that the jury unanimously

---

[3] The *Christiansburg* standard governs defendants' entitlement to attorneys' fees under § 1988. *See Hughes v. Rowe*, 449 U.S. 5, 14 (1980).

[4] Even were that not the case, the Fifth Circuit has declined to find claims frivolous even when defendants *did* prevail on motions to dismiss and motions for summary judgment. *See, e.g.*, *Merced*, 577 F.3d at 595 ("The district court granted [defendant's] motion for summary judgment . . . but that fact alone does not mean it was frivolous . . . ."); *see also Hidden Oaks Ltd*, 138 F.3d at 1053 (holding that district court's grants of defendant's motion to dismiss and motion for summary judgment did "not establish that the underlying claims were 'frivolous, unreasonable or groundless'").

[5] As further evidence that Plaintiffs' case against the Ceh Defendants was not frivolous, public statements after trial also suggest that the jurors almost found the Ceh Defendants liable. In a public video interview released after trial, Defendant Steve Ceh explained that "five [jurors] wanted at least $100,000 from all of us [Defendants]," but other jurors "got [him] cleared from a finding of liability." *See* Dkt. 572 at 10. In another more recent video, Defendant Steve Ceh similarly explained: "I had coffee with one of the jurors. And he told me that as soon as they walked in for deliberation, they started at $100,000." Citizens Defending Freedom, *Why Pastors Must Speak Boldly: Pastor Steve Ceh on Defending Faith & Freedom in the Public Square*, at 08:50 (Vimeo, July 24, 2025), https://vimeo.com/1104268135.

concluded that the weight of the evidence was not in [Plaintiffs'] favor." 549 F.3d at 998. In fact, the Fifth Circuit has held that "[a] claim that survives summary judgment . . . cannot be frivolous." *See Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 460 (5th Cir. 2020) (discussing frivolity under Federal Rule of Civil Procedure 11); *see also MV3 Partners LLC v. Roku, Inc.*, 2022 WL 1913619, at *2 (W.D. Tex. June 3, 2022) (same; discussing frivolity with respect to taxing costs).

**B. The Ceh Defendants' Arguments that the Support-Or-Advocacy Clause Requires a Showing of Race-Based Animus Are Incorrect and Would Not Support a Finding that Plaintiffs' Claims Were Frivolous Even if They Were Correct**

In support of their Motion, the Ceh Defendants wrongly argue that Plaintiffs failed to establish a prima facie case because Plaintiffs did not allege the Ceh Defendants acted with racial animus. Dkt. 603 at 5–10. In doing so, the Ceh Defendants attempt to repackage an argument that misconstrues the plain text of § 1985(3) and which this court has correctly and repeatedly rejected over the course of this multi-year litigation. *See* Dkts. 64, 204, 475. Even if a court later disagrees with Plaintiffs' well-founded interpretation of the support-or-advocacy clause, that cannot render Plaintiffs' claim frivolous in these circumstances. *See Vaughan*, 62 F.4th at 204–05. Rather than brief this issue in full for the Court once again, Plaintiffs direct this Court to Plaintiffs' previous briefing outlining the reasons why racial animus is not a requirement under the support-or-advocacy clause of § 1985(3). *See* Dkt. 34 at 21–26; Dkt. 75 at 6–8; Dkt. 240 at 21–22.

Importantly, though, the Ceh Defendants rely on *Griffin v. Breckenridge* for the proposition that Plaintiffs' claim requires them to prove a "class-based, invidiously discriminatory animus behind the conspirators' action." 403 U.S. 88, 102 (1971). This Court has rejected this argument three times already. *See* Dkts. 64, 204, 475. In relevant part, this Court previously explained,

> [I]n *Kush v. Rutledge*, the Supreme Court discussed whether another provision of the Ku Klux Klan Act, § 1985(2), is subjected to the *Griffin* requirement that the pleadings include allegations of racial animus. 460 U.S. 719, 722–27 (1983). The

> Court concluded that the Ku Klux Klan Act could be divided into five classes of prohibited conspiracies: one proscribed by § 1985(1), two proscribed by § 1985(2), and two proscribed by § 1985(3). *Id.* at 724. The Court stated that of the five categories, three of them—specifically, § 1985(1), the first section of § 1985(2), and the second section of § 1985(3)—the federal elections provision at issue in the present case—relate to institutions and processes of the federal government and "contain no language requiring that the conspirators act with intent to deprive their victims of the equal protection of the laws." *Id.* at 724–25. The other two provisions—the second portion of § 1985(2) and the first portion of § 1985(3)— address primarily state concerns and require that the conspirators' actions be "motivated by an intent to deprive their victims of the equal protection of the laws." *Id.* at 725.

