**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| WENDY DAVIS, DAVID GINS, and TIMOTHY HOLLOWAY, <br><br> Plaintiffs, <br><br> v. <br><br><br> ELIAZAR CISNEROS, RANDI CEH, STEVE CEH, JOEYLYNN MESAROS, ROBERT MESAROS, and DOLORES PARK, <br><br> Defendants. | Civil Action No. 1:21-cv-00565-RP <br><br> Hon. Robert Pitman |

## <u>PLAINTIFFS' OPPOSITION TO THE MESAROS DEFENDANTS'<br>MOTION FOR FEES</u>

On August 29, 2025, Defendants Joeylynn and Robert Mesaros (the "Mesaros Defendants") filed a motion seeking attorneys' fees under 42 U.S.C. § 1988 and this Court's inherent authority ("Motion"). Dkt. 604. This Court should deny their Motion.

More specifically, the Mesaros Defendants argue that they are entitled to attorneys' fees because Plaintiffs' claims against them were frivolous, unreasonable, groundless, and brought in bad faith because Plaintiffs could have had stronger claims against other possible Defendants. But the Mesaros Defendants previously raised nearly identical arguments that this Court has already considered and rejected in its order on the Mesaros Defendants' motion for post-trial discovery. *See* Dkts. 580, 589. This Court expressly warned the Mesaros Defendants that "it is hard to see how [they] could prevail in meeting their high burden of showing that Plaintiffs' case was frivolous or brought in bad faith." Dkt. 589 at 10.

The record in this case bears out the Court's warning. The Court ruled in Plaintiffs' favor on all dispositive motions brought by the Defendants in this case, including all motions to dismiss, *see* Dkts. 64, 204; all motions for summary judgment, *see* Dkt. 475; and all motions for judgment as a matter of law that the Defendants brought during trial. In response to the Mesaros Defendants' motions for judgment as a matter of law, the Court affirmed that Plaintiffs presented legally sufficient evidence that could support a verdict in favor of the Plaintiffs on all of their claims. Plaintiffs are unaware of *any* case, in *any* jurisdiction, where a court has deemed a suit in this posture to be frivolous or in bad faith, nor have the Mesaros Defendants pointed Plaintiffs or this Court to such a case. *See* Dkt. 604.

Additionally, the Mesaros Defendants' calculation of fees is deficient and unsupported. In turn, even if the Court found that a fee award is possible here under the governing standard (it should not), it should exercise its discretion under § 1988 to deny the award. Finally, the fees the Mesaros Defendants seek for their payments to Plaintiffs' experts are not recoverable under § 1988.

**ARGUMENT**

**I.    The Mesaros Defendants Are Not Entitled to Fees Under 42 U.S.C. § 1988**

Under 42 U.S.C. § 1988, "district courts, in their discretion, [may] award fees to the prevailing party for actions brought under" 42 U.S.C. § 1985(3). *See Merced v. Kasson*, 577 F.3d 578, 595 (5th Cir. 2009); 42 U.S.C. § 1988(b). This departure from the traditional "American Rule," in which each party is responsible for their litigation costs, aims to incentivize *plaintiffs* to vindicate their rights by bringing civil rights suits, even when the cost of litigation is daunting. *See Vaughner v. Pulito*, 804 F.2d 873, 878 (5th Cir. 1986) ("The primary purpose of [the statute] is to encourage private enforcement of the civil rights statutes.").

Defendants, on the other hand, face a high barrier to recovery. *Merced*, 577 F.3d at 595. They "cannot recover § 1988 fees without demonstrating that the plaintiff's underlying claim was frivolous, unreasonable or groundless." *Id.* (quoting *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1053 (5th Cir. 1998)). Courts "review frivolity by asking whether the case was so lacking in merit that it was groundless, rather than whether the claim was ultimately successful." *State of Mississippi*, 921 F.2d at 609; *accord Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999). The factors this Court should consider in determining frivolity include:

> [1] whether the plaintiff established a prima facie case, [2] whether 'squarely controlling precedent' foreclosed the plaintiff's legal argument, [3] whether the plaintiff's evidence was so lacking that 'there is no basis from which to say the[] claims were not frivolous,' [4] whether the defendant offered to settle, and [5] whether the plaintiff's claim was so obviously meritless that it was dismissed prior to trial.

(the "*Vaughan* factors"). *Vaughan v. Lewisville Indep. Sch. Dist.*, 62 F.4th 199, 204–05 (5th Cir. 2023) (citing *State of Mississippi*, 921 F.2d at 609).[1] None of these factors support the Mesaros Defendants here.

