**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| WENDY DAVIS, DAVID GINS, and TIMOTHY HOLLOWAY, <br><br> Plaintiffs, <br><br> v. <br><br> ELIAZAR CISNEROS, RANDI CEH, STEVE CEH, JOEYLYNN MESAROS, ROBERT MESAROS, and DOLORES PARK, <br><br> Defendants. | Civil Action No. 1:21-cv-00565-RP <br><br> Hon. Robert Pitman |

## PLAINTIFFS' OPPOSITION TO THE MESAROS DEFENDANTS' MOTION FOR COSTS

On August 29, 2025, Defendants Robert and Joeylynn Mesaros (the "Mesaros Defendants") filed their Bill of Costs, seeking an award of costs under Federal Rule of Civil Procedure 54(d). Dkt. 602. Pursuant to Local Rule CV-54(a)(2), Plaintiffs Wendy Davis, David Gins, and Timothy Holloway ("Plaintiffs") objected to the Mesaros Defendants' Bill of Costs via email on September 5, 2025, and conferred with the Mesaros Defendants on September 11, 2025, in an effort to resolve Plaintiffs' objections. On September 19, 2025, the Mesaros Defendants filed their Opposed Motion for Costs ("Motion"), partially modifying their requested costs in response to Plaintiffs' objections. Dkt. 617. However, the Mesaros Defendants' revised request does not fully address Plaintiffs' objections.

In turn, this Court should exercise its discretion to reject the Mesaros Defendants' request for costs in its *entirety* because a costs award is not warranted here. Plaintiffs litigated the case in good faith, the litigation was marred by significant discovery misconduct by the Mesaros Defendants, the case presented close and difficult legal issues, and it conferred a substantial benefit to the public. Even if this Court decides to award the Mesaros Defendants costs (it should not), it should reject all of the unrecoverable, incidental costs requested by the Mesaros Defendants in connection with the Fortz Legal ("Fortz") deposition invoices.

## ARGUMENT

**I.    This Court Should Exercise Its Discretion to Deny the Mesaros Defendants Costs**

"[R]ule 54(d) permits the district court to exercise its discretion and refuse to award costs to the prevailing party." *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 539 (5th Cir. 1990). The Fifth Circuit has recognized that a court may deny a defendant's request for costs under Rule 54(d) if the court finds that the plaintiff prosecuted the action in good faith, along with the existence of one or more additional factors: "misconduct by the prevailing party;" "close and difficult legal issues presented;" and a "substantial benefit conferred to the public." *Pacheco v. Mineta*, 448 F.3d 783, 793–94 (5th Cir. 2006); *see Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 753 (5th Cir. 2018) (agreeing with district court's analysis under the *Pacheco* factors);[1] *see also Wade v. Peterson*, 416 F. App'x 354, 356 (5th Cir. 2011) ("[C]ourts may, but are not required to[,] excuse a losing party from paying costs only if he brought suit in good faith and can demonstrate at least one of the . . . factors set forth in *Pacheco* . . . ."); *I.F. v. Lewisville Indep. Sch. Dist.*, No. 4-14-cv-359,

---

[1] As acknowledged in *Chrysler* and discussed *infra*, the Fifth Circuit has ruled since *Pacheco* was decided that the *Pacheco* factors related to the parties' relative or absolute wealth are "impermissible as a matter of law" to consider. 909 F.3d at 753 (quoting *Moore v. CITGO Refining & Chemicals Company, L.P.*, 735 F.3d 309, 319–20 (5th Cir. 2013)).

2017 WL 11630564, at *2–3 (E.D. Tex. May 4, 2017) (citing *Pacheco* to deny costs to prevailing defendant where plaintiff litigated in good faith, case presented close and difficult legal issues, and substantial benefit was conferred on the public).

## A.     The Plaintiffs Acted in Good Faith

Plaintiffs litigated this action in good faith. Indeed, this Court already stated that "there has been no evidence to suggest that Plaintiffs brought this case in bad faith," Dkt. 589 at 10, and that the Mesaros Defendants' theory for how Plaintiffs may have acted in bad faith is "incoherent." *Id.* at 11.

