IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WENDY DAVIS, DAVID GINS, and TIMOTHY HOLLOWAY, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:21-CV-565-RP |
| ELIAZAR CISNEROS, RANDI CEH, STEVE CEH, JOEYLYNN MESAROS, ROBERT MESAROS, and DOLORES PARK, | § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is the Ceh Defendants' Motion for Attorney's Fees and Costs Pursuant to 42 U.S.C. § 1988, (Dkt. 603),[1] the Mesaros Defendants' Opposed Motion for Attorneys' Fees, (Dkt. 604), the Mesaros Defendants' Opposed Motion for Costs, (Dkt. 617), and Plaintiffs' Opposed Renewed Motion for Order to Show Cause Why Defendant Cisneros Should Not Be Held in Contempt of Court, (Dkt. 643). Having reviewed the motions, the record, and the applicable law, the Court issues the following order.

## I. BACKGROUND

This case arises out of an incident that occurred during the 2020 U.S. presidential election campaign period (hereinafter, the "Incident").[2] Plaintiffs Davis, Gins, and Holloway were, respectively, a surrogate, staffer, and contractor for the Biden-Harris Presidential Campaign. (Order, Dkt. 475, at 2). Plaintiffs alleged that while they were campaigning across central Texas in a Biden-

---

[1] Based on the content of the Ceh Defendants' motion and their Proposed Order, (Dkt. 603-6), they are seeking only attorney's fees through this motion, rather than attorney's fees and costs.

[2] The facts of this case are more fully explained in the Court's order on the parties' motions for summary judgment. (*See* Dkt. 475).

Harris campaign bus (the "Bus") on October 30, 2020, they were chased, surrounded, harassed, and assaulted by a caravan of cars and trucks. Plaintiffs alleged that Defendants worked together, and with other non-parties, to swarm the Bus as it drove on Interstate 35 ("I-35") between San Antonio and Austin, Texas, preventing Plaintiffs from exercising their rights to support and advocate for their candidates of choice and injuring them in the process. Plaintiffs alleged that for at least ninety minutes, the convoy of cars—otherwise known as the "Trump Train"—forced the Bus to slow down to a crawl on the highway, that vehicles came within inches of the Bus, boxing it in, and that one vehicle—driven by Defendant Cisneros—slammed into a Biden campaign staffer's vehicle that was following the Bus. Plaintiffs argued that these acts were intentionally organized to threaten, intimidate, and injure Plaintiffs on account of their support and advocacy for the Biden-Harris campaign. Defendants admitted that they participated in the "Trump Train" Incident on October 30, 2020, but denied that the "Trump Train" was intended to cause intimidation or threatening behavior. Defendants instead argued that they were engaging in a peaceful protest in support of their chosen candidate for President, Donald Trump. (*Id.* at 2–5).

Based on these allegations, Plaintiffs initiated this lawsuit on June 24, 2021, asserting three claims against Defendants Eliazar Cisneros, the Mesaros Defendants, Dolores Park, and unnamed John and Jane Doe defendants. (Dkt. 1). First, Plaintiffs alleged that Defendants violated the Support or Advocacy Clause of the Ku Klux Klan Act, 42 U.S.C. § 1985(3), which creates liability for those who engage in a conspiracy "to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner" in favor of a presidential or congressional candidate for federal office. Plaintiffs also asserted two claims under Texas state tort law: civil conspiracy and civil assault. (*Id.*).

Discovery commenced on December 21, 2021, and closed on December 12, 2023. (*See* Dkt. 254). During discovery, the Mesaros Defendants served 108 requests for production of documents

and took seven depositions. (Mot., Dkt. 572, at 3). Plaintiffs—and various Defendants—sought discovery into the identity of the John and Jane Doe co-conspirators described in Plaintiffs' initial complaint through requests for production, interrogatories, and deposition questioning. (*Id.*; *see also* Dkt. 580-1, at 3–5). Plaintiffs also served Rule 45 subpoenas on at least twenty non-parties for production of documents and communications, in part, to identify the John and Jane Doe drivers as well as any other individuals that may have been involved in the Incident. (Mot., Dkt. 572, at 3–4).

On January 18, 2023, Plaintiffs filed their Amended Complaint, which added four more defendants: Randi Ceh, Steve Ceh, Hannah Ceh, and Kyle Kruger. (Dkt. 151). The amended complaint also dropped the reference to the John and Jane Doe defendants. (*Id.*). Defendants Hannah Ceh and Kyle Kruger later settled with Plaintiffs and, in April 2023, were dismissed from the case. (Dkt. 186).

On March 22, 2024, the Court granted Plaintiffs' motion for leave to amend their disclosures to add fact witnesses John Polizzi ("Polizzi"), Yaniv Schiff, and Todd Price, and briefly reopened discovery only for the limited purpose of allowing the parties to seek discovery from these witnesses. (*See* Dkt. 378). During this limited discovery period, the Mesaros Defendants subpoenaed Gryphon Strategies ("Gryphon"), a vendor engaged by Plaintiffs to, among other things, assist with certain investigative tasks, and took the deposition of Polizzi, a representative of Gryphon. During their deposition of Polizzi, counsel for the Mesaros Defendants questioned Polizzi on the terms and scope of Gryphon's engagement with Plaintiffs and on details of its investigation of the named Defendants and John and Jane Doe drivers. (Mot., Dkt. 572, at 4–5). Polizzi testified that Gryphon reviewed videos and photographs from the Incident and searched for registered owners for vehicles where they could identify a plate number. (Polizzi Dep., Dkt. 572-3, at 30:8–33:22). He testified that Gryphon identified "a handful" of individuals, something less than ten, from these searches that were not named as defendants in the suit and reported these results to Plaintiffs. (*Id.*) Polizzi