Dkt. 64 at 9. Accordingly, the Supreme Court has stated that the racial-animus requirement "cannot be applied to every portion of § 1985," *id.* (citing *Kush*, 460 U.S. at 726), and that race-based animus was not a requirement under § 1985(2) because it did not include the "'equal protection' language, which the Court relied heavily on to reach its conclusion in *Griffin*." Dkt. 64 at 9 (citing *Kush*, 460 U.S. at 726–27).

Although the Supreme Court has not explicitly reached the issue of whether racial animus is required under the support-or-advocacy clause—where the "equal protection" language *is also absent*—this Court has agreed with the Plaintiffs' construction of the statute and held that Plaintiffs were not required "to plead racial or other class-based animus." Dkt. 64 at 11; *see also id.* at 8–11 (explaining the reasons for this Court's holding). What is more, other courts have come to the same conclusion. *See Andrews v. D'Souza*, 696 F. Supp. 3d 1332, 1346 (N.D. Ga. 2023) (holding that the Plaintiff "need not allege such animus to state a support-or-advocacy claim"); *Nat'l Coalition on Black Civic Participation v. Wohl*, 661 F. Supp. 3d 78, 110 (S.D.N.Y. 2023) (citation modified) ("A violation of the 'Support or Advocacy Clause' of Section 2 of the KKK Act . . . does not require a showing of racial animus."); *Colo. Mont. Wyo. St. Area Conf. of the NAACP v. U.S. Elect. Integrity Plan*, 653 F. Supp. 3d 861, 868 n.2 (D. Colo. 2023) ("Under the Support or Advocacy Clause, there is no need to show racial animus."); *League of United Latin Am. Citizens - Richmond*

*Region Council 4614 v. Pub. Int. Legal Found.*, 2018 WL 3848404, at \*6 (E.D. Va. Aug. 13, 2018) (holding same).

As a last resort, the Ceh Defendants cite to dicta in the Fifth Circuit's mandamus opinion to support their theory that a claim under § 1985(3)'s support-or-advocacy clause requires racial animus. Dkt. 603 at 9. But the Fifth Circuit panel did not reach the merits of Plaintiffs' case and, in fact, the panel explicitly acknowledged that Plaintiffs "might be right that racial animus is not a prerequisite to recovery under the Support-or-Advocacy Clause." *In re Mesaros*, No. 23-50593, at \*5 (5th Cir. 2023). That alone should preclude a finding of frivolity here, but either way, a court's potential disagreement with good faith legal arguments is irrelevant to frivolity under the *Vaughan* factors. The only potentially relevant *Vaughan* factor for the Ceh Defendants' argument is the factor that asks "whether 'squarely controlling precedent' foreclosed the plaintiff's legal argument," *Vaughan*, 62 F.4th at 205, but the Ceh Defendants' own citations confirm that no such precedent exists.

## II.    The *Christiansburg* Test Applies to the Ceh Defendants

Perhaps recognizing the frivolity of their own argument, the Ceh Defendants next propose a reading of 42 U.S.C § 1988 that is precluded by decades-old, binding case law and is unsupported by the purpose and legislative history of § 1988. Specifically, their theory attempts to create a new standard out of whole cloth, twisting § 1988 to make it easier for defendants in their position to recover fees from civil rights plaintiffs. The Court must reject this new and unsupported standard.