### A.  Plaintiffs' Claims Are Not Frivolous Under the *Vaughan* Factors

Indeed, the *Vaughan* factors plainly favor Plaintiffs: Plaintiffs established a prima facie case; there is no squarely controlling precedent that forecloses their claims; two conspirators (Hannah Ceh and Kyle Kruger) settled and admitted wrongdoing prior to trial; and Plaintiffs defeated all Defendants' motions to dismiss and motions for summary judgment before proceeding

---

[1] In *United States v. State of Mississippi*, the Fifth Circuit laid out three factors "important to frivolity determinations": "(1) whether plaintiff established a prima facie case, (2) whether the defendant offered to settle, and (3) whether the district court dismissed the case or held a full-blown trial." 921 F.2d 604, 609 (5th Cir. 1991). The Fifth Circuit has since clarified that "district courts are not constrained to those three factors alone when evaluating the frivolous nature of a civil rights claim." *Vaughan*, 62 F.4th at 205 n.22. Regardless of whether this Court looks at only those three factors or at the broader range, Defendants fail to show frivolity entitling them to attorneys' fees.

to a full, contentious trial with extensive supporting evidence, during which Plaintiffs also defeated Defendants' motions for judgment as a matter of law.

Plaintiffs established a prima facie case on all claims because "it cannot be reasonably said that [they] had no evidence to support [their] claim[s] or that [their] claim[s were] without arguable merit." *See Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1141 (5th Cir. 1983). As this Court recently summarized, "[t]he Court repeatedly denied Defendants' motions to dismiss Plaintiffs' claims, (*see* Dkts. 64, 100, 204), and in its order on Defendants' motions for summary judgment, the Court held that a reasonable jury could find Defendants liable on all of Plaintiffs' claims, (*see* Dkt. 475). **Plaintiffs thus established a prima facie case.**" Dkt. 589 at 10 (emphasis added).

The Mesaros Defendants do not engage the *Vaughan* factors, despite it being their burden to do so. Instead, they argue that this Court's prior rulings alone "do[] not preclude a fee award" and that "misleading factual allegations sometimes require a trial to present the correct record." Dkt. 604 at 2. However, this case *did* proceed to a two-week trial during which the Court denied all of the Defendants' motions for judgment as a matter of law, after hearing the evidence in full, ruling that Plaintiffs presented legally sufficient evidence that would support a verdict in favor of Plaintiffs on all of their claims. At the conclusion of the trial, the jury found that Plaintiffs made their case that a conspiracy under § 1985(3) existed, and found one Defendant, Eliazar Cisneros, liable for both compensatory and punitive damages. Dkt. 557. Even after trial, this Court has already stated that "it is hard to see" how the Mesaros Defendants "could prevail in meeting their high burden of showing that Plaintiffs' case was frivolous or brought in bad faith." Dkt. 589 at 10. Moreover, this Court previously held that Plaintiffs established a prima facie case and that Plaintiffs' legal theory under §1985(3) "was colorable and not squarely foreclosed by controlling precedent." *Id.*

Binding Fifth Circuit precedent squarely confirms that a district court abuses its discretion in granting fees to a prevailing defendant in such circumstances. In *Stover v. Hattiesburg Public School District*, the Fifth Circuit reversed a district court's decision to award a defendant fees when the defendant ultimately won at trial but had previously lost its motion for summary judgment and motion for judgment as a matter of law during the trial. 549 F.3d 985, 998 (5th Cir. 2008). The Fifth Circuit emphasized that district courts must "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 997 (quoting *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421–22 (1978)).[2] Thus, because "[t]here was plausible evidence supporting [the plaintiff's] claim, as set forth in the district court's order on summary judgment and the testimony at trial," an award of fees to the defendant was reversible error. *Stover*, 549 F.3d at 998. Similarly, the Fifth Circuit reversed an award of attorneys' fees to the defendant in *Plemer*, holding that the defendant's win at trial was an insufficient basis upon which to find that the plaintiff's claims were frivolous because "it cannot be reasonably said that [the plaintiff] had no evidence to support her claim." 713 F.2d at 1141–42.

The Fifth Circuit's reasoning in *Stover* and *Plemer* applies with even greater force here. This Court repeatedly rejected the Defendants' substantive motions,[3] including after the

---

[2] The *Christiansburg* standard governs defendants' entitlement to attorneys' fees under § 1988. *See Hughes v. Rowe*, 449 U.S. 5, 14 (1980).

[3] Even were that not the case, the Fifth Circuit has declined to find claims frivolous even when defendants *did* prevail on motions to dismiss and motions for summary judgment. *See, e.g.*, *Merced*, 577 F.3d at 595 ("The district court granted [defendant's] motion for summary judgment . . . but that fact alone does not mean it was frivolous . . . ."); *see also Hidden Oaks Ltd*, 138 F.3d at 1053 (holding that district court's grants of defendant's motion to dismiss and motion for summary judgment did "not establish that the underlying claims were 'frivolous, unreasonable or groundless'").

conclusion of evidence at trial. The trial ultimately ended in a verdict against Defendant Cisneros,[4] vindicating Plaintiffs' allegations of a conspiracy under § 1985(3) on October 30, 2020. The fact that a jury declined to hold the Mesaros Defendants liable as part of that conspiracy does not mean that Plaintiffs' claims were frivolous; rather, as in *Stover*, "it simply means that the jury unanimously concluded that the weight of the evidence was not in [Plaintiffs'] favor." 549 F.3d at 998. In fact, the Fifth Circuit has held that "[a] claim that survives summary judgment . . . cannot be frivolous." *See Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 460 (5th Cir. 2020) (discussing frivolity under Federal Rule of Civil Procedure 11); *see also MV3 Partners LLC v. Roku, Inc.*, 2022 WL 1913619, at *2 (W.D. Tex. June 3, 2022) (same; discussing frivolity with respect to taxing costs).