Plaintiffs' good faith in litigating this case is further evidenced by this Court's rulings in Plaintiffs' favor on *all* dispositive motions brought by the Defendants in this case, including all motions to dismiss, *see* Dkts. 64, 204; all motions for summary judgment, *see* Dkt. 475; and all motions for judgment as a matter of law that the Defendants brought during trial. *See Lewisville Indep. Sch. Dist.*, 2017 WL 11630564, at *2 (finding good faith where plaintiff's claim survived all dispositive motions and proceeded to trial). In response to the Mesaros Defendants' motions for judgment as a matter of law, the Court affirmed that Plaintiffs presented legally sufficient evidence that could support a verdict in favor of the Plaintiffs on all of their claims. In fact, at the conclusion of the full, contentious trial with extensive supporting evidence for Plaintiffs' claims, the jury *did* return a verdict against Defendant Eliazar Cisneros on Plaintiffs' 42 U.S.C. § 1985(3) claim.

Although the jury did not find in Plaintiffs' favor with respect to the Mesaros Defendants, that "simply means that the jury unanimously concluded that the weight of the evidence was not in [Plaintiffs'] favor," *Stover v. Hattiesburg Public School District*, 549 F.3d 985, 998 (5th Cir. 2008), and does not vitiate Plaintiffs' good faith. Additionally, Defendant Steve Ceh

communicated with a juror following trial and has made public statements suggesting that the jury's verdict was closely contested and that a majority of the jury intended to find the Mesaros Defendants liable.[2]

## B.    The *Pacheco* Factors Each Weigh in Plaintiffs' Favor

*First,* the Mesaros Defendants engaged in significant bad faith discovery misconduct that permeated the entire case. The Fifth Circuit has stated that "[m]isconduct, bad faith, and abuse of the trial process are all grounds for refusing to award costs to the prevailing parties." *Sheets*, 891 F.2d at 539–40 (citing with approval *Thompson v. Sun Oil Co.*, 523 F.2d 647, 650 & n.4 (8th Cir. 1975) (taxing appellate costs against prevailing party because of their lack of good faith and evasiveness during the discovery process)); *see Robison v. Cont'l Cas. Co.*, No. 1:17-CV-508, 2022 WL 17882174, at *3 (E.D. Tex. July 13, 2022) ("Examples of misconduct that could warrant a denial of costs include refusing to produce documents during discovery, violating an order to compel, and misleading the plaintiff.").

In their Motion, the Mesaros Defendants claim that their behavior does not rise to the level of the "repeated and abusive hardball tactics" described in *Sheets*. Dkt. 617 at 2 (quoting *Sheets*, 891 F.2d at 539). But in fact, the Mesaros Defendants' conduct was worse.

In *Sheets*, "the defendants unjustifiably refused to produce documents in response to discovery, violating an order to compel," "misled the plaintiff about the nature of various documents," and made repeated false statements to the plaintiff, *Sheets*, 891 F.2d at 539; here,

---

[2] In a public video interview released after trial, Defendant Steve Ceh explained that "five [jurors] wanted at least $100,000 from all of us [Defendants]," but other jurors "got [most of the Defendants] cleared from a finding of liability." *See* Dkt. 572 at 10. In another more recent video, Defendant Steve Ceh similarly explained: "I had coffee with one of the jurors. And he told me that as soon as they walked in for deliberation, they started at $100,000." Citizens Defending Freedom*, Why Pastors Must Speak Boldly: Pastor Steve Ceh on Defending Faith & Freedom in the Public Square*, at 08:50 (Vimeo, July 24, 2025), https://vimeo.com/1104268135.

Defendant Joeylynn Mesaros and Defendant Robert Mesaros *deleted* relevant evidence—permanently placing it beyond the power of this Court to compel. Dkts. 377 at 18, 389 at 2. Specifically, as stated in Magistrate Judge Lane's Report and Recommendation,[3] Defendant Joeylynn "Mesaros texted her husband '[w]e probably need to delete our social media posts ASAP about chasing the bus.' Two minutes later, Robert Mesaros responded 'I agree.' He also texted 'I doubt they'll get anywhere with the lawsuits, but it's a good idea either way.'" Dkt. 377 at 17 (citation modified) (quoting Dkt. 320-5 at 3). Defendant Joeylynn Mesaros also "instructed Robert Mesaros to 'make [his] profile private and update all previous posts to private' and 'make sure Randi, Isaac, and any of them are deleted'" and admitted "that she deleted social media data 'regarding the events of 10/30[.]'" *Id.* at 17–18 (alterations in original) (first quoting Dkt. 320-5 at 3; then quoting Dkt. 271 at 3).