explained that although Gryphon was able to find historical registration data for the vehicles, Gryphon was unable to identify the actual drivers of the vehicles on the day of the Incident, except for Kyle Kruger. (Polizzi Dep., Dkt. 572-3, at 64:5–18). In addition, the Mesaros Defendants served on Plaintiffs additional requests for production and interrogatories related to these fact witnesses. Plaintiffs provided the Mesaros Defendants with responsive materials captured by Gryphon including any non-privileged documents relating to the John and Jane Doe drivers. (Mot., Dkt. 572, at 5; Dkt. 580-1, at 7–9).

Defendants, including the Mesaros Defendants, filed motions for summary judgment on all of Plaintiffs' claims, which the Court denied on August 5, 2024. (Order, Dkt. 458; *see also* Dkt. 475). A jury trial was then held in this matter from September 9, 2024, through September 23, 2024. (Min. Entry, Dkt. 535; Min. Entry, Dkt. 561). On September 23, 2024, the jury returned a verdict finding Cisneros liable for engaging in a conspiracy in violation of 42 U.S.C. § 1985(3). The jury awarded Holloway $10,000 in compensatory damages and all Plaintiffs $30,000 in punitive damages. The jury did not find Cisneros liable for any of Plaintiffs' state law claims. They jury also found the other Defendants—including the Mesaros Defendants—not liable on all claims. (Dkt. 557).

The Mesaros Defendants subsequently filed a Bill of Costs, (Dkt. 602), an Opposed Motion for Attorneys' Fees, (Dkt. 604), and an Opposed Motion for Costs, (Dkt. 617). The Ceh Defendants filed a Motion for Attorney's Fees and Costs Pursuant to 42 U.S.C. § 1988. (Dkt. 603).

Finally, on August 1 and August 19, 2025, the Court ordered Defendant Cisneros to pay Plaintiffs' expert fees and the reasonable attorneys' fees associated with bringing the motion to compel him to pay these expert fees. (Orders to Pay Fees, Dkts. 588, 600). He was ordered to make these payments within fourteen days of the Court's Orders. Due to Defendant Cisneros's failure to pay their expert fees by this deadline, Plaintiffs filed a Motion for Order to Show Cause Why Defendant Cisneros Should Not Be Held in Contempt of Court, (Dkt. 599), which Defendant

Cisneros did not respond to. Because of his subsequent failure to pay Plaintiffs' attorneys' fees as ordered, Plaintiffs then filed a second Motion for Order to Show Cause Why Defendant Cisneros Should Not Be Held in Contempt of Court, (Dkt. 613), which Defendant Cisneros also did not respond to. In the time between the filing of these two motions, Defendant Cisneros purportedly stated in a public Instagram video that "they wanted to settle with me, and I said f*** you." (Renewed Motion for Order to Show Cause Why Defendant Cisneros Should Not Be Held in Contempt of Court, Dkt. 643, at 8 & n.3).

The Court held a hearing on Plaintiffs' two Motions for Order to Show Cause on September 30, 2025. At the hearing, counsel for Defendant Cisneros agreed to exchange Defendant Cisneros's financial information with Plaintiffs and to jointly confer regarding a payment plan. The Court warned counsel for Defendant Cisneros that he needed to respond to Plaintiffs' motions. On October 24, 2025, Plaintiffs filed a Renewed Motion for Order to Show Cause Why Defendant Cisneros Should Not Be Held in Contempt of Court, (Dkt. 643), representing that Defendant Cisneros has the ability to comply with the Court's orders but is choosing not to. Defendant Cisneros did not respond to this third motion for an order to show cause.

## II. LEGAL STANDARDS

### A. AWARDING OF ATTORNEYS' FEES UNDER 42 U.S.C. § 1988

Pursuant to 42 U.S.C. § 1988, a prevailing defendant may only be awarded attorneys' fees in a case brought under 42 U.S.C. § 1985 if "the plaintiff[s'] underlying claim was frivolous, unreasonable, or groundless." *Loftin v. City of Prentiss, Miss.*, 33 F.4th 774 (5th Cir. 2022) (quoting *Merced v. Kasson*, 577 F.3d 578, 595 (5th Cir. 2009)). "A claim is frivolous under § 1988 if it is not 'colorable' and lacks 'arguable merit.'" *Haygood v. Morrison*, 116 F.4th 439, 444–45 (5th Cir. 2024) (quoting *Vaughan v. Lewisville Indep. Sch. Dist.*, 62 F.4th 199, 204 (5th Cir. 2023)). In determining whether a plaintiff's claim was frivolous, a district court may consider various factors, including, but

not limited to, "(1) whether plaintiff established a prima facie case, (2) whether the defendant offered to settle, . . . (3) whether the district court dismissed the case or held a full-blown trial," *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991), and (4) "whether the claims were foreclosed by squarely controlling precedent." *Haygood v. Morrison*, 116 F.4th 439, 444–45 (5th Cir. 2024).