### A. The Ceh Defendants' Reading of § 1988 Has Been Rejected by the United States Supreme Court

The Ceh Defendants start with the text of § 1988 and argue that there should be no presumption against prevailing defendants recovering attorneys' fees because there is "no distinction between prevailing plaintiffs and prevailing defendants." Dkt. 603 at 11–12. But that

argument has already been rejected by the Supreme Court in *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*. 434 U.S. at 418. There, the Supreme Court explained "the permissive and discretionary language of the statute does not even invite, let alone require, such a mechanical construction" because "[t]he terms of § 706(k) provide no indication whatever of the circumstances under which either a plaintiff or a defendant should be entitled to attorney's fees." *Id.* Thus, the Supreme Court's rejection of the Ceh Defendants' argument is as old as the *Christiansburg* standard itself, which has been repeatedly confirmed by the Fifth Circuit, *see, e.g.*, *Vaughan v. Lewisville Indep. Sch. Dist.*, 62 F.4th; *Dean v. Riser*, 240 F.3d 505, 512 (5th Cir. 2001).

What is more, *Christiansburg* precludes Defendants' theory that somehow *private* party defendants should be held to a new standard. Indeed, the Ceh Defendants erroneously claim that the defendant in *Christiansburg* was a government actor. Dkt. 603 at 14. In fact, the defendant in that case was the original Plaintiff's employer—Christiansburg Garment Company. *See Christiansburg*, 434 U.S. at 414. There is simply no room under existing, binding case law for the Ceh Defendants' long-rejected theory. *See Dean*, 240 F.3d.; *Crawford v. W. Elec. Co.*, 614 F.2d 1300, 1321 (5th Cir. 1980) (applying *Christiansburg* standard to prevailing private party defendants).

## B. The Ceh Defendants' Reading of § 1988 Is Not Supported by the Legislative History of § 1988 Nor the Purposes of the Statute

If the Court is inclined to look further, there is also no support for the Ceh Defendants' reading of § 1988 in its legislative history. Congress made clear that the purpose of 42 U.S.C § 1988 is to encourage civil rights *plaintiffs* to bring actions to enforce civil rights laws and serve as "private attorneys general" by allowing them to recover fees. *See* H. REP. NO. 94-1588, at 2 (1976) ("House Report" or "H. REP."); S. REP. NO. 94-1011, at 3–5 (1976) ("Senate Report" or "S. REP."); *see also Vaughner*, 804 F.2d at 878 ("The primary purpose of the attorney's fees provision

in section 1988 is to encourage private enforcement of the civil rights statutes."). That same legislative history expressly acknowledges that the statute provides a fee award for prevailing plaintiffs alleging a public *or private* conspiracy under § 1985(3), *see* H. REP. at 4–5. The heightened standard for awarding fees *to defendants* under § 1988 comes from case law Congress relied on when enacting § 1988 and leaves no room for a more lenient standard for private party defendants.

Congress enacted § 1988 in direct response to the Supreme Court's decision in *Alyeska Pipeline Service Corp. v. Wilderness Society*, in which the Court declined to award attorneys' fees to the prevailing plaintiffs because there was no applicable statutory fee-shifting provision. 421 U.S. 240 (1975); *see* H. REP. at 2; S. REP. at 1. *Alyeska* had been deployed to deny fees to many civil rights plaintiffs who brought suit under Reconstruction Era civil rights statutes, which did not contain fee-shifting provisions at the time. H. REP. at 2. Through § 1988, Congress sought to extend fee-shifting protections to civil rights plaintiffs bringing claims under Reconstruction Era statutes using the same standard that applied to plaintiffs bringing claims under Titles II and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a-3(b) and 2000e-5(k), and section 402 of the Voting Rights Act Amendments of 1975, 42 U.S.C. § 1973*l*(e).[6] S. REP. at 2. As such, Congress modeled the language of § 1988 after these statutes, noting that "[a]ll of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private

---

[6] 42 U.S.C. § 2000a-3(b) ("the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs"); 42 U.S.C. § 2000e-5(k) ("[T]he court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs . . . ."); 42 U.S.C. § 1973*l*(e), recodified as 52 U.S.C. § 10310(e) ("[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs.").

citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." S. REP. at 2.