## 1. It Is Irrelevant to Frivolity that Plaintiffs Did Not Seek Discovery From or Sue All Possible Defendants

In addition, the Mesaros Defendants' Motion rehashes another argument that this Court has previously rejected: Plaintiffs' claims were frivolous and harassing because "Plaintiffs not only failed to sue, but failed to even seek discovery from the drivers or registered owners of the handful of vehicles that were driving obnoxiously, apart from Kyle Kruger and Hannah Ceh." Dkt. 604 at 6.

This Court has already stated that it "strains credulity for the Mesaros Defendants to now assert that Plaintiffs did not sufficiently engage in discovery to uncover the identities of the other

---

[4] As further evidence that Plaintiffs' case against the Mesaros Defendants was not frivolous, public statements after trial also suggest that the jurors almost found the Mesaros Defendants liable. In a public video interview released after trial, Defendant Steve Ceh explained that "five [jurors] wanted at least $100,000 from all of us [Defendants]," but other jurors "got [him] cleared from a finding of liability." *See* Dkt. 572 at 10. In another more recent video, Defendant Steve Ceh similarly explained: "I had coffee with one of the jurors. And he told me that as soon as they walked in for deliberation, they started at $100,000." Citizens Defending Freedom, *Why Pastors Must Speak Boldly: Pastor Steve Ceh on Defending Faith & Freedom in the Public Square*, at 08:50 (Vimeo, July 24, 2025), https://vimeo.com/1104268135.

drivers on I-35 that day." Dkt. 589 at 9. The Court noted that "[t]his argument is especially unconvincing" because of Defendant Joeylynn Mesaros's and Defendant Cisneros's intentional destruction of evidence. *See id.* Further, this Court held that "frivolity is not about whether Plaintiffs could have put on a stronger case if they had made different strategic choices," noting that such a framework would "conflict with the Fifth Circuit's instruction to 'review frivolity by asking whether the case was so lacking in merit that it was groundless, rather than whether the claim was ultimately successful.'" Dkt. 589 at 10 (quoting *State of Mississippi*, 921 F.2d at 609). In addition, the Court previously summarized Plaintiffs' relevant and extensive discovery efforts, explaining that "Plaintiffs sought this discovery from named Defendants through requests for production, interrogatories, and by questioning Defendants regarding the identities of other vehicles on the road on October 30, 2020, including asking about the identities of drivers depicted in various videos and photographs from the day of the Incident. (*See* Mot., Dkt. 572, at 3–4). Plaintiffs also served Rule 45 subpoenas on at least 20 non-parties for discovery on this topic. (*Id.*)." Dkt. 589 at 8.[5]

---

[5] *See* Dkt. 572-2 at 157:12–22 (Robert Mesaros Deposition):

Q. Okay. Is that truck in front of the bus one that you recognize? Do you have any idea whose it was?
A. I have no idea whose it was. I believe in the picture of the first -- that when we were at Solms Road, I think that's the truck that was actually parked in front of me, but I don't think I had any contact with that person.
Q. And what about the red truck to the left in the next lane over, do you recognize that truck?
A. I don't.
*See also* Dkt. 572-1 at 176:12–21 (Joeylynn Mesaros Deposition):
Q. Okay. And those two vehicles in front of the Trump -- or in front of the bus, are those Trump Train vehicles?
A. Yes. They appear to be.
Q. Okay. Do you recognize either one of those vehicles?
A. No, ma'am.
Q. Okay. So you don't know either one of those drivers?
A. No, ma'am.

This Court already identified that "[t]he most the Mesaros Defendants can muster is speculation about Plaintiffs' motives for not pursuing every potential co-conspirator." Dkt. 589 at 11. In response to that statement from the Court, the Mesaros Defendants have changed nothing about their approach to their fees request; it still rests on pure speculation that is false on the face of the record.[6] They assert, once again, that Plaintiffs failed to seek discovery from the "obnoxious" drivers as part of "an apparent strategy to attempt to secure a settlement or judgments of liability against peaceful drivers/protesters, because that would effectively shut down not just dangerous driving or actual interference but the Trump Trains in general." Dkt. 604 at 7.