And that is just Defendant Joeylynn Mesaros's spoliation with respect to her social media. Defendant Joeylynn Mesaros also "permanently lost all text messages sent on October 30, 2020 and the weeks immediately preceding and following" that date—including those with Defendant Robert Mesaros and nonparty Shana Evans.[4] Dkt. 377 at 22. Defendant Joeylynn Mesaros claimed to have lost the messages when she dropped her phone in September 2021 (months after Plaintiffs filed their lawsuit), because "pieces of glass left in the phone caused the phone to automatically push its passcode buttons before becoming permanently disabled." *Id.* at 20. Magistrate Judge Lane found that her "account of the circumstances of the damage to her phone [was] implausible" and did "not credit that this is the manner in which her phone became permanently damaged." *Id.* at 21. Ultimately, Magistrate Judge Lane concluded that Defendant Joeylynn "Mesaros deleted her

---

[3] This Court adopted Magistrate Judge Lane's Report and Recommendation in full. *See* Dkt. 389.
[4] Plaintiffs were unable to obtain these text messages from Ms. Evans "because Evans lost access to the contents of her phone when it was dropped in the ocean." Dkt. 377 at 22.

social media content, and instructed her husband to do the same, *in bad faith* and with the intent to deprive the Plaintiffs of this information" and that she "intentionally failed to take reasonable steps to preserve her phone's data *in bad faith*." *Id.* at 23 (emphasis added).

Defendant Robert Mesaros also engaged in significant discovery misconduct. In addition to "delet[ing] relevant social media content" after finding out about Plaintiffs' lawsuit, *id.* at 18, Defendant Robert Mesaros *continued* to "'comb[] through old posts' to identify posts that might show the Mesaroses' participation in the October 30, 2020 Trump Train and identify their truck" more than a week after Plaintiffs filed their lawsuit. *Id.* (quoting Dkt. 320-6). Defendant Joeylynn Mesaros was doing the same at that time. Dkt. 377 at 18. Magistrate Judge Lane determined that "[t]he deletion of inculpatory comments was likely part of" Defendants Robert Mesaros and Joeylynn Mesaros's "purge of their social media." *Id.* at 19.

During this litigation, Defendant Robert Mesaros also undertook to selectively save certain pictures and videos from Defendant Joeylynn Mesaros's phone, but he chose not preserve any text messages from her phone before it was destroyed. *See id.* at 20. This misconduct, and the subsequent permanent loss of those text messages, was made worse by the fact that Defendant Robert Mesaros himself "was unable to produce any text messages between the Mesaroses from before November 19, 2020." *Id.* at 22. Thus, neither Defendant Joeylynn Mesaros nor Robert Mesaros could provide any text messages to Plaintiffs from the weeks leading up to the October 30, 2020 incident, that day, or the weeks immediately following it.

Litigating the Mesaros Defendants' significant spoliation and Plaintiffs' entitlement to sanctions was not costless. The fees Plaintiffs incurred in identifying the Mesaros Defendants' spoliation, filing a motion for sanctions, Dkt. 271, filing a reply brief, Dkt. 291, and appearing at a day-long hearing before Magistrate Judge Lane dwarf the Mesaros Defendants' requested costs.

Because the Mesaros Defendants' misconduct caused significant, unnecessary expenditures by Plaintiffs, this Court has even more reason to use its discretion to deny the Mesaros Defendants costs under *Pacheco* on account of that same misconduct.

The Mesaros Defendants argue that they should not be penalized again because this Court already penalized them by reading a spoliation instruction to the jury, which the jury took into account when finding them not liable. There is no justification for the proposition that a sanction under Federal Rule of Civil Procedure 37(e) precludes a court from later denying the sanctioned party costs under Rule 54(d). There is no election of remedies contemplated by Rule 37(e), and such a rule would perversely make spoliating parties who acted in bad faith better off than those who did not in this posture. Under the Mesaros Defendants' rule, if a party spoliated evidence, but did not do so in bad faith and thus could not be sanctioned under Rule 37(e)(2),[5] their misconduct *could* be used as a factor against them in asking the court to deny costs. But spoliating defendants who did act in bad faith and were sanctioned under Rule 37(e)(2) *could not* have their misconduct be used as a factor in denying them costs. This makes no sense and would reward parties for acting in bad faith.