## B. AWARDING OF COSTS

Pursuant to Federal Rule of Civil Procedure 54(d)(1), there is "a strong presumption that the prevailing party will be awarded costs." Fed. R. Civ. P. 54(d)(1); *Choate v. Potter*, 349 F. App'x 927, 930 (5th Cir. 2009) (per curiam). Taxable costs include: (1) fees of the clerk and marshal; (2) fees for transcripts; (3) fees for printing and witnesses; (4) fees for copies of materials used in the case; (5) docket fees; and (6) compensation of court-appointed experts. 28 U.S.C. § 1920. A district court generally has wide discretion in awarding expenses or costs. *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987) (explaining that "Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party").

## C. CIVIL CONTEMPT

Courts may impose sanctions for civil contempt as exercises of their inherent powers to protect their proper functioning and ensure "submission to their lawful mandates." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat) 204, 227 (1821)). This "justification for the contempt authority is at its pinnacle . . . where contumacious conduct threatens a court's immediate ability to conduct its proceedings." *Id.* at 832. Generally, "[j]udicial sanctions in civil contempt proceedings [are] employed for either or both of two purposes: to coerce the defendant into compliance with the court's order [or] to compensate the complainant for losses sustained." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000).

Civil contempt proceedings do not require the same procedural safeguards as do criminal contempt proceedings involving punitive sanctions. "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." *Bagwell*, 512 U.S. at 827. When determining an appropriate sanction, the Court must consider, with appropriate findings made in the record, "(1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order." *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990) (quoting *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947)). Fines are a permissible sanction for civil contempt "if the contemnor has [a] subsequent opportunity to reduce or avoid the fine through compliance." *Bagwell*, 512 U.S. at 829; *see also Turner v. Rogers*, 564 U.S. 431, 442 (2011); *In re Dinnan*, 625 F.2d 1146, 1149 (5th Cir. Unit B 1980) ("A coercive, nonpunitive fine payable to the clerk of the court is an appropriate tool in civil contempt cases.").

### III. ANALYSIS

### A. CEH DEFENDANTS' MOTION FOR FEES

The Ceh Defendants move for an award of $135,000 in attorney's fees. (Ceh Defs.' Fee Mot., Dkt. 603, at 17–18). They argue that, as prevailing parties, they are entitled to fees for the following reasons: (1) this action was "frivolous and groundless" because the Plaintiffs failed to allege the Cehs acted with racial animus, thereby failing to establish a prima facie case under 42 U.S.C. § 1985, and (2) the "usual test" for awarding prevailing defendants attorney's fees in § 1983 cases should not apply where private parties proceed against one another. (Dkt. 603, at 4–17). The Court will analyze these two arguments in turn.

First, the Court disagrees that this action was "frivolous and groundless" due to Plaintiffs' purported failure to establish a prima facie case. As this Court already pointed out to the Mesaros Defendants, it is hard to imagine a case being frivolous where the Court repeatedly denied Defendants' motions to dismiss Plaintiffs' claims, (*see* Dkts. 64, 100, 204), and denied Defendants' motions for summary judgment after holding that a reasonable jury could find Defendants liable on all of Plaintiffs' claims, (*see* Dkt. 475). Thus, contrary to the Ceh Defendants' argument, Plaintiffs **did** establish a prima facie case under § 1985.[3] The case then proceeded to a jury trial on the merits, where the Court denied Defendants' motions for judgment as a matter of law.

Under well-established Fifth Circuit precedent, on these facts, it would arguably be an abuse of discretion to find Plaintiffs' case frivolous and award attorney's fees to the Ceh Defendants. *See Braud v. Spell*, 667 F. App'x 443, 444 (5th Cir. 2016) (per curiam) (affirming the denial of attorney's fees under 42 U.S.C. § 1988 and explaining that the Court reaching a "final ruling only after a contested bench trial where both parties presented a case" is a "fact that weighs against a finding of frivolousness"); *Vaughner v. Pulito*, 804 F.2d 873, 878 (5th Cir. 1986) (affirming the denial of attorney's fees where the case "proceeded to a full trial on the merits despite [the defendant's] attempts to have the case dismissed"); *Myers v. City of West Monroe*, 211 F.3d 289, 293–94 (5th Cir. 2000) (holding that it was an abuse of discretion for the district court to find claims that went to a "complete trial" frivolous and reversing the award of attorneys' fees). Thus, based on Plaintiffs' case not being squarely foreclosed by controlling precedent, the Court's denial of Defendants' motions to dismiss, the Court's denial of Defendants' motion for summary judgment, and the fact that this case went to trial, the Court holds that the case was not frivolous for the purposes of § 1988, nor was it

---

[3] Even if the Ceh Defendants had ultimately prevailed on their argument that the Support or Advocacy Clause of § 1985(3) required racial animus, neither the Supreme Court nor the Fifth Circuit has squarely addressed this question. (*See* Dkt. 475, at 26–27). Thus, even if Plaintiffs' claims had been dismissed for failure to allege racial animus, it would be hard to imagine the Court concluding the case had been frivolous or brought in bad faith.

brought in bad faith. *See United States v. Mississippi*, 921 F.3d at 609 (explaining that a plaintiff establishing a prima facie case and proceeding to a "full-blown trial" weighs against a finding of frivolity); *Haygood*, 116 F.4th at 444–45 (explaining that claims being "foreclosed by squarely controlling precedent" weighs in favor of frivolity).