In doing so, Congress looked to case law interpreting existing fee-shifting provisions in civil rights statutes. As relevant here, § 1988 was passed with reference to and in reliance on case law applying this heightened standard to private party defendants under § 706(k), which is materially identical to the provision ultimately adopted in § 1988.[7] *See* S. REP. at 5 (first citing *Richardson v. Hotel Corp. of Am.*, 332 F. Supp. 519, 521–22 (E.D. La. 1971), *aff'd*, 468 F.2d 951 (5th Cir. 1972) (denying private party defendant attorneys' fees under § 706(k) where "plaintiff proceeded in good faith on the advice of competent counsel to attempt to vindicate statutory rights"); then citing *U.S. Steel Corp. v. United States*, 385 F. Supp. 346 (W.D. Pa. 1974), *aff'd* 519 F.2d 359 (3d Cir. 1975) (cited by the Senate Report for the proposition that "private attorneys general" "could be assessed his opponent's fee only where it is shown that his suit was clearly frivolous, vexatious, or brought for harassment purposes." S. REP. at 5)); H. REP. at 7 (citing *Wright v. Stone Container Corp.*, 524 F.2d 1058 (8th Cir. 1975) (denying attorneys' fees to private employer defendant under § 706(k) where the plaintiff presented a good faith case)).

The Senate Report notes that § 1988 "creates no startling new remedy—it only meets the technical requirements that the Supreme Court has laid down if the Federal courts are to continue the practice of awarding attorneys' fees which had been going on for years prior," and that "[i]t is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act." S. REP. at 4, 6.

---

[7] *Compare* 42 U.S.C. § 2000e-5(k) ("[T]he court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs . . . .") *with* 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .").

The House Committee on the Judiciary further reasoned that limiting awards of attorneys' fees to defendants under § 1988 would help avoid a "chilling effect" that might otherwise discourage civil rights plaintiffs from initiating suits. H. REP. at 6. Further, the House Committee noted that awarding attorneys' fees to prevailing defendants does not serve the same public interest as awarding fees to prevailing plaintiffs because such defendants do "not appear before the court cloaked in a mantle of public interest" as plaintiffs do. *See also* H. REP. at 6–7 (quoting *U.S. Steel Corp.*, 519 F.2d at 364). Thus, it is clear from the legislative history that § 1988 was not enacted for the narrow purpose of vindicating civil rights plaintiffs against *public* party defendants, and Congress did not intend for private party defendants to be treated differently from public party defendants, as the Ceh Defendants contend. Rather, § 1988 was enacted to encourage individuals to serve as "private attorneys general" against public *and* private party defendants in enforcing civil rights laws.

The Ceh Defendants attempt to get around this plain language by misleadingly excerpting a portion of the House Report stating that "Congress has not always been that generous" in allowing fees for parties. Dkt. 603 at 12 (quoting H. REP. at 6–7). Putting aside that the quotation, in itself, provides no support for their nuanced position about public versus private party defendants, the Ceh Defendants also conveniently leave out *the very next paragraph of the House Report*, which notes that the U.S. Department of Justice had voiced concerns about allowing fee awards to prevailing defendants at all; there, the Report explains that the House Committee had determined that jurisprudence interpreting "prevailing party" fee awards to defendants was sufficient to protect plaintiffs from this danger. *See* H. REP. at 6–7 ("To avoid the potential 'chilling effect' noted by the Justice Department and to advance the public interest articulated by the Supreme Court … the courts have developed another test for awarding fees to prevailing

defendants."). The House Report shows that Congress was relying on case law previously developed by the courts to supply the more rigorous standard for prevailing defendants to recover fees under § 1988, and that the Ceh Defendants' newfound distinction has no basis.

### C. The Ceh Defendants Should Not Receive Unprecedented Treatment Under § 1988

The Ceh Defendants next argue that they are deserving of special treatment because they are "disadvantaged victims … who were subjected to years of litigation, despite a lack of factual or legal allegations that could have subjected them to liability." Dkt. 603 at 13. As discussed *supra* Section I.A, this belies the record in this case. Further, the Ceh Defendants' equitable argument *is already addressed* by the current standard for a prevailing defendant to recover fees. If there were truly "a lack of factual or legal allegations that could have subjected the Cehs to liability," *id.*, then the Ceh Defendants could potentially prevail on the existing fees standard under § 1988. But that is not the case here. *See supra* Section I.A