Notwithstanding the fact that Plaintiffs have successfully responded to these allegations previously, they note again that the allegations are false.[7] *First*, Plaintiffs—in their opening statement, their presentation of evidence, and closing statement—stressed to the jury that the sort of Trump Trains the Defendants participated in prior to October 30, 2020 were *not* what this lawsuit was about and that there was nothing wrong with peaceful demonstrations. *Second*, the Mesaros Defendants make no effort to square their theory with Plaintiffs' suit against Kyle Kruger—whom the Mesaros Defendants themselves characterize as engaging in "obnoxious driving," Dkt. 604 at 6, and whom they clearly view as part of the "operational linchpin" of

---

[6] Given the entirely unsupported nature of their filing, and Plaintiffs' prior, detailed notice to counsel for the Mesaros Defendants of their reasoning and binding caselaw, see Dkt. 592-1 at 1–2, Plaintiffs believe that the Mesaros Defendants' motion "multiplies the proceedings . . . unreasonably and vexatiously," under 28 U.S. Code § 1927. Plaintiffs are particularly concerned given the public statements made by the Mesaros Defendants indicating that they plan to continue to fundraise off of this case and use funds to go on the "offense." Free Speech Defender, GIVESENDGO, https://www.givesendgo.com/Mesaros (last visited Sep. 26, 2025).

[7] The Mesaros Defendants rehash arguments concerning alleged discovery disputes, Dkts 604 at 7, 605-1 at 5–9, that were raised in materially identical form previously, Dkts. 580 at 6–11, 580-1 at 5–9, that Plaintiffs responded to in full, Dkt. 582 at 10, and that the Court rejected in full, Dkt. 589. Plaintiffs do not believe those arguments warrant additional discussion here, but, in short, they are both baseless and untimely for the reasons previously litigated.

Plaintiffs' alleged conspiracy. *See* Dkt. 580 at 2, 7. Their theory also fails to account for Plaintiffs' successful § 1985(3) claim against Defendant Cisneros. As the evidence showed at trial, Defendant Cisneros planned #OperationBlocktheBus, served as the lookout for the Bus, and admitted to "slamming" a Biden campaign staffer's vehicle. *See* Dkt. 568 at 3, 6; PTX-033, PTX-034.

Finally*,* the Mesaros Defendants acknowledge (as they must) that Plaintiffs are not required to sue all members of a conspiracy, Dkt. 604 at 6, but claim that this rule "does not save Plaintiffs' case or protect them from a finding of frivolity or harassment" because this rule "has valid application where a plaintiff has no means of identifying all conspirators, and likely derives from such considerations." Dkt. 604 at 6. The Mesaros Defendants proffer no support for this assertion, but the general rule that a plaintiff is not required to sue all members of a conspiracy applies even if a plaintiff were aware of the identities of all co-conspirators because co-conspirators share responsibility for all actions committed by another co-conspirator in furtherance of the conspiracy. *See Fifth Circuit Pattern Jury Instructions – Criminal* § 2.17 (2019) ("A conspirator is responsible for offenses committed by another conspirator if the conspirator was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of, and as a foreseeable consequence of, the conspiracy.") (citation modified). Additionally, the rule has application throughout the landscape of conspiracy law—not just in situations where it may be difficult or impossible to identify all co-conspirators. *See, e.g., Wilson P. Abraham Const. Corp. v. Tex. Indus., Inc.*, 604 F.2d 897, 904 n.15 (5th Cir. 1979) ("A private plaintiff need not sue all coconspirators but may choose to proceed against any one or more of them" in an antitrust action), *aff'd sub nom. Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981).

Ultimately, this argument goes nowhere because it rests on a comparison between the Mesaros Defendants' conduct and the conduct of others. As this Court has explained, that is not

the proper inquiry for frivolity or bad faith under Fifth Circuit law. *See* Dkt. 589 at 10–11 (citing *State of Mississippi*, 921 F.2d at 609; *Christiansburg*, 434 U.S. at 421–22). Instead, the inquiry must focus on the claims *against the Mesaros Defendants*, which their Motion does not challenge. *See* Dkt. 589 at 10–11.

## 2. Plaintiffs' Proposed Jury Instructions Were Proper

Next, the Mesaros Defendants appear to argue that Plaintiffs' claims were frivolous, or in bad faith, because Plaintiffs' proposed jury instructions omitted a specific intent requirement for their § 1985(3) conspiracy claim. It is not clear how this argument is relevant to bad faith or the alleged frivolity of Plaintiffs' claims. But in any event, Plaintiffs *did* propose jury instructions that required the jury to find that each individual Defendant joined the conspiracy and agreed to accomplish an unlawful purpose proscribed by §1985(3): "Because there are multiple Defendants in this case, you will also need to consider which, if any, of the Defendants was a member of the alleged conspiracy. A 'conspiracy' is an agreement between two or more persons to join together to accomplish some unlawful purpose." Dkt. 424-7 at 27; *see also id.* at 31 (defining the prohibited objects of Plaintiffs' alleged conspiracy with respect to § 1985(3)).