At its core, the Mesaros Defendants' argument is simply that because the Mesaros Defendants won at trial, in spite of the spoliation instructions, the jury must not have believed that anything important was deleted. The Mesaros Defendants are merely speculating, as one certainly need not lead to the other. The Mesaros Defendants also ignore that after a full hearing, complete with witnesses and exhibits, the Court found *as a matter of fact* that Defendant Joeylynn "Mesaros

---

[5] *See UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, No. A-17-CA-365-LY, 2019 WL 4738915, at *4 (W.D. Tex. Sept. 27, 2019) ("The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.'" (quoting *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005)).

deleted her social media content, and instructed her husband to do the same, *in bad faith* and with the intent to deprive the Plaintiffs of this information. [And] Mesaros also intentionally failed to take reasonable steps to preserve her phone's data *in bad faith*." *Id.* at 23 (emphasis added). That, in itself, is sufficient for the Court to recognize again here that the Mesaros Defendants have acted in bad faith.

*Third*, the *Pacheco* factor asking whether Plaintiffs' case against the Mesaros Defendants presented difficult legal issues also weighs in Plaintiffs' favor. Plaintiffs' claims were based in a complex area of law, and despite the legal and factual arguments raised by the Mesaros Defendants, Plaintiffs prevailed against them at every juncture before the jury returned its verdict. And the verdict was evidently closely contested, not just based on the public comments made by Defendant Steve Ceh discussed *supra*, but because the jury spent many hours deliberating before returning their verdict. *See Lewisville Indep. Sch. Dist.*, 2017 WL 11630564, at *3 ("[T]he jury spent several hours deliberating, further show[ing] the closeness of the claims."). Additionally, it was likely that the jury was deliberating regarding Defendant Joeylynn Mesaros's liability into the afternoon on the second day of deliberations because, at approximately 12:26 PM on September 23, 2024, the jury asked the Court for additional guidance regarding the spoliation instructions in the jury charge pertaining to Defendant Eliazar Cisneros *and* Defendant Joeylynn Mesaros. Dkt. 554.

*Finally*, Plaintiffs' case conferred a substantial benefit to the public. Even in cases where a plaintiff prevails against *no* defendant, a court may still deny costs on the ground that the lawsuit conferred a substantial benefit to the public. *See Lewisville Indep. Sch. Dist.*, 2017 WL 11630564, at *3 (finding substantial benefit conferred in Title IX discrimination case where plaintiff prevailed on no claims). Here, Plaintiffs' allegations of the existence of a conspiracy under § 1985(3) were

vindicated by the jury's verdict against Defendant Eliazar Cisneros. Plaintiffs' case conferred a benefit on the public by bringing significant attention to the unlawfulness of private conspiracies under the support-or-advocacy clause of § 1985(3) and by addressing acts of dangerous political intimidation on a public highway.

Given the foregoing analysis under *Pacheco*, this Court should exercise its discretion to deny the Mesaros Defendants' requested costs in their entirety. However, if the Court is inclined to award the Mesaros Defendants some amount of costs, it should exercise its discretion to apply a significant percentage reduction to that cost award. *See Jurach v. Safety Vision, LLC*, No. CIV.A. H-14-044, 2015 WL 893178, at *4 (S.D. Tex. Mar. 1, 2015) (reducing prevailing party's cost award by 50 percent).

## II.    The Mesaros Defendants' Other Arguments for Why They Should Be Awarded Costs are Irrelevant to the Costs Analysis

The Mesaros Defendants assert that they should be awarded costs because they "secur[ed] certain modifications to the jury instructions" such as "the [C]ourt's insertion of strong instructions on specific intent required . . . and referencing the First Amendment right to drive onto the roadway in the vicinity of the Biden campaign bus." Dkt. 617 at 4. The Mesaros Defendants do not tether this argument to any aspect of the costs analysis. Moreover, Plaintiffs *did* propose jury instructions that required the jury to find that each individual Defendant joined the conspiracy and agreed to accomplish an unlawful purpose proscribed by §1985(3), requesting an instruction that read, "[b]ecause there are multiple Defendants in this case, you will also need to consider which, if any, of the Defendants was a member of the alleged conspiracy. A 'conspiracy' is an agreement between two or more persons to join together to accomplish some unlawful purpose." Dkt. 424-7

at 27; *see also id.* at 31 (defining the prohibited objects of Plaintiffs' alleged conspiracy with respect to § 1985(3)).[6]

The Mesaros Defendants then argue that "their meager financial resources compared to Plaintiffs" supports an award of costs here. The Mesaros Defendants provide no specific support for their factual assertion, and it is irrelevant to whether costs should be awarded under Rule 54(d).[7] In fact, the Fifth Circuit has held that it "is impermissible as a matter of law" to take into account a party's relative or absolute wealth in deciding whether it should be awarded costs. *See Moore v. CITGO Refining & Chemicals Co., L.P.*, 735 F.3d 309, 319–20 (5th Cir. 2013) ("[R]educing or eliminating a prevailing party's cost award based on its wealth—either relative or absolute—is impermissible as a matter of law."). The Fifth Circuit did so, in part, because such a comparison of resources would "undermine the foundation of the legal system that justice is administered to all equally, regardless of wealth or status." *Id.* (quoting *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 448 (4th Cir. 1999)). Thus, this Court should also exclude any consideration of the parties' resources in deciding whether to deny costs here.