Second, the Court also disagrees that the test for awarding fees to prevailing defendants under § 1988 is different where the prevailing defendants are private parties.[4] As Plaintiffs point out and the Ceh Defendants acknowledge in their Reply, the Ceh Defendants incorrectly claim that the "seminal cases on this issue, both at the Supreme Court and Fifth Circuit, have all included government actors as defendants," and the Ceh Defendants cite to *Christiansburg* as an example. (Ceh Defs.' Fee Mot., Dkt. 603, at 14; Pls.' Resp. to Ceh Mot., Dkt. 618, at 11; Ceh Defs.' Reply, Dkt. 636, at 6). To the contrary, *Christiansburg* itself involved the Christiansburg Garment Company—not a government actor. *See Christiansburg*, 434 U.S. at 414 (noting that the petitioner was Christiansburg Garment Company). The Supreme Court therefore did not limit its interpretation of fee-shifting mechanisms in civil rights cases to cases in which the defendant was a government actor.[5] This Court is bound by Supreme Court and Fifth Circuit precedent in which the principle from *Christiansburg*—as in *Christiansburg*—applied to private actors. *See id.* at 420–23; *Crawford v. W. Elec. Co.*, 614 F.2d 1300 (5th Cir. 1980) (directing the district court to apply *Christiansburg* to a case where the defendant was not a government actor); *Dean v. Riser*, 240 F.3d 505, 508, 510–12 (5th Cir. 2001)

---

[4] The Ceh Defendants more broadly argue that the text of § 1988 "does not support a presumption against prevailing defendants recovering attorney's fees." (Dkt. 603, at 12). But this Court is bound to the contrary conclusion, as the Supreme Court itself applied the rule that prevailing defendants may only recover fees for frivolous cases to a case brought under § 1988. *See Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)) (applying the test from *Christiansburg* to § 1988 and vacating an award of attorney's fees, as the plaintiff's civil rights allegations were "definitely not meritless in the *Christiansburg* sense"); *see also Vaughan*, 62 F.4th at 204 (quoting *Christiansburg*, 434 U.S. at 421) (noting the Supreme Court's guidance in *Christiansburg* that "fee-shifting for prevailing defendants in civil rights cases [is limited to] instances where the 'plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith'").

[5] As explained in footnote 4, *supra*, although *Christiansburg* was about a case brought under Title VII, the Supreme Court later applied *Christiansburg* to a case brought under § 1988. *See Hughes*, 449 U.S. at 14.

(applying the "more rigorous standard for awarding attorney's fees to prevailing defendants" to a case in which the defendant was an individual sued in his individual and official capacity); *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1140–42 (5th Cir. 1983) (finding that an employee's Title VII claims against her former employer were not frivolous and reversing the district court's assessment of attorneys' fees); *Offord v. Parker*, 456 F. App'x 472, 474–76 (5th Cir. 2012) (per curiam) (affirming the award of attorneys' fees to prevailing defendants, including a number of individuals, after agreeing with the district court that the plaintiff's case had been frivolous).

Moreover, the legislative history behind § 1988 belies the Ceh Defendants' assertion that the purpose of the fee-shifting mechanism for civil rights cases is to protect parties of "limited means." (Ceh Defs.' Fee Mot., Dkt. 603, at 13–16; Ceh Defs.' Reply, Dkt. 626, at 5–8). The Fifth Circuit has instead recently explained, "The central purpose of fee-shifting provisions in civil rights statutes, the Court later clarified, 'is to vindicate the national policy against wrongful discrimination by encouraging victims to make the wrongdoers pay at law—assuring that the incentive to such suits will not be reduced by the prospect of attorney's fees that consume the recovery.'" *Vaughan*, 62 F.4th at 204 (quoting *Indep. Fed'n Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989)); *see also* H.R. Rep. 94-1558, at 7 (1976) ("To avoid the potential 'chilling effect' noted by the Justice Department and to advance the public interest articulated by the Supreme Court . . . an award [to a prevailing defendant] may be made only if the action is vexatious and frivolous . . . ."). The Fifth Circuit has additionally described fee-shifting provisions in civil rights statutes as striking a "delicate balance that Congress intended to exist between encouraging the policy of private plaintiffs effecting the vigorous vindication of civil rights and protecting civil rights defendants from the burdens of frivolous lawsuits." *Dean*, 240 F.3d at 512.[6]

---

[6] As noted above on pages 9–10, *supra*, the prevailing defendant seeking attorney's fees in *Dean* itself was an individual sued in both his individual and official capacity. *See id.* at 505–07 ("Defendant-Appellant Larkin T. Riser appeals the district court's conclusion that . . . he is not a 'prevailing party' within the meaning of 42

It would blatantly go against the purpose of § 1988 to give certain types of defendants "immunity" from this standard. If the Court were to agree with the Ceh Defendants, such that an alleged violator of civil rights who is neither a government actor nor a corporation will be presumptively awarded attorney's fees if they prevail, potential plaintiffs may be chilled from filing meritorious lawsuits. Such an interpretation of § 1988 cannot stand in light of the explicit purpose behind civil rights fee-shifting statutes. Like all other civil rights defendants, the Ceh Defendants are protected against *frivolous* lawsuits—and this lawsuit was not frivolous. The Court will therefore deny the Ceh Defendants' Motion for Attorney's Fees and Costs Pursuant to 42 U.S.C. § 1988, (Dkt. 603).