The Ceh Defendants also contend that they are uniquely positioned because they are individuals with "limited means," rather than governmental entities. Dkt. 603 at 16. But civil rights cases are regularly brought against private individuals and entities. In such cases, courts still only allow recovery of attorneys' fees against plaintiffs where an action is brought in bad faith or is frivolous. *See Offord v. Parker*, 456 F. App'x 472 (5th Cir. 2012); *Dean*, 240 F.3d at 512; *Crawford*, 614 F.2d at 1321. Additionally, the Ceh Defendants attempt to argue they are entitled to attorneys' fees due to the wealth of their opponents, but other than a glancing, unsupported mention of the financial resources of one Plaintiff, the Motion contains no evidence of the financial condition of any Plaintiff. In turn, under the Ceh Defendants' theory of § 1988, this Court would need to take discovery on the financial resources of each Plaintiff and compare them with the Ceh Defendants' financial resources, which—under the Ceh Defendants' theory—could result in one or more Plaintiffs being required to pay fees and others not needing to pay fees. Essentially, the

Ceh Defendants advocate for means-testing protections for civil rights plaintiffs. This is untenable and not supported by any of the authorities upon which the Ceh Defendants rely.

Moreover, contrary to the Ceh Defendants' theory on public parties, where public institutions have been *plaintiffs* in a civil rights suit, courts have permitted them to recover fees in the same manner as any other plaintiff. *See, e.g.*, *Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 487 n.31 (1982) (upholding an award of attorneys' fees for a school district that sued the state for equal protection violations). This is precisely because public entities also "have limited budgets, and allowing them fees encourages compliance with and enforcement of the civil rights laws." *Id.* (citation modified). Courts have not seen fit to distinguish between public and private plaintiffs because both are vulnerable to financial strain as a result of litigation; the same logic applies with equal force to defendants.

Overall, applying a different standard for fee awards to private party defendants under § 1988 would betray Congress's intention in enacting the statute. The Ceh Defendants are required to meet the same standard under § 1988 as any other defendant to recover fees from the Plaintiffs. They cannot do so.

### III.    Even if this Court Were Otherwise Inclined to Award Fees Under § 1988, It Should Exercise Its Discretion to Deny Fees

An award of fees under § 1988 is discretionary. *See* 42 U.S.C. § 1988(b). Here, even if the Court were inclined to agree that the *Vaughan* factors weighed in the Ceh Defendants' favor—and it should not—the Court should exercise its discretion to deny the Ceh Defendants fees for the following reasons. First, as shown during trial, the Ceh Defendants thwarted the Plaintiffs' presentation of evidence by getting new phones directly after Plaintiffs filed their lawsuit in June 2021, consequently destroying nearly all text messages and photos from the day of (and before) the incident at issue in this case. Second, there is no evidence that Plaintiffs acted in bad faith at

any point in this case. *See Shepard v. Dep't of Veterans Affs.*, 2022 WL 21295042, at *1 (W.D. Mich. Feb. 11, 2022) ("There is no evidence of bad faith or ill-intent by Plaintiff. Absent bad faith, the Court finds, in its discretion, that awarding attorney fees under § 1988 is inappropriate."); Dkt. 589 at 10 ("[T]here has been no evidence to suggest that Plaintiffs brought this case in bad faith."). Finally, awarding fees here, where Plaintiffs' case succeeded at every juncture *except* for the final, mixed jury verdict, may discourage similarly situated litigants from seeking to enforce their rights under civil rights statutes and counsel from representing clients with civil rights claims. *See Benjamin v. City of Atl. City*, 2014 WL 2916497, at *3 (D.N.J. June 26, 2014) (citing *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 103 F. App'x 695, 698 (3d Cir. 2004)).

## IV.    Even if the Court Were to Find that the Ceh Defendants Were Entitled to Fees, Any Fee Award Should Be Significantly Reduced

As explained in detail above, the Ceh Defendants' Motion for fees is entirely unsupported by the relevant case law and legislative history.[8] However, even if the Court were to find that the Ceh Defendants are entitled to fees, any fee award should be significantly reduced, as the amount requested is excessive, unsupported by sufficient documentation, and is not reflective of the Ceh Defendants' degree of success in this litigation. *See No Barriers, Inc. v. Brinker Chili's Tex., Inc.*, 262 F.3d 496, 500 (5th Cir. 2001) (stating that "the court has the discretion to reduce the award to a reasonable amount" when a party "submits a fee application without proper documentation").