The Plaintiffs' proposed instructions further reiterated the individual nature of the inquiry: "[i]n order to prevail on their claim against any individual Defendant, Plaintiffs must show that that Defendant joined the conspiracy." *Id.* at 29. Plaintiffs' instructions also stated that "[i]f any Defendant understood the unlawful nature of a plan or scheme and knowingly and intentionally joined in that plan or scheme on one occasion, that is sufficient to find that that [sic] the Defendant joined a conspiracy . . . ." *Id.* at 29–30. Thus, Plaintiffs' proposed instructions already required that each Defendant had the intent to accomplish one of the two prohibited objectives of a conspiracy under Plaintiffs' § 1985(3) claim.

### B. The Mesaros Defendants' Arguments for Fees Raised Only in a Footnote Are Waived

The Mesaros Defendants—in a footnote—"adopt the grounds for fees argued in the Cehs' motion for fees." Dkt. 604 at 8 n.3. But in the Fifth Circuit, "[a]rguments that are insufficiently addressed in the body of the brief"—as here—"are waived." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 n.7 (5th Cir. 2003); *see also, e.g.*, *OOGC Am., L.L.C. v. Chesapeake Expl., L.L.C.*, 975 F.3d 449, 456 n.10 (5th Cir. 2020) ("[A]rguments raised in a perfunctory manner, such as in a footnote, are waived." (quoting *Bridas*, 345 F.3d at 356 n.7)). While preserving Plaintiffs' arguments that the Mesaros Defendants waived these arguments, Plaintiffs incorporate by reference their responses to the arguments raised in the Ceh Defendants' motion, Dkt. 603.

### C. Even if the Court Were Otherwise Inclined to Award Fees Under § 1988, It Should Exercise Its Discretion to Deny Fees

An award of fees under § 1988 is discretionary. *See* 42 U.S.C. § 1988(b). Here, the Court should exercise its discretion to deny the Mesaros Defendants fees for the following reasons. *First*, Defendant Joeylynn Mesaros was found to have intentionally destroyed relevant evidence, including by instructing Defendant Robert Mesaros to destroy evidence, which he then did. *See* Dkt. 389 at 2–3.[8] *Second*, there is no evidence that Plaintiffs acted in bad faith at any point in this case. *See Shepard v. Dep't of Veterans Affs.*, 2022 WL 21295042, at *1 (W.D. Mich. Feb. 11, 2022) ("There is no evidence of bad faith or ill-intent by Plaintiff. Absent bad faith, the Court

---

[8] "The Court will instruct the jury that Joeylynn Mesaros intentionally deleted social media content relevant to Plaintiffs' claims in this litigation and instructed her husband Robert Mesaros to do the same, and that the jury may presume that Joeylynn Mesaros deleted this social media content because it was unfavorable to her case and would have been used by Plaintiffs to establish her liability." Dkt. 389 at 2; *see also id.* (adopting Magistrate Judge Lane's factual finding, Dkt. 377 at 23, that "[Defendant Joeylynn] Mesaros deleted her social media content, and instructed her husband [Defendant Robert Mesaros] to do the same, in bad faith and with the intent to deprive the Plaintiffs of this information").

finds, in its discretion, that awarding attorney fees under § 1988 is inappropriate."); Dkt. 589 at 10 ("[T]here has been no evidence to suggest that Plaintiffs brought this case in bad faith."). Finally, awarding fees here, where Plaintiffs' case succeeded at every juncture *except* for the final, mixed jury verdict, may discourage similarly situated litigants from seeking to enforce their rights under civil rights statutes and counsel from representing clients with civil rights claims. *See Benjamin v. City of Atl. City*, 2014 WL 2916497, at *3 (D.N.J. June 26, 2014) (citing *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 103 F. App'x 695, 698 (3d Cir. 2004)).

## II.     The Mesaros Defendants Are Not Entitled to Fees Under the Court's Inherent Authority

The Mesaros Defendants also suggest that the Court should award them fees under the Court's inherent authority. Dkt. 604 at 3. However, the Mesaros Defendants do not separately argue for this relief apart from their argument for fees under § 1988. This Court already stated that "there has been no evidence to suggest that Plaintiffs brought this case in bad faith." Dkt. 589 at 10. Since the Court made that observation, the Mesaros Defendants have put forth no additional, relevant evidence of Plaintiffs' alleged bad faith. For those reasons, and for the reasons Plaintiffs outlined in response to the Mesaros Defendants' arguments under § 1988 *supra* Section I, this Court should not award the Mesaros Defendants fees under its inherent authority.

## III.    The Court Should Not Award Fees as an Equitable Measure

The Mesaros Defendants briefly argue that "an award of fees will also serve as an equitable measure to at least assist the Mesaroses with the financial stress this case has caused." Dkt. 604 at 8. The Mesaros Defendants provide no legal support for the Court's ability to award fees as an equitable measure. The Mesaros Defendants attach as Exhibit C certain messages the Mesaros Defendants have received—nearly all of which appear to be in direct response to content that the Mesaros Defendants posted on social media. The comments are beyond reprehensible, but

Plaintiffs have no control over unaffiliated Internet users, had no involvement whatsoever in any of those comments, and have suffered similar comments from unaffiliated Internet users themselves.