## III.    The Mesaros Defendants May Not Recover Costs Incidental to Depositions

Although the Mesaros Defendants rightly adjusted their requested costs to account for unrecoverable incidental costs in the Veritext Legal Solutions ("Veritext") deposition invoices,

---

[6] The Plaintiffs' proposed instructions further reiterated the individual nature of the inquiry: "[i]n order to prevail on their claim against any individual Defendant, Plaintiffs must show that that Defendant joined the conspiracy." Dkt. 424-7 at 29. Plaintiffs' instructions also stated that "[i]f any Defendant understood the unlawful nature of a plan or scheme and knowingly and intentionally joined in that plan or scheme on one occasion, that is sufficient to find that that [sic] the Defendant joined a conspiracy . . . ." *Id.* at 29–30.

[7] *Pacheco* does list "the losing party's limited financial resources" and "the prevailing party's enormous financial resources" as factors a court may consider in *denying* a costs award to a prevailing party, 448 F.3d. at 794, but the Mesaros Defendants are *requesting* costs, and they do not tie this argument to any legal framework or explain how it entitles them to an award.

Dkt. 617 at 6, they sidestep Plaintiffs' objections to the same types of unrecoverable costs in the Fortz invoices. *Id.* ("The Plaintiffs' objection does not seem to pertain to any of the Fortz invoices, which amount to $8,619.40."). Like they did with the Veritext invoices, the Mesaros Defendants should have modified their request for costs in the Fortz invoices to "only request the line charge for the transcript itself." Dkt. 617 at 6.

Each Fortz invoice contains vague, incidental costs: "Exhibit," Dkt. 602 at 5 ($6.25), 6 ($29.50), 7 ($233.10), 8 ($31.05), 9 ($5.50), and 10 ($16) (for a total of $321.40); "Electronic only package – COPY," *id.* at 5 ($25), 6 ($25), 7 ($25), 8 ($25), and 9 ($50) (for a total of $150); "Dr. Kathleen Blee AEO Excerpt," *id.* at 9 ($25); and "Rough Draft," *id.* at 7 ($502), 8 ($466), and 9 ($536) (for a total of $1,504). Additionally, the John Polizzi invoice contains the vague and/or unrecoverable expenses, "Hourly" ($165) and "Electronic only package – ORIGINAL" ($25). *Id.* at 10. In total, these charges amount to $2,190.40.

As an initial matter, none of these costs appear in 28 U.S.C. § 1920, and they are thus not recoverable. But in addition, "[t]he party seeking costs bears the burden of supporting its request with evidence documenting the costs incurred and proof, when applicable, that a certain item was necessarily obtained for use in the case." *Clark v. Williamson Cnty.*, No. A-10-CV-869-LY, 2013 WL 5556024, at *1 (W.D. Tex. Oct. 7, 2013). Plaintiffs cannot reasonably determine what the charges for "Exhibit," "Electronic only package – COPY," "Electronic only package – ORIGINAL," and "Dr. Kathleen Blee AEO Excerpt" entail, and the Mesaros Defendants have not carried their burden in explaining them. Thus, those costs should be denied on that ground alone. That said, Plaintiffs' best guess as to the meaning of those four line items is that they are charges for copies or for electronic fees, both of which are not recoverable. *See Sois v. Crescent Drilling & Prod., Inc.*, No. 19-CV-01194-FB, 2023 WL 8707421, at *6 (W.D. Tex. Oct. 19, 2023) (stating

that improper incidental costs include "charges for extra copies, color copies, tabs, delivery fees, electronic fees, technician fees, Zoom set up fees, court reporter fees, and fees to read and sign"), *report and recommendation adopted sub nom. Solis v. Crescent Drilling & Prod., Inc.*, 2023 WL 8704782 (W.D. Tex. Dec. 15, 2023); *see also Stoffels v. SBC Commc'ns, Inc.*, No. SA-05-CV-0233-XR, 2012 WL 2122191, at *2 (W.D. Tex. June 11, 2012) (disallowing costs for "copy costs . . . merely added for the convenience of the attorney").