## B. MESAROS DEFENDANTS' MOTION FOR FEES

The Mesaros Defendants also filed a motion for attorneys' fees. (Mesaros Defs.' Fees Mot., Dkt. 604). The Mesaros Defendants argue that Plaintiffs' filing of this case was "frivolous and harassing." (*Id.* at 6). They assert that Plaintiffs' litigation strategy was "deliberately aimed not at visiting justice upon those responsible but at shutting down protected association/protest on the road" and that Plaintiffs' counsel made a "nefarious attempt to mislead the jury by watering down" the standard for conspiracy in their proposed jury charge. (*Id.* at 7–8). They also "adopt the grounds for fees argued in the Cehs' motion for fees." (*Id.* at 8 n.3). They seek $328,500 in attorneys' fees, $8264.37 as reimbursement for travel and lodging expenses, and $9649.38 as reimbursement for their payment to Plaintiffs' experts for their deposition preparation and attendance time. (*Id.* at 10–11).

First, the Court reiterates its finding from Section III(A), *supra*, that Plaintiffs' case was not frivolous. Second, regarding the Mesaros Defendants' argument that Plaintiffs' litigation strategy

---

U.S.C. § 1988."). The Fifth Circuit nonetheless directed the district court to determine whether the "plaintiff's suit was frivolous, groundless, or without merit" before deciding in its discretion whether to award him attorney's fees. *Id.* at 511–12.

proves the purpose of the case was harassment, the Court reiterates what it previously wrote in its

Order denying the Mesaros Defendants' Motion for Limited Discovery:

> Throughout this litigation, Plaintiffs and Defendants alike have engaged in extensive discovery to uncover the identities of the drivers who participated in the Incident. Plaintiffs sought this discovery from named Defendants through requests for production, interrogatories, and by questioning Defendants regarding the identities of other vehicles on the road on October 30, 2020, including asking about the identities of drivers depicted in various videos and photographs from the day of the Incident. (*See* Mot., Dkt. 572, at 3–4). Plaintiffs also served Rule 45 subpoenas on at least 20 non-parties for discovery on this topic. (*Id.*). Their early discovery efforts led Plaintiffs to amend their complaint to add Kyle Kruger as a defendant after identifying his vehicle as one that was often near the Bus. In light of these efforts, it strains credulity for the Mesaros Defendants to now assert that Plaintiffs did not sufficiently engage in discovery to uncover the identities of the other drivers on I-35 that day. This argument is especially unconvincing given the discovery obstacles Plaintiffs faced in this case due to the intentional destruction of evidence by Defendants Joeylynn Mesaros and Cisneros. (*See* Dkts. 377, 389).

(Order on Mot. for Ltd. Discovery, Dkt. 589, at 6–9). The Court again finds for these reasons that

the Mesaros Defendants' argument that Plaintiffs' litigation strategy was "harassing" is meritless.

Finally, the Court disagrees that the jury instructions suggested by Plaintiffs prove the case

was filed in bad faith. First, the Supreme Court and Fifth Circuit instruct that attorneys' fees are to

be awarded to prevailing defendants when a plaintiff's *claims* were frivolous, groundless, or brought

in bad faith. *See Vaughner*, 804 F.2d at 878 (quoting *Jones v. Tex. Tech Univ.*, 656 F.2d 1137, 1145 (5th

Cir. 1981) ("To avoid discouraging all but 'airtight claims,' courts focus on whether *a plaintiff's claim* is

colorable and of arguable merit.") (emphasis added); *Christiansburg*, 434 U.S. at 422 ("Hence, a

plaintiff should not be assessed his opponent's attorney's fees unless a court finds *that his claim was*

*frivolous, unreasonable, or groundless*, or that the plaintiff continued to litigate after it clearly became so.

And, needless to stay, if a plaintiff is bought to have brought or continued *such a claim in bad faith*,

there will be an even stronger basis for charging him with the attorney's fees incurred by the

defense.") (emphasis added). A plaintiff's proposed jury instruction does not affect whether a *claim*

was frivolous or brought in bad faith.

Regardless, the Court disagrees that Plaintiffs' "sophisticated lawyers proposed jury instructions that would have minimized or wholly ignored the well-established specific intent requirement for such a conspiracy." (Mesaros Defs.' Fee Mot., Dkt. 604, at 8). To the contrary, Plaintiffs' proposed instructions included multiple references to the specific intent required for Defendants to be found guilty under 42 U.S.C. § 1985(3). Plaintiffs' proposed instructions stated: (1) that Plaintiffs "must prove . . . [a] *purpose* of the conspiracy was" to engage in election-related intimidation; (2) in accordance with the Fifth Circuit Criminal Pattern Jury Instruction § 2.15A, it would be sufficient for the jury to find that a defendant "understood the unlawful nature of a plan or scheme and *knowingly and intentionally joined in that plan or scheme*"; (3) that Plaintiffs "must establish . . . that *one of the goals of the conspiracy*" was to participate in election-related interference; and (4) that the jury "may consider any such inference drawn in determining whether or not Plaintiffs have proved by a preponderance of the evidence that *each defendant possessed the required intent*." (Dkt. 424-7, at 7, 10, 10 n.21, 11, 12). The Court therefore rejects the Mesaros Defendants' argument that Plaintiffs' proposed jury instructions are proof of this case being brought in bad faith.