---

[8] Given the entirely unsupported nature of their filing, and Plaintiffs' prior, detailed notice to counsel for the Ceh Defendants of their reasoning and binding caselaw, *see* Dkt. 592-1 at 1–2, Plaintiffs believe that the Ceh Defendants' motion "multiplies the proceedings . . . unreasonably and vexatiously," under 28 U.S. Code § 1927. In turn, Plaintiffs believe fees may be warranted for their time responding to Defendants' motion and are prepared to submit a motion and fully brief the issue if the Court requests further briefing.

Courts follow a two-step process in calculating fee awards: first, the court must calculate the lodestar, and second, the court may exercise its discretion to increase or decrease the lodestar after considering the twelve *Johnson* factors. *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V.*, 23 F.4th 408, 415 (5th Cir. 2022). "[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citation modified). Fee awards are tailored to ensure the availability of competent counsel in civil rights litigation, but are "never intended to produce windfalls to attorneys." *Farrar*, 506 U.S. at 115 (citation modified).

In establishing the lodestar, the burden of proving reasonableness rests on the fee applicant, and it is not the burden of "the opposing party to prove . . . unreasonableness." *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990). When reviewing fee requests, courts disallow charges for excessive hours or unnecessary work, duplicative or redundant work or personnel, and vague or inadequately documented entries. *MGMTL, LLC v. Strategic Tech. Inst., Inc.*, 776 F. Supp. 3d 419, 488 (E.D. La. 2025). Excessive billing includes, among other things, time spent on unnecessary work, and courts routinely deduct time spent on unsuccessful motions, discovery requests, and memoranda. *Id.*

Here, the Ceh Defendants bear the burden of justifying the reasonableness of their requested fees, and they have not carried that burden. Counsel for the Ceh Defendants frames the fees charged as a "flat rate," but the reasonableness of that rate can only be justified if supported by the underlying billing entries. *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990) ("[I]t is insufficient to provide the district court with broad summaries of work done and hours logged." (quoting *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982))).

Even a cursory review of the entries raises serious concerns. For example, a number of the entries relate to the Ceh Defendants' unsuccessful motions practice, including their motion for continuance, motions in limine oppositions, and motions for judgment as a matter of law, all of which should be deducted. Dkt. 603-3 at 2–5. Many of these entries are also impermissibly blockbilled, and other entries are so vague as to be meaningless (*e.g.*, "Conference with SMF re case status," "Case discussion," and "Trial prep"). *Id.* Others still are for administrative tasks rather than legal work (*e.g.*, "Saving docket filings to client files," "Efile Reply Support Continuance and save to file," and "Organizing exhibits per plaintiff's exhibit list per JCG's instructions."). The administrative work entries include 9.8 hours billed to "[c]onvert PDFs into searchable texts and highlight transcript designations for JCG" on September 4, 2024, *id.* at 2, 7.8 hours for "[c]onvert PDFs into searchable texts and highlight transcript designations for JCG" on September 5, 2024, *id.*, a combined 2.6 hours on September 9, 2024 for "[s]aving Mesaros defendants Trial Exhibits" and "[s]aving client documents to file and organizing client files," *id.,* and 1.2 hours on September 12, 2024 for "[d]ownloading defendant parks' exhibits to client file per JCG's request." *Id.* at 3.

Finally, any fee award should be significantly reduced to reflect the limited victory obtained by the Ceh Defendants. Courts must consider the "significance of the overall relief obtained" in relation to the "hours reasonably expended on the litigation" when assessing an attorneys' fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The Ceh Defendants lost at the motion to dismiss stage, and they failed to file a motion for summary judgment. Two co-defendants—alleged co-conspirators who were closely tied to the Ceh Defendants—settled and admitted wrongdoing prior to trial. *See* Dkts. 183, 184, 241-61, 241-63. All Defendants' motions for judgment as a matter of law during trial were denied. The jury imposed liability against one of the Ceh Defendants' co-defendants and alleged co-conspirators. Dkt. 591. And finally, by

Defendant Steve Ceh's own admission, the majority of the jury initially wanted to hold him and Defendant Randi Ceh liable for at least $100,000. *See supra* note 5. This is hardly an unqualified vindication, let alone a watershed victory which corrects a widespread wrong. *Cf. Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974) (noting that successful litigation which "corrects across-the-board discrimination" may warrant a higher fee award). The Ceh Defendants may only recover attorneys' fees commensurate with their success, and this Court should reduce any award to reflect the marginal nature of the outcome.