Further, the equities are not in the Mesaros Defendants' favor. Joeylynn Mesaros *herself* endorsed harassing and threatening comments aimed at the Plaintiffs. Joeylynn Mesaros appeared on a podcast and agreed with the host's inflammatory and absurd suggestion that Plaintiff Timothy Holloway could have been "smuggling humans" as a bus driver:

> **Host**: I got a question, I got a question. Do we have private investigators who can dig, have – has anyone dug [Plaintiff Holloway] open yet?
> **J. Mesaros**: We have had these conversations with our attorney. It's definitely. Should we get to the point of discovery going to trial and going through discovery, we would certainly want to know.
> **Host**: Well I can tell you it's, it's, it's one of two things. The only reason anyone gets paid that much money to drive something is if they are smuggling humans . . .
> **J. Mesaros**: Yup!
> **Host**: . . . while, or if they're a trained professional driver that does special things like what happened maybe. I don't know maybe we should dig into that guy and go ahead . . .
> **J. Mesaros**: I agree.
> **Host**: . . . and just open him up for the public and see what kind of nasty, dirty little secrets he has to be the head of their lawsuit like that . . .[9]

Later in the same podcast appearance, Defendant Joeylynn Mesaros laughed in response to the host's threat that "nobody from the Biden-Harris camp go tubing down in San Marcos" because "they may not swim back out, you know what I'm saying?"[10]

---

[9] David Sumrall, *Discussion Island Episode 52 Joeylynn Mesaros 12/10/2022*, at 13:37–14:22 (Rumble, Jan. 11, 2022), https://rumble.com/vse7ks-discussion-island-episode-52-joeylynn-mesaros-12102022.html (Dkt. 245-141).
[10] *Id.* at 21:09–21:21.

**IV.    Even if the Court Were to Find that the Mesaros Defendants Were Entitled to Fees, Any Fee Award Should Be Significantly Reduced**

The Mesaros Defendants' fee request is excessive, unreasonable, and unsupported by the relevant case law. However, even if the Court were to find that the Mesaros Defendants are entitled to fees, any fee award should be significantly reduced as the amount requested is excessive, unsupported by sufficient documentation, and is not reflective of the Mesaros Defendants' degree of success in this litigation. *See No Barriers, Inc. v. Brinker Chili's Tex., Inc.*, 262 F.3d 496, 500 (5th Cir. 2001) (stating that "the court has the discretion to reduce the award to a reasonable amount" when a party "submits a fee application without proper documentation").

Courts follow a two-step process in calculating fee awards: first, the court must calculate the lodestar, and second, the court may exercise its discretion to increase or decrease the lodestar after considering the twelve *Johnson* factors. *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V.*, 23 F.4th 408, 415 (5th Cir. 2022). "[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citation modified). Fee awards are tailored to ensure the availability of competent counsel in civil rights litigation, but are "never intended to produce windfalls to attorneys." *Farrar*, 506 U.S. at 115 (citation modified).

In establishing the lodestar, the burden of proving reasonableness rests on the fee applicant, and it is not the burden of "the opposing party to prove . . . unreasonableness." *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990). When reviewing fee requests, courts disallow charges for excessive hours or unnecessary work, duplicative or redundant work or personnel, and vague or inadequately documented entries. *MGMTL, LLC v. Strategic Tech. Inst., Inc.*, 776 F. Supp. 3d 419, 488 (E.D. La. 2025). Excessive billing includes, among other things, time spent on

unnecessary work, and courts routinely deduct time spent on unsuccessful motions, discovery requests, and memoranda. *Id.*

Reduction is plainly warranted here because counsel for the Mesaros Defendants has failed to exercise the required "billing judgment" in documenting the time expended on this case. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). For example, a number of the billing entries relate to the Mesaros Defendants' unsuccessful, duplicative, and, at times, even frivolous motions practice throughout the case. This includes their motions for reconsideration (Dkt. 605-10 at 2, 26–29) and interlocutory appeal (*id.* at 2, 4, 26), their duplicative motion to dismiss (*id.* at 17, 19), their repeated requests for and briefing of mandamus (*id.* at 24–26, 29–30), their motion for a stay (*id.* at 26–29), their *Daubert* challenges to Plaintiffs' experts (*id.* at 33), and their response to Plaintiff Cervini's withdrawal (*id.* at 41),[11] as a few examples. Any deduction should also include the time billed for the Mesaros Defendants' counsel's letter to Plaintiffs, drafted early in this litigation, threatening sanctions for alleged factual mischaracterizations in Plaintiffs' Complaint. *See* Dkt. 605-10 at 7. Not only were the threatened sanctions never filed, the alleged "[s]anctionable misstatements of fact," *id.*, were supported by evidence borne out in the course of this litigation.[12]

Perhaps most incredibly, the Mesaros Defendants have also included fee entries for briefing and hearing preparation stemming from Plaintiffs' successful sanctions motion against Joeylynn Mesaros. *See, e.g.*, Dkt. 605-10 at 31–34, 36. This is in addition to all of the billing entries the Mesaros Defendants seek to recover fees for that are related to discovery, during which they

---

[11] The Mesaros Defendants originally opposed Mr. Cervini's dismissal, but they withdrew this opposition in their response brief. Dkt. 413, 434. Instead, they unsuccessfully opposed the sealing of portions of the withdrawal motion to protect Mr. Cervini from online harassment. Dkt. 434.