Finally, the charges for the "Rough Draft" transcripts are not recoverable under § 1920. "Nothing in Section 1920 authorizes such fees" for "rough drafts." *Parrish v. Premier Directional Drilling, L.P.*, No. 5-16-CV-00417-DAE, 2019 WL 13080390, at *3 (W.D. Tex. Oct. 3, 2019), *report and recommendation adopted*, No. 5-16-CV-417-DAE, 2019 WL 13080579 (W.D. Tex. Oct. 29, 2019). To the extent the Polizzi deposition charge for "Hourly" refers to the court reporter's fee, it is also not recoverable under § 1920. *See Crescent Drilling*, 2023 WL 8707421, at *6.

Thus, even if this Court is otherwise inclined to award the Mesaros Defendants costs, it should deny these $2,190.40 in costs because they are not recoverable under § 1920.

## CONCLUSION

For the foregoing reasons, this Court should exercise its discretion and deny the Mesaros Defendants' request for costs in its entirety. However, if the Court does decide to award the Mesaros Defendants costs, it should subtract $2,190.40 in unrecoverable expenses and then further reduce the costs by an additional percentage to account for the *Pacheco* factors.

DATED:  October 3, 2025                          Respectfully submitted,

                                                 */s/ JoAnna Suriani*

**TEXAS CIVIL RIGHTS PROJECT**
Sarah Xiyi Chen (TX Bar No. 24144784)
Veronikah Rhea Warms (TX Bar No. 24132682) (*pro hac vice*)
Travis Fife (TX Bar No. 24126956)
Texas Civil Rights Project
1405 Montopolis Drive
Austin, TX 78741
Telephone: (512) 474-5073
Facsimile: (512) 474-0726
schen@texascivilrightsproject.org
veronikah@texascivilrightsproject.org
travis@texascivilrightsproject.org

**THE PROTECT DEMOCRACY PROJECT, INC.**
Orion Danjuma (NY Bar No. 4942249) (*pro hac vice*)
The Protect Democracy Project, Inc.
82 Nassau Street, #601
New York, NY 10038
Telephone: (202) 579-4582
Facsimile: (202) 769-3176
orion.danjuma@protectdemocracy.org

Cerin Lindgrensavage (DC Bar No. 1741602) (*pro hac vice*)
JoAnna Suriani (DC Bar No. 1645212) (*pro hac vice*)
The Protect Democracy Project, Inc.
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
Facsimile: (202) 769-3176
cerin.lindgrensavage@protectdemocracy.org
joanna.suriani@protectdemocracy.org

Benjamin L. Berwick (MA Bar No. 679207) (*pro hac vice*)
The Protect Democracy Project, Inc.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (202) 769-3176
ben.berwick@protectdemocracy.org

Jared Fletcher Davidson (LA Bar No. 37093) (*pro hac vice*)
The Protect Democracy Project, Inc.
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Telephone: (202) 579-4582
Facsimile: (202) 769-3176
jared.davidson@protectdemocracy.org

**WILLKIE FARR & GALLAGHER LLP**
Michael Gottlieb (DC Bar No. 974960) (*pro hac vice*)
Robert Meyer (DC Bar No. 405632) (*pro hac vice*)
Samuel Hall (DC Bar No. 242110) (*pro hac vice*)
Jamielah Yancey (DC Bar No. 1619055) (*pro hac vice*)
Rebecca Heath (DC Bar No. 1644402) (*pro hac vice*)
Amy R. Orlov (DC Bar No. 1780213) (*pro hac vice*)
Noah Mussmon (DC Bar No. 90006660) (*pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006-1238
Telephone: (202) 303-1000
Facsimile: (202) 303-2000
Email: mgottlieb@willkie.com
rmeyer@willkie.com
shall@willkie.com
jyancey@willkie.com
rheath@willkie.com
aorlov@willkie.com
nmussmon@willkie.com

Aaron E. Nathan (NY Bar No. 5478227) (*pro hac vice*)
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: anathan@willkie.com

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, a true and correct copy of the foregoing has been served on all counsel of record by the Electronic Case File System of the Western District of Texas in compliance with the Federal Rules of Civil Procedure.

DATED: October 3, 2025                    */s/ JoAnna Suriani*