### C. MESAROS DEFENDANTS' MOTION FOR COSTS

After filing an initial Bill of Costs, (Dkt. 602), and subsequently reducing the amount requested upon further discussion with Plaintiffs, the Mesaros Defendants move for $12,826.00 in costs. (Mesaros Defs.' Costs Mot., Dkt. 617, at 5–6). This amount is to cover the cost of the deposition transcripts. (*Id.* at 6). The Mesaros Defendants argue that, though a spoliation instruction was issued against them to the jury, their behavior does not warrant them being denied costs. (*Id.* at 2–3). They assert that the spoliation instruction means they have already been penalized, such that there is no justification to further penalize them. (*Id.* at 3–4). They finally argue that their "meager financial resources compared to the Plaintiffs' seemingly endless coffers to support of the prosecution of this case . . . also strongly supports an award of costs to the Mesaroses." (*Id.* at 4).

The "strong presumption that the prevailing party will be awarded costs" may be overcome where "the suit was brought in good faith *and* denial is based on at least one" of a number of factors, including "misconduct by the prevailing party," "close and difficult legal issues presented," and "substantial benefit conferred to the public." *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 753 (5th Cir. 2018) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 793–94 (5th Cir. 2006) (emphasis in original)). First, the Court agrees that this case was brought in good faith. *See supra* Section III(A). Second, the Court finds that two of the three *Pacheco* factors listed above plainly weigh against the awarding of costs. Joeylynn Mesaros was found to have engaged in significant spoliation of evidence. The Court instructed the jury:

> Defendant Joeylynn Mesaros intentionally deleted social media content relevant to Plaintiffs' claims in this litigation and instructed her husband Robert Mesaros to do the same, and you may presume that Joeylynn Mesaros deleted this social media content because it was unfavorable to her case and would have been used by Plaintiffs to establish her liability.
>
> Defendant Joeylynn Mesaros intentionally failed to preserve her text messages from key time periods including shortly before, during, and after October 30, 2020, and you may presume that Joeylynn Mesaros failed to preserve these text messages because they were unfavorable to her case and would have been used by Plaintiffs to establish her liability.
>
> Finally, Defendant Joeylynn Mesaros intentionally failed to preserve other phone data from key time periods including shortly before, during, and after October 30, 2020, and you may presume that Joeylynn Mesaros failed to preserve this phone data because it was unfavorable to her case and would have been used by Plaintiffs to establish her liability.

(Jury Instructions, Dkt. 550, at 6). Additionally, Defendant Robert Mesaros stated in a text message that he agreed with Defendant Joeylynn Mesaros's statement that they "probably need to delete our social media posts ASAP about chasing the bus" soon after they became aware of this litigation. (Text Messages Between Joeylynn and Robert Mesaros, Dkt. 320-5, at 3). He later "downloaded all of the photos and videos from Joeylynn Mesaros's cell phone that he believed were related to the litigation, but he did not download and save any other phone data, including text messages." (R&R

on Sanctions, Dkt. 377, at 20).[7] Additionally, the Court found that "[Defendant Joeylynn Mesaros] and her husband deleted relevant social media content that is now lost." (*Id.* at 18). The "misconduct by the prevailing party" factor therefore is easily met in this case.

Though only good faith by Plaintiffs and one *Pacheco* factor must be met for the Court to deny costs, *see Chrysler Group*, 909 F.3d at 753, the Court also finds that this case involved "close and difficult legal issues." *See id.* As discussed previously in this Order, this case involved an undeveloped area of law, as neither the Supreme Court nor the Fifth Circuit have expressly determined whether a Support or Advocacy Clause claim requires a showing of racial or class-based animus. (*See* Order Denying Mot. Summ. Judg., Dkt. 475, at 26–28). This litigation therefore required significant statutory interpretation, analysis of legislative history, and analysis of prior related case law, which supports that the case involved "difficult legal issues." (*See, e.g.*, *id.* at 10–48). Moreover, the fact that a Co-Defendant of the Mesaros Defendants was found guilty supports that the case was "close." Thus, based on Plaintiffs' good faith in bringing this case, and the *Pacheco* factors of misconduct by the prevailing party and close and difficult legal issues, the Court will deny the Mesaros Defendants' motion for costs.

### D. PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT CISNEROS SHOULD NOT BE HELD IN CONTEMPT OF COURT

#### 1. Failure to Comply with Multiple Court Orders

On August 1, 2025, and August 19, 2025, respectively, the Court ordered Defendant Cisneros to pay $9,651 to Plaintiffs' experts and to pay Plaintiffs $1,440 for their reasonable attorneys' fees incurred in filing the motion to compel Defendant Cisneros to pay their experts. (Order to Pay Expert Fees, Dkt. 588, at 2; Order to Pay Attorneys' Fees, Dkt. 600, at 2). On August 20, 2025, Plaintiffs filed a Motion for Order to Show Cause Why Defendant Cisneros Should Not

---

[7] The Court adopted U.S. Magistrate Judge Mark Lane's Report and Recommendation on Plaintiffs' motion for sanctions against Defendant Joeylynn Mesaros in full. (Order Adopting R&R on Sanctions, Dkt. 389).

Be Held in Contempt of Court, arguing that Defendant Cisneros should be held in contempt for his failure to pay their experts within fourteen days, as ordered by the Court. (First Mot. for Order to Show Cause, Dkt. 599). On September 9, 2025, Plaintiffs filed a similar motion, (Dkt. 613), arguing he should be held in contempt for failure to pay their reasonable attorneys' fees incurred in filing their motion to compel within fourteen days, as ordered by the Court. (Second Mot. for Order to Show Cause, Dkt. 613). Defendant Cisneros did not file a response to either of these motions for an order to show cause.