For all of these reasons, Plaintiffs request a hearing on the amount of any fee award, if the Court were to find a fee award appropriate in this case. A hearing would enable the Court to determine whether the Ceh Defendants' counsel's rates are reasonable and what work was duplicative, excessive, and unsupported by sufficient documentation.

## CONCLUSION

Plaintiffs established a prima facie case on all their claims; survived all Defendants' motions to dismiss, motions for summary judgment, and motions for judgment as a matter of law; and they presented legally sufficient evidence that could support a verdict in favor of the Plaintiffs on all of their claims. Under these circumstances, awarding attorneys' fees would undermine the purposes of § 1988 and reward the Ceh Defendants for their own frivolous request. Because Plaintiffs' case was meritorious, and the Ceh Defendants are not a "prevailing party" entitled to fees, Plaintiffs respectfully request that this Court deny their Motion.

DATED:  September 26, 2025

Respectfully submitted,

_/s/ Sarah Chen_

**TEXAS CIVIL RIGHTS PROJECT**
Christina M. Beeler (TX Bar No. 24096124)
Sarah Xiyi Chen (TX Bar No. 24144784)
Veronikah Rhea Warms (TX Bar No. 24132682) (*pro hac vice*)
Travis Fife (TX Bar No. 24126956)
Texas Civil Rights Project
P.O. Box 17757
Austin, TX 78760
Telephone: (512) 474-5073
Facsimile: (512) 474-0726
christinab@texascivilrightsproject.org
schen@texascivilrightsproject.org
veronikah@texascivilrightsproject.org
travis@texascivilrightsproject.org

**THE PROTECT DEMOCRACY PROJECT, INC.**
Orion Danjuma (NY Bar No. 4942249) (*pro hac vice*)
The Protect Democracy Project, Inc.
82 Nassau Street, #601
New York, NY 10038
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
orion.danjuma@protectdemocracy.org

Cameron O. Kistler (DC Bar No. 1008922) (*pro hac vice*)
Cerin Lindgrensavage (DC Bar No. 1741602) (*pro hac vice*)
JoAnna Suriani (DC Bar No. 1645212) (*pro hac vice*)
The Protect Democracy Project, Inc.
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
cameron.kistler@protectdemocracy.org
cerin.lindgrensavage@protectdemocracy.org
joanna.suriani@protectdemocracy.org

Benjamin L. Berwick (MA Bar No. 679207)
(*pro hac vice*)
The Protect Democracy Project, Inc.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
ben.berwick@protectdemocracy.org

Jared Fletcher Davidson (LA Bar No.
37093) (*pro hac vice*)
The Protect Democracy Project, Inc.
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
jared.davidson@protectdemocracy.org

**WILLKIE FARR & GALLAGHER LLP**
Michael Gottlieb (DC Bar No. 974960) (*pro
hac vice*)
Robert Meyer (DC Bar No. 405632) (*pro
hac vice*)
Samuel Hall (DC Bar No. 242110) (*pro hac
vice*)
Jamielah Yancey (DC Bar No. 1619055)
(*pro hac vice*)
Rebecca Heath (DC Bar No. 1644402) (*pro
hac vice*)
Amy R. Orlov (DC Bar No. 1780213) (*pro
hac vice*)
Aaron E. Nathan (NY Bar No. 5478227)
(*pro hac vice*)
Noah Mussmon (DC Bar No. 90006660)
(*pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006-1238
Telephone: (202) 303-1000
Facsimile: (202) 303-2000
Email: mgottlieb@willkie.com
rmeyer@willkie.com
shall@willkie.com
jyancey@willkie.com
rheath@willkie.com

- 23 -

aorlov@willkie.com
anathan@willkie.com
nmussmon@willkie.com

***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2025, a true and correct copy of the foregoing has been served on all counsel of record by the Electronic Case File System of the Western District of Texas in compliance with the Federal Rules of Civil Procedure.

DATED: September 26, 2025                                         */s/ Sarah Chen*