[12] This section contains a non-exhaustive list of inappropriate billing entries. As explained further *infra*, Plaintiffs reserve the right to perform a more detailed analysis and challenge additional entries, should the Court deem a fee award appropriate.

repeatedly attempted to mislead Plaintiffs' counsel by hiding and then downplaying their destruction of evidence. *See, e.g.*, *id.* at 1–31. These fees are not merely unnecessary—they are a request for this Court to reward the Mesaros Defendants for their intentional and wrongful destruction of material evidence. *See* Dkt. 377 at 13–23; 25–28. Such a request is outrageous, inappropriate, and should be denied. If anything, any fee award granted to the Mesaros Defendants should be reduced by the amount of *Plaintiffs'* fees related to the discovery of the spoliation and the motions practice for sanctions. *See* Dkts. 271 (requesting fees in connection with their motion), 377 (finding of sanctionable conduct by Magistrate Judge Lane), 389 (this Court's adoption of Judge Lane's findings of fact and conclusions of law).

Further, many of the Mesaros Defendants' invoice entries are blockbilled, which makes distinguishing legitimate work from unnecessary work difficult. To make matters worse, several entries contain unexplained redactions. *See id.* at 24, 29, 47.[13] Other entries are for administrative tasks rather than legal work. *See, e.g.*, *id.* at 10 (billing in part for time on technical issue while saving documents to Google Drive). There are also a number of entries relating to the Mesaros Defendants' counsel's contacts with the media, which is neither legal nor administrative work. *See, e.g.*, *id.* at 20 ("Draft press release; prepare links etc; finalize and send press release; email Washington Times reporter"), 36 ("Draft response to Plfs motion for ADR […] revise public statement regarding same."). The most inappropriate of the billing entries are those relating to the Mesaros Defendants' counsel's online harassment of former Plaintiff Eric Cervini (*id.* at 35).

Finally, any fee award should be significantly reduced to reflect the limited victory obtained by the Mesaros Defendants. Courts must consider the "significance of the overall relief

---

[13] The redacted entry on page 47 is also blockbilled, with no indication of how much time was spent on disclosed and undisclosed tasks. Dkt. 605-10 at 47. The other redacted entries may be blockbilled, but it is difficult to tell.

obtained" in relation to the "hours reasonably expended on the litigation" when assessing an attorneys' fee award. *Hensley*, 461 U.S. at 435. The Mesaros Defendants lost multiple motions to dismiss and motions for reconsideration. Dkts. 64, 100, 204, 258. Both of their petitions for the writ of mandamus were denied. Dkts. 209, 221. They were also unsuccessful at summary judgment. Dkt. 475. Two of their co-defendants and alleged co-conspirators settled and admitted wrongdoing prior to trial. *See* Dkts. 183, 184, 241-61, 241-63. All Defendants' motions for judgment as a matter of law during trial were denied. The jury imposed liability against one of the Mesaros Defendants' co-defendants and alleged co-conspirators. Dkt. 591. And finally, by Defendant Steve Ceh's own admission, the majority of the jury wanted to hold the Mesaros Defendants liable for at least $100,000.[14] This is hardly an unqualified vindication, let alone a watershed victory which corrects a widespread wrong. *Cf. Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974) (noting that successful litigation which "corrects across-the-board discrimination" may warrant a higher fee award.). On the contrary, Plaintiffs succeeded against the Mesaros Defendants at every stage of this litigation except trial, and even then, only lost by a minority of hold outs. And all of this was achieved in spite of the Mesaros Defendants' intentional destruction of evidence. Dkt. 377 at 18; Dkt. 389 at 2. The Mesaros Defendants may only recover attorneys' fees commensurate with their success, and this Court should reduce any award to reflect the marginal nature of the outcome.

For all of these reasons, Plaintiffs request a hearing on the amount of any fee award, if the Court were to find a fee award appropriate in this case. A hearing would enable the Court to

---

[14] *See supra* note 3.

determine whether the Mesaros Defendants' counsel's rates are reasonable and what work was duplicative, excessive, and unsupported by sufficient documentation.