On September 30, 2025, the Court held a hearing on Plaintiffs' two motions for an order to show cause as to why Defendant Cisneros should not be held in contempt. At the hearing, counsel for Defendant Cisneros agreed to exchange Defendant Cisneros's financial information with Plaintiffs and to jointly confer regarding a payment plan. Regarding Defendant Cisneros's failure to respond to either of Plaintiffs' motions, the Court specifically instructed counsel for Defendant Cisneros that he must respond to Plaintiffs' motions in the future. On October 17, 2025, Plaintiffs informed the Court that they needed additional time to review financial information provided by counsel for Defendant Cisneros. (Dkt. 642).

Subsequently, on October 24, 2025, Plaintiffs filed an Opposed Renewed Motion for Order to Show Cause Why Defendant Cisneros Should Not Be Held in Contempt of Court. (Third Mot. for Order to Show Cause, Dkt. 643). Plaintiffs inform the Court that, based on new information from Defendant Cisneros, they have learned Defendant Cisneros "purchased a second home for $260,000 and a pickup truck with a total price of $107,000 in the time since trial—after he owed Plaintiffs' experts their reasonable fees. (*Id.* at 3). Plaintiffs represent that:

> . . . Defendant Cisneros explained that he purchased his second home with no down payment and that the renters of his first home previously provided care to his father. Defendant Cisneros also explained that he purchased the $107,000 truck because he expected a windfall from a new job that fell through. Finally, he stated that he had not been able to pay property taxes on either of his homes.

(*Id.* at 4). Plaintiffs also represent in their motion that on October 21, 2025, Defendant Cisneros then "explain[ed] that he was mistaken and actually 'owes nothing on his property taxes,'" and also "explained that selling one of his homes was 'not completely out of the question' and that he had 'already contemplated either selling or trading' in his $107,000 truck." (*Id.*). Plaintiffs argue that, based on this information, Defendant Cisneros could draw on the value of his assets and generate enough money to pay Plaintiffs and their experts. (*Id.* at 8). They claim that, based on Defendant Cisneros's months-long failure to pay their expert fees or attorneys' fees as ordered by the Court, and based on his public statement on Instagram—"they wanted to settle with me, and I said f\*\*\* you"—a coercive fine is the best way to ensure Defendant Cisneros's compliance with the Court's orders. (*Id.* at 9–11). **Despite the Court's explicit warning at the hearing on September 30, 2025, Defendant Cisneros again did not respond to Plaintiffs' motion**.

At this time, the Court finds that, rather than ordering Defendant Cisneros to show cause for his failure to follow this Court's multiple orders, it is appropriate to instead impose sanctions. *See United Mine Works of Am.*, 512 U.S. at 832 (explaining that the justification for a court's contempt authority "is at its pinnacle . . . where contumacious conduct threatens a court's immediate ability to conduct its proceedings"). Based on Plaintiffs' three motions for an order to show cause why Defendant Cisneros should not be held in contempt and on the whole record in this case, there is no question that Defendant Cisneros has been flouting this Court's Orders for months, which were in effect, were unambiguous, and required certain conduct by Defendant Cisneros that he did not take. *See Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992) (holding that the party moving for sanctions bears the burden "of establishing by clear and convincing evidence 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order"). Moreover, Defendant Cisneros's failure to respond to Plaintiffs' three motions for an order to show cause—even after the Court explicitly told

his counsel he needed to respond prior to Plaintiffs' filing of the third motion—only adds to his pattern of non-compliance.

Under these specific circumstances, the Court sees no reason to first order Defendant Cisneros to show cause prior to imposing a monetary sanction. Defendant Cisneros has been put on notice multiple times through Plaintiffs' motions for an order to show cause that the Court may impose sanctions for civil contempt, and though he was given an opportunity to be heard on those three separate occasions, he ignored those opportunities. *See Bagwell*, 512 U.S. at 827 (holding that the Court may impose "penalties designed to compel future compliance with a court order . . . upon notice and an opportunity to be heard"). As the Court acknowledged at the hearing on September 30, 2025, it is Defendant Cisneros's heavy burden to produce evidence to show why he has been unable to comply with the Court's Orders, and he has failed to even *attempt* to produce such evidence. *See U.S. v. Rylander*, 460 U.S. 752, 757 (1983) (citations omitted) (explaining that "[i]t is settled" that a party raising the defense of inability to comply with a court order "has [the] burden of production"). The Court therefore finds it is appropriate to sanction Defendant Cisneros to coerce his compliance with the Court's multiple Orders.

### 2. Appropriate Sanctions

When determining an appropriate sanction, the Court must consider, with appropriate findings made in the record, "(1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order." *Lamar Fin. Corp.*, 918 F.2d at 567 (quoting *United Mine Workers*, 330 U.S. at 304). Sanctions may include a coercive per diem fine, a compensatory fine, coercive incarceration, or a combination thereof. *Bagwell*, 512 U.S. at 827–29. Fines are a permissible sanction if the Court gives Defendant Cisneros the opportunity to

"reduce or avoid the fine through compliance" and if the fine is coercive but nonpunitive. *See id.*, 512 U.S. at 829; *In re Dinnan*, 625 F.2d at 1149.