## V.   The Mesaros Defendants Cannot Recover the Fees Paid to Plaintiffs' Experts

The Mesaros Defendants request reimbursement for the $9,649.38 that they paid to Plaintiffs' experts pursuant to Federal Rule of Civil Procedure 26(b)(4)(E)(i). However, "the Supreme Court ruled that a prevailing plaintiff cannot recover expert fees under a fee shifting statute unless the statute expressly provides for the recovery of expert fees." *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 333 (5th Cir. 1995) (citing *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83 (1991)). In *Casey*, the Supreme Court left no doubt on this issue, noting that "[t]he record of statutory usage demonstrates convincingly that attorney's fees and expert fees are regarded as separate elements of litigation cost" and that "[w]hile some fee-shifting provisions, like § 1988, refer only to 'attorney's fees,' . . . many others explicitly shift expert witness fees as well as attorney's fees." *Casey*, 499 U.S. at 88. In fact, just about one week before § 1988 was enacted, Congress passed a different statute that explicitly permitted a prevailing party to recover "the costs of suit and reasonable fees for attorneys and expert witnesses." *Id.* (quoting 15 U.S.C. §§ 2618(d), 2619(c)(2)). Thus, the Mesaros Defendants cannot recover the fees they paid to Plaintiffs' experts under § 1988.

## CONCLUSION

Plaintiffs established a prima facie case on all their claims; survived all Defendants' motions to dismiss, motions for summary judgment, and motions for judgment as a matter of law; and they presented legally sufficient evidence that could support a verdict in favor of the Plaintiffs on all of their claims. Under these circumstances, awarding attorneys' fees would undermine the purposes of § 1988 and reward the Mesaros Defendants for their own frivolous request. Because

Plaintiffs' case was meritorious, and the Mesaros Defendants are not a "prevailing party" entitled to fees, Plaintiffs respectfully request that this Court deny their Motion.

DATED: September 26, 2025

Respectfully submitted,

*/s/ Sarah Chen*

**TEXAS CIVIL RIGHTS PROJECT**
Christina M. Beeler (TX Bar No. 24096124)
Sarah Xiyi Chen (TX Bar No. 24144784)
Veronikah Rhea Warms (TX Bar No. 24132682) (*pro hac vice*)
Travis Fife (TX Bar No. 24126956)
Texas Civil Rights Project
P.O. Box 17757
Austin, TX 78760
Telephone: (512) 474-5073
Facsimile: (512) 474-0726
christinab@texascivilrightsproject.org
schen@texascivilrightsproject.org
veronikah@texascivilrightsproject.org
travis@texascivilrightsproject.org

**THE PROTECT DEMOCRACY PROJECT, INC.**
Orion Danjuma (NY Bar No. 4942249) (*pro hac vice*)
The Protect Democracy Project, Inc.
82 Nassau Street, #601
New York, NY 10038
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
orion.danjuma@protectdemocracy.org

Cameron O. Kistler (DC Bar No. 1008922) (*pro hac vice*)
Cerin Lindgrensavage (DC Bar No. 1741602) (*pro hac vice*)
JoAnna Suriani (DC Bar No. 1645212) (*pro hac vice*)
The Protect Democracy Project, Inc.
2020 Pennsylvania Ave. NW, Suite # 163

Washington, DC 20006
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
cameron.kistler@protectdemocracy.org
cerin.lindgrensavage@protectdemocracy.org
joanna.suriani@protectdemocracy.org

Benjamin L. Berwick (MA Bar No. 679207)
(*pro hac vice*)
The Protect Democracy Project, Inc.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
ben.berwick@protectdemocracy.org

Jared Fletcher Davidson (LA Bar No.
37093) (*pro hac vice*)
The Protect Democracy Project, Inc.
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
jared.davidson@protectdemocracy.org

**WILLKIE FARR & GALLAGHER LLP**
Michael Gottlieb (DC Bar No. 974960) (*pro hac vice*)
Robert Meyer (DC Bar No. 405632) (*pro hac vice*)
Samuel Hall (DC Bar No. 242110) (*pro hac vice*)
Jamielah Yancey (DC Bar No. 1619055)
(*pro hac vice*)
Rebecca Heath (DC Bar No. 1644402) (*pro hac vice*)
Amy R. Orlov (DC Bar No. 1780213) (*pro hac vice*)
Aaron E. Nathan (NY Bar No. 5478227)
(*pro hac vice*)
Noah Mussmon (DC Bar No. 90006660)
(*pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006-1238
Telephone: (202) 303-1000

- 20 -

- 21 -

Facsimile: (202) 303-2000
Email: mgottlieb@willkie.com
rmeyer@willkie.com
shall@willkie.com
jyancey@willkie.com
rheath@willkie.com
aorlov@willkie.com
anathan@willkie.com
nmussmon@willkie.com

***Attorneys for Plaintiffs***

- 22 -

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2025, a true and correct copy of the foregoing has been served on all counsel of record by the Electronic Case File System of the Western District of Texas in compliance with the Federal Rules of Civil Procedure.

DATED: September 26, 2025                              */s/ Sarah Chen*