First, the Court finds that the harm of noncompliance is high. Plaintiffs' experts have been waiting for payment since April 2024—approximately **twenty months**. (Email on Expert Invoices, Dkt. 579-1, at 8–9). Defendant Cisneros has been ignoring this Court's Orders, (Dkts. 588, 600), to pay the expert fees and attorneys' fees for approximately four months. Plaintiffs' counsel have been forced to spend hours seeking these payments they and their experts are owed. Defendant Cisneros shows no signs of changing his behavior and willfully complying.

Second, the Court finds that a per diem fine is likely to be effective, while also being the "least onerous sanction that will address the offensive conduct." *See Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 78 (5th Cir. 2011) (citations omitted). Defendant Cisneros's history of flouting this Court's orders demonstrates that a sanction is necessary to compel his compliance.

Third, based on Plaintiffs' representations, the Court will impose an appropriately tailored per diem fine. The Court may consider Defendant Cisneros's assets in determining his financial resources. *See, e.g.*, *BKS Props., Inc. v. Shumate*, 271 B.R. 794, 803–04 (N.D. Tex. 2002), *dismissed sub nom. BKS Props. v. Shumate*, 51 F. App'x 483 (5th Cir. 2002) (citing *S.E.C. v. AMX, Int'l, Inc.*, 7 F.3d 71, 76 (5th Cir. 1993)) ("The Fifth Circuit has recognized that federal courts may consider the value of assets, even if such assets are exempt from a creditor's reach, in assessing sanctions for contempt . . . . [The defendant] may well have assets, in addition to his house, with which to purge his contempt. . . . [H]e may now draw on his own assets to purge the resulting contempt."); *Sec. & Exch. Comm'n v. Faulkner*, No. 3:16-CV-1735-D, 2019 WL 277621, at *3 (N.D. Tex. Jan. 22, 2019) ("[W]hen a contemnor is ordered to pay money as a sanction for violating a court order, the court can consider the value of the contemnor's homestead."). Defendant Cisneros owns two homes; he holds approximately $130,000 in equity in one of these homes. (Third Mot. for Order to Show

Cause, Dkt. 643, at 3). He also recently purchased a pickup truck valued at approximately $107,000. (*Id.*). The Court also acknowledges, however, Defendant Cisneros's representation to Plaintiffs that his monthly $7,497.26 income is not sufficient to cover his monthly consumer debt payments and other expenses. (Third Mot. for Order to Show Cause, Dkt. 643, at 8). The Court therefore finds that a $50 per diem fine is appropriate in this case, as it is coercive but nonpunitive.

Fourth, the Court holds that Defendant Cisneros's failure to comply has been willful. In reaching this holding, the Court considers Plaintiffs' representation that, after he was ordered to make payments for the expert fees and related attorneys' fees, Defendant Cisneros stated publicly that "they wanted to settle with me, and I said f*** you." (*Id.*). The Court also takes into account that Defendant Cisneros appears willing to sell one of his homes or to sell or trade his $107,000 truck—which were both purchased **after** he received an invoice of Plaintiffs' expert fees—but has not done so. (*Id.* at 3–4, 8). Finally, the Court's holding reflects the fact that Defendant Cisneros's counsel appeared at the September 30, 2025 hearing, indicating that Defendant Cisneros is aware of the Court's previous Orders to make the payments for Plaintiffs' expert fees and reasonable attorneys' fees.

Thus, all four factors from *Lamar Financial Corporation* and *United Mine Workers* weigh in favor of this Court imposing a per diem fine on Defendant Cisneros. The Court will give Defendant Cisneros two weeks to make the relevant payments ($9,651 to Plaintiffs' experts and $1,440 to Plaintiffs for their attorneys' fees). If he does not make these payments, then Defendant Cisneros shall pay to the Court at $50 per diem fine for each day that the expert fees and attorneys' fees go unpaid.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that the Ceh Defendants' Motion for Attorney's Fees and Costs Pursuant to 42 U.S.C. § 1988, (Dkt. 603), is **DENIED**.

**IT IS FURTHER ORDERED** that the Mesaros Defendants' Opposed Motion for Attorneys' Fees, (Dkt. 604), is **DENIED**.

**IT IS FURTHER ORDERED** that the Mesaros Defendants' Opposed Motion for Costs, (Dkt. 617), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Opposed Renewed Motion for Order to Show Cause Why Defendant Cisneros Should Not Be Held in Contempt of Court, (Dkt. 643), is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant Cisneros is in **CIVIL CONTEMPT** of this Court due to his continued failure to comply with its Orders on August 1, 2025, and August 19, 2025. (Dkts. 588, 600).

**IT IS FURTHER ORDERED** that Defendant Cisneros immediately comply with this Order **within fourteen days** of the date of this Order, by undertaking and filing with the Court a written certification signed under penalty of perjury that he has:

(1) Paid $2,720 to Dr. Peter Simi; $3,485 to Dr. Kathleen Blee; and $3,446 to Dr. Theron Bowman; and

(2) Paid $1,400 in attorneys' fees to Plaintiffs.

**IT IS FINALLY ORDERED** that if Defendant Cisneros fails to complete the two items above and file the required proof with the Court **within fourteen days** of this Order, then Defendant Cisneros shall pay to the Court a per diem fine of $50 for each day that the items remain incomplete.

**SIGNED** on December 19